**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br>House Canary New Jersey, Inc., *et al.*,[1]<br>Debtors. | Chapter 11<br>Case No. 26-20766 (EJO)<br>(Jointly Administered) |

# COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF REORGANIZATION OF <u>HOUSE CANARY NEW JERSEY, INC. AND AFFILIATES THEREOF</u>

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) House Canary New Jersey, Inc. [3712], (ii) HouseCanary, Inc. [2307], (iii) HouseCanary (CT), Inc. [1814], (iv) ComeHome, Inc. [0328], (v) HC Certified Analytics, Inc. [8523], and (vi) HouseCanary R&D, LLC [2124]. The Debtors' mailing address is 535 Mission Street, 14th Floor, San Francisco, CA 94105.

**DENTONS US LLP**
Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Van C. Durrer, II (*pro hac vice* forthcoming)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: van.durrer@dentons.com

**DENTONS BINGHAM GREENEBAUM LLP**
James R. Irving (*pro hac vice* forthcoming)
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
Telephone: (502) 589-4200
Facsimile: (502) 540-2215
Email: james.irving@dentons.com

*Proposed Counsel to Debtors and Debtors in Possession*

# TABLE OF CONTENTS

**Page**

SECTION 1 INTRODUCTION ..... 1

SECTION 2 DEFINED TERMS ..... 2

SECTION 3 SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER PLAN AND IMPORTANT SOLICITATION AND CONFIRMATION DATES AND DEADLINES ..... 14

3.1 Summary of Classification and Treatment of Claims and Interests. ..... 14

3.2 Important Dates and Deadlines. ..... 19

SECTION 4 BACKGROUND ..... 19

4.1 General Background. ..... 19

4.2 Events Leading to Chapter 11 Filing. ..... 20

SECTION 5 THE CHAPTER 11 CASES ..... 21

5.1 First Day Motions and Other Early Developments in the Chapter 11 Cases ..... 21

5.2 Pending Matters. ..... 23

5.3 DIP Financing. ..... 23

5.4 Debtors' Retention of Professionals and Personnel. ..... 24

5.5 Debtors' Schedules and Statement of Financial Affairs. ..... 24

SECTION 6 CONFIRMATION AND VOTING PROCEDURES ..... 24

6.1 Confirmation Hearing. ..... 24

6.2 Procedures for Objections. ..... 25

6.3 Requirements for Confirmation. ..... 25

6.4 Classification of Claims and Interests ..... 25

6.5 Impaired Claims or Interests. ..... 27

6.6 Confirmation Without Necessary Acceptances; Cramdown. ..... 28

6.7 Feasibility. ..... 29

6.8 Best Interests Test and Liquidation Analysis ........ 29

6.9 Eligibility to Vote on the Combined Plan and Disclosure Statement. ........ 30

6.10 Solicitation Package / Release Opt-Out Election Form. ........ 30

6.11 Voting Procedures, Voting Deadline, and Deadline to Submit the Release Opt-Out Election. ........ 31

6.12 Acceptance of the Combined Plan and Disclosure Statement. ........ 32

SECTION 7 UNCLASSIFIED CLAIMS ........ 32

7.1 Unclassified Claims ........ 32

7.2 Administrative Claims. ........ 32

7.3 Professional Fees ........ 33

7.4 Priority Claims. ........ 33

7.5 DIP Claim.. ........ 33

7.6 Post-Confirmation Fees and Expenses ........ 34

7.7 Payment of Statutory Fees and Reporting to the U.S. Trustee. ........ 34

SECTION 8 CLASSIFICATION OF CLAIMS AND INTERESTS ........ 34

8.1 Summary of Classification ........ 34

8.2 Special Provision Governing Unimpaired Claims. ........ 35

8.3 Vacant and Abstaining Classes. ........ 35

SECTION 9 TREATMENT OF CLAIMS AND INTERESTS ........ 36

9.1 Class 1—Prepetition Texas Secured Claim ........ 36

9.2 Class 2—Structural Prepetition Secured Claim ........ 36

9.3 Class 3(a)—General Unsecured Trade Claims ........ 36

9.4 Class 3(b)—Structural Prepetition Deficiency Claim ........ 37

9.5 Class 4—Convertible Notes Claim ........ 37

9.6 Class 5—Prepetition Preferred Equity Interests ........ 38

9.7 Class 6—Prepetition Common Equity Interests ........ 38

9.8 Class 7—Intercompany Claims ..... 38

9.9 Class 8—Intercompany Interests ..... 39

SECTION 10 PROCEDURES FOR RESOLVING DISPUTED CLAIMS ..... 39

10.1 Disputed Claims Process ..... 39

10.2 Allowance of Claims ..... 39

10.3 Claims Administration. ..... 40

10.4 Estimation of Claims, Including the Structural Prepetition Secured Claim. ..... 40

10.5 Disallowance of Claims ..... 41

10.6 Adjustment to Claims Register Without Objection ..... 41

10.7 Rounding ..... 41

10.8 Delivery of Distributions and Unclaimed Property ..... 42

SECTION 11 TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..... 42

11.1 Rejection / Assumption. ..... 42

11.2 Reinstatement and Continuation of Insurance Policies. ..... 43

11.3 Continuation of Certain Licenses and Agreements. ..... 43

SECTION 12 MEANS FOR IMPLEMENTATION OF THE PLAN ..... 43

12.1 General Settlement of Claims and Interests. ..... 43

12.2 The Reorganized Company ..... 44

12.3 Sources of Consideration for Plan Distributions ..... 44

12.4 Amended and Restated Convertible Notes. ..... 44

12.5 Reorganized Common Equity. ..... 45

12.6 Litigation. ..... 45

12.7 Corporate Action. ..... 46

12.8 New Governance Documents ..... 46

12.9 Directors and Officers of the Reorganized Company ..... 47

12.10 Effectuating Documents; Further Transactions .................. 47

12.11 Certain Securities Law Matters. .................. 47

12.12 Section 1146 Exemption .................. 48

12.13 Private Company .................. 49

12.14 Director and Officer Liability Insurance .................. 49

12.15 MIP .................. 50

SECTION 13 EFFECT OF CONFIRMATION .................. 50

13.1 Binding Effect of the Plan. .................. 50

13.2 Vesting of Property of Debtors on the Effective Date. .................. 50

13.3 Property Free and Clear. .................. 50

13.4 Cancellation of Existing Securities, Agreements, and Interests. .................. 51

SECTION 14 EXCULPATIONS, INJUNCTIONS, AND RELEASES .................. 51

14.1 Exculpation. .................. 52

14.2 Releases .................. 52

14.3 Injunction .................. 55

SECTION 15 CERTAIN RISK FACTORS, TAX CONSEQUENCES, AND OTHER DISCLOSURES .................. 56

15.1 Certain Risk Factors to be Considered .................. 56

15.2 Certain U.S. Federal Income Tax Consequences .................. 60

15.3 Alternatives to the Combined Plan and Disclosure Statement. .................. 61

SECTION 16 CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN .................. 62

16.1 Conditions to Confirmation of the Plan. .................. 62

16.2 Conditions to the Effective Date. .................. 62

16.3 Waiver of Conditions Precedent. .................. 62

SECTION 17 RETENTION OF JURISDICTION ........ 62

SECTION 18 MISCELLANEOUS PROVISIONS ........ 64

18.1 Revocation of the Combined Plan and Disclosure Statement. ........ 64

18.2 Severability of Plan Provisions. ........ 64

18.3 Votes Solicited in Good Faith. ........ 64

18.4 Closing of Chapter 11 Cases. ........ 65

18.5 Exhibits. ........ 65

18.6 Notices. ........ 65

18.7 Reservation of Rights. ........ 66

18.8 Defects, Omissions and Amendments. ........ 66

18.9 Filing of Additional Documents. ........ 66

18.10 Successors and Assigns. ........ 66

18.11 Setoffs and Recoupments. ........ 67

18.12 Tax Exemption. ........ 67

18.13 Implementation. ........ 67

18.14 Record Date. ........ 67

18.15 Substantial Consummation. ........ 67

18.16 Waiver of Fourteen-Day Stay. ........ 67

18.17 Governing Law. ........ 67

18.18 Entire Agreement. ........ 68

SECTION 19 RECOMMENDATION ........ 68

# DISCLAIMERS

**EACH HOLDER OF A CLAIM AGAINST THE DEBTORS ENTITLED TO VOTE TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD READ THE COMBINED PLAN AND DISCLOSURE STATEMENT IN ITS ENTIRETY BEFORE VOTING. NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT MAY BE MADE EXCEPT PURSUANT TO THE TERMS HEREOF AND SECTIONS 1121 AND 1125 OF THE BANKRUPTCY CODE. IF YOU ARE ENTITLED TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT, YOU ARE RECEIVING A BALLOT WITH YOUR NOTICE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE DEBTORS URGE YOU TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

**THE COMBINED PLAN AND DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTIONS 1121 AND 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3016 AND 3017, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST OR INTERESTS IN THE DEBTORS SHOULD EVALUATE THE COMBINED PLAN AND DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED. THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT AS TO HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS. YOU SHOULD CONSULT YOUR PERSONAL COUNSEL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS RESPECTING TAX, SECURITIES, OR OTHER LEGAL CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

**THE COMBINED PLAN AND DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT, ANTICIPATED EVENTS IN THE CHAPTER 11 CASES, AND FINANCIAL INFORMATION. ALTHOUGH THE DEBTORS BELIEVE THAT THE STATEMENTS AND DESCRIPTIONS CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE TRUE AND ACCURATE, THEY ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT AND APPLICABLE STATUTORY PROVISIONS. THE TERMS OF THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT AND APPLICABLE STATUTES GOVERN IN THE EVENT OF ANY DISCREPANCY WITH THE COMBINED PLAN AND DISCLOSURE STATEMENT. CREDITORS AND OTHER INTERESTED PARTIES SHOULD READ THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT, AND THE APPLICABLE**

**STATUTES THEMSELVES FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS.**

**THE FACTUAL STATEMENTS AND REPRESENTATIONS CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE MADE BY THE DEBTORS AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFIED, AND THE DEBTORS DISCLAIM ANY OBLIGATION TO UPDATE ANY SUCH STATEMENTS AFTER THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE DELIVERY OF THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.**

**THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND HAS NOT NECESSARILY BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.**

**ALL FORWARD-LOOKING STATEMENTS CONTAINED HEREIN OR OTHERWISE MADE BY THE DEBTORS INVOLVE MATERIAL RISKS AND UNCERTAINTIES AND ARE SUBJECT TO CHANGE BASED ON NUMEROUS FACTORS, INCLUDING FACTORS THAT ARE BEYOND THE DEBTORS' CONTROL. ACCORDINGLY, THE DEBTORS' FUTURE PERFORMANCE AND FINANCIAL RESULTS MAY DIFFER MATERIALLY FROM THOSE EXPRESSED OR IMPLIED IN ANY SUCH FORWARD-LOOKING STATEMENTS. SUCH FACTORS INCLUDE, BUT ARE NOT LIMITED TO, THOSE DESCRIBED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE DEBTORS DO NOT INTEND TO UPDATE OR REVISE THEIR FORWARD-LOOKING STATEMENTS EVEN IF EXPERIENCE OR FUTURE CHANGES MAKE IT CLEAR THAT ANY PROJECTED RESULTS EXPRESSED OR IMPLIED THEREIN WILL NOT BE REALIZED.**

**ANY PROJECTED RECOVERIES TO CREDITORS SET FORTH IN THIS DISCLOSURE STATEMENT ARE BASED UPON THE ANALYSES PERFORMED BY THE DEBTORS, AND THEIR RESPECTIVE ADVISORS. ALTHOUGH THE DEBTORS AND THEIR ADVISORS HAVE MADE EVERY EFFORT TO VERIFY THE ACCURACY OF THE INFORMATION PRESENTED HEREIN, THE DEBTORS AND THEIR ADVISORS CANNOT MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THIS INFORMATION.**

**IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT PURSUANT TO SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE, THE DEBTORS ARE FURNISHING A SOLICITATION PACKAGE, CONSISTING OF THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE EXHIBITS HERETO, CONFIRMATION NOTICE, AND A BALLOT OR RELEASE OPT-OUT ELECTION FORM, AS APPLICABLE, TO HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN OR OTHERWISE ENTITLED TO OPT OUT OF THE THIRD PARTY RELEASE, OR THEIR**

**COUNSEL, AS APPLICABLE. THE COMBINED PLAN AND DISCLOSURE STATEMENT IS TO BE USED BY EACH SUCH HOLDER SOLELY IN CONNECTION WITH ITS EVALUATION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT; USE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT FOR ANY OTHER PURPOSE IS NOT AUTHORIZED.**

# SECTION 1
# INTRODUCTION[2]

HouseCanary New Jersey, Inc. ("House Canary") and above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby propose the following combined disclosure statement and plan of reorganization pursuant to sections 1121(a) and 1125(b) of the Bankruptcy Code (the disclosure statement portion hereof, the "Disclosure Statement" and the chapter 11 plan portion hereof, the "Plan," as may be modified and/or amended from time to time, and collectively, the "Combined Plan and Disclosure Statement"). Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against and Interests in each Debtor pursuant to the Bankruptcy Code. The Debtors are the proponents of this Plan under section 1129 of the Bankruptcy Code. Capitalized terms used in the Combined Plan and Disclosure Statement and not otherwise defined have the meanings ascribed to such terms in Section 2 hereof.

The Debtors will distribute the Combined Plan and Disclosure Statement to holders of Claims and Interests as required in accordance with section 1125(b) of the Bankruptcy Code and Rules 2002, 3016, and 3017 of the Bankruptcy Rules, and the Bankruptcy Court's order conditionally approving the Combined Plan and Disclosure Statement [Docket No. [•]] (the "Conditional Approval and Procedures Order"). The Combined Plan and Disclosure Statement and the exhibits hereto include a discussion of: (1) the nature and history of the Debtors' business and liabilities; (2) events during the Chapter 11 Cases; (3) the requirements for confirmation of the Plan and procedures for voting to accept or reject the Plan; (4) additional factors and disclosures to be considered, including risk factors and certain U.S. federal income tax consequences of the Plan; and (5) the terms of the Plan, including the treatment of holders of Claims and Interests under the Plan. The Disclosure Statement was prepared with the intent to provide "adequate information" (as defined in the Bankruptcy Code) to enable holders of Claims against and Interests in the Debtors to make informed judgments about the Plan.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Combined Plan and Disclosure Statement, and subject to any applicable consent rights under the Plan, the DIP Documents, or the Plan Supplement, the Debtors expressly reserve the right to alter, amend, or modify the Combined Plan and Disclosure Statement, including the Plan Supplement, one or more times, before substantial consummation thereof.

***Please read the Combined Plan and Disclosure Statement, the exhibits, other supporting materials, and any appropriate Ballot or Release Opt-Out Election Form carefully and follow the applicable instructions set forth below and therein. Holders entitled to vote should follow the instructions on their Ballots to vote on the Plan, and holders entitled to opt out of the Third Party Release should follow the instructions applicable to the Release Opt-Out Election. The Debtors believe that the Plan provides the best method of maximizing the recoveries for the***

---

2 All capitalized terms used but not defined in the Introduction shall have the meanings ascribed to them in Section 2 of this Combined Disclosure Statement and Plan.

***holders of Claims against and Interests in the Debtors. Therefore, the Debtors recommend that all holders of Claims and Interests who are entitled to vote should vote in favor of the Plan.***

Unless otherwise specified, all section or exhibit references in the Combined Plan and Disclosure Statement are to the respective section in, or exhibit to, the Combined Plan and Disclosure Statement, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection, or clause contained herein. The headings in the Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; and (3) unless otherwise noted above, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

## SECTION 2
## DEFINED TERMS

As used in the Combined Plan and Disclosure Statement, capitalized terms not otherwise defined have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

"Administrative Claim" means a Claim for an expense of administration of the Chapter 11 Cases arising under sections 503(b), 507(b), 503(b)(9) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates; (b) the value of any goods received by the Debtors within 20 days before the Petition Date to the extent that goods were sold to the Debtors in the ordinary course of the Debtors' business; (c) Professional Fee Claims; (d) all fees and charges assessed against the Estates under 28 U.S.C. §§ 1911-1930; (e) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court; and (f) any Tax Claims incurred by the Debtors after the Petition Date or relating to a tax year or period which occurs after the Petition Date.

"Affiliate" means with respect to any specified Entity, any other Entity directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Entity. For purposes of this definition, "control" (including, with correlative meanings, the terms "controlling," "controlled by," and "under common control with") as used with respect to any Entity, shall mean the possession, directly or indirectly, of the right or power to direct or cause the direction of the management or policies of such Entity, whether through the ownership of voting securities, by agreement, or otherwise.

"Allowed" means, as to a Claim or an Interest, a Claim or an Interest expressly allowed under this Plan, under the Bankruptcy Code, or by a Final Order, as applicable. For the avoidance

of doubt, (a) there is no requirement to file a Proof of Claim (or move the Bankruptcy Court for allowance) to be an Allowed Claim under this Plan (except as may otherwise be expressly set forth in the Plan) and (b) the Debtors or the Reorganized Company, as applicable, with the consent of the DIP Lender, may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law; *provided, however*, that the Reorganized Company shall retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to this Plan.

"Allowed Claim" or "Allowed […] Claim" means a Claim that has been Allowed.

"Amended and Restated Charter" means that certain amended and restated charter or certificate of incorporation establishing the authorized capital structure and governance of the Reorganized Company, including the DIP Lender's agreed protected matter rights, including but not limited to the right to appoint two directors who must consent to any future decisions with respect to the Texas Litigation, the Texas Assets, any future bankruptcy filing, and any future financial restructurings (including liability management transactions) that could adversely affect the DIP Lender's entitlements, and any additional governance and consent rights agreed by the Debtors and the DIP Lender, which shall be filed in the Plan Supplement and shall be in form and substance acceptable to the DIP Lender.

"Amended and Restated Convertible Notes" means the amended and restated convertible notes to be issued by the Reorganized Company on the Effective Date to the holders of Allowed Convertible Notes Claims pursuant to the Plan, the forms of which shall be included in the Plan Supplement and shall be in form and substance acceptable to the DIP Lender.

"Avoidance Actions" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies which any of the Debtors, the Estates, or other appropriate party in interest has asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law.

"Ballots" mean the ballots upon which the holders of Impaired Claims or Interests entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

"Bankruptcy Code" means sections 101 *et seq*. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Cases.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075.

"Business Day" means any day, other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

"Board Composition Schedule" means the schedule identifying the Reorganized Company's board of directors of eight (8) members, which will be filed in the Plan Supplement

and shall be in form and substance acceptable to the DIP Lender; provided that two (2) members of the board of directors shall be appointed by the DIP Lender.

"Cash" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments, and legal tender of the United States of America or instrumentalities thereof.

"Causes of Action" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims, including, without limitation, all claims and any avoidance, preference, recovery, subordination or other actions of the Debtors and Estates (unless the context expressly states that such Causes of Action belong to another Entity) against Creditors, insiders, and/or any other Entities under the Bankruptcy Code, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Effective Date.

"Chapter 11 Cases" means the Chapter 11 cases commenced when the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on the Petition Date (each a "Chapter 11 Case") and jointly administered for procedural purposes only under the lead case number: 26-20766 (EJO).

"Claim" means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors, including, but not limited to: (a) any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Claimant" means the holder of a Claim.

"Claims and Balloting Agent" means Omni Agent Solutions, Inc., which the Debtors' have retained as their claims, noticing, and balloting agent in connection with the Plan.

"Claims Objection Deadline" means, with respect to all Claims other than Professional Fee Claims, (a) 180 days after the Effective Date, or (b) such other period as may be fixed by an order of the Bankruptcy Court for objecting to Claims upon request of the Debtors or the Reorganized Company, as applicable, with the prior consent of the DIP Lender.

"Claims Register" means the official register of Claims maintained by the Claims and Balloting Agent or the clerk of the Bankruptcy Court.

"Class" means a category of holders of Claims or Interests, as set forth in Sections 8 and 9 hereof.

"Confirmation" means the entry of the Confirmation Order, subject to all terms and conditions therein.

"Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Hearing" means the hearing at which the Bankruptcy Court will consider final approval of the disclosures contained in the Disclosure Statement and confirmation of the Plan.

"Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the DIP Lender in its sole discretion.

"Consummation" or "Consummate" means the occurrence of the Effective Date.

"Convertible Notes" mean those certain Convertible Promissory Notes, as amended, issued to the Purchasers listed on the Schedule of Purchasers pursuant to the Prepetition Note Purchase Agreement, dated July 10, 2023, as amended, modified, or supplemented from time to time.

"Convertible Notes Claim" means any Claim arising under, derived from, based upon, related to, or on account of, the Convertible Notes.

"Creditor" means any holder of a Claim against any Debtor as specified in section 101(10) of the Bankruptcy Code.

"CRMLS Note" means the prepetition Promissory Note, issued by Debtor HouseCanary, Inc., to California Regional Multiple Listing Services, Inc., dated as of March 9, 2026, in the amount of $2,000,000.

"Debt" means liability on a Claim.

"Debtors" means, collectively, as debtors and debtors-in-possession in the Chapter 11 Cases: (i) House Canary New Jersey, Inc.; (ii) HouseCanary, Inc.; (iii) HouseCanary (CT), Inc.; (iv) ComeHome, Inc.; (v) HC Certified Analytics, Inc.; and (vi) HouseCanary R&D, LLC.

"Debtor/Estate Release" has the meaning set forth in Section 14.2(a) hereof.

"Debtor/Estate Releasors" has the meaning set forth in Section 14.2(a) hereof.

"Debtor Professional Fee Reserve" means the reserve fund established on the Effective Date and funded by the Debtors or the Reorganized Company, as applicable, in an amount sufficient to pay accrued and unpaid Professional Fee Claims, including (a) Professional Fee Claims incurred by a Professional and not yet approved by the Bankruptcy Court and (b) Professional Fee Claims approved by the Bankruptcy Court. The Debtor Professional Fee Reserve shall be held in trust solely for the payment of Allowed Professional Fee Claims. The amounts deposited into the Debtor Professional Fee Reserve shall be free and clear of all liens, claims and encumbrances of any Persons or Entities except to the extent that any excess amounts remain in

the Debtor Professional Fee Reserve after payment of all Allowed Professional Fee Claims, such excess amounts shall be distributed in accordance with the Plan.

"DIP Agreement" means that certain HouseCanary, Inc. $15,000,000 Super-Priority Senior Secured Debtor-in-Possession Credit Facility Summary of Terms and Conditions, dated as of October [•], 2026, among HouseCanary, Inc. and House Canary New Jersey, Inc., as borrowers, the other Debtors as guarantors, and the DIP Lender, as amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms.

"DIP Claim" means any Claim arising under, derived from, based upon, related to, or on account of, the DIP Facility.

"DIP Exit Note" means the secured note to be issued by the Reorganized Company on the Effective Date to the DIP Lender in the aggregate principal amount of [$●], which shall have a first priority lien on the DIP Exit Collateral, the terms of which shall be set forth in the Plan Supplement and shall be in form and substance acceptable to the DIP Lender.

"DIP Documents" means the Interim DIP Order, the Final DIP Order, the DIP Agreement, and other agreements and documents entered into, or delivered, in connection with the DIP Facility.

"DIP Exit Collateral" means the collateral under the DIP Exit Note, which shall include all assets of the Reorganized Company, the pledged stock of the Reorganized Company, and the DIP Collateral (as defined in the DIP Orders).

"DIP Facility" means the financing facility pursuant to the Interim DIP Order, the Final DIP Order, and the DIP Agreement.

"DIP Lender" means Condor FundingCo 26, LLC or an affiliate thereof.

"DIP Lender Equity Interests" means, the 20% of the Reorganized Common Equity held by the DIP Lender or, at the election of the DIP Lender in its sole discretion, a preferred equity interest instrument with the economic equivalent of 20% of the Reorganized Common Equity, neither of which shall be subject to dilution by the conversion of the Amended and Restated Convertible Notes, any management carveout, the MIP, or other bankruptcy-related issuances or allocations affecting the remaining Retained Equity Interests.

"DIP Orders" means, collectively, the Interim DIP Order, the Final DIP Order, and any other orders sought or entered in the Chapter 11 Cases authorizing debtor in possession financing.

"DIP Professional Fees" means, as of the Effective Date, all accrued and unpaid professional fees and expenses payable under the DIP Orders to the professionals for the DIP Lender.

"Disputed" means, as to a Claim or an Interest, a Claim or an Interest (or portion thereof): (a) that is not Allowed; (b) that is not disallowed under this Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has filed a Proof of Claim or

otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

"D&O Liability Insurance Policies" means all Insurance Policies (including any "tail policy") covering any of the Debtors' current or former directors', managers', officers' and/or employees' liability and all agreements, documents, or instruments relating thereto.

"Effective Date" means the first Business Day on which all conditions precedent to the occurrence of the Effective Date set forth in the Plan have been satisfied or waived in accordance with the Plan and the Plan becomes effective. Within five (5) Business Days after the Effective Date, notice of the Effective Date shall be filed with the Bankruptcy Court by the Debtors.

"Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

"Estates" means the estates of the Debtors in the Chapter 11 Cases created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

"Exculpated Parties" means collectively, and in each case in their capacity as such, (a) the Debtors; (b) with respect to the Debtors, their current and former directors, managers, officers, attorneys, financial advisors, consultants or other professionals or advisors that served in such capacity between the Petition Date and the Effective Date; and (c) the Professionals retained by the Debtors in the Chapter 11 Cases.

"Final DIP Order" means one or more Final Orders entered approving the DIP Facility.

"Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

"Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction: (i) that has not been reversed, stayed, modified, or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

"First Day Declaration" means the *Declaration of Chris Rediger in Support of Debtors' Chapter 11 Petitions and Emergency First Day Motions* [Docket No. 16].

"General Unsecured Trade Claim" means any unsecured Claim against the Debtors or the Estates, including the CRMLS Note and any other unsecured note that is not a Convertible Note, that is not a Secured Claim, an Administrative Claim, a Priority Claim, an Intercompany Claim, a Structural Prepetition Deficiency Claim or a Convertible Notes Claim.

"Governmental Unit" means the United States; State; Commonwealth, District, Territory, municipality, foreign state, department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under Chapter 11), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

"Impaired" means with respect to a Claim or Interest, or a Class of Claims or Interests, a Claim or Interest, or Class thereof, that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Insider" means an insider of the Debtors, as defined in section 101(31) of the Bankruptcy Code.

"Insurance Policies" means all insurance policies maintained by the Debtors as of the Petition Date, including but not limited to director and officer insurance policies.

"Intercompany Claim" means any Claim held by a Debtor against another Debtor, including any Claim arising under, or related to, any cash management arrangement, shared services arrangement, tax sharing agreement, intercompany loan, advance, receivable, payable, guaranty, allocation, contribution, reimbursement right, or other intercompany transaction, whether arising prior to or after the Petition Date.

"Intercompany Interest" means an Interest held by a Debtor or a non-Debtor affiliate in another Debtor or a non-Debtor affiliate.

"Interest" means any equity interest in the Debtors, including, but not limited to, all issued, unissued, authorized, or outstanding shares or stock, whether vested or non-vested, together with any warrants, options, or contract rights to purchase or acquire such interests at any time; *provided* that the Convertible Notes and any conversion rights arising thereunder shall not constitute Interests unless and until converted in accordance with their terms.

"Interim DIP Order" means the Interim Order *(I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Authorizing Use of Cash Collateral and Affording Adequate Protection; (III) Granting Liens and Providing Superpriority Administrative Expense Status; (IV) Modifying Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 34].

"Interim Fee Order" means the Administrative Fee Order Establishing Procedures for Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court [Docket No. [•]], entered by the Bankruptcy Court in the Chapter 11 Cases.

"Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance, or other security device of any kind) to secure payment of a debt or performance of an obligation.

"Litigation" means the interest of the Estates and/or the Debtors in any and all claims, rights, and Causes of Action that have been or may be commenced by the Debtors, including, for the avoidance of doubt, the Texas Litigation. Litigation includes, without limitation not otherwise stated herein, any action: (i) for recovery of an Avoidance Action; (ii) for the recovery of property or payment of money that belongs to or can be asserted by the Debtors; (iii) for compensation for damages incurred by the Debtors; and (iv) equitable subordination actions against Creditors.

"Litigation Proceeds" means the "Litigation Proceeds" as defined in the Prepetition Texas Agreements.

"MIP" means the management incentive plan, if any, the terms of which shall be set forth in the Plan Supplement, providing for a stock pool of the Reorganized Common Equity, which shall be filed in the Plan Supplement and in form and substance acceptable to the DIP Lender.

"MIP Interests" means a pool of the Reorganized Common Equity reserved for issuance under the MIP, which shall dilute solely the Retained Equity Interests and shall not dilute the DIP Lender Equity Interests, which shall be in form and substance acceptable to the DIP Lender.

"New Board" means the new board of directors of the Reorganized Company to be identified on the Board Composition Schedule, which shall be in form and substance acceptable to the DIP Lender.

"New Governance Documents" shall include the Board Composition Schedule, the Amended and Restated Charter, and other such documents as the DIP Lender may request (including one or more stockholders', investors' rights, voting, and/or right of first refusal and co-sale agreements) each of which shall be in form and substance acceptable to the DIP Lender, and included in the Plan Supplement.

"Person" means any individual, corporation, limited liability company, general partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit, or other Entity.

"Petition Date" means September 22, 2026, the date on which each Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

"Plan Documents" means the Combined Plan and Disclosure Statement, the Plan Supplement, any plan support letters, or other documents or pleadings filed by the Debtors relating to the Plan, in each case, which shall be in form and substance acceptable to the DIP Lender.

"Plan Objection Deadline" means the deadline established by the Bankruptcy Court for filing and serving objections to Confirmation of the Plan.

"Plan Supplement" means the documents identified in this Combined Plan and Disclosure Statement for filing with the Bankruptcy Court not later than seven (7) calendar days prior to the Voting Deadline (including any amendment, modification, or supplement thereto), including the Amended and Restated Charter, Amended and Restated Convertible Notes, Board Composition Schedule, DIP Exit Note, the MIP, New Governance Documents, the Schedule of Retained Causes of Action, and the Structural Deficiency Claim Note, each of which shall be in form and substance acceptable to the DIP Lender.

"Prepetition Common Equity Interests" means the common equity Interests in HouseCanary, Inc. outstanding as of the Petition Date.

"Prepetition Preferred Equity Interests" means the preferred equity Interests in HouseCanary, Inc. outstanding as of the Petition Date.

"Prepetition Loan Documents" means the Loan and Security Agreement dated March 25, 2021, as amended, restated, amended and restated, modified, or supplemented from time to time, by and among HouseCanary, Inc., as borrower, Ocean II PLO LLC, as administrative and collateral agent, and Structural, as lenders.

"Prepetition Loan Facility" means the financing facility pursuant to the Prepetition Loan Documents.

"Prepetition Note Purchase Agreement" means that certain Note Purchase Agreement, dated July 10, 2023.

"Prepetition Structural Collateral" means the "Collateral" as defined in the Prepetition Loan Documents. For the avoidance of doubt, the Collateral does not include HouseCanary, Inc.'s "Intellectual Property" (as defined in the Prepetition Loan Documents) or any claims or proceeds of the Texas Litigation Collateral.

"Prepetition Texas Agreements" means collectively, (a) that certain Amended and Restated Litigation Funding Agreement, dated January 8, 2026, by and among HouseCanary, Inc. and Crane 2 FundingCo 23, LLC, as amended, restated, amended and restated, modified, or supplemented from time to time, and (b) that certain Litigation Funding Agreement, dated June 6, 2018, by and among HC 1 LLC, Security Finance 1 LLC, and HouseCanary, Inc., as amended, restated, amended and restated, modified, or supplemented from time to time.

"Prepetition Texas Secured Claim" means the Allowed Secured Claim held by the Texas Assets Lender pursuant to the Prepetition Texas Agreements, and secured by valid, perfected, and first-priority liens on the Texas Assets.

"Priority Claim" means a Priority Non-Tax Claim or a Priority Tax Claim.

"Priority Non-Tax Claim" means any Claim, other than an Administrative Claim, or a Priority Tax Claim, as set forth herein, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

"Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"Pro Rata" means proportionately so that, with respect to a Claim, the ratio of: (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount of the Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims in the Class or Classes entitled to share in the applicable distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

"Professional" means an Entity: (a) employed pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

"Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to sections 330, 331, or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

"Proof of Claim" means a proof of claim filed against any of the Debtors in the Chapter 11 Cases pursuant to section 501 of the Bankruptcy Code or any order of the Bankruptcy Court, together with supporting documents.

"Quarterly Fees" means all fees payable pursuant to section 1930 of title 28 of the United States Code, together with the statutory rate of interest set forth in section 3717 of title 31 of the United States Code.

"Reinstate" means with respect to Claims or Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code. "Reinstated" and "Reinstatement" shall have correlative meanings.

"Related Parties" means, collectively, with respect to any Entity, in each case solely in its capacity as such with respect to such Entity, such Entity's current and former directors, managers, officers, shareholders, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, fiduciaries, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, other representatives, restructuring advisors, and other professionals and advisors, and any such person's or Entity's respective predecessors, successors, assigns, heirs, executors, estates, and nominees.

"Release Opt-Out Election Form" means a form for holders of Claims or Interests to opt out of being a Releasing Party in connection with the Third Party Release.

"Released Parties" means, collectively, and in each case solely in its capacity as such: (a) the Debtors; (b) the Reorganized Company; (c) the DIP Lender; (d) the Texas Assets Lender; (e) each current and former Affiliate of each Entity in clauses (a) through the following clause (f); and (f) each Related Party of each Entity in clauses (a) through this clause (f); provided, however, that any holder of a Claim or Interest that elects to opt out of the Third Party Release or timely objects to the Third Party Release, and such objection is not withdrawn or otherwise resolved before entry of the Confirmation Order, shall not be a Released Party.

"Releasing Parties" means, collectively, and in each case solely in its capacity as such: (a) the Debtors; (b) the Reorganized Company; (c) the DIP Lender; (d) the Texas Assets Lender; (e) the holders of Claims or Interests who vote to accept the Plan and who do not affirmatively opt out of the Third Party Release; (f) the holders of Claims or Interests that are deemed to accept the Plan and who do not affirmatively opt out of the Third Party Release; (g) the holders of Claims or Interests who abstain from voting on the Plan and who do not affirmatively opt out of the Third Party Release; (h) the holders of Claims or Interests who vote to reject the Plan and who do not

affirmatively opt out of the Third Party Release; (i) the holders of Administrative Claims and Priority Claims who do not affirmatively opt out of the Third Party Release; (j) each current and former Affiliate of each Entity in clause (a) through clause (i); and (k) to the maximum extent permitted by law, each Related Party of each Entity in clause (a) through this clause (j); provided, however, that each Entity in clause (e) through clause (k) that (x) elects to opt out of the Third Party Release; or (y) timely objects to the Third Party Release and such objection is not withdrawn or otherwise resolved before the Confirmation Order is entered shall not be a Releasing Party.

"Reorganized Common Equity" means the common equity interests of the Reorganized Company.

"Reorganized Company" means, on and after the Effective Date, the reorganized Company contemplated by the Plan, which shall hold the assets of the Debtors as provided in the Plan, including the Intellectual Property (as defined in the Prepetition Loan Documents) and the Texas Assets.

"Retained Causes of Action" means, collectively, all Claims and Causes of Action not released by the Debtors pursuant to the terms of the Plan, including the Texas Litigation and any Claims and Causes of Action listed on the Schedule of Retained Causes of Action.

"Retained Equity Interests" means 80% of the Reorganized Common Equity retained by the Debtors' existing shareholders, which shall be subject to dilution by the conversion of the Amended and Restated Convertible Notes, any management carveout, the MIP, or other bankruptcy-related issuances.

"Schedules" means the schedules of assets and liabilities as the Bankruptcy Court required the Debtors to file pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time, and the Debtors' statements of financial affairs filed with the Bankruptcy Court, as the Bankruptcy Court required the Debtors to file pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time [Docket Nos. [•]].

"Schedule of Retained Causes of Action" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, which shall include the Texas Litigation, as the same may be amended, modified, or supplemented from time to time, which schedule (and any amendment, modification, or supplement thereto) will be filed in the Plan Supplement and shall be in form and substance acceptable to the DIP Lender.

"Secured Claim" means any Claim that is secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

"Security" means any security, as defined in section 2(a)(1) of the Securities Act.

"Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, as amended from time to time.

"Structural" means Structural Capital Investments III, LP, Series Structural DCO II series of Structural Capital DCO, LLC, CEOF Holdings LP, and Ocean II PLO LLC.

"Structural Deficiency Claim Note" has the meaning set forth in Section 9.4(b).

"Structural Prepetition Deficiency Claim" means the Allowed unsecured deficiency claim held by Structural pursuant to the Prepetition Loan Documents, as fixed by order of the Bankruptcy Court.

"Structural Prepetition Secured Claim" means the Allowed Secured Claim held by Structural pursuant to the terms of the Prepetition Loan Documents, as fixed by order of the Bankruptcy Court.

"Structural Prepetition Secured Claim Estimation Motion" means the motion at [Docket No. 66] filed by the Debtors to estimate the amount of the Structural Prepetition Secured Claim and thereby determine the amount of the Structural Prepetition Deficiency Claim.

"Tax" means any tax, charge, fee, levy, impost, or other assessment by any federal, state, local, or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation, and withholding tax.

"Tax" shall include any interest or additions attributable to, imposed on, or with respect to such assessments.

"Tax Claim" means all or that portion of an Allowed Claim held by a Governmental Unit for a Tax assessed or assessable against the Debtors.

"Texas Assets" means the "Claims," "Litigation Proceeds," "Litigation IP," the "Crane 2 Proceeds Account," and the other "Collateral," in each case as defined in the Prepetition Texas Agreements.

"Texas Assets Lender" means collectively, Crane 2 FundingCo 23, LLC, HC 1 LLC, and Security Finance 1 LLC, in their capacities under the Prepetition Texas Agreements.

"Texas Litigation" means (a) HouseCanary, Inc. v. Amrock, LLC, No. 2016-CI-06300, in the 438th Judicial District Court, Bexar County, Texas, and (b) HouseCanary, Inc. v. Quicken Loans Inc., No. 5:18-cv-00519, in the United States District Court for the Western District of Texas.

"Third Party Release" has the meaning set forth in Section 14.2(b) hereof.

"Unimpaired Claim" means an unimpaired Claim within the meaning of section 1124 of the Bankruptcy Code.

"U.S. Trustee" means the Office of the United States Trustee for the District of New Jersey.

"Voting Classes" means Classes 3(b), 4, and 5.

"Voting Deadline" means November 18, 2026 at 4:00 p.m. (prevailing Eastern Time).

"Voting Instructions" means the instructions for voting on the Plan contained on the Ballots.

"Voting Record Date" means the date as of which the identity of holders of Claims is set by the Bankruptcy Court for purposes of determining the Entities entitled to receive and vote on the Plan.

## SECTION 3
## SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER PLAN AND IMPORTANT SOLICITATION AND CONFIRMATION DATES AND DEADLINES

3.1 Summary of Classification and Treatment of Claims and Interests.

Except for Administrative Claims, Priority Claims, and DIP Claims, which are unclassified under the Plan, Claims against and Interests in the Debtors are classified for purposes of voting and distributions under the Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor, and each Debtor is a proponent of the Plan under the Bankruptcy Code. The classifications of Claims and Interests shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. Except as otherwise expressly provided in the Plan or the Plan Supplement, nothing in the Plan shall be construed as providing for the substantive consolidation of the Debtors or their Estates. On the Effective Date, the transactions necessary to reorganize the Debtors' businesses as a single going concern and to vest the assets of the Debtors in the Reorganized Company shall be consummated as provided in the Plan and the Plan Supplement.

A summary of the classification of these Claims and Interests, the proposed treatment of each Class of Claims or Interests, and the voting status of each Class of Claims or Interests follows.

| Class | Treatment | Status |
|---|---|---|
| Unclassified: Administrative Claims, the estimated amount of which is undetermined and will be updated in the Plan Supplement | Except to the extent that a holder of an Allowed Administrative Claim agrees to less favorable treatment, each holder of an Allowed Administrative Claim, other than a Professional Fee Claim or the DIP Claim, shall receive, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the holder of such Claim and the | Unclassified – not entitled to vote |

| Class | Treatment | Status |
|---|---|---|
| **Estimated Recovery: 100%** | Debtors; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law. | |
| Unclassified: Priority Claims, the estimated amount of which is undetermined and will be updated in the Plan Supplement<br><br>**Estimated Recovery: 100%** | Except to the extent that a holder of an Allowed Priority Claim agrees to less favorable treatment, each Allowed Priority Claim shall be assumed by the Reorganized Company and paid in full on the later of (a) the Effective Date and (b) the date such Allowed Priority Claim otherwise becomes due and payable. | Unclassified – not entitled to vote |
| Unclassified: DIP Claim, estimated to total approx. $15,000,000 plus accrued interest, fees, expenses, and indemnification obligations<br><br>**Estimated Recovery: 100%** | On the Effective Date, the DIP Lender shall receive (i) the DIP Exit Note, which shall have a first priority lien on the DIP Exit Collateral, and (ii) the DIP Lender Equity Interests. | Unclassified – not entitled to vote |
| Class 1: Prepetition Texas Secured Claim, in the total amount of outstanding Prepetition Litigation Financing Obligations (as defined in the Interim DIP | The Prepetition Texas Secured Claim will be reinstated by the Reorganized Company and the holder of the Prepetition Texas Secured Claim shall retain its existing first priority Lien on the Texas Assets. | Unimpaired – deemed to accept |

| Class | Treatment | Status |
|---|---|---|
| Order), which will be updated in the Plan Supplement<br><br>**Estimated Recovery: 100%** | | |
| Class 2: Structural Prepetition Secured Claim, estimated to total approx. $85,061.56<br><br>**Estimated Recovery: 100%** | Except to the extent the holder of the Structural Prepetition Secured Claim agrees to less favorable treatment, on the Effective Date or such later date as the Bankruptcy Court has entered an order estimating or otherwise determining the maximum amount of the Structural Prepetition Secured Claim, the holder of the Structural Prepetition Secured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claim, (i) Cash equal to the Allowed amount of the Structural Prepetition Secured Claim, or (ii) transfer of the Prepetition Structural Collateral to the holder of the Structural Prepetition Secured Claim, at the option of the Debtors and the DIP Lender. To the extent that Structural timely appeals such order, the Debtors or the Reorganized Company, as applicable, shall either opt to transfer the Prepetition Structural Collateral to the holder of the Structural Prepetition Secured Claim or pay into an interest-bearing escrow account an amount equal to the maximum amount of the Structural Prepetition Secured Claim determined by the Bankruptcy Court, pending final determination of such Claim. | Unimpaired – deemed to accept |
| Class 3(a): General Unsecured Trade Claims, estimated to total approx. $3,417,883.06<br><br>**Estimated Recovery: 100%** | Each holder of an Allowed General Unsecured Trade Claim shall receive in exchange for its Allowed General Unsecured Trade Claim, either:<br><br>i. Reinstatement of such Allowed General Unsecured Trade Claim pursuant to section 1124 of the Bankruptcy Code; or<br><br>ii. such other treatment rendering such Allowed General Unsecured Trade Claim unimpaired in accordance with section 1124 of the Bankruptcy Code. | Unimpaired – deemed to accept the Plan |

| Class | Treatment | Status |
|---|---|---|
| Class 3(b): Structural Prepetition Deficiency Claim, estimated to total approx. $42,919,840.48<br><br>**Estimated Recovery: 100%** | Except to the extent the holder of the Structural Prepetition Deficiency Claim agrees to less favorable treatment, on the Effective Date, or as soon as reasonably practicable thereafter, the holder of the Structural Prepetition Deficiency Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claim, the Structural Deficiency Claim Note. The Reorganized Company may prepay the Structural Deficiency Claim Note in full or in part at any time before the maturity date without premium or penalty. | Impaired – entitled to vote |
| Class 4: Convertible Notes Claim, estimated to total approx. $27,541,452.05<br><br>**Estimated Recovery: 100%** | Except to the extent the holder of a Convertible Notes Claim agrees to less favorable treatment, on the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Company shall assume the Convertible Notes in the same amount and with the same rights as prior to the commencement of the Chapter 11 Cases, subject to an extension of the maturity date to December 31, 2030, by the Reorganized Company and the holders of the Convertible Notes Claim. For the avoidance of doubt, the holders of the Convertible Notes Claim shall not be entitled to convert the Convertible Notes based on any transaction occurring on the Effective Date. On the Effective Date, the Debtors shall issue the Amended and Restated Convertible Notes and a related indenture in favor of the holders of the Convertible Notes Claim, the form of which shall be filed with the Plan Supplement. Any conversion of the Amended and Restated Convertible Notes into Reorganized Common Equity shall dilute solely Retained Equity Interests and shall not dilute the DIP Lender Equity Interests. | Impaired – entitled to vote |
| Class 5: Prepetition Preferred Equity Interests<br><br>**Estimated Recovery:** Under the Plan treatment, the Debtors anticipate that holders of | Except to the extent the holder of a Prepetition Preferred Equity Interest agrees to less favorable treatment, on the Effective Date, or as soon as reasonably practicable thereafter, the holder of a Prepetition Preferred Equity Interest shall receive the Reorganized Common Equity to which they would be entitled on an as-converted basis within the Retained Equity Interests. Holders of Prepetition Preferred Equity Interests shall receive separate modified classes or series of Reorganized Common Equity so as to preserve their existing liquidation preference solely | Impaired – entitled to vote |

| Class | Treatment | Status |
|---|---|---|
| Prepetition Preferred Equity Interests will receive value through their Reorganized Common Equity, as of the Effective Date, equal to the value of their existing liquidation preference. | within such Retained Equity Interests; provided that such percentages may be diluted, subsequent to the Effective Date, by the holders of the Class 4 Convertible Notes Claim who elect to convert their Amended and Restated Convertible Notes into Reorganized Common Equity. Except for the foregoing treatment, including the preservation of liquidation preferences, all rights, preferences and privileges, and corresponding agreements of the existing holders of Prepetition Preferred Equity Interests shall be cancelled as of the Effective Date. | |
| Class 6: Prepetition Common Equity Interests<br><br>**Estimated Recovery: 100%** | Except to the extent the holder of a Prepetition Common Equity Interest agrees to less favorable treatment, on the Effective Date, or as soon as reasonably practicable thereafter, the holder of a Prepetition Common Equity Interest shall receive Reorganized Common Equity in the Reorganized Company in the same percentage as they have Prepetition Common Equity Interests in the Debtor as of the Petition Date, within Retained Equity Interests subject to and diluted by (i) first, the Reorganized Common Equity distributed to holders of Prepetition Preferred Equity Interests on an as-converted basis, and (ii) second, any conversion of the Amended and Restated Convertible Notes into Reorganized Common Equity, and (iii) third, the MIP. The shares of Reorganized Common Equity having voting rights, including the converted preferred equity, the existing shareholders that have voting equity and the DIP Lender (to the extent the DIP Lender elects to receive Reorganized Common Equity in its sole discretion), shall vote as a single class with each share representing one vote. | Unimpaired – deemed to accept |
| Class 7: Intercompany Claims | On the Effective Date, each Intercompany Claim shall be reinstated (including, as amended), distributed, contributed, set off, settled, cancelled and released, or otherwise addressed at the election of the Debtors, with the consent of the DIP Lender. | Not Entitled to Vote (Presumed to Accept/ Deemed to Reject) |

| Class | Treatment | Status |
|---|---|---|
| Class 8: Intercompany Interests | On the Effective Date, each Intercompany Interest shall be reinstated (including, as amended), distributed, contributed, set off, settled, cancelled and released, or otherwise addressed at the election of the Debtors, with the consent of the DIP Lender. | Not Entitled to Vote (Presumed to Accept/ Deemed to Reject) |

3.2 Important Dates and Deadlines.

| Event | Proposed Date |
|---|---|
| Disclosure Statement Conditional Approval Objection Deadline | October 13, 2026 at 4:00 p.m. (ET) |
| Disclosure Statement Reply Deadline | October 16, 2026 |
| Voting Record Date | October 20, 2026 |
| Proposed Hearing Date for Conditional Approval of Disclosure Statement | October 20, 2026 at 2:00 p.m. (ET) |
| Expected Entry of Conditional DS Approval Order/Delivery to Omni | October 21, 2026 |
| Deadline to Serve Notice and Solicitation Package | Five business days following entry of Conditional DS Approval Order |
| Publication Deadline | Five business days following entry of Conditional DS Approval Order |
| Deadline to file Plan Supplement | November 11, 2026 |
| Deadline for Creditors to File Rule 3018 Motions | November 17, 2026 at 4:00 p.m. (ET) |
| Voting Deadline | November 18, 2026 at 4:00 p.m. (ET) |
| Combined Plan and Disclosure Statement Objection Deadline | November 18, 2026 at 4:00 p.m. (ET) |
| Deadline to File Confirmation Brief and Other Evidence Supporting the Combined Plan and Disclosure Statement | November 25, 2026 at 4:00 p.m. (ET) |
| Deadline to File Voting Tabulation Affidavit | November 20, 2026 at 4:00 p.m. (ET) |
| Confirmation Hearing | December 1, 2026 at 2:00 p.m. (ET) |

## SECTION 4
## BACKGROUND

4.1 General Background.

(a) Debtors' Prepetition Business and Operations.

Prior to the Petition Date, the Debtors operated as a real estate technology company headquartered in San Francisco, California, and operating on a hybrid remote work model.

Founded in 2013, HouseCanary builds and operates an artificial intelligence powered data and analytics platform covering more than 136 million residential properties across the United States. The Debtors provide real estate valuation, analytics, forecasting, data, and data visualization services to customers that include financial institutions, government-sponsored enterprises, mortgage lenders, investment banks, whole loan buyers, single family rental REIT operators, real estate agents, and other participants in the real estate market.

At a high level, the Debtors' business model has two lines of business: (i) a self-service, subscription model under which customers access data and analyze that data directly; and (ii) a value add, report driven service under which HouseCanary delivers its interpretation of available data. The Debtors also operate a licensed real estate brokerage in all fifty states and the District of Columbia under the trade names "HouseCanary" and "ComeHome," depending on the jurisdiction.

(b) Corporate Organizational Structure.

The Debtors' prepetition organization structure is described in the First Day Declaration.

(c) Debtors' Prepetition Debt Structure.

(i) Prior to the Petition Date, HouseCanary, Inc. entered into the Prepetition Loan Documents with Ocean II PLO LLC, as administrative and collateral agent, and Structural as lenders. Pursuant to the Prepetition Loan Documents, the lenders established a credit facility of up to $30 million in total commitments. As of the Petition Date, the outstanding obligations under the Prepetition Loan Documents were no less than $43,004,902.04, of which the Debtors estimate $85,061.56 is secured, plus any other fees, expenses, and other obligations owed under the Prepetition Loan Documents.

(ii) Prior to the Petition Date, HouseCanary, Inc. also entered into the Prepetition Texas Agreements to fund the Texas Litigation. As of the Petition Date, the outstanding secured obligations under the Prepetition Texas Agreements were no less than the respective Investment Return (under and as defined in each respective Prepetition Texas Agreement), plus any accrued and unpaid interest thereon and any fees, premium, expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges, indemnities, and other obligations of whatever nature, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in respect of the Prepetition Texas Agreements.

(iii) As of the Petition Date, the Debtors estimate that unsecured Claims against the Debtors include: (i) approximately $27,541,452.05 of Convertible Notes Claims; (ii) approximately $3,417,883.06 of General Unsecured Trade Claims, including any unsecured notes other than the Convertible Notes; and (iii) approximately $42,919,840.48 of Structural Prepetition Deficiency Claims. Attached as **Exhibit A** hereto is a copy of the Debtors' balance sheet as of August 31, 2026.

4.2 Events Leading to Chapter 11 Filing.

The Debtors commenced these Chapter 11 Cases to halt a commercially unreasonable foreclosure sale by Ocean II that threatened immediate operational harm to the Debtors. On

September 8, 2026, Ocean II issued a Notice of Disposition of Collateral scheduling a public auction of the Collateral for September 22, 2026. The proposed sale suffered from multiple fundamental deficiencies, as described in the First Day Declaration. The proposed sale threatened to destroy HouseCanary as a going concern by dispersing its customer contracts, equipment, accounts, inventory, and workforce, with no practical mechanism to reassemble the business.

On September 17, 2026, HouseCanary filed a Verified Complaint for Declaratory Relief and related claims in the Superior Court of the State of California, County of San Mateo, seeking to enjoin the September 22, 2026 foreclosure sale. On September 18, 2026, HouseCanary filed an ex parte application for a temporary restraining order and an order to show cause for a preliminary injunction (the "TRO"). On September 21, 2026, the San Mateo Court denied House Canary's request for a TRO. Additional information on the TRO can be found in the Estimation Motion [Docket No. 66].

In the months leading up to the Petition Date, the Debtors actively pursued alternatives to a bankruptcy filing. Throughout the summer of 2026, HouseCanary explored capital-raising opportunities and potential sale transactions, and engaged in extensive negotiations with key stakeholders in an effort to address the Debtors' capital structure challenges outside of court. Those efforts were ultimately unsuccessful due to the Lenders' conduct described above. Having exhausted prepetition alternatives, the Debtors determined that chapter 11 was the only viable path to preserve the value of the estates, preserve the Debtors' operations and workforce, protect their ability to prosecute and preserve the Texas Litigation verdict and related Texas Assets, and maximize recoveries for all creditors.

Additional information on the events leading up to the Debtors' Chapter 11 filings can be found in First Day Declaration. *See* Docket No. 16.

## SECTION 5
## THE CHAPTER 11 CASES

The following is a brief description of certain material events that have occurred during the Chapter 11 Cases.

5.1 First Day Motions and Other Early Developments in the Chapter 11 Cases.

The Debtors filed a number of motions and applications after the Petition Date to, among other things, help stabilize operations and establish procedures for the Chapter 11 Cases:

(i) joint administration motion [Docket No. 5] and order thereon [Docket No. 42];

(ii) corrected motion for entry of an order extending time to file schedules of assets and liabilities and statements of financial affairs [Docket No. 6] and order thereon [Docket No. 43];

(iii) motion for authorization to file a consolidated list of the Debtors' thirty largest unsecured creditors and a consolidated creditor matrix and to redact certain personally identifiable information [Docket No. 9], and interim order thereon [Docket No. 44];

(iv) application for designation as a Chapter 11 Complex Case [Docket No. 8] and order thereon [Docket No. 49];

(v) motion to pay employee obligations, and to continue certain employee benefits programs [Docket No. 12], and interim order thereon [Docket No. 45];

(vi) motion for authorization to use certain cash management procedures, bank accounts, and certain payment methods, and to modify requirements imposed by section 345(b) of the Bankruptcy Code [Docket No. 15], and interim order thereon [Docket No. 47];

(vii) motion for authorization to continue customer programs [Docket No. 14], and interim order thereon [Docket No. 46];

(viii) motion for entry of interim and final orders authorizing the Debtors to obtain postpetition financing, use cash collateral, provide adequate protection, grant liens and superpriority administrative expense claims, and modify the automatic stay [Docket No. 17], the Corrected Declaration of Jeffrey C. Perea in support thereof [Docket No. 19], and interim order thereon [Docket No. 34];

(ix) ex parte emergency motion for relief under Bankruptcy Rule 6009 and section 362(a) of the Bankruptcy Code, seeking confirmation of the Debtors' authority to continue prosecution of the Texas Litigation and relief from the automatic stay to the extent necessary to permit the Texas Litigation to proceed to judgment [Docket No. 35], together with a motion for expedited consideration [Docket No. 36], order granting expedited consideration [Docket No. 37], and order granting the Motion [Docket No. 61];

(x) motion for entry of an Administrative Fee Order establishing procedures for the allowance and payment of interim compensation and reimbursement of expenses of retained professionals [Docket No. 51];

(xi) motion to authorize the employment and payment of professionals utilized by the Debtors in the ordinary course of business [Docket No. 52];

(xii) expedited motion to confirm and enforce the automatic stay and the protections of sections 365(e)(1) and 525 of the Bankruptcy Code [Docket No. 53];

(xiii) motion to estimate the secured claims of Structural under section 502(c) of the Bankruptcy Code [Docket No. 66]; and

(xiv) motion for interim and final orders authorizing the Debtors' postpetition use of Structural's cash collateral and granting adequate protection to Structural [Docket No. 67].

The Court granted the Debtors' wages, customer programs, and cash management motions on an interim basis. Among other things, the wages order permits the Debtors to continue their employee compensation and benefits programs, subject to an aggregate cap of $410,000 per bi-weekly pay period, while expressly reserving any relief implicating section 503(c) for a separate

motion. The customer programs order authorizes the Debtors to continue their existing Customer Programs and honor related obligations in the ordinary course, subject to an interim cap of $2,722 for prepetition obligations. The cash management order authorizes the Debtors to continue using their existing Cash Management System and Bank Accounts, subject to the conditions set forth therein. The Court directed the parties to submit a proposed Case Management Order within ten days of entry of the order. The Court also granted the Debtors' request for designation as a Chapter 11 Complex Case.

On September 29, 2026, the Bankruptcy Court entered an order granting the Debtors' request for relief with respect to the Texas Litigation [Docket No. 61]. Amrock and the other defendants in the Texas Litigation filed a response to the Debtors' motion [Docket No. 58], requesting that they be permitted to continue fully litigating the Texas Litigation while acknowledging that no monetary award or judgment could be enforced against the Debtors or property of the Estates absent further relief from the automatic stay. The order authorizes the Debtors to continue prosecuting the Texas Litigation, including seeking entry of judgment on the jury verdict and participating in post-trial proceedings, and lifts the automatic stay to the extent necessary to permit the defendants to continue litigating the Texas Litigation. The order does not permit any defendant to enforce a monetary award or judgment against the Debtors or property of the Estates absent further relief from the automatic stay.

On October 1, 2026, the Bankruptcy Court entered an order appointing Omni Agent Solutions, Inc. as the Debtors' Claims and Noticing Agent, effective as of the Petition Date [Docket No. 81].

The Court's joint administration order provides that the Chapter 11 Cases are jointly administered for procedural purposes only, expressly provides that the order does not affect substantive consolidation, and directs that further pleadings and docket entries be made in the lead case, Case No. 26-20766 (EJO).

5.2 Pending Matters.

The hearings on the Debtors' interim compensation procedures motion and ordinary course professionals motion have been adjourned to October 20, 2026. The final hearing on the creditor matrix, wages, customer programs, and cash management motions is also scheduled for October 20, 2026 at 2:00 p.m. prevailing Eastern Time, with objections due October 13, 2026 at 4:00 p.m. prevailing Eastern Time. The final hearing on the DIP Motion is also scheduled for October 20, 2026 at 2:00 p.m. prevailing Eastern Time.

Also on October 20, 2026, the Bankruptcy Court is scheduled to consider the Debtors' motion to estimate Structural's secured claim and the Debtors' motion to use Structural's cash collateral. By the estimation motion, the Debtors seek to estimate Structural's secured claim at no more than $85,061.56 and the remaining unsecured deficiency claim at approximately $42,919,840.48. By the cash collateral motion, the Debtors seek authority to use Structural's cash collateral and to provide Structural with adequate protection, without stipulating to the validity or enforceability of Structural's claims or liens.

5.3 DIP Financing.

On September 23, 2026, the Debtors filed the *Motion of the Debtors for Entry of Interim and Final Orders: (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Authorizing*

*the Use of Cash Collateral and Affording Adequate Protection; (III) Granting Liens and Providing Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay; (V) Scheduling a Final DIP Hearing; and (VI) Granting Related Relief* [Docket No. 17] (the "DIP Motion"). The Debtors filed the DIP Motion in order to obtain critical liquidity necessary to continue operations. By the DIP Motion, the Debtors sought, among other things, authorization and approval of the DIP Facility from the DIP Lender, Condor FundingCo 26, LLC, with up to $15 million in new money borrowing capacity, including up to $3 million available on an interim basis. The Debtors and their advisors worked collaboratively to secure debtor-in-possession financing, but were unable to obtain sufficient unsecured credit or secured credit on terms more favorable than those provided under the DIP Term Sheet, and no party offered potential financing on more favorable terms. On September 25, 2026, the Bankruptcy Court entered the Interim DIP Order.

5.4 Debtors' Retention of Professionals and Personnel.

The Debtors have filed or will file applications to retain certain professionals, including (i) Dentons US LLP as their counsel in the Chapter 11 Cases and (ii) Getzler Henrich & Associates LLC to provide financial advisory and interim management services to the Debtors, including through the designation of Jeffrey C. Perea, a Managing Director of Getzler Henrich, to serve as the Debtors' Chief Restructuring Officer.

5.5 Debtors' Schedules and Statement of Financial Affairs.

Upon the Debtors' Motion for Entry of an Order (I) Extending Time to File Schedules of Assets and Liabilities and Statements of Financial Affairs; and (II) Granting Related Relief [Docket No. 6], and pursuant to an order entered on September 28, 2026 [Docket No. 43] approving same, the Bankruptcy Court extended the Debtors' time to file the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs until October 26, 2026. In addition, the Court authorized the Debtors on an interim basis to use a consolidated creditor matrix and consolidated list of their thirty largest unsecured creditors and to redact certain personally identifiable information from specified filings.

## SECTION 6
## CONFIRMATION AND VOTING PROCEDURES

6.1 Confirmation Hearing.

On [•], 2026, the Bankruptcy Court entered the Conditional Approval and Procedures Order. The Confirmation Hearing has been scheduled for **December 1, 2026, at 2:00 p.m. (prevailing Eastern Time)** to consider (a) final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (b) confirmation of the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code. The Confirmation Hearing may be adjourned from time to time by the Debtors without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Bankruptcy Court.

6.2 Procedures for Objections.

Any objection to final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or confirmation of the Combined Plan and Disclosure Statement must be made in writing and filed with the Bankruptcy Court by no later than **November 18, 2026, at 4:00 p.m.** (prevailing Eastern Time) and be served in accordance with the Conditional Approval and Procedures Order on the following parties: (i) the Debtors, House Canary New Jersey, Inc., 535 Mission Street, 14th Floor, San Francisco, CA 94105, Attn: Chris Rediger (crediger@housecanary.com); (ii) counsel for the Debtors, Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017, Attn: Van C. Durrer, II (van.durrer@dentons.com); Dentons US LLP, 101 JFK Parkway, Short Hills, NJ 07078, Attn: Lauren Macksoud (lauren.macksoud@dentons.com); and Dentons Bingham Greenebaum LLP, 3500 PNC Tower, 101 South Fifth Street, Louisville, KY 40202, Attn: James R. Irving (james.irving@dentons.com); (iii) counsel to the DIP Lender, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Rachel C. Strickland (Rachel.strickland@ropesgray.com) and Erin C. Dougherty (erin.dougherty@ropesgray.com); and (iv) the Office of the United States Trustee, One Newark Center, 1095 Raymond Boulevard, Suite 2100, Newark, NJ 07102, Attn: Jeffrey M. Sponder (jeffrey.m.sponder@usdoj.gov). **Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court.**

6.3 Requirements for Confirmation.

The Bankruptcy Court will confirm the Combined Plan and Disclosure Statement only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among the requirements for confirmation in the Chapter 11 Cases is that the Combined Plan and Disclosure Statement be: (i) accepted by all Impaired Classes of Claims and Interests or, if rejected by one or more Impaired Classes, that the Combined Plan and Disclosure Statement "does not discriminate unfairly" against, and is "fair and equitable" with respect to, such rejecting Class or Classes, in each case as applicable under section 1129(b) of the Bankruptcy Code; (ii) accepted by at least one Impaired Class of Claims, determined without including any acceptance by an insider, if a Class of Claims is impaired under the Combined Plan and Disclosure Statement; and (iii) feasible. The Bankruptcy Court must also find that:

a. the Combined Plan and Disclosure Statement has classified Claims and Interests in a permissible manner;

b. the Combined Plan and Disclosure Statement complies with the requirements of Chapter 11 of the Bankruptcy Code; and

c. the Combined Plan and Disclosure Statement has been proposed in good faith.

The Debtors believe that the Combined Plan and Disclosure Statement complies, or will comply, with all such requirements.

6.4 Classification of Claims and Interests.

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders. In accordance with section 1123 of the

Bankruptcy Code, the Combined Plan and Disclosure Statement divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims which pursuant to section 1123(a)(1) of the Bankruptcy Code need not be and have not been classified).

Section 1122 of the Bankruptcy Code requires the Combined Plan and Disclosure Statement to place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests in such class. The Combined Plan and Disclosure Statement creates separate Classes to deal respectively with the Prepetition Texas Secured Claim, the Structural Prepetition Secured Claim, General Unsecured Trade Claims, the Structural Prepetition Deficiency Claim, the Convertible Notes Claims, Prepetition Preferred Equity Interests, Prepetition Common Equity Interests, Intercompany Claims, and Intercompany Interests. Administrative Claims, Priority Claims, including Taxes, and DIP Claims are not classified under the Combined Plan and Disclosure Statement. The Debtors believe that the Combined Plan and Disclosure Statement's classifications place substantially similar Claims or Interests in the same Class and, thus, meet the requirements of section 1122 of the Bankruptcy Code.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest. The Debtors believe that the Combined Plan and Disclosure Statement complies with such standard. If the Bankruptcy Court finds otherwise, however, it could deny confirmation of the Combined Plan and Disclosure Statement if the holders of Claims or Interests affected do not consent to the treatment afforded them under the Combined Plan and Disclosure Statement.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim also is placed in a particular Class for the purpose of receiving distributions pursuant to the Combined Plan and Disclosure Statement only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

The Debtors believe that the Combined Plan and Disclosure Statement has classified all Claims and Interests required to be classified in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law. It is possible that a holder of a Claim or Interest may challenge the classification of Claims or Interests herein and that the Bankruptcy Court may find that a different classification is required for the Combined Plan and Disclosure Statement to be confirmed. If such a situation develops, the Debtors intend, in accordance with the terms of the Combined Plan and Disclosure Statement, to make such permissible modifications to the Combined Plan and Disclosure Statement as may be necessary to permit its confirmation. Any such reclassification could adversely affect holders of Claims or Interests by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Combined Plan and Disclosure Statement.

**EXCEPT AS SET FORTH IN THE COMBINED PLAN AND DISCLOSURE STATEMENT, UNLESS SUCH MODIFICATION OF CLASSIFICATION**

**MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM OR INTEREST AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT BY ANY HOLDER OF A CLAIM OR INTEREST PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE COMBINED PLAN AND DISCLOSURE STATEMENT'S TREATMENT OF SUCH HOLDER OF A CLAIM OR INTEREST REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.**

The amount of any Impaired Claim that ultimately is Allowed by the Bankruptcy Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Bankruptcy Court with respect to each Impaired Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any Impaired Class. Any such differences may affect the amounts required to satisfy Claims under the Combined Plan and Disclosure Statement and any estimates of recoveries or distributions set forth herein. Additionally, changes to any assumptions underlying the estimated Allowed amounts may result in material adjustments to such estimates. The projected recoveries are based on information available to the Debtors as of the date hereof and reflect the Debtors' views as of the date hereof only.

The classification of Claims and Interests and the nature of distributions to members of each Class are summarized herein. The Debtors believe that the consideration, if any, provided under the Combined Plan and Disclosure Statement to holders of Allowed Claims and holders of Interests reflects an appropriate resolution of such Allowed Claims and such Interests, as applicable, taking into account the differing nature and priority of such Claims and Interests. The Bankruptcy Court must find, however, that a number of statutory tests are met before it may confirm the Combined Plan and Disclosure Statement. Many of these tests are designed to protect the interests of holders of Claims or Interests who are not entitled to vote on the Combined Plan and Disclosure Statement, or do not vote to accept the Combined Plan and Disclosure Statement, but who will be bound by the provisions of the Combined Plan and Disclosure Statement if it is confirmed by the Bankruptcy Court.

6.5 Impaired Claims or Interests.

Pursuant to section 1126 of the Bankruptcy Code, only the holders of Claims or Interests in Classes Impaired by the Combined Plan and Disclosure Statement and entitled to receive or retain property under the Combined Plan and Disclosure Statement may vote to accept or reject the Combined Plan and Disclosure Statement. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims or Interests may be Impaired if the Combined Plan and Disclosure Statement alters the legal, equitable, or contractual rights of the holders of such Claims or Interests treated in such Class. The holders of Claims or Interests in Classes not Impaired by the Combined Plan and Disclosure Statement are deemed to accept the Combined Plan and Disclosure Statement and do not have the right to vote on the Combined Plan and Disclosure Statement. The holders of Claims or Interests in any Class which will not receive any payment or distribution or retain any property pursuant to the Combined Plan and Disclosure Statement are deemed to reject the Combined Plan and Disclosure Statement and do not have the right to vote. Finally, the holders of Claims or

Interests whose Claims or Interests are not classified under the Combined Plan and Disclosure Statement are not entitled to vote on the Combined Plan and Disclosure Statement.

Under the Combined Plan and Disclosure Statement, Classes 3(b), 4, and 5 (collectively, the "Voting Classes") are Impaired and are entitled to vote to accept or reject the Combined Plan and Disclosure Statement. Classes 1, 2, 3(a) and Class 6 are Unimpaired and, therefore, not entitled to vote on the Combined Plan and Disclosure Statement and are deemed to accept the Combined Plan and Disclosure Statement.

**ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS OR INTERESTS IN THE VOTING CLASSES.**

6.6 Confirmation Without Necessary Acceptances; Cramdown.

In the event that any impaired class of claims or interests does not accept a plan, a debtor nevertheless may move for confirmation of the plan. A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims, determined without including any acceptance of the plan by any insider holding a claim in that class, and the plan meets the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code requires that a court find that a plan (a) "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each non-accepting impaired class of claims or interests.

The concept of "unfair discrimination" is not defined in the Bankruptcy Code, but case law suggests it exists when a difference in a plan's treatment of two classes of equal priority results in a materially lower percentage recovery for the non-accepting class. The Debtors do not believe that the Plan unfairly discriminates against any Class of Claims.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable." To determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cramdown" tests for secured creditors, unsecured creditors, and equity holders, as follows:

a. Secured Creditors. Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

b. Unsecured Creditors. Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

c. Interests. Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to

which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

As discussed above, the Debtors believe that the distributions provided under the Combined Plan and Disclosure Statement satisfy the absolute priority rule, where required.

6.7 Feasibility.

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Combined Plan and Disclosure Statement). Based on the Debtors' analysis, the Debtors believe that the Reorganized Company will have sufficient liquidity to satisfy its obligations under the Combined Plan and Disclosure Statement and continue operations following the Effective Date. Therefore, the Debtors believe that reorganization pursuant to the Combined Plan and Disclosure Statement will meet the feasibility requirements of the Bankruptcy Code. The Plan Term Sheet contemplates that any undrawn DIP commitments will be advanced on the Effective Date to fund Effective Date payments and working capital.

The Debtors, with the assistance of their advisors, have prepared financial projections for the Reorganized Company reflecting the assumptions underlying the Plan, including assumptions regarding the conversion of the Convertible Notes prior to maturity, recoveries from the Texas Litigation, and repayment or refinancing of the DIP Exit Note and the Structural Deficiency Claim Note. The projections will be filed with the Plan Supplement.

6.8 Best Interests Test and Liquidation Analysis.

Even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires the Bankruptcy Court to determine that such plan is in the best interests of all holders of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to holders of each impaired class of claims and interests if the debtor was liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from a debtor's assets if its chapter 11 cases were converted to cases under chapter 7 of the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtor's unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses, and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan. If the hypothetical liquidation distribution to holders of claims or interests in any impaired class is greater than the

distributions to be received by such parties under the plan, then such plan is not in the best interests of the holders of claims or interests in such impaired class.

The Debtors, with the assistance of their advisors, have prepared a liquidation analysis that summarizes the Debtors' best estimate of recoveries by holders of Claims if the Chapter 11 Cases were converted to cases under chapter 7 (the "Liquidation Analysis"), which shall be filed with the Plan Supplement.

Under the Combined Plan and Disclosure Statement, Allowed Administrative Claims will be paid in full in Cash on the Effective Date; Priority Claims, including Taxes, will be assumed by the Reorganized Company and paid on the later of the Effective Date or when such Claims otherwise become due and payable; the DIP Claim will be satisfied by the issuance of the DIP Exit Note and the DIP Lender Equity Interests to the DIP Lender as provided in the Combined Plan and Disclosure Statement; and Allowed General Unsecured Trade Claims in Class 3(a) will be Unimpaired. Because this Plan provides for either the payment in full of Claims and Interests, or the assumption or reinstatement of Claims and Interests for each class of Claims and Interests, the Plan is far superior to any hypothetical Chapter 7 liquidation of the Debtors.

6.9 Eligibility to Vote on the Combined Plan and Disclosure Statement.

Unless otherwise ordered by the Bankruptcy Court, only holders of Claims or Interests in the Voting Classes that are entitled to vote pursuant to the Conditional Approval and Procedures Order may vote on the Combined Plan and Disclosure Statement. Further, subject to the tabulation procedures to be approved by the Conditional Approval and Procedures Order, in order to vote on the Combined Plan and Disclosure Statement, a holder of a Claim must hold a Claim in a Voting Class that is Allowed for voting purposes, or a Claim that has been temporarily Allowed for voting purposes pursuant to the approved tabulation procedures or Bankruptcy Rule 3018(a), and a holder of an Interest must hold an Interest in a Voting Class as of the applicable voting record date.

6.10 Solicitation Package / Release Opt-Out Election Form.

All holders of Allowed Claims or Interests in the Voting Classes will receive a solicitation package (the "Solicitation Package"). The Solicitation Packages will contain: (i) the Combined Plan and Disclosure Statement; (ii) the Conditional Approval and Procedures Order; (iii) notice of the Confirmation Hearing; (iv) a form of Ballot, including Voting Instructions and a pre-addressed return envelope; (v) a Release Opt-Out Election Form; and (vi) such other materials as the Bankruptcy Court may direct or approve or that the Debtors deem appropriate.

All other Creditors and parties in interest not entitled to vote on the Combined Plan and Disclosure Statement will receive only a copy of the notice of Confirmation Hearing and a Release Opt-Out Election Form.

Copies of the Combined Plan and Disclosure Statement shall be available on the Claims and Balloting Agent's website at https://omniagentsolutions.com/HouseCanary. Any creditor or party-in-interest can request a hard copy of the Combined Plan and Disclosure Statement be sent to them by regular mail by calling the Claims and Balloting Agent at (866) 205-3140 (US & Canada toll-free) (818) 510-4622 (international) during regular business hours.

**IN ADDITION TO OTHER PARTIES WHO WILL BE CONSIDERED RELEASING PARTIES, ANY HOLDER OF A CLAIM OR INTEREST THAT DOES NOT AFFIRMATIVELY OPT-OUT OF THE THIRD PARTY RELEASE PROVISION CONTAINED HEREIN BY TIMELY AND PROPERLY COMPLETING AND RETURNING A RELEASE OPT-OUT ELECTION FORM WILL BE CONSIDERED A RELEASING PARTY IN RELATION TO THE THIRD PARTY RELEASE UNDER THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

6.11 Voting Procedures, Voting Deadline, and Deadline to Submit the Release Opt-Out Election.

The Voting Record Date for determining which holders of Claims or Interests in the Voting Classes may vote on the Combined Plan and Disclosure Statement is **October 20, 2026**.

In order for your Ballot to count, you must (1) complete, date, and properly execute the Ballot and (2) properly deliver the Ballot to the Claims and Balloting Agent by either (a) mailing the Ballot to the Claims and Balloting Agent at the following address: 5955 De Soto Ave. Ste 100, Woodland Hills, CA 91367; and/or (b) uploading the Ballot on the Claims and Balloting Agent's online balloting platform at https://omniagentsolutions.com/HouseCanary. Instructions for casting a Ballot will be available on the Claims and Balloting Agent's website.

Ballots must be submitted electronically, or the Claims and Balloting Agent must actually receive physical, original Ballots by mail or overnight delivery, on or before the Voting Deadline, which is **November 18, 2026 at 4:00 p.m. (prevailing Eastern Time)**. Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, you may not change your vote once a Ballot is submitted electronically or the Claims and Balloting Agent receives your original paper Ballot. Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, any Ballot that is timely and properly submitted electronically or received physically will be counted and will be deemed to be cast as an acceptance, rejection or abstention, as the case may be, of the Combined Plan and Disclosure Statement.

In order to be effective, a Release Opt-Out Election Form for holders of Claims or Interests entitled to opt out of being a Releasing Party in connection with the Third Party Release contained herein must be received by the Claims and Balloting Agent by the Voting Deadline. Each Release Opt-Out Election Form must be properly delivered to the Claims and Balloting Agent by either (a) mailing the Release Opt-Out Election Form to the Claims and Balloting Agent at the following address: 5955 De Soto Ave. Ste 100, Woodland Hills, CA 91367; or (b) uploading the Release Opt-Out Election Form on the Claims and Balloting Agent's online opt-out portal at https://omniagentsolutions.com/HouseCanary.

**IF YOU ARE ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL OR UPLOAD THE BALLOT YOU RECEIVE. PLEASE BE SURE TO COMPLETE ALL BALLOT ITEMS PROPERLY AND LEGIBLY. IF YOU ARE A HOLDER OF A CLAIM OR INTEREST ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A DAMAGED BALLOT, OR YOU LOST YOUR BALLOT, OR IF YOU**

**HAVE ANY QUESTIONS CONCERNING THE COMBINED PLAN AND DISCLOSURE STATEMENT OR PROCEDURES FOR VOTING ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, PLEASE CONTACT THE CLAIMS AND BALLOTING AGENT BY (I) TELEPHONE AT (866) 205-3140 (U.S.) OR (II) EMAIL AT HouseCanaryInquiries@OmniAgnt.com. THE CLAIMS AND BALLOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

6.12 Acceptance of the Combined Plan and Disclosure Statement.

If you are a holder of a Claim or Interest in the Voting Classes, your acceptance of the Combined Plan and Disclosure Statement is important. In order for the Combined Plan and Disclosure Statement to be accepted by an Impaired Class of Claims, a majority in number (i.e., more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Combined Plan and Disclosure Statement. An Impaired Class of Interests accepts the Combined Plan and Disclosure Statement if holders of at least two-thirds in amount of the Interests actually voting vote to accept the Combined Plan and Disclosure Statement. At least one Impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the Combined Plan and Disclosure Statement. The Debtors urge that you vote to accept the Combined Plan and Disclosure Statement.

## SECTION 7
## UNCLASSIFIED CLAIMS

7.1 Unclassified Claims.

In accordance with section 1123(a)(1) of the Bankruptcy Code, the following claims have not been classified for purposes of voting. Rather, all such Claims are treated separately as unclassified Claims as set forth in this Section, and the holders thereof are not entitled to vote on the Combined Plan and Disclosure Statement.

7.2 Administrative Claims.

(a) Except to the extent that a holder of an Allowed Administrative Claim agrees to a less favorable treatment, each holder of an Allowed Administrative Claim, other than a Professional Fee Claim or the DIP Claim, shall receive, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the holder of such Claim and the Debtors; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law.

(b) Any objection to Professional Fee Claims shall be filed on or before the objection deadline specified in the application for final compensation or order of the Bankruptcy Court.

(c) All fees due and payable under 28 U.S.C. § 1930 that have not been paid shall be paid on or before the Effective Date.

7.3 Professional Fees

(a) Professionals requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code or required to file fee applications by order of the Bankruptcy Court for services rendered prior to the Effective Date must file and serve pursuant to the notice provisions of the Interim Fee Order, an application for final allowance of compensation and reimbursement of expenses no later than forty five (45) days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court.

(b) Upon approval of the fee applications by the Bankruptcy Court, the applicable fee applications shall first be paid from the Debtor Professional Fee Reserve and the Claims and Balloting Agent shall be authorized to release from the Debtor Professional Fee Reserve to the applicable Professional, an amount equal to the Allowed Professional Fee Claims of such Professional. To the extent the Debtor Professional Fee Reserve is insufficient to satisfy the Allowed Professional Fee Claim in full, Debtors or the Reorganized Company shall pay such Professionals the remainder of their respective Allowed Professional Fee Claims.

7.4 Priority Claims.

Except to the extent that a holder of an Allowed Priority Claim agrees to less favorable treatment, each Allowed Priority Claim shall be assumed by the Reorganized Company and paid in full on the later of (a) the Effective Date and (b) the date such Allowed Priority Claim otherwise becomes due and payable.

With respect to sales taxes, the Debtors collected sales taxes applicable to inventory delivered to customers in the ordinary course of business. In most cases, the Debtors were required to remit sales taxes to the underlying taxing authorities on a periodic (quarterly or semiannually) following the occurrence of two triggering events: (a) delivery of product to a customer; and (b) collection of the underlying sales tax from that customer. Accordingly, the actual sales tax due may differ from what the Debtors reported where, either (a) delivery of product to a customer did not occur as estimated, or (b) where the customer did not remit the sales tax consistent with the Debtors' reporting or estimates. The Debtors continue to reconcile their sales tax reporting against what is actually due, but, on balance, the Debtors believe that the Plan sufficiently provides for the sales taxes due on a priority basis. It is possible that the applicable sales tax authorities may dispute the Debtors' reconciliation or assert an alternative amount is due.

7.5 DIP Claim. The DIP Claim shall be deemed Allowed in the full amount due and owing under the DIP Agreement as of the Effective Date, including, for the avoidance of doubt, (i) the principal amount outstanding under the DIP Facility on that date; (ii) all interest accrued and unpaid thereon through and including the Effective Date; and (iii) all accrued fees, expenses, and indemnification obligations payable under the DIP Documents. On the Effective Date, the DIP

Claim shall be satisfied by the issuance of the DIP Exit Note and the DIP Lender Equity Interests to the DIP Lender.

7.6 Post-Confirmation Fees and Expenses.

Except as otherwise specifically provided in this Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of this Plan and Consummation incurred by the Debtors and/or the Reorganized Company, as applicable. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Reorganized Company, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

7.7 Payment of Statutory Fees and Reporting to the U.S. Trustee.

All Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date. On and after the Effective Date, the Debtors and the Reorganized Company shall be jointly and severally liable for paying any and all Quarterly Fees in full in Cash when due and payable in each Chapter 11 Case for each quarter (including any fraction thereof) until the earliest of such Chapter 11 Case being closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code. The Debtors shall file all monthly operating reports due before the Effective Date when they become due. After the Effective Date, the Reorganized Company shall file with the Bankruptcy Court a post-confirmation quarterly report for each Chapter 11 Case for each quarter (including any fraction thereof) such case is pending, using UST Form 11-PCR. Notwithstanding anything to the contrary in the Plan, (i) Quarterly Fees are Allowed; (ii) the U.S. Trustee shall not be required to file any proof of claim or any other request(s) for payment with respect to Quarterly Fees; and (iii) the U.S. Trustee shall not be treated as providing any release under the Plan.

## SECTION 8
## CLASSIFICATION OF CLAIMS AND INTERESTS

8.1 Summary of Classification.

The provisions of this Section 8 govern Claims against and Interests in the Debtors. Any Class that is vacant will be treated in accordance with Section 8.3.

The following table designates the Classes of Claims against, and Interests in, the Debtors and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Combined Plan and Disclosure Statement in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to accept or reject the Combined Plan and Disclosure Statement. A Claim or portion thereof is classified in a particular Class only to the extent that such Claim or portion thereof qualifies within the description of such Class and is classified in a different Class to the extent that the portion of such Claim qualifies within the description of such different Class.

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| Unclassified | Administrative Claims | | N/A |
| Unclassified | Priority Claims | | N/A |
| Unclassified | DIP Claims | | N/A |
| 1 | Prepetition Texas Secured Claim | Unimpaired | No |
| 2 | Structural Prepetition Secured Claim | Unimpaired | No |
| 3(a) | General Unsecured Trade Claims | Unimpaired | No |
| 3(b) | Structural Prepetition Deficiency Claim | Impaired | Yes |
| 4 | Convertible Notes Claim | Impaired | Yes |
| 5 | Prepetition Preferred Equity Interests | Impaired | Yes |
| 6 | Prepetition Common Equity Interests | Unimpaired | No |
| 7 | Intercompany Claims | Unimpaired/ Impaired | Not Entitled to Vote (Presumed to Accept/ Deemed to Reject) |
| 8 | Intercompany Interests | Unimpaired/ Impaired | Not Entitled to Vote (Presumed to Accept/ Deemed to Reject) |

8.2 Special Provision Governing Unimpaired Claims.

Except as otherwise provided in the Combined Plan and Disclosure Statement, nothing under the Combined Plan and Disclosure Statement shall affect the rights of the Debtors in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

8.3 Vacant and Abstaining Classes.

Any Class of Claims or Interests that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or Interest or a Claim or Interest temporarily Allowed

under Bankruptcy Rule 3018 shall be deemed eliminated from the Combined Plan and Disclosure Statement for purposes of voting to accept or reject the Combined Plan and Disclosure Statement and for purposes of determining acceptance or rejection of the Combined Plan and Disclosure Statement by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## SECTION 9
## TREATMENT OF CLAIMS AND INTERESTS

9.1 Class 1—Prepetition Texas Secured Claim.

(a) Classification. Class 1 consists of the Prepetition Texas Secured Claims.

(b) Treatment. On the Effective Date, or as soon as reasonably practicable thereafter, the Prepetition Texas Secured Claim will be reinstated by the Reorganized Company and the holder of the Prepetition Texas Secured Claim shall retain its first priority Lien on the Texas Assets.

(c) Impairment and Voting. Class 1 is Unimpaired under the Plan. Each holder of a Class 1 Prepetition Texas Secured Claim is deemed to accept the Plan.

9.2 Class 2—Structural Prepetition Secured Claim.

(a) Classification. Class 2 consists of the Structural Prepetition Secured Claim.

(b) Treatment. Except to the extent the holder of the Structural Prepetition Secured Claim agrees to less favorable treatment, on the Effective Date or such later date as the Bankruptcy Court has entered an order estimating or otherwise determining the maximum amount of the Structural Prepetition Secured Claim, the holder of the Structural Prepetition Secured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claim, (i) Cash equal to the Allowed amount of the Structural Prepetition Secured Claim as determined by the Bankruptcy Court, or (ii) transfer the Prepetition Structural Collateral to the holder of the Structural Prepetition Secured Claim, at the option of the Debtors and the DIP Lender. Upon satisfaction of the Structural Prepetition Secured Claim in accordance with this Section 9.2(b), all Liens securing such Claim shall be released and extinguished. To the extent that Structural timely appeals the entry of such order, the Debtors or the Reorganized Company, as applicable, shall either opt to transfer the Prepetition Structural Collateral to the holder of the Structural Prepetition Secured Claim or pay into an interest bearing escrow account an amount equal to the maximum amount of the Structural Prepetition Secured Claim determined by the Bankruptcy Court; provided that, while any such appeal is pending, any Liens securing Structural's Prepetition Secured Claim shall attach solely to the escrowed amounts, and all other Liens shall be deemed extinguished.

(c) Impairment and Voting. Class 2 is Unimpaired under the Plan. Each holder of a Class 2 Structural Prepetition Secured Claim is deemed to accept the Plan.

9.3 Class 3(a)—General Unsecured Trade Claims.

(a) Classification. Class 3(a) consists of General Unsecured Trade Claims.

(b) Treatment. Each holder of an Allowed General Unsecured Trade Claim shall receive in exchange for its Allowed General Unsecured Trade Claim, either: (i) Reinstatement of such Allowed General Unsecured Trade Claim pursuant to section 1124 of the Bankruptcy Code; or (ii) such other treatment rendering such Allowed General Unsecured Trade Claim unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c) Impairment and Voting. Class 3(a) is Unimpaired under the Plan. Each holder of a Class 3(a) General Unsecured Trade Claim is deemed to accept the Plan, and is not entitled to vote.

9.4 Class 3(b)—Structural Prepetition Deficiency Claim.

(a) Classification. Class 3(b) consists of the Structural Prepetition Deficiency Claim.

(b) Treatment. Except to the extent the holder of the Structural Prepetition Deficiency Claim agrees to less favorable treatment, on the Effective Date, or as soon as reasonably practicable thereafter, the holder of the Structural Prepetition Deficiency Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claim, an unsecured note in the amount of the Structural Prepetition Deficiency Claim accruing simple interest at a rate equal to the five-year U.S. Treasury rate in effect on the Effective Date plus 250 basis points, not to exceed 7.5% per annum, which interest shall be paid-in-kind, and maturing on the fifth anniversary of the Effective Date (the "Structural Deficiency Claim Note"). The Reorganized Company may prepay the Structural Deficiency Claim Note in full or in part at any time before the maturity date without premium or penalty.

(c) Impairment and Voting. Class 3(b) is Impaired under the Plan. Each holder of a Class 3(b) Structural Prepetition Deficiency Claim is entitled to vote on the Plan.

9.5 Class 4—Convertible Notes Claim.

(a) Classification. Class 4 consists of the Convertible Notes Claim.

(b) Treatment. Except to the extent the holder of a Convertible Notes Claim agrees to less favorable treatment, on the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Company shall assume the Convertible Notes in the same amount and with the same rights as prior to the commencement of the Chapter 11 Cases, subject to an extension of the maturity date to December 31, 2030, by the Reorganized Company and the holders of the Convertible Notes Claim. For the avoidance of doubt, the holders of the Convertible Notes Claim shall not be entitled to convert the Convertible Notes based on any transaction occurring on the Effective Date. On the Effective Date, the Debtors shall issue Amended and Restated Convertible Notes and a related indenture in favor of the holders of the Convertible Notes Claim, the form of which shall be filed with the Plan Supplement. Any conversion of the Amended and Restated Convertible Notes into Reorganized Common Equity shall dilute solely the Retained Equity Interest and shall not dilute the DIP Lender Equity Interest.

(c) Impairment and Voting. Class 4 is Impaired under the Plan. Each holder of a Class 4 Claim is entitled to vote on the Plan.

9.6 Class 5—Prepetition Preferred Equity Interests.

(a) Classification: Class 5 consists of all Prepetition Preferred Equity Interests.Treatment: Except to the extent the holder of a Prepetition Preferred Equity Interest agrees to less favorable treatment, on the Effective Date, or as soon as reasonably practicable thereafter, the holder of a Prepetition Preferred Equity Interest shall receive the Reorganized Common Equity to which they would be entitled on an as-converted basis within the Retained Equity Interests. Holders of Prepetition Preferred Equity Interests shall receive separate modified classes or series of Reorganized Common Equity so as to preserve their existing liquidation preference solely within the Retained Equity Interests; *provided* that such percentages may be diluted, subsequent to the Effective Date, by the holders of the Class 4 Convertible Notes Claim who elect to convert their Amended and Restated Convertible Notes into Reorganized Common Equity. Except for the foregoing treatment, including the preservation of liquidation preferences, all rights, preferences and privileges, and corresponding agreements of the existing holders of Prepetition Preferred Equity Interests shall be cancelled as of the Effective Date.

(c) Impairment and Voting: Class 5 is Impaired under the Plan. Each holder of a Class 5 Prepetition Preferred Equity Interest is entitled to vote on the Plan.

9.7 Class 6—Prepetition Common Equity Interests.

(a) Classification. Class 6 consists of all Prepetition Common Equity Interests.

(b) Treatment. Except to the extent the holder of a Prepetition Common Equity Interest agrees to less favorable treatment, on the Effective Date, or as soon as reasonably practicable thereafter, the holder of a Prepetition Common Equity Interest shall receive Reorganized Common Equity in the Reorganized Company in the same percentage as they have Prepetition Common Equity Interests in the Debtor as of the Petition Date, within Retained Equity Interests, subject to and diluted by (i) first, the Reorganized Common Equity distributed to holders of Prepetition Preferred Equity Interests on an as-converted basis, (ii) second, any conversion of the Amended and Restated Convertible Notes into Reorganized Common Equity, and (iii) third, the MIP. The shares of Reorganized Common Equity having voting rights, including the converted preferred equity, the existing shareholders that have voting equity and the DIP Lender (to the extent the DIP Lender elects to receive Reorganized Common Equity), shall vote as a single class with each share representing one vote, except as otherwise provided in the New Governance Documents with respect to the DIP Lender's governance and consent rights.

(c) Impairment and Voting. Class 6 is Unimpaired under the Plan. Each holder of Class 6 Prepetition Common Equity Interests is deemed to accept the Plan.

9.8 Class 7—Intercompany Claims.

(a) Classification. Class 7 consists of all Intercompany Claims.

(b) Treatment. On the Effective Date, each Intercompany Claim shall be reinstated (including, as amended), distributed, contributed, set off, settled, cancelled and released, or otherwise addressed at the election of the Debtors, with the consent of the DIP Lender.

(c) Impairment and Voting. Class 7 is either impaired with no distribution or unimpaired under this Plan. To the extent that such Class is unimpaired, holders of Intercompany Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject this Plan. To the extent such Class is impaired, holders of Intercompany Claims are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject this Plan.

9.9 Class 8—Intercompany Interests.

(a) Classification. Class 8 consists of all Intercompany Interests.

(b) Treatment. On the Effective Date, each Intercompany Interest shall be reinstated (including, as amended), distributed, contributed, set off, settled, cancelled and released, or otherwise addressed at the election of the Debtors, with the consent of the DIP Lender.

(c) Impairment and Voting. Class 8 is either impaired with no distribution or unimpaired under this Plan. To the extent that such Class is unimpaired, holders of Intercompany Interests are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject this Plan. To the extent such Class is impaired, holders of Intercompany Interests are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject this Plan.

## SECTION 10
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

10.1 Disputed Claims Process.The Debtors or the Reorganized Company, as applicable, shall have the authority to (i) with the consent of the DIP Lender, determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a Claim subject to any Proof of Claim that is filed is Allowed and (ii) file, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under this Plan; provided that the Structural Prepetition Secured Claim and the Structural Prepetition Deficiency Claim shall be Allowed only as fixed by order of the Bankruptcy Court. Except as otherwise provided herein, all Proofs of Claim filed after the Effective Date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Reorganized Company, without the need for any objection by the Reorganized Company or any further notice to or action, order, or approval of the Bankruptcy Court.

If the Debtors or the Reorganized Company, as applicable, dispute any Impaired Claim that is not Allowed as of the Effective Date pursuant to this Plan or a Final Order (which may include the Confirmation Order), the Debtors or the Reorganized Company, as applicable, shall file an objection with, and the dispute shall be determined, resolved, or adjudicated before, the Bankruptcy Court.

10.2 Allowance of Claims.After the Effective Date and subject to the terms of this Plan, the Reorganized Company shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date. For the avoidance of doubt, Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" for any other purposes. The

Debtors or the Reorganized Company, as applicable, with the consent of the DIP Lender, may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be Allowed under applicable non-bankruptcy law.

Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim. General Unsecured Trade Claims will be allowed in the ordinary course of business pursuant to applicable non-bankruptcy law or court order, subject to counterclaims, defenses, setoff, or objections by the Debtors or the Reorganized Company.

10.3 Claims Administration.

Except as otherwise specifically provided in this Plan, after the Effective Date, the Reorganized Company shall have the sole authority: (1) to file, withdraw, or litigate to judgment, objections to Claims or Interests; (2) to settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Reorganized Company shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to this Plan.

Notwithstanding the foregoing, the Debtors and Reorganized Company shall be entitled to dispute and/or otherwise object to any General Unsecured Trade Claim in accordance with applicable non-bankruptcy law. If the Debtors or Reorganized Company, as applicable, dispute any General Unsecured Trade Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Cases had not been commenced. In any action or proceeding to determine the existence, validity, or amount of any General Unsecured Trade Claim, any and all Claims or defenses that could have been asserted by the applicable Debtor(s) or the Entity holding such General Unsecured Trade Claim are preserved as if the Chapter 11 Cases had not been commenced. Notwithstanding the foregoing or anything to the contrary herein, neither the Debtors nor the Reorganized Company may settle, compromise, or otherwise agree to the allowance or resolution of the Structural Prepetition Secured Claim, the Structural Prepetition Deficiency Claim, or any other Claim held by Structural without the consent of the DIP Lender.

10.4 Estimation of Claims, Including the Structural Prepetition Secured Claim. At any time, (a) prior to the Effective Date, the Debtors, and (b) after the Effective Date, the Reorganized Company may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall

constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Claim, the Debtors or the Reorganized Company may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism of the Bankruptcy Court. No payment or distribution provided under the Plan shall be made on account of a Disputed Claim unless and until a Disputed Claim becomes an Allowed Claim.

The Debtors have filed the Structural Prepetition Secured Claim Estimation Motion in order to estimate the amount of the Structural Prepetition Secured Claim and the Structural Prepetition Deficiency Claim. To the extent that Structural timely appeals the Bankruptcy Court's order estimating or otherwise determining the maximum amount of the Structural Prepetition Secured Claim following adjudication of the Structural Prepetition Secured Claim Estimation Motion, then the Debtors or the Reorganized Company, as the case may be, shall either (i) deposit into an interest bearing escrow account an amount equal to the maximum amount of the Structural Prepetition Secured Claim determined by the Bankruptcy Court or (ii) transfer the Prepetition Structural Collateral to the holder of the Structural Prepetition Secured Claim, at the option of the Debtors or the Reorganized Company, as the case may be.

10.5 Disallowance of Claims.

All Claims of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Company allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (1) the Entity, on the one hand, and the Debtors or the Reorganized Company, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (2) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

10.6 Adjustment to Claims Register Without Objection.

Any duplicate Claim or any Claim that has been paid or satisfied, amended, or superseded, may be adjusted or expunged (including pursuant to this Plan) on the Claims Register at the direction of the Debtors or the Reorganized Company, as applicable, without an objection filed and without further notice to or action, order, or approval of the Bankruptcy Court.

10.7 Rounding.

Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

10.8 Delivery of Distributions and Unclaimed Property.

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, distributions to the holders of Allowed Claims shall be made at (a) the address of each Claimant as set forth in the Schedules, or (b) the last known address of such Claimant if the Debtors have been notified in writing of a change of address. If any distribution is returned as undeliverable, the Reorganized Company may, in its discretion, make reasonable efforts to determine the current address of the holder of the Claim with respect to which the distribution was made, but no distribution to any such holder shall be made unless and until the Reorganized Company has determined the then-current address of such holder, at which time the distribution to such holder shall be made without interest. The Reorganized Company shall have the discretion to determine how to make distributions in the most efficient and cost-effective manner possible; provided, however, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan. Distributions that are not claimed by the later of the expiration of six (6) months from the Effective Date or ninety (90) days after the date of a distribution shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and shall vest or revest in the Reorganized Company, and the Claims with respect to which those distributions are made shall be automatically cancelled. After the expiration of that period, the Claim of any Entity to those distributions shall be cancelled. Nothing contained in the Plan shall require the Debtors or the Reorganized Company to attempt to locate any holder of an Allowed Claim.

## SECTION 11
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.1 Rejection / Assumption.

Except with respect to (i) executory contracts or unexpired leases that were previously assumed or rejected by order of the Bankruptcy Court, (ii) executory contracts or unexpired leases that are the subject of a pending motion to assume or reject, pursuant to section 365 of the Bankruptcy Code, or (iii) executory contracts or unexpired leases that are scheduled by the Debtors to be assumed as of the Effective Date, as set forth in the Plan Supplement, on the Effective Date, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed assumed pursuant to section 365 of the Bankruptcy Code; *provided*, *however*, that nothing in this Section shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtors and the Estates, and/or the Debtors' officers, managers and directors. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumption pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. Nothing in this Section shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease.

The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases, and neither the Debtors nor the Reorganized Company shall bear any liability for costs associated with such matters.

11.2 Reinstatement and Continuation of Insurance Policies.

Unless otherwise assumed during the pendency of the Chapter 11 Cases, from and after the Effective Date, and notwithstanding Section 11.1 or any other provision of the Plan, each of the Debtors' insurance policies in existence on and as of the Effective Date shall be reinstated and continued in accordance with its terms and, to the extent applicable, shall be deemed assumed by the Reorganized Company pursuant to section 365 of the Bankruptcy Code. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors may hold against any entity, including, without limitation, the insurer under any of the Debtors' insurance policies.

The Debtors' discharge and release from all Claims and Interests, as provided herein, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors (including, without limitation, their officers and directors), the Reorganized Company (including, without limitation, their officers and directors) or any other person or entity; *provided* that the Reorganized Company shall not have any obligation to satisfy any deductible or self-insured retention obligation associated with any Disallowed Claim or any claim that has been discharged, satisfied, released hereunder.

11.3 Continuation of Certain Licenses and Agreements.

Unless otherwise assumed during the pendency of the Chapter 11 Cases, from and after the Effective Date, and notwithstanding Section 11.1 or any other provision of the Plan, each of the Debtors' data licenses and related agreements in existence on and as of the Effective Date shall be reinstated and continued in accordance with its terms and, to the extent applicable, shall be deemed assumed by the Reorganized Company pursuant to section 365 of the Bankruptcy Code.

## SECTION 12
## MEANS FOR IMPLEMENTATION OF THE PLAN

12.1 General Settlement of Claims and Interests.

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, payments, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, settlements contained in the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the relevant Plan provisions. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromises and settlements under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlements and compromises are fair, equitable, reasonable, and in the best interests of the Debtors and the Estates. All Plan payments and distributions made to holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final. For the avoidance of doubt, the Plan itself shall not be deemed to be a settlement.

12.2 The Reorganized Company.

On the Effective Date, the New Board shall be established, and the Reorganized Company shall adopt its Board Composition Schedule, as set forth in the Plan Supplement; *provided*, *however*, that the DIP Lender shall be entitled to designate two members of the New Board. The Amended and Restated Charter shall provide that the affirmative vote of both members of the New Board designated by the DIP Lender shall be required for any transaction or action that may adversely affect the Texas Litigation, the Texas Assets, any filing for bankruptcy by the Reorganized Company, or any liability management transaction that could adversely affect the DIP Lender's entitlements.

The Reorganized Company shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under this Plan as necessary to consummate this Plan. Cash payments to be made pursuant to this Plan will be made by the Debtors or the Reorganized Company, as applicable. The Debtors and Reorganized Company will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Debtors or the Reorganized Company, as applicable, to satisfy their obligations under this Plan. Except as set forth herein or as otherwise provided for in the Plan Supplement, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of this Plan.

From and after the Effective Date, subject to any applicable limitations set forth in any post-Effective Date agreement or the New Governance Documents, the Reorganized Company shall have the right and authority without further order of the Bankruptcy Court, to raise additional capital, including issuing additional new equity Interests and obtaining additional financing, subject to the terms of the New Governance Documents, as the New Board deems appropriate.

12.3 Sources of Consideration for Plan Distributions.

The Debtors and the Reorganized Company, as applicable, shall fund distributions under this Plan with: (1) the Debtors' Cash on hand as of the Effective Date, including proceeds of the DIP Facility, and cash generated from the Debtors business during the projected period; (2) the Amended and Restated Convertible Notes; (3) the DIP Exit Note; and (4) the Reorganized Common Equity. Each distribution and issuance of notes or equity referred to in Sections 12.4 and 12.5 shall be governed by the terms and conditions set forth in this Plan, as applicable to such distribution or issuance, and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance. The issuance, distribution, or authorization, as applicable, of certain Securities in connection with this Plan will be exempt from registration under the Securities Act, as described more fully in Section 12.11 hereof. A sources and uses schedule for the Effective Date will be included in the Plan Supplement.

12.4 Amended and Restated Convertible Notes.

The Reorganized Company shall be authorized to issue the Amended and Restated Convertible Notes pursuant to the Plan and the Amended and Restated Charter. The issuance of

the Amended and Restated Convertible Notes shall be authorized without the need for any further corporate action or without any further action by the Debtors or Reorganized Company. On the Effective Date, the Amended and Restated Convertible Notes shall be issued and distributed as provided for in accordance with this Plan and the Amended and Restated Charter.

12.5 Reorganized Common Equity.

The Reorganized Company shall be authorized to issue the Reorganized Common Equity pursuant to the Plan and the Amended and Restated Charter. On the Effective Date, the Reorganized Common Equity shall be issued and distributed as provided for in accordance with this Plan (including as set forth in the Plan Supplement) and the Amended and Restated Charter. The DIP Lender Equity Interest shall not be diluted by the conversion of the Amended and Restated Convertible Notes, any management carveout, the MIP, or other bankruptcy-related issuances or allocations affecting the Retained Equity Interests; provided that such 20% equity interest shall be subject to pro rata dilution from post-Effective Date equity issuances and financings for cash (excluding, for the avoidance of doubt, any issues made in connection with the MIP or other bonus or compensation plans for employees and management) in accordance with the New Governance Documents.

All of the shares (or comparable units) of Reorganized Common Equity issued pursuant to this Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance thereof shall be governed by the terms and conditions set forth in this Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, including the Amended and Restated Charter, which terms and conditions shall bind each Entity receiving such distribution or issuance. Any Entity's acceptance of Reorganized Common Equity shall be deemed as its agreement to the Amended and Restated Charter and the other New Governance Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with its terms. Acceptance of Reorganized Equity Interests issued pursuant to the Plan, including any equity awards reserved for the MIP, shall constitute deemed acceptance and consent to the terms of the Amended and Restated Charter, without the need for execution by any party thereto. The New Governance Documents will be effective as of the Effective Date, and, as of such date, shall be deemed to be valid, binding, and enforceable in accordance with their terms, and each holder of Reorganized Common Equity shall be bound thereby in all respects. Additional information relating to the applicability of the securities law is available in Section 12.11.

12.6 Litigation.

Except as otherwise provided herein (including with respect to the Exculpation and Release provisions hereof), all Litigation is retained, vested in the Reorganized Company and preserved pursuant to section 1123(b) of the Bankruptcy Code. From and after the Effective Date, all Litigation will be prosecuted or settled by the Reorganized Company, subject to the New Governance Documents.

To the extent any Litigation is already pending on the Effective Date, the Reorganized Company will continue the prosecution of such Litigation and shall be deemed substituted as plaintiff, defendant, or in any other capacity for the Debtors or the Estates pursuant to the Plan and

the Confirmation Order on the Effective Date, without need for any further motion practice or notice in any case, action, or matter.

12.7 Corporate Action.

Upon the Effective Date, all actions contemplated under this Plan and the other documents contained in the Plan Supplement) shall be deemed authorized and approved by the Bankruptcy Court in all respects without any further corporate or equity holder action, including, as applicable: (1) adoption or assumption, as applicable, of the MIP, if any, and all obligations related thereto; (2) selection of the directors, officers, or managers for the Reorganized Company in accordance with the Board Composition Schedule; (3) adoption of the New Governance Documents; (4) issuance and distribution of the Reorganized Common Equity; (5) issuance of the DIP Exit Note; (6) all other actions contemplated under this Plan (whether to occur before, on, or after the Effective Date); (7) assumption or assumption and assignment, as applicable, of executory contracts and unexpired leases; and (8) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate this Plan (whether to occur before, on, or after the Effective Date).

Upon the Effective Date, all matters provided for in this Plan involving the corporate structure of the Debtors or the Reorganized Company, and any corporate, partnership, limited liability company, or other governance action required by the Debtors or the Reorganized Company, as applicable, in connection with this Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Interest holders, members directors, officers, or managers of the Debtors or the Reorganized Company, as applicable. On or, as applicable, prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Company, as applicable, shall be authorized and, as applicable, directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under this Plan (or necessary or desirable to effect the transactions contemplated under this Plan) in the name of and on behalf of the Reorganized Company, including the Reorganized Common Equity, the DIP Exit Note, the New Governance Documents, any other documents, agreements, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Section 12 shall be effective notwithstanding any requirements under non-bankruptcy law.

12.8 New Governance Documents

On or immediately prior to the Effective Date, except as otherwise provided in this Plan and subject to local law requirements, the New Governance Documents shall be adopted or amended as may be necessary to effectuate the transactions contemplated by this Plan. To the extent required under this Plan or applicable non-bankruptcy law, the Reorganized Company will file its New Governance Documents with the Secretaries of State and/or other applicable authorities in its respective state, province, or country of incorporation in accordance with the corporate laws of the respective state, province, or country of incorporation to the extent such filing is required for each such document. The New Governance Documents will, among other things (a) authorize the issuance of the Amended and Restated Convertible Notes and the Reorganized Common Equity, (b) provide for the DIP Lender's governance rights set forth in this Plan, including, but not limited to, with respect to the Texas Litigation, the Texas Assets, any future bankruptcy filing, and any future financial restructurings (including liability management

transactions) that could adversely affect the DIP Lender's entitlements, and additional governance and consent rights as may be agreed by the Debtors and the DIP Lender and set forth in the Plan Supplement, and (c) prohibit the issuance of non-voting Equity Securities to the extent required under section 1123(a)(6) of the Bankruptcy Code. After the Effective Date, the Reorganized Company may amend and restate its constituent and governing documents as permitted by the laws of its jurisdiction of formation and the terms of such documents; provided that no New Governance Document may be amended, modified, or waived (whether by merger or otherwise) in any manner adverse to the DIP Lender without its prior written consent.

12.9 Directors and Officers of the Reorganized Company.

As of the Effective Date, the term of the current members of the board of directors of each of the Debtors shall expire, such current directors shall be deemed to have resigned, and all of the directors for the initial term of the New Board shall be appointed in accordance with the New Governance Documents, including two (2) members designated by the DIP Lender. The initial members of the New Board will be identified in the Board Composition Schedule and shall be filed as part of the Plan Supplement. Each such member and officer of the Reorganized Company shall serve from and after the Effective Date pursuant to the terms of the Board Composition Schedule and other constituent documents of the Reorganized Company.

As of the Effective Date, the Reorganized Company shall execute indemnification agreements with each director designated by the DIP Lender, on terms at least as favorable as the most favorable indemnification agreements available to any other director of the Reorganized Company. Each such indemnification agreement shall provide for indemnification to the fullest extent permitted by applicable law, advancement of expenses, coverage under the D&O Liability Insurance Policies, and the survival of the director's rights thereunder following cessation of service.

12.10 Effectuating Documents; Further Transactions.

On and after the Effective Date, the Reorganized Company, and their respective officers, directors, members, or managers (as applicable), are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan, the Amended and Restated Charter, and the other definitive documents entered into, and the Securities issued pursuant to this Plan in the name of and on behalf of the Reorganized Company, without the need for any approvals, authorization, or consents except for those expressly required pursuant to this Plan.

12.11 Certain Securities Law Matters.

To the extent section 1145 of the Bankruptcy Code is not available, the offering of any Reorganized Common Equity and any other securities shall be exempt from the registration requirements of the Securities Act in reliance upon section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, and/or in reliance on Regulation S under the Securities Act.

The offering, issuance, and distribution of the Reorganized Common Equity and the DIP Exit Note as contemplated by this Plan, after the Petition Date, shall be exempt from, among other

things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S., state, or local law requiring registration prior to the offering, issuance, distribution, or sale of securities in accordance with, and pursuant to, section 1145 of the Bankruptcy Code, and to the extent such exemption is not available, then such Reorganized Common Equity and DIP Exit Note will be offered, issued and distributed under the Plan pursuant to other applicable exemptions from registration under the Securities Act and any other applicable securities laws. Such Reorganized Common Equity and DIP Exit Note, to the extent offered, issued and distributed pursuant to section 1145 of the Bankruptcy Code, (i) will not be "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (ii) will be freely tradeable and transferable without registration under the Securities Act in the United States by the recipients thereof that are not, and have not been within 90 days of such transfer, an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code, and compliance with (x) applicable securities laws and any rules and regulations of the United States Securities and Exchange Commission or state or local securities laws, if any, applicable at the time of any future transfer of such securities or instruments and (y) any restrictions on the transferability of such Reorganized Common Equity or DIP Exit Note in the New Governance Documents or applicable DIP Exit Note documents.

Recipients of the Reorganized Common Equity or DIP Exit Note are advised to consult with their own legal advisors as to the availability of any exemption from registration under the Securities Act and any applicable Blue-Sky Laws for resales of Reorganized Common Equity or the DIP Exit Note.

The Reorganized Company need not provide any further evidence other than the Plan or the Confirmation Order to any Entity (including DTC and any transfer agent for the Reorganized Common Equity or DIP Exit Note) with respect to the treatment of the Reorganized Common Equity or DIP Exit Note to be issued under the Plan under applicable securities laws. DTC shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether the Reorganized Common Equity or DIP Exit Note is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository (to the extent applicable). Notwithstanding anything to the contrary in the Plan, no Entity (including DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the Reorganized Common Equity or DIP Exit Note to be issued under the Plan are exempt from registration under applicable securities laws.

12.12 Section 1146 Exemption

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Company or to any other Person or Entity) of property under this Plan or pursuant to (1) the issuance, distribution, transfer, or exchange of any debt, Security, or other interest in the Debtors or the Reorganized Company, including the Reorganized Common Equity, (2) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means, (3) the making, assignment, or recording of any lease or sublease, or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale,

assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

12.13 Private Company

The Reorganized Company (i) shall emerge from these Chapter 11 Cases as a private company on the Effective Date and the Reorganized Common Equity shall not be listed on a public stock exchange, (ii) shall not be voluntarily subjected to any reporting requirements promulgated by the SEC, and (iii) shall not be required to list the Reorganized Common Equity on a recognized U.S. stock exchange, except in each case (if at all), as otherwise may be required pursuant to the New Governance Documents.

12.14 Director and Officer Liability Insurance.

Notwithstanding anything in this Plan to the contrary, the Reorganized Company shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Company's foregoing assumption of each of the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in this Plan, Confirmation of this Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under this Plan as to which no Proof of Claim need be filed.

In addition, after the Effective Date, the Reorganized Company shall not terminate or otherwise adversely affect the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on or after the Petition Date, with respect to conduct occurring prior thereto, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such directors and officers remain in such positions after the Effective Date.

12.15 MIP

The MIP, if any, including the terms and conditions thereof, shall be described in the Plan Supplement. Any MIP Interests shall dilute solely the Retained Equity Interests and shall not dilute the DIP Lender Equity Interest. The MIP Interests will be offered, issued, and distributed in reliance upon section 4(a)(2) of the Securities Act, Regulation D and Rule 701 promulgated thereunder, Regulation S under the Securities Act, and/or other exemptions from registration, and will be considered "restricted securities."

## SECTION 13
## EFFECT OF CONFIRMATION

13.1 Binding Effect of the Plan.

The provisions of the confirmed Plan shall bind the Debtors, the Reorganized Company, any Entity acquiring property under the Plan, all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, and any Creditor or Interest holder, whether or not the Claim of such Creditor or the Interest of such Interest holder is impaired under the Plan, and whether or not such Creditor or Interest holder has accepted or rejected the Plan. All Claims and Interests shall be fixed and adjusted pursuant to the Plan. The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument under the Plan or related to any transaction contemplated under the Plan is to be recorded with respect to any taxes of the kind specified in section 1146(a) of the Bankruptcy Code.

13.2 Vesting of Property of Debtors on the Effective Date.

Upon the Effective Date, title to all property (including, without limitation, all Causes of Action) of the Estates shall vest in the Reorganized Company.

13.3 Property Free and Clear.

Except as otherwise provided in the Plan or the Confirmation Order, all property that shall vest in the Reorganized Company shall be free and clear of all Claims, Interests, Liens, charges, or other encumbrances of Creditors or Interest holders, other than as set forth herein or in relevant documents, agreements, and instruments contained in the Plan Supplement; *provided*, *however*, that, notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order: (a) all Liens, security interests, and other rights and interests of the Texas Assets Lender in or with respect to the Texas Assets and the Litigation Proceeds under the Prepetition Texas Agreements and all other agreements, instruments, and documents executed or delivered in connection therewith shall be retained, unaltered, and shall remain valid, binding, perfected, enforceable, and unavoidable, with the same extent and priority as existed immediately prior to the Effective Date, without the need for any filing, recording, or other action by any Entity and shall not be subject to any challenge, avoidance, subordination, or recharacterization; (b) no Lien granted or arising under the Plan, the Plan Supplement, or the Confirmation Order shall attach to the Texas Assets or the Litigation Proceeds without the prior written consent of the Texas Assets Lender; and (c) the Liens granted under the DIP Documents shall be retained by the DIP Lender upon issuance of the DIP Exit Note on the Effective Date, in accordance with the DIP Exit Note

and the related documents contained in the Plan Supplement. Following the Effective Date, subject to the terms and provisions of the Plan and the Confirmation Order, the Reorganized Company may transfer and dispose of any such property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan (including Section 12.2) or the Confirmation Order.

13.4 Cancellation of Existing Securities, Agreements, and Interests.

On the Effective Date, except to the extent otherwise provided in this Plan or the Confirmation Order, as applicable, all notes, instruments, certificates, credit agreements, note purchase agreements, indentures, and other documents evidencing Claims, Prepetition Common Equity Interests, or Prepetition Preferred Equity Interests shall be cancelled, and any rights of any holder in respect thereof shall be deemed cancelled and of no force or effect, and all present and future obligations and liabilities, actions, suits, accounts or demands, covenants, and indemnities (both actual and contingent), of the Debtors and any non-Debtor Affiliates thereunder, or in any way related thereto, shall be deemed satisfied in full, released, cancelled, discharged, and of no force or effect. Holders of or parties to such Interests, and other documentation will have no rights arising from or relating to such instruments, Interests, and other documentation, or the cancellation thereof, except the rights provided for or reserved pursuant to this Plan.

Notwithstanding the foregoing or anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, (a) the Prepetition Texas Agreements and all other agreements, instruments, and documents executed or delivered in connection therewith, and all rights, liabilities, actions, suits, accounts or demands, covenants, indemnities (both actual and contingent), and obligations thereunder, shall not be cancelled, released, or discharged, shall remain in full force and effect in accordance with their terms and Section 9.1, and shall be binding on and enforceable against the Reorganized Company, and all Liens, security interests, and other rights and interests of the Texas Assets Lender in or with respect to the Texas Assets and the Litigation Proceeds shall be retained as provided in Section 13.3; (b) the DIP Documents and all other agreements, instruments, and documents executed or delivered in connection therewith, and all rights, liabilities, actions, suits, accounts or demands, covenants, indemnities (both actual and contingent), and obligations thereunder, including any rights to compensation, expense reimbursement, and indemnification that survive thereunder, shall not be cancelled, released, or discharged except solely to the extent satisfied pursuant to Section 7.5, and all Liens, security interests, and other rights and interests of the DIP Lender granted under the DIP Documents shall be retained by the DIP Lender upon issuance of the DIP Exit Note on the Effective Date, in accordance with the DIP Exit Note and the related documents contained in the Plan Supplement, and the DIP Exit Note and related documents shall remain in full force and effect in accordance with their terms; and (c) nothing in this Section 13.4 shall impair any rights of the Texas Assets Lender or the DIP Lender under any of the foregoing against any Entity.

## SECTION 14
## EXCULPATIONS, INJUNCTIONS, AND RELEASES

This Combined Plan and Disclosure Statement contains certain releases, exculpations, and injunction language. Parties are urged to read these provisions carefully to understand how

Confirmation and consummation of the Plan will affect any Claim, interest, right, or action with regard to the Debtors and certain third parties.

**THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS AGAINST THE DEBTORS TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED UNDER THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND ALL OTHER APPLICABLE LAW**

14.1 **Exculpation**.

**Except as otherwise expressly provided in the Plan or the Confirmation Order, to the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be exculpated from, any claim or Cause of Action based on any act or omission taken or omitted to be taken in good faith on or after the Petition Date through the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Combined Plan and Disclosure Statement, the Plan Supplement, or any agreement created or entered into in connection with the Plan, the solicitation of votes for, or Confirmation or Consummation of, the Plan, or the administration of the Plan or the property to be distributed under the Plan, other than (a) claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, bad faith, or gross negligence, in each case as determined by a Final Order, but in all respects such Exculpated Parties will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; (b) the rights of any Entity, from and after the Effective Date, to enforce the Plan, the Confirmation Order, the DIP Documents, the Prepetition Texas Agreements, the documents included in the Plan Supplement, and the obligations contemplated thereunder; (c) any breach of an Exculpated Party's obligations under any of the foregoing; or (d) any claim or Cause of Action relating to the Texas Assets, the Texas Litigation, or the Litigation Proceeds. The Confirmation Order shall include a determination that the Exculpated Parties have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes on the Plan and are not liable for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.**

14.2 Releases.

(a) **Debtor Releases.**

**Notwithstanding anything in the Combined Plan and Disclosure Statement or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the receipt and adequacy of which is hereby confirmed, on and after and subject to the occurrence of the Effective Date, the Debtors, the Estates, and the Reorganized Company, in each case on behalf of themselves and their respective successors, assigns, representatives, and Related Parties who may purport to assert any claims, obligations, rights, suits, damages, Causes of Action, remedies, or liabilities, and any and all other entities who may purport to assert any cause of action, by,**

**through, for, or because of the foregoing entities (collectively, the "Debtor/Estate Releasors"), hereby conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge (the "Debtor/Estate Release") each and all of the Released Parties, and each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor/Estate Releasors, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any Avoidance Actions and any derivative claims, including those asserted or assertable on behalf of any of the Debtor/Estate Releasors), whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, fixed or contingent, determined or determinable, disputed or undisputed, liquidated or unliquidated, direct or derivative, suspected or unsuspected, secured or unsecured, or due or to become due, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that the Debtor/Estate Releasors or any other Entities claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the holder of any Claim or Interest or any other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, or the Reorganized Company (in each case, including the capital structure, management, direct or indirect ownership, or operation thereof), the Debtors' reorganization, the Chapter 11 Cases, the decision to file the Chapter 11 Cases, the purchase, sale, rescission, or transfer of any security, asset, right, or interest of the Debtors and the ownership thereof, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interactions between or among any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the DIP Facility, the DIP Documents, the Prepetition Texas Agreements, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the Debtors, the negotiation, formulation, preparation, dissemination, or filing of, or solicitation of votes on, the Combined Plan and Disclosure Statement, the Plan Supplement, or related agreements, instruments, or other documents, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan or the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date*; provided*, that the foregoing Debtor/Estate Release shall not (i) release any Causes of Action identified in the Schedule of Retained Causes of Action, including the Texas Litigation, (ii) release any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or (iii) release any Cause of Action related to any act or omission that is determined by a Final Order of a court of competent jurisdiction to have constituted actual fraud or willful misconduct.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor/Estate Release, which includes by**

**reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Chapter 11 Cases and implementing the Plan; (b) a good faith settlement and compromise of the claims and Causes of Action released by the Debtor/Estate Release; (c) in the best interests of the Debtors, the Estates, and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtor/Estate Releasors, including the Reorganized Company, asserting any Claim or Cause of Action released pursuant to the Debtor/Estate Release.**

(b) **Third Party Release.**

**Notwithstanding anything in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the receipt and adequacy of which is hereby confirmed, on and after and subject to the occurrence of the Effective Date, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives, solely to the extent of such Releasing Party's authority to bind any of the foregoing, hereby conclusively, absolutely, unconditionally, irrevocably, and forever releases and discharges (the "Third Party Release") each of the Debtors, the Estates, the Reorganized Company, and the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of any of the Debtors or the Estates, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Debtors' reorganization, the Chapter 11 Cases, the purchase, sale, or transfer of any security, asset, right, or interest of the Debtors and the ownership thereof, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Combined Plan and Disclosure Statement, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of, or solicitation of votes on, the Combined Plan and Disclosure Statement or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the Plan, the Plan Supplement, or the Confirmation Order, the Third Party Release does not (i) release any Causes of Action identified in the Schedule of Retained Causes of Action; (ii) release any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or any Claim or obligation arising under the Plan; (iii) affect the rights of any holder of an Allowed Claim to receive distributions under the Plan; (iv) release, waive, or otherwise impair any Claims, Liens, security interests, obligations, rights, interests, or**

**remedies of the DIP Lender, or the Texas Assets Lender against the Debtors, the Estates, the Reorganized Company, or any other Entity under or in respect of the DIP Documents, the DIP Exit Note and related documents,the Prepetition Texas Agreements, or the Texas Assets and the Litigation Proceeds, except solely to the extent the obligations under the DIP Documents are satisfied in accordance with Section 7.5; or (v) release any claims or Causes of Action arising out of or relating to any act or omission of a Released Party that constitutes actual fraud or willful misconduct, in each case solely to the extent determined by a Final Order of a court of competent jurisdiction.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (a) consensual; (b) essential to Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Chapter 11 Cases and implementing the Plan; (d) a good faith settlement and compromise of the claims and Causes of Action released by the Third Party Release; (e) in the best interests of the Debtors and the Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third Party Release.**

14.3 **Injunction**.

**Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, to the fullest extent permissible under applicable law, all Entities that have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that have been released or are subject to exculpation pursuant to the Plan, or that arose prior to the Effective Date, are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Estates, the Reorganized Company, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (b) enforcing, attaching, collecting, or recovering by any manner or means, directly or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or interests in property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities, unless such Entity has timely asserted such setoff, subrogation, or recoupment right in a document filed with the Bankruptcy Court explicitly preserving such right; and (e) taking any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

**Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. By accepting distributions under the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunction set forth in this Section 14.3. The injunction set forth in this Section 14.3 shall extend to any successors of the Debtors, the Reorganized Company, the Exculpated Parties, and the Released Parties, and their respective property and interests in property.**

**No Entity (including any Entity that has elected to opt out of the Third Party Release) may commence or pursue a claim or Cause of Action of any kind against the Debtors, the Reorganized Company, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a claim or Cause of Action subject to Section 14.1 or Section 14.2, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or Cause of Action is not subject to the Debtor/Estate Release, the Third Party Release, or the exculpation provided in Section 14.1, as applicable, and (ii) specifically authorizing such Entity to bring such claim or Cause of Action.**

**Notwithstanding anything to the contrary in this Section 14.3, the Plan, the Plan Supplement, or the Confirmation Order, nothing in this Section 14.3 shall enjoin, restrict, or require Bankruptcy Court authorization for (x) the enforcement of the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or (y) the exercise or enforcement by the DIP Lender, or the Texas Assets Lender of any Claims, Liens, security interests, obligations, rights, interests, or remedies under or in respect of the DIP Documents, the DIP Exit Note and related documents, the Prepetition Texas Agreements, or the Texas Assets and the Litigation Proceeds, in each case as preserved pursuant to Sections 13.3, 13.4, and 14.2(b).**

## SECTION 15
## CERTAIN RISK FACTORS, TAX CONSEQUENCES, AND OTHER DISCLOSURES

15.1 Certain Risk Factors to be Considered.

THE COMBINED PLAN AND DISCLOSURE STATEMENT AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS OR INTERESTS WHO ARE ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE COMBINED PLAN AND DISCLOSURE STATEMENT AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE COMBINED PLAN AND DISCLOSURE STATEMENT AND ITS IMPLEMENTATION.

(a) The Combined Plan and Disclosure Statement May Not Be Accepted.

The Debtors can make no assurances that the requisite acceptances of the Combined Plan and Disclosure Statement will be received, and the Debtors may need to obtain acceptances of an alternative plan for the Debtors, or otherwise, that may not have the support of the creditors and/or Interest holders and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code. There can be no assurance that the terms of any alternative arrangement or plan would be similar to or as favorable to holders of Claims or Interests as those proposed in the Combined Plan and Disclosure Statement.

(b) The Combined Plan and Disclosure Statement May Not Be Confirmed.

Even if the Debtors receive the requisite acceptances, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Combined Plan and Disclosure Statement. Even if the Bankruptcy Court determined that the Combined Plan and Disclosure Statement and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Combined Plan and Disclosure Statement if it finds that any of the statutory requirements for confirmation had not been met. As is described in greater detail herein, section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan. While, as more fully set forth herein, the Debtors believe that the Combined Plan and Disclosure Statement complies with or will comply with all such requirements, there can be no guarantee that the Bankruptcy Court will agree.

Section 1129(a) of the Bankruptcy Code requires that, except to the extent that the holder of an Administrative Claim agrees to a different treatment of such claim, holders of Administrative Claims receive on account of such claim cash equal to the allowed amount of such claim (i.e., "with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim.").

Moreover, there can be no assurance that modifications to the Combined Plan and Disclosure Statement will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes. If the Combined Plan and Disclosure Statement is not confirmed, it is unclear what distributions holders of Claims or Interests ultimately would receive with respect to their Claims or Interests in a subsequent plan of liquidation. If an alternative could not be agreed to, it is possible that the Debtors would have to liquidate their remaining assets in chapter 7, in which case it is likely that the holders of Claims or Interests would receive substantially less favorable treatment than they would receive under the Combined Plan and Disclosure Statement.

(c) Distributions to Holders of Allowed Claims Under the Combined Plan and Disclosure Statement Will Depend on Future Performance.

Projected distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed, projections of the Reorganized Company's future operations and performance, Litigation Proceeds, recoveries from the Texas Litigation, and proceeds of any further monetization of the Debtors' remaining assets. There can be no assurance that the

estimated Claim amounts set forth in the Combined Plan and Disclosure Statement are correct. These estimated amounts are based on certain assumptions with respect to a variety of factors. Both the actual amount of Allowed Claims in a particular Class and the funds or value of assets available for distribution to such Class may differ from the Debtors' estimates. If the total amount of Allowed Claims in a Class is higher than the Debtors' estimates, or the funds or value of assets available for distribution to such Class are lower than the Debtors' estimates, the percentage recovery to holders of Allowed Claims in such Class will be less than projected.

(d) Estimated Recoveries of the Prepetition Texas Secured Claim

A material portion of projected recoveries on the Prepetition Texas Secured Claim are expected to be derived from the proceeds of the Texas Litigation, the value and outcome of which is inherently uncertain and difficult to predict. Subsequent developments may significantly alter projected recoveries.

(e) The Success of the Plan Depends on the Reorganized Company's Future Performance.

The success of the Plan depends in significant part on the Reorganized Company achieving its projected financial and operating performance. The projections are based on numerous assumptions regarding the Reorganized Company's future business performance and market conditions, and actual results may differ materially from those projections. There can be no assurance that the Reorganized Company will achieve its projected results or otherwise perform as contemplated under the Plan.

(f) Risks Relating to the New Equity Interests of the Reorganized Company.

Certain holders of Interests and the DIP Lender shall receive Reorganized Common Equity pursuant to the Plan. The ultimate recoveries under the Plan on account of such securities will depend on the realizable value of such securities. The securities to be issued pursuant to the Plan are subject to a number of material risks, including, but not limited to, the financial projections of the Reorganized Company. The valuation of the Reorganized Company is not intended to represent the realizable or market value of the new equity interests of the Reorganized Company, and such value is subject to additional uncertainties and contingencies, all of which are difficult to predict. The Reorganized Company will emerge as a private company, and the Reorganized Common Equity will not be listed on a public stock exchange. Accordingly, there can be no assurance that any trading market for the Reorganized Common Equity will develop or that holders will be able to sell such interests at any particular time or price. Accordingly, the values stated herein and in the Plan of new equity interests of the Reorganized Company to be issued pursuant to the Plan do not necessarily reflect, and should not be construed as reflecting, values that will be attained for such interests upon any future sale or other disposition. Prior to voting on the Plan, each holder of claims and interests should carefully consider the risk factors specified herein, as well as all of the information contained in the Plan.

(g) Risks Relating to the Value of Prepetition Preferred Equity Interests.

The holders of Prepetition Preferred Equity Interests currently have an aggregate liquidation preference of approximately $143 million. The value ultimately realized on account of

such liquidation preference through the Reorganized Common Equity within the Retained Equity Interests will depend on, among other things, the Reorganized Company's execution of its business plan, future operating performance, and ability to achieve its projected cash flows. There can be no assurance that the Reorganized Company will achieve its projected results or that the value of such portion of the Reorganized Common Equity will be sufficient to provide holders of Prepetition Preferred Equity Interests with value equal to the full amount of their existing liquidation preference.

(h) Objections to Classification of Claims.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. As is described in greater detail herein, the Debtors believe that the classification of Claims and Interests under the Combined Plan and Disclosure Statement complies with the requirements set forth in the Bankruptcy Code. Nevertheless, there can be no assurance the Bankruptcy Court will reach the same conclusion.

To the extent that the Bankruptcy Court finds that a different classification is required for the Combined Plan and Disclosure Statement to be confirmed, the Debtors would seek to (i) modify, with the consent of the DIP Lender, the Combined Plan and Disclosure Statement to provide for whatever classification might be required for Confirmation and (ii) use the acceptances received from any holder of Claims or Interests pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such holder ultimately is deemed to be a member. Any such reclassification of Claims or Interests, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such holder was initially a member, or any other Class under the Combined Plan and Disclosure Statement, by changing the composition of such Class and the vote required for approval of the Combined Plan and Disclosure Statement. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Combined Plan and Disclosure Statement based upon such reclassification. Except to the extent that modification of classification in the Combined Plan and Disclosure Statement requires re-solicitation, the Debtors will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Combined Plan and Disclosure Statement by any holder of Claims or Interests pursuant to this solicitation will constitute a consent to the Combined Plan and Disclosure Statement's treatment of such holder, regardless of the Class as to which such holder is ultimately deemed to be a member. The Debtors believe that under the Bankruptcy Rules, they would be required to resolicit votes for or against the Combined Plan and Disclosure Statement only when a modification adversely affects the treatment of the Claim or Interest of any holder.

The Bankruptcy Code also requires that the Combined Plan and Disclosure Statement provide the same treatment for each Claim or Interest of a particular Class unless the holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest. The Debtors believe that the Combined Plan and Disclosure Statement complies with the requirement of equal treatment. To the extent that the Bankruptcy Court finds that the Combined Plan and Disclosure Statement does not satisfy such requirement, the Bankruptcy Court could deny confirmation of the Combined Plan and Disclosure Statement. Issues or disputes relating to

classification and/or treatment could result in a delay in the confirmation and consummation of the Combined Plan and Disclosure Statement and could increase the risk that the Combined Plan and Disclosure Statement will not be consummated.

(i) Failure to Consummate the Combined Plan and Disclosure Statement.

Although the Debtors believe that the Effective Date will occur and may occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

(j) The Releases May Not Be Approved.

There can be no assurance that the releases provided herein will be granted. Failure of the Bankruptcy Court to grant such relief may result in a plan that differs from the Combined Plan and Disclosure Statement or the Plan not being confirmed.

(k) Reductions to Estimated Creditor Recoveries.

The Allowed amount of Claims in any Class could be greater than projected, which, in turn, could cause the amount of distributions to creditors in such Class to be reduced substantially. The amount of cash realized operations of the Reorganized Company, from Litigation Proceeds, from any recoveries from the Texas Litigation and from any further monetization of the Debtors' remaining assets could be less than anticipated, which could cause the amount of distributions to creditors to be reduced substantially.

15.2 Certain U.S. Federal Income Tax Consequences

The following discussion summarizes certain U.S. federal income tax consequences of consummating the Plan to the Debtors, the Reorganized Company, and certain Holders of Claims and Interests. It is intended for general informational purposes only and does not address every tax consideration that may arise in connection with the Plan.

This summary is based on the Internal Revenue Code of 1986, as amended, the regulations promulgated thereunder by the U.S. Department of the Treasury, judicial decisions, and published administrative authorities, in each case as in effect as of the date hereof. Those authorities are subject to change and differing interpretations, in some cases with retroactive effect. In addition, certain of the tax consequences described below may be subject to uncertainty. No assurance can be given that the Internal Revenue Service or a court would agree with any particular tax treatment described herein.

The implementation of the Plan may give rise to U.S. federal income tax consequences to the Debtors and the Reorganized Company, including in connection with the issuance or modification of the DIP Exit Note, the Structural Deficiency Claim Note, the Amended and Restated Convertible Notes, and the Reorganized Common Equity. Under the Plan, the estimated recovery for Holders of Allowed Claims entitled to vote on the Plan is 100%. Certain such Holders will receive new or modified debt instruments, including the Structural Deficiency Claim Note and the Amended and Restated Convertible Notes, while Holders of Prepetition Preferred Equity Interests and Prepetition Common Equity Interests will receive Reorganized Common Equity. The

U.S. federal income tax consequences of these transactions will depend on the final terms of the applicable instruments and the particular facts and circumstances.

This discussion addresses only certain U.S. federal income tax consequences of the Plan and does not address all tax consequences that may be relevant to a particular Holder, including state, local, non-U.S., or other tax consequences. Holders should consult their own tax advisors regarding the tax consequences of the Plan in light of their particular circumstances.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES OF THE PLAN.**

15.3 Alternatives to the Combined Plan and Disclosure Statement.

If the requisite acceptances are not received or the Combined Plan and Disclosure Statement is not confirmed and consummated, the theoretical alternatives to the Combined Plan and Disclosure Statement would be (a) formulation of an alternative chapter 11 plan, (b) conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or (c) dismissal of the Chapter 11 Cases. As discussed below, the Debtors do not believe that any of these alternatives, even if viable, would afford holders of Claims or Interests a greater recovery than what is provided by the Combined Plan and Disclosure Statement.

If the Combined Plan and Disclosure Statement is not confirmed, then the Debtors or any other party in interest could attempt to formulate a different plan. The additional costs, including, among other amounts, additional professional fees, all of which would constitute Administrative Claims (subject to allowance thereof), however, may be so significant that one or more parties in interest could request that the Chapter 11 Cases be converted to chapter 7. At this time, the Debtors do not believe that there are viable alternative plans available to the Debtors.

If the Combined Plan and Disclosure Statement is not confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate and distribute the Debtors' remaining assets in accordance with the priorities established by the Bankruptcy Code. As discussed above and indicated in the Liquidation Analysis, the Debtors believe that the Combined Plan and Disclosure Statement provides a better outcome for holders of Claims or Interests than a chapter 7 liquidation would provide.

If the Combined Plan and Disclosure Statement is not confirmed, the Chapter 11 Cases also could be dismissed. Among other effects, dismissal would result in the termination of the automatic stay, thus permitting creditors to assert state-law rights and remedies against the Debtors and their assets, likely to the detriment of other creditors. While it is impossible to predict precisely what would happen in the event the Chapter 11 Cases are dismissed, it is unlikely that dismissal would result in a ratable distribution of the Debtors' assets among creditors as provided in the Combined Plan and Disclosure Statement. Thus, the vast majority of creditors could expect to receive less in the dismissal scenario than they would receive under the Combined Plan and Disclosure Statement.

## SECTION 16
## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

16.1 Conditions to Confirmation of the Plan.

Confirmation of the Combined Plan and Disclosure Statement is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Debtors: (i) the Bankruptcy Court shall have approved a disclosure statement to the Plan, which may be this Combined Plan and Disclosure Statement, in form and substance acceptable to the Debtors and the DIP Lender, (ii) the Debtors shall have determined that there will be sufficient Cash on the Effective Date to pay (or with respect to Disputed Claims to reserve for as required pursuant to the Plan) Allowed Administrative Claims and Priority Claims in full (or in such lesser amount as may be agreed to by the Claimant), and to satisfy the DIP Claim in accordance with Section 7.5, (iii) the Confirmation Order to be presented to the Bankruptcy Court at the Confirmation Hearing shall be acceptable to the Debtors and the DIP Lender in form and substance, and (iv) the final version of the schedules, documents, and exhibits contained in the Plan Supplement, and all other schedules, documents, supplements and exhibits to the Combined Plan and Disclosure Statement, shall be in form and substance acceptable to the Debtors and the DIP Lender.

16.2 Conditions to the Effective Date.

The occurrence of the Effective Date is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Debtors with the consent of the DIP Lender: (i) a Confirmation Order in form and substance acceptable to the Debtors and the DIP Lender shall have been entered by the Bankruptcy Court and become a Final Order which is not subject to any stay of effectiveness; (ii) all actions, documents, and agreements necessary to implement and consummate the Plan, including the DIP Exit Note and related documents, shall have been effected or executed and binding on all parties thereto; (iii) the DIP Facility shall remain in full force and effect and shall not have been terminated, and no event of default shall have occurred and be continuing thereunder; (iv) the Debtors shall have paid or reimbursed all fees and expenses of the DIP Lender, including the DIP Professional Fees.

16.3 Waiver of Conditions Precedent.

To the fullest extent permitted by law, the conditions to the Effective Date set forth herein may be waived or modified in whole or in part at any time in writing by the Debtors, with the consent of the DIP Lender, without leave from or an order of the Court.

## SECTION 17
## RETENTION OF JURISDICTION

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

(a) To hear and determine any and all objections to the allowance of a Claim, proceedings to estimate a Claim for any purpose, actions to equitably subordinate a Claim,

proceedings seeking approval of any necessary claims reconciliation protocols, or any controversy as to the classification of a Claim in a particular Class under the Plan;

(b) To administer the Plan;

(c) To estimate or liquidate any Disputed Claims;

(d) To estimate the amount of the Structural Prepetition Secured Claim;

(e) To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date or otherwise relating to, arising from, or in connection with the Litigation; provided, however, that the Reorganized Company shall reserve the right to commence actions in all appropriate jurisdictions;

(f) To hear and determine any and all motions and/or objections to fix, estimate, allow and/or disallow any Claims arising therefrom;

(g) To hear and determine any and all applications by Professionals for an award of Professional Fees;

(h) To enable the Reorganized Company to commence and prosecute any Litigation which may be brought after the Effective Date;

(i) To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any agreement, document, or instrument contemplated by the Plan;

(j) To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified, or vacated;

(k) To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(l) To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code;

(m) To enter any orders as required by Rule 23 of the Federal Rules of Civil Procedure, to the extent made applicable to any adversary proceeding pursuant or contested matter pursuant to Bankruptcy Rules 7023 and 9014(c), as applicable;

(n) To enforce all orders previously entered by the Bankruptcy Court in the Chapter 11 Cases;

(o) To enforce, and hear and determine all disputes involving, the injunction, release, and exculpation provisions provided in Section 14; and

(p) To close the Chapter 11 Cases.

## SECTION 18
## MISCELLANEOUS PROVISIONS

18.1 Revocation of the Combined Plan and Disclosure Statement.

The Debtors, with the consent of the DIP Lender, reserve the right to revoke and withdraw the Combined Plan and Disclosure Statement at any time on or before the Confirmation Date. If the Debtors revoke or withdraw the Combined Plan and Disclosure Statement, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors.

18.2 Severability of Plan Provisions.

In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors and the DIP Lender, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

18.3 Votes Solicited in Good Faith.

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under this Plan and any previous plan, and, therefore, no such parties nor individuals or the Reorganized Company will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on this Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under this Plan and any previous plan.

18.4 Closing of Chapter 11 Cases.

The Reorganized Company shall, promptly after the full administration of the Chapter 11 Cases, seek authority to close the Chapter 11 Cases and/or file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

18.5 Exhibits.

All exhibits to the Combined Plan and Disclosure Statement and Plan Supplement are, by this reference, hereby incorporated herein. The Debtors reserve the right to make non-substantive changes and corrections to such exhibits in advance of the Confirmation Hearing. If any exhibits are changed or corrected, the replacement exhibits will be filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing.

18.6 Notices.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by nationally recognized overnight or next-day courier service, first-class mail, electronic mail, or via facsimile with electronic confirmation of receipt as follows:

Counsel for Debtors:

Dentons US LLP
601 S. Figueroa Street, #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Attn: Van C. Durrer, II, Esq.
van.durrer@dentons.com

-and-

Dentons US LLP
101 John F. Kennedy Pkwy
Short Hills, NJ 07078
Attn: Lauren Macksoud
lauren.macksoud@dentons.com

Counsel to the DIP Lender:

Ropes & Gray LLP
1211 Avenue of the Americas
New York, New York 10036-8704
Attn: Rachel Strickland
Erin Dougherty
Rachel.Strickland@ropesgray.com
Erin.Dougherty@ropesgray.com

18.7 Reservation of Rights.

Neither the filing of the Combined Plan and Disclosure Statement nor any statement or provision contained in the Combined Plan and Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall: (a) be or be deemed to be an admission against interest and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in or to any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved. In the event that the Plan is not confirmed or fails to become effective, neither the Combined Plan and Disclosure Statement nor any statement contained in the Combined Plan and Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or without the Chapter 11 Cases involving the Debtors, except with respect to Confirmation of the Plan.

18.8 Defects, Omissions and Amendments.

The Debtors may, with the approval of the Bankruptcy Court, and the consent of the DIP Lender, and without notice to all holders of Claims or Interests, insofar as it does not materially and adversely affect holders of Claims or Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to expedite the execution of the Plan. The Plan may be altered or amended before or after Confirmation as provided in section 1127 of the Bankruptcy Code, with the consent of the DIP Lender, if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of holders of Claims or Interests, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code and the Debtors have complied with section 1125 of the Bankruptcy Code. The Plan may be altered or amended before or after the Confirmation Date but, prior to substantial Consummation, with the consent of the DIP Lender, in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects holders of Claims or Interests, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code, the Debtors have complied with section 1125 of the Bankruptcy Code and, after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under section 1129 of the Bankruptcy Code.

18.9 Filing of Additional Documents.

The Debtors shall file with the Bankruptcy Court such agreements, instruments, pleadings, orders, papers, or other documents, each of which must be in form and substance acceptable to the DIP Lender, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

18.10 Successors and Assigns.

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such Entity.

18.11 Setoffs and Recoupments.

The Debtors may, but shall not be required to, set off against or recoup from the payments to be made pursuant to the Plan in respect of a Claim, any claim of any nature whatsoever that the Debtors or the Estates may have against the holder of such Claim, but neither the failure to do so or the allowance of any Claim hereunder shall constitute a waiver or release of any such claim by the Debtors or the Estates against such holder.

18.12 Tax Exemption.

Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, or the execution, delivery, or recording of an instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including, without limitation, any transfers to or by the Debtors, if on the Effective Date, and the Reorganized Company, if after the Effective Date, of the Debtors' property in implementation of or as contemplated by the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

18.13 Implementation.

Upon Confirmation, the Debtors shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

18.14 Record Date.

To the extent a "Record Date" is required for implementation of the Plan, the record date shall be the voting record date established by the Bankruptcy Court in the Conditional Approval and Procedures Order.

18.15 Substantial Consummation.

On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

18.16 Waiver of Fourteen-Day Stay.

The Debtors request as part of the Confirmation Order a waiver from the Bankruptcy Court of the 14-day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the 14-day stay of Bankruptcy Rule 6004(g).

18.17 Governing Law.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties,

and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey, without giving effect to the principles of conflict of laws thereof.

18.18 Entire Agreement.

Except as otherwise indicated herein, on the Effective Date, the Plan and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## SECTION 19
## RECOMMENDATION

The Debtors strongly recommend that all holders of Claims or Interests receiving a Ballot vote in favor of the Plan. The Debtors believe that the Plan is in the best interests of holders of Claims and Interests. The Plan as structured, among other things, allows holders of Allowed Claims and Interests to participate in distributions believed to be in excess of those that would otherwise be available were the Chapter 11 Cases dismissed or converted under chapter 7 of the Bankruptcy Code and minimizes delays in recoveries to such holders.

FOR ALL THE REASONS SET FORTH IN THIS DISCLOSURE STATEMENT, THE DEBTORS BELIEVE THAT THE CONFIRMATION AND CONSUMMATION OF THE PLAN IS PREFERABLE TO ALL OTHER ALTERNATIVES. THE DEBTORS URGE ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE TO ACCEPT THE PLAN AND TO EVIDENCE SUCH ACCEPTANCE BY RETURNING THEIR BALLOTS SO THAT THEY WILL BE RECEIVED BY 4:00 P.M. EASTERN TIME ON NOVEMBER 18, 2026.

Dated: October 4, 2026

Respectfully submitted,

HOUSE CANARY NEW JERSEY, INC., AND ITS AFFILIATES AS DEBTORS AND DEBTORS-IN-POSSESSION

By: */s/ Jeffrey Perea*
Jeffrey Perea
Chief Restructuring Officer

# EXHIBIT A

## Balance Sheet

| HouseCanary, Inc.<br>Balance Sheet<br>*As of 8/31/2026* | Amount ($) |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| Bank | $ 1,660,888 |
| Accounts Receivable | 1,964,676 |
| Prepaid Expenses | 21,658,871 |
| Prepaid Expenses - Accum. Amort. | (21,424,586) |
| Deferred Assets - Commissions (ST) | 5,352,327 |
| Deferred Assets - Commissions - Accum. Amort. (ST) | (4,403,646) |
| Advances | 21,034 |
| Accrued Revenue | 380,019 |
| Misc. Current Assets | 32,502 |
| **Total Current Assets** | **5,242,085** |
| | |
| Computers & Office Equipment [1] | - |
| Furniture & Fixtures [1] | - |
| Leasehold Improvements [1] | - |
| Computers & Office Equipment - Accum. Dep. | (944,089) |
| Furniture & Fixture - Accum. Dep. | (391,593) |
| Leasehold Improvements - Accum. Dep. | (97,718) |
| **Total Fixed Assets** | **(1,433,399)** |
| Deposits | 100,957 |
| Internal Use Software | 1,055,678 |
| Internal Use Software - Accum Amortization | (1,019,825) |
| **Total Other Long Term Assets** | **136,811** |
| **Total Assets** | **3,945,497** |
| | |
| **Liabilities & Equity** | |
| **Current Liabilities** | |
| Accounts Payable | 740,020 |
| Other Current Liability | 43,118,726 |
| **Total Current Liabilities** | **43,858,747** |
| | |
| Loan - Litigation Financing (LT) | 75,158,030 |
| Loan - Convertible Note (LT) | 23,000,000 |
| Loan - Convertible Note - Accrued Interest & Fees (LT) | 5,070,425 |
| Accrued Liabilities (LT) | 825,625 |
| Preferred Stock Warrant Liability | 970,742 |
| **Total Long Term Liabilities** | **105,024,822** |
| Equity | 160,151,535 |
| Retained Earnings | (290,919,801) |
| Net Income | (12,791,559) |
| Cumulative Translation Adjustment | 55,152 |
| **Total Equity** | **(143,504,673)** |
| **Total Liabilities & Equity** | **5,378,896** |

*(1) Computers & Office Equipment; Furniture & Fixtures; and Leasehold Improvements are reported at $0. These assets were fully depreciated prior to the Petition Date, consistent with the Company's past practices and applicable accounting standards.*