**DENTONS US LLP**
Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Email: lauren.macksoud@dentons.com

Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Email: van.durrer@dentons.com

**DENTONS BINGHAM GREENEBAUM LLP**
James R. Irving (admitted *pro hac vice*)
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
Telephone: (502) 589-4200
Email: james.irving@dentons.com

*Proposed Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>House Canary New Jersey, Inc., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-20766 (EJO)<br><br>(Jointly Administered) |

**DEBTORS' REPLY TO OCEAN II PLO, LLC'S OBJECTION TO**
**<u>THE DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES MOTION</u>**

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) HouseCanary New Jersey, Inc. [3712], (ii) HouseCanary, Inc. [2307], (iii) HouseCanary (CT), Inc. [1814], (iv) ComeHome, Inc. [0328], (v) HC Certified Analytics, Inc. [8523], and (vi) HouseCanary R&D, LLC [2124]. The Debtors' mailing address is 535 Mission Street, 14th Floor, San Francisco, CA 94105.

House Canary New Jersey, Inc. and its affiliated debtors (collectively, the "**Debtors**"), as debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this reply (the "**Reply**") in response to the objection [Docket No. 119] (the "**Objection**") filed by Ocean II PLO, LLC ("**Ocean II**"), as administrative and collateral agent for Structural Capital Investments III, LP, Series Structural DCO II Series of Structural Capital DCO, LLC, CEOF Holdings LP, and Series House Canary Series of Structural Keystone VL, LLC (collectively, the "**Structural Lenders**"), to the *Debtors' Combined Disclosure Statement and Chapter 11 Plan of Reorganization* [Docket No. 90] (as may be amended, modified, or supplemented from time to time, including by the Amended Plan and Disclosure Statement (as defined below), the "**Plan**") and the disclosure statement contained therein (the "**Disclosure Statement**") and the related solicitation procedures motion [Docket No. 91] (the "**Solicitation Procedures Motion**"). Prior to the hearing on the Solicitation Procedures Motion, the Debtors intend to file the *First Amended Combined Disclosure Statement and Chapter 11 Plan of Reorganization of House Canary New Jersey, Inc. and Affiliates Thereof* (the "**Amended Plan and Disclosure Statement**"), together with a blackline against Docket No. 90. The Debtors also intend to file a revised proposed order conditionally approving the Disclosure Statement and granting the Solicitation Procedures Motion (the "**Revised Proposed Order**") prior to the hearing. In support of this Reply, the Debtors respectfully state as follows:

## **Preliminary Statement**[2]

The Structural Lenders' Objection to the conditional approval of the Disclosure Statement and the Solicitation Procedures Motion should be overruled. As to the Structural Lenders' request for additional disclosure, the Amended Plan and Disclosure Statement will address it. The Structural Lenders' other objections to the Disclosure Statement are not only wrong, but also not ripe. What's more, to allow the solicitation of all other creditors to proceed without costly and

[2] Capitalized terms used but not otherwise defined in this Preliminary Statement have the meanings ascribed to them elsewhere in this Reply.

unnecessary delay in the administration of the Chapter 11 Cases, the Debtors will extend the Structural Lenders' voting deadline to the date of the confirmation hearing

## Jurisdiction and Venue

1. The U.S. Bankruptcy Court for the District of New Jersey (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered on July 23, 1984, and amended and supplemented by Standing Order 12-1, entered September 18, 2012, and Standing Order 2025-02, entered June 6, 2025 (Bumb, C.J.). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and procedural bases for the relief requested are section 1125 of the Bankruptcy Code and Bankruptcy Rules 3016 and 3017.

## Background

2. On September 22, 2026 (the "**Petition Date**"), the Debtors commenced the Chapter 11 Cases. The Debtors operate a real estate technology business specializing in proprietary residential property valuation models, data analytics, and related products and services. *See Declaration of Chris Rediger in Support of the Debtors' Chapter 11 Petitions and Emergency First-Day Motions* [Docket No. 16] (the "**First Day Declaration**"); Plan § 4.1.

3. Before the Petition Date, Ocean II, as agent for the Structural Lenders, issued a notice scheduling a foreclosure sale of certain collateral for September 22, 2026, providing only two weeks' advance notice. *See* First Day Declaration ¶ 28. The Debtors had previously sought to reach an agreement with the Structural Lenders on an orderly sale process, but those efforts were unsuccessful. *See id*. Following the commencement of the Chapter 11 Cases, the Court authorized the Debtors, on an interim basis, to obtain postpetition financing from Condor FundingCo 26, LLC (the "**DIP Lender**") to support their continued operations [Docket No. 34].

The DIP Lender is an affiliate of Crane 2 FundingCo 23, LLC, HC 1 LLC, and Security Finance 1 LLC (or its assignees) (collectively, the "**Texas Asset Lenders**").

4. On September 30, 2026, the Debtors filed a motion seeking to estimate the Structural Lenders' secured claim at no more than $85,061.56 and their unsecured deficiency claim at approximately $42.9 million (the "**Estimation Motion**") [Docket No. 66]. The scope and value of the Structural Lenders' collateral remain in dispute. At the Structural Lenders' request, the Debtors agreed to adjourn consideration of the Estimation Motion to December 1, 2026.

5. On October 4, 2026, the Debtors filed the Plan [Docket No. 90], which contemplates reorganizing their businesses as a going concern. Section 9.2 of the Plan unimpairs the Structural Lenders' allowed secured claim and provides for satisfaction of that claim through either payment in cash or transfer of the collateral securing it. Section 9.4 provides for payment in full of the Structural Lenders' unsecured deficiency claim through a five-year unsecured note. *See* Plan §§ 9.2, 9.4.

6. In conjunction with the Plan, the Debtors filed the Solicitation Procedures Motion, seeking approval of the adequacy of the Disclosure Statement, the proposed solicitation and notice procedures, the forms of ballots and notices, and related deadlines [Docket No. 91]. The Debtors also sought shortened notice [Docket No. 92], which the Court approved on October 5, 2026 [Docket No. 95]. The hearing to consider conditional approval of the Disclosure Statement and the Solicitation Procedures Motion is scheduled for October 20, 2026, at 2:00 p.m. Eastern Time.

7. On October 13, 2026, Ocean II, on behalf of the Structural Lenders, filed the Objection to the Disclosure Statement and Solicitation Procedures Motion [Docket No. 119]. After seeking to sell off the Debtors' contracts and other assets on just two weeks' notice, the Structural Lenders now contend that solicitation should be <u>deferred</u> pending resolution of the Estimation

Motion and related disputes. The Structural Lenders further assert that the Plan is patently unconfirmable and that the Disclosure Statement does not adequately address their claims, the Texas Litigation (as defined in the Plan), the relationships among the relevant lenders, or the Debtors' decision to pursue reorganization rather than a sale. Alternatively, the Structural Lenders request additional disclosures if the Court permits solicitation to proceed. *See* Objection ¶¶ 28-46. This alternative—more disclosure—is the solution the Debtors propose, and it can and will address any perceived infirmity.

## Legal Standard

8. Section 1125 of the Bankruptcy Code requires a disclosure statement to contain "adequate information" sufficient to permit a hypothetical investor in the relevant class "to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). The adequacy of disclosure is assessed in light of the circumstances of each case, including "the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing such information." *Id*. Section 1125(b) further provides that "[t]he court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets." *Id.* § 1125(b). Whether a plan satisfies the confirmation requirements of section 1129(a) and (b) is ordinarily a matter for confirmation, although a court may consider those requirements at the disclosure statement stage where a plan is patently unconfirmable. *See In re American Capital Equipment, LLC*, 688 F.3d 145, 154-55 (3d Cir. 2012).

## I. The Debtors Should Be Permitted to Proceed with Solicitation.

### A. The Unresolved Estimation Dispute Does Not Justify Delaying Solicitation.

9. At the Structural Lenders' request, the Estimation Motion is now set for December 1, 2026, the same day as the confirmation hearing. In the meantime, the Debtors will extend the

Structural Lenders' voting deadline to the date of the confirmation hearing, giving them additional time to evaluate the Plan without delaying solicitation of other creditors, none of whom has objected to the timeline.[3] The dispute over the scope and value of the Structural Lenders' collateral should not prevent other creditors from evaluating and voting on the Plan. Nor is the schedule "arbitrary." Objection ¶ 29. The case milestones are conditions of the DIP financing on which the Debtors depend, and missing one constitutes an Event of Default. *See* Interim DIP Order, Ex. A (DIP Term Sheet) [Docket No. 34]. Even with projected positive operating cash flow, delay would add administrative cost and uncertainty and put the Debtors' businesses at risk.

**B. Any Disclosure Issues Can Be Addressed Without Delaying Solicitation.**

10. The Amended Plan and Disclosure Statement will provide the Structural Lenders the additional disclosure they request, including (i) a risk factor addressing the disputed scope and value of the Structural Lenders' collateral and (ii) additional disclosure concerning the Debtors' history and capital structure, the Texas Litigation and its funding, the relationship between the DIP Lender and the Texas Asset Lenders, and the Debtors' decision to reorganize rather than sell. Courts assess the need for additional disclosure by its likely effect on creditors' votes. *See In re TCI 2 Holdings, LLC*, 428 B.R. 117, 171 (Bankr. D.N.J. 2010) (rejecting a disclosure objection where there was "no evidence here to suggest that any voters were improperly swayed to vote" by the challenged statements); *In re Cypresswood Land Partners, I*, 409 B.R. 396, 441 (Bankr. S.D. Tex. 2009) (holding that additional disclosure was unnecessary for nonmaterial plan modifications and recognizing that a modification is material if a creditor "would be likely to reconsider its acceptance"). Nor does the uncertainty inherent in the Texas Litigation make the Disclosure

[3] Consistent with that extension, the Debtors do not object to the Structural Lenders' request that their time to make an election under section 1111(b)(2) of the Bankruptcy Code run through the conclusion of the combined hearing on final approval of the Disclosure Statement and confirmation of the Plan. *See* Objection n.3; Fed. R. Bankr. P. 3014.

Statement inadequate; the Disclosure Statement need only disclose the contingencies that may affect recoveries. *See In re Lisanti Foods, Inc.*, 329 B.R. 491, 508 (D.N.J. 2005) (finding adequate information where the disclosure statement "acknowledged the uncertainty of recovery amounts based on several contingencies, including . . . recovery from litigation against [an] insider"); *In re Walker*, 198 B.R. 476, 479 (Bankr. E.D. Va. 1996) (holding that, in evaluating the sufficiency of a disclosure statement, "[a] debtor cannot be expected to unerringly predict the future, but rather must provide information on all factors known to him at the time that bear upon the success or failure of the proposals set forth in the plan." (emphasis added)). The Structural Lenders' disclosure objections therefore provide no basis to postpone solicitation.

## II. <u>The Structural Lenders Have Not Established That the Plan Is Patently Unconfirmable</u>.

### A. The Structural Lenders' Objections Raise Disputed Confirmation Issues.

11. The Structural Lenders contend that the Plan is patently unconfirmable. The Third Circuit, however, held in *In re American Capital Equipment, LLC* that a plan is patently unconfirmable only where confirmation "defects [cannot] be overcome by creditor voting results" and those defects concern matters on which "all material facts are not in dispute or have been fully developed at the disclosure statement hearing." 688 F.3d at 155. Similarly, in *In re Kidde-Fenwal, Inc.*, the court declined to find a plan patently unconfirmable where "evidence and further legal argument is needed to determine whether the Plan is confirmable." 2025 WL 1693173, at *6 (Bankr. D. Del. June 16, 2025); *see also In re Del Monte Foods Corp. II Inc.*, Case No. 25-16984 (MBK), Hr'g Tr. at 69:1-24 (Bankr. D.N.J. Mar. 18, 2026) [Docket No. 1341] (granting interim approval of the disclosure statement despite unresolved confirmation objections, reasoning that it was "inefficient to hold up a process pending resolution of what are confirmation issues"); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) ("[C]are must be taken to ensure that the hearing on the disclosure statement does not turn into a confirmation hearing,

due process considerations are protected and objections are restricted to those defects that could not be cured by voting . . . ."). The Structural Lenders' objections satisfy neither prong. As to the first, the absolute priority rule is implicated only if the Structural Lenders' deficiency claim class rejects the Plan, and the Structural Lenders have neither voted nor decided whether to make an election under section 1111(b) of the Bankruptcy Code, which they expressly reserve. *See* Objection at n.3. Any alleged shortfall in the terms of the deficiency note can also be addressed at or before confirmation. *See* Plan § 18.8; *In re American HomePatient, Inc.*, 298 B.R. 152, 188-89 (Bankr. M.D. Tenn. 2003) (confirming plan after adjusting the interest rate on deficiency note). As to the second, the material facts are plainly in dispute. The Structural Lenders support their Objection with a declaration from their financial advisor, *see* Declaration of Perry M. Mandarino [Docket No. 119-1] ("**Mandarino Decl**."), and acknowledge that resolution of the Estimation Motion "is likely to require several depositions, complex fact and expert discovery, and substantial briefing." Objection ¶ 29. Contested issues of that kind do not render the Plan patently unconfirmable or warrant postponing solicitation.

**B. The Proposed Treatment of the Structural Lenders Does Not Establish an Absolute Priority Violation.**

12. The Structural Lenders' absolute priority argument also conflates their two claims. The Plan classifies the Structural Lenders' secured claim in Class 2, which is unimpaired and deemed to accept, *see* Plan § 9.2, and their deficiency claim separately in Class 3(b), which is impaired and entitled to vote, *see* Plan § 9.4. The Structural Lenders therefore vote only through Class 3(b), and the absolute priority rule applies only to that unsecured class. *See* 11 U.S.C. § 1129(b)(2)(B).[4] Even if Class 3(b) rejects the Plan, the absolute priority rule does not categorically prohibit existing equity from retaining its interests, provided the Structural Lenders receive the full present value of their allowed unsecured claim. *See In re Armstrong World Industries, Inc.*, 432

[4] Even if Class 2 were deemed impaired, the result would not change. Payment in cash of the allowed secured claim, or surrender of the collateral securing it, provides the indubitable equivalent of that claim. *See* 11 U.S.C. § 1129(b)(2)(A)(iii).

F.3d 507, 511-12 (3d Cir. 2005) (explaining that a plan is fair and equitable to a dissenting unsecured class if "it pays the class's claims in full"); *American HomePatient, Inc.* at 188-89 (holding that "equity may retain their ownership without violating the absolute priority rule" where the court determined, after adjusting the interest rate on the lenders' unsecured deficiency note, that the plan provided creditors with full present value), *aff'd*, 420 F.3d 559, 568-70 (6th Cir. 2005); *In re Johnston*, 21 F.3d 323, 330-31 (9th Cir. 1994) ("Must the money be in hand at the date of confirmation to satisfy the absolute priority rule? We think not," provided the bankruptcy court finds that senior creditors will receive full present payment or its equivalent under the plan). Whether the note provides the requisite present value turns on its interest rate, maturity, payment structure, and repayment risk, which are factual questions for confirmation, not an incurable defect.

**C. The Structural Lenders Have Not Established a Violation of the Best Interests Test.**

13. The Structural Lenders further contend that the Plan fails the best interests test under section 1129(a)(7) because a chapter 7 trustee could sell the Debtors' operating business as a going concern and the Debtors have not conducted a market check. *See* Objection ¶¶ 41-42. As discussed below, the absence of a market check does not, standing alone, establish a confirmation defect. By November 11, 2026, the Debtors will file a liquidation analysis with the Plan Supplement comparing estimated recoveries under the Plan with those in a hypothetical chapter 7 liquidation. Whether the Plan satisfies the best interests test, including the potential value of a going concern sale, is a question for confirmation.

## III. <u>The Structural Lenders' Remaining Allegations Do Not Justify Delaying Solicitation</u>.

**A. The Debtors Were Not Required to Pursue a Sale Process.**

14. The Structural Lenders question the Debtors' decision to reorganize rather than sell. Chapter 11, however, does not require a market check. *See In re Horsehead Holding Corp.*, Case No. 16-10287 (CSS), Hr'g Tr. 9:2-24 (Bankr. D. Del. Sept. 2, 2016) [Docket No. 1640] (holding

that "the fiduciary duties of the debtor, the debtor's management, do not require a market check or shopping of the company" and finding that "the plan is proposed in good faith" despite the absence of a market check). Before commencing the Chapter 11 Cases, the Debtors sought to agree with the Structural Lenders on an orderly sale process, but the parties were unable to reach an agreement. The parties could not agree, and the Structural Lenders instead noticed a foreclosure sale on two weeks' notice. *See* First Day Declaration ¶ 28. The Debtors have instead then proposed a reorganization designed to provide creditors with full recoveries. Nor must the Disclosure Statement evaluate the Structural Lenders' alternative proposal to transfer the Texas Litigation to the Texas Asset Lenders and separately market the operating business. *See* Objection ¶ 45; Mandarino Decl. ¶ 4. "[A]dequate information need not include such information about any other possible or proposed plan." 11 U.S.C. § 1125(a)(1); *see also In re Stanley Hotel, Inc.*, 13 B.R. 926, 933-34 (Bankr. D. Colo. 1981). The Structural Lenders' disagreement over whether the Plan provides full present value does not, standing alone, establish that the Debtors were required to pursue a sale or that solicitation should be delayed.

**B. The Allegations Concerning the Texas Litigation, Lender Relationships, and Prepetition Conduct Do Not Warrant Delaying Solicitation.**

15. The Structural Lenders also raise the relationship between the DIP Lender and the Texas Asset Lenders. As the Structural Lenders are well aware, there is nothing to uncover: the DIP Lender and the Texas Asset Lenders are affiliates under common ownership. The relevant question is whether the DIP financing serves the best interests of the Debtors' estates, and it does. The DIP Lender committed $15 million in new-money financing when no other source of postpetition financing—including from the Structural Lenders—was available, on fully disclosed terms that remain subject to the Court's approval at the final hearing on the Debtors' DIP motion [Docket No. 17].

16. Nor is the DIP Lender "lending funds solely to benefit its affiliated Texas Asset Lenders," as the Structural Lenders assert. Objection ¶ 6. In addition to the approximately $1.5

million budgeted for the Texas Litigation funds the continued prosecution of claims on which two juries have returned verdicts in favor of HouseCanary, Inc., and any recovery benefits the Debtors' estates. The Plan also discloses the DIP Exit Note and the DIP Lender's equity interests in the Reorganized Company. *See* Plan § 2 (definitions of "DIP Exit Note" and "DIP Lender Equity Interests"). A DIP lender's affiliation with a prepetition lender does not make any of these terms improper or warrant delaying solicitation.

17. Finally, the Structural Lenders' allegations about the Debtors' prepetition conduct—including the Texas Asset Lenders' financing and the liens securing it, the Debtors' bank accounts, and the formation of House Canary New Jersey, Inc.—are disputes over the Structural Lenders' rights under their loan documents. These disputes are for adjudication, not disclosure, and do not bear on the adequacy of the Disclosure Statement.[5]

**Conclusion**

For the foregoing reasons, the Debtors respectfully request that the Court overrule the Objection, enter the Revised Proposed Order granting conditional approval of the Disclosure Statement and the relief sought in the Solicitation Procedures Motion, permit the Structural Lenders an extended voting deadline, and reserve resolution of the disputed valuation and confirmation issues for the December 1, 2026 hearing, subject to the Court's availability and scheduling.

[5] Indeed, by the Structural Lenders' own account, their collateral does not include the Debtors' intellectual property or the Texas Litigation Collateral. *See* Objection ¶ 10. The Debtors otherwise dispute the Structural Lenders' characterization of their prepetition liens and claims and reserve all rights.

Dated: October 16, 2026

*/s/ Lauren Macksoud*
Lauren Macksoud (admitted)
**DENTONS US LLP**
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Van C. Durrer, II (admitted *pro hac vice*)
**DENTONS US LLP**
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: van.durrer@dentons.com

James R. Irving (admitted *pro hac vice*)
**DENTONS BINGHAM GREENEBAUM LLP**
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
Telephone: (502) 589-4200
Facsimile: (502) 540-2215
Email: james.irving@dentons.com

*Proposed Counsel to Debtors and Debtors in Possession*