**DENTONS US LLP**
Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: van.durrer@dentons.com

**DENTONS BINGHAM GREENEBAUM LLP**
James R. Irving (admitted *pro hac vice*)
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
Telephone: (502) 589-4200
Facsimile: (502) 540-2215
Email: james.irving@dentons.com

*Proposed Counsel to Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>House Canary New Jersey, Inc., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-20766 (EJO)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 17, 34, 67 & 120** |

**OMNIBUS REPLY IN SUPPORT OF DEBTORS'**
**<u>(I) DIP MOTION AND (II) CASH COLLATERAL MOTION</u>**

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) House Canary New Jersey, Inc. [3712], (ii) HouseCanary, Inc. [2307], (iii) HouseCanary (CT), Inc. [1814], (iv) ComeHome, Inc. [0328], (v) HC Certified Analytics, Inc. [8523], and (vi) HouseCanary R&D, LLC [2124]. The Debtors' mailing address is 535 Mission Street, 14th Floor, San Francisco, CA 94105.

House Canary New Jersey, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") under chapter 11 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code"), in these chapter 11 cases (the "Chapter 11 Cases"), by and through their undersigned counsel, hereby file this omnibus reply (the "Reply") to *Structural's Combined Objection to Debtors' (I) DIP Motion and (II) Cash Collateral Motion* [Docket No. 120] (the "Objection") filed by Ocean II PLO, LLC ("Ocean"), in its capacity as administrative and collateral agent for Structural Capital Investments III, LP, Series Structural DCO II Series of Structural Capital DCO, LLC, CEOF Holdings LP, and Series House Canary Series of Structural Keystone VL, LLC (collectively, the "Structural Lenders" and, together with Ocean, "Structural"), and in further support of the *Motion of the Debtors for Entry of Interim and Final Orders: (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Authorizing the Use of Cash Collateral and Affording Adequate Protection; (III) Granting Liens and Providing Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay; (V) Scheduling a Final DIP Hearing; and (VI) Granting Related Relief* [Docket No. 17] (the "DIP Motion") and *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Structural, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [Docket No. 67] (the "Cash Collateral Motion," and with the DIP Motion, the "Motions").[2] For their Reply, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. In these Chapter 11 Cases, and by the Motions, the Debtors seek two sources of financing to continue operations, satisfy ordinary course obligations, fund the costs of these

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Cash Collateral Motion.

Chapter 11 Cases, and preserve the value of their estates. First, the Debtors seek approval to obtain up to $15,000,000 in new money debtor-in-possession financing ("DIP Financing") from Condor FundingCo 26, LLC (the "DIP Lender"). Second, the Debtors also seek authority to use Cash Collateral. Here, both Motions should be granted and Structural's Objection to the same should be overruled. Attached hereto as **Exhibit A** is the Approved Budget, which sets forth how the Debtors' propose to use the DIP Financing and Cash Collateral.

2. As regards the DIP Motion, Structural's Objection raises hypothetical issues which should not prevent entry of a final order granting the DIP Motion. To be clear, the Debtors do not seek to impair Structural's prepetition liens on the Structural Collateral. Instead, the Debtors intend to grant the DIP Lender only a ***subordinate*** lien on the Structural Collateral in addition to the other senior liens on unencumbered property and junior liens on Prepetition Litigation Collateral (as defined in the DIP Motion). The Proposed Final DIP Order (as defined below) already reserves all parties' rights on whether any receipt constitutes Structural's Cash Collateral, and the Debtors are willing to include a further reservation that nothing in the Proposed Final DIP Order determines the validity, extent, or priority of Structural's Liens on the Structural Collateral. However, the Debtors likewise reserve all rights regarding the value of the Structural Collateral and intend to present the *Debtors' Motion for Entry of an Order to Estimate the Secured Claims of Lenders Structural Capital Investments III, LP, Series Structural DCO II Series of Structural Capital DCO, LLC, and CEOF Holdings LP, with Ocean II PLO LLC as Agent, Under 11 U.S.C. § 502(c)* [Docket No. 66] (the "Estimation Motion") to this Court on December 1, 2026. Attached hereto as **Exhibit B** is a proposed form of order granting the DIP Motion on a final basis (the "Proposed Final DIP Order"), and attached hereto as **Exhibit C** is a blackline comparing that

Proposed Final DIP Order to the interim order granting the DIP Motion already entered by the Court [Docket No. 34] (the "Interim DIP Order").

3. As regards the Cash Collateral Motion, Structural's Objection should be overruled for at least three reasons:

- First, the Debtors are seeking to use alleged Cash Collateral in accordance with the Approved Budget to fund operations, the administration of these Chapter 11 Cases, and payments to Structural, but not to challenge Structural's prepetition liens or claims or to litigate contested matters with Structural;
- Second, the Debtors propose an entirely market adequate protection package consisting of adequate protection liens, superpriority administrative expense claims, periodic cash payments, and reporting to protect against potential Diminution in Value (as defined in the Proposed Interim Cash Collateral Order (as defined below)) in the same form and type of collateral that Structural had prepetition (and which section 552(a) of the Bankruptcy Code would otherwise cut off postpetition) (subject to the exclusions set forth in the Proposed Interim Cash Collateral Order). This adequate protection package has improved since the Cash Collateral Motion was filed, and more than compensates Structural for any Diminution in Value of its Cash Collateral; and
- Third and finally, Structural itself requested to postpone the determination of the allowed amount of its secured claim to December 1, 2026 (including whether such valuation is subject to the costs associated with generating Structural Collateral, i.e., customer receipts), so Structural cannot use that deferral as both a sword *and* a shield. The Debtors are using their assets responsibly, in accordance with a budget

which is otherwise agreed by the parties, to maximize the value of such assets. It would be unfair to allow Structural to postpone the day of reckoning on the determination of its allowed secured claim, but at the same time argue that the Debtors' offer of adequate protection is insufficient on the basis of that same delay.

4. Attached hereto as **Exhibit D** is an amended form of proposed interim cash collateral order (the "Proposed Interim Cash Collateral Order"), and attached hereto as **Exhibit E** is a blackline comparing it to the proposed form of order filed with the Cash Collateral Motion.

5. For all of the reasons set forth in the Motions, the DIP Declaration, and this Reply, the Objection should be overruled and the Motions should be granted.

## REPLY

### A. Neither the DIP Motion Nor the Cash Collateral Motion Impair or Subordinate Structural's Liens on the Structural Collateral or the Cash Collateral.

6. While not free from doubt, solely for purposes of the Proposed Interim Cash Collateral Order, the Debtors have assumed that Structural's liens and claims are valid, perfected, and unavoidable as to the Structural Collateral, without prejudice to the rights of the DIP Lender, the Prepetition Litigation Financing Parties, or any other party in interest. The Debtors do not stipulate, and the Debtors reserve all rights on whether: (i) Structural's liens on the Debtors' bank accounts to which Structural did not have control via a deposit account control agreement are perfected or whether the cash in those accounts is Structural's Cash Collateral, and (ii) Structural has a claim against the Debtor House Canary New Jersey, Inc. under the LSA. The Debtors also contend in the Estimation Motion that the value of the Structural Collateral is far less than the amount of Structural's claim. However, none of these issues need be – or should be – decided in connection with a final order on the DIP Motion.

7. Similarly, the Debtors also propose in the DIP Motion to grant a ***subordinate*** lien on the Structural Collateral to the DIP Lender. Again, the Debtors do not seek to do any damage to Structural's legal position with respect to the Structural Collateral, but instead the Debtors have obtained DIP Financing, which along with the use of Cash Collateral, will allow the Debtors to continue operating and preserve the value of the Structural Collateral during these Chapter 11 Cases.

8. Nor is there any merit to Structural's suggestion that the DIP Financing exists solely to benefit the DIP Lender or its affiliates. The DIP Financing is the only postpetition financing available to the Debtors, and its was negotiated in good faith and at arm's length, as set forth in the DIP Declaration. The full $15 million commitment funds the Debtors' operations and the costs of these Chapter 11 Cases, not merely the Texas Litigation. The DIP Lender is therefore entitled to the protections of section 364(e) of the Bankruptcy Code, which the Proposed Final DIP Order so provides.

9. The Proposed Final DIP Order and the Proposed Interim Cash Collateral Order already reserve Structural's rights on the issues that remain in dispute. The Proposed Final DIP Order provides that nothing therein determines whether any receipt constitutes Structural's cash collateral, and reserves all parties' rights with respect thereto. The Proposed Interim Cash Collateral Order reserves all rights as to (i) the perfection of Structural's liens on deposit accounts not subject to a deposit account control agreement and whether the cash in those accounts is Cash Collateral, (ii) whether Structural has a claim against House Canary New Jersey, Inc., and (iii) the amount of Structural's prepetition secured claim. The Debtors do not oppose including further language confirming that nothing in either order determines the validity, extent, or priority of

Structural's liens on the Structural Collateral. These reservations are reflected in the blacklines attached as **Exhibits C** and **E**.

10. Nevertheless, what Structural has attempted to do at various points in the Objection is to overstate its legal rights and to preview its arguments in opposition to the Estimation Motion. As much as the Debtors disagree with this, these are not issues ripe for adjudication now and they should be fully briefed and presented on December 1, 2026 – the date that the Debtors agreed to continue the hearing on the Estimation Motion to, at Structural's request.

11. For example, in the Objection, Structural asserts that it "holds a security interest in the Structural Collateral, as listed above and clearly including proceeds of the IP (the '***IP Proceeds'***)". (Objection, ¶ 6). There are none. The Debtors have not, do not, and will not "sell, license or dispose of any of its IP". (Estimation Motion, ¶ 35). As a result, many of Structural's arguments miss their mark and deal with the hypothetical sale of assets which the Debtors have not conducted and do not contemplate. In any event, what is and is not Structural Collateral and what the value of the Structural Collateral is are issues to be determined on the Estimation Motion, and these arguments should not prevent entry of the Proposed Final DIP Order.

**B. Structural is Receiving More Than Adequate Protection**.

12. The Debtors have amended the Budget and the Debtors' form of Proposed Interim Cash Collateral Order in an effort to provide further adequate protection and assurances to Structural. As noted above, for purposes of cash collateral, the Debtors have assumed that Structural's liens and claims are valid, perfected, and unavoidable as to the Structural Collateral, subject to the reservations set forth in the Proposed Interim Cash Collateral Order. What is more, the Debtors are providing Structural with a market and robust package of adequate protection which includes Adequate Protection Liens, Adequate Protection Superpriority Claims, reporting,

and cash payments of $550,000 in aggregate, with $250,000 paid in week one and $50,000 per week thereafter through the Expiration Date, all-in and inclusive of Structural's professional fees, of which no more than $150,000 may be paid (the "Adequate Protection Payments"). Taken together, these Adequate Protection Obligations are more than sufficient to protect Structural from any diminution in the value of its Cash Collateral.

**i. The Debtors' Approved Budget Permits the Use of Cash Collateral for the Administration of These Chapter 11 Cases, Subject to the Agreed Limitations.**

13. The Debtors' Cash Collateral and the Structural Collateral may not diminish at all during the short pendency of these Chapter 11 Cases. As set forth in the Approved Budget attached hereto as Exhibit A, the Debtors' projected cash on hand will barely decrease from the $881,592 on hand the week of the Petition Date to the $803,865 the week of the proposed confirmation hearing on the Plan. The Debtors continue to operate during the pendency of the Chapter 11 Cases, and as they do so they are servicing customers and generating new accounts receivable to replace those which are being converted into cash. Any such new accounts, including from new customers, will be subject to Structural's Adequate Protection Liens as replacement collateral, to the extent such accounts constitute Structural Collateral, as provided in the Proposed Interim Cash Collateral Order. As a consequence, the Structural Collateral (including Cash Collateral) is not suffering from significant diminution, so the Adequate Protection Obligations provided by the Debtors are more than sufficient.

14. The Debtors are able to accomplish this feat because of the DIP Financing and the authorized use of Cash Collateral in accordance with the Approved Budget, which together fund the costs of administering these Chapter 11 Cases, including operating expenses, professional fees, fees owed to the Office of the United States Trustee, etc. The Debtors will not use Cash Collateral

to challenge Structural's prepetition liens or claims or to litigate contested matters with Structural, as provided in the Proposed Interim Cash Collateral Order. The availability of DIP Financing and Cash Collateral on these terms provides additional protection to Structural.

**ii. The Debtors Propose to Provide Structural With Adequate Protection Liens, Superpriority Administrative Expense Claims, Adequate Protection Payments, and Reporting.**

15. The Debtors propose to grant Structural Adequate Protection Liens. This is a customary form of adequate protection, which alone may suffice where there is no evidence that the value of the Structural Collateral will diminish during the short pendency of the Chapter 11 Cases. *See, e.g., In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (en banc) (explaining that "section 361 states that [adequate protection] may be provided by . . . additional or replacement liens"). In addition, the Debtors propose to grant Structural Adequate Protection Superpriority Claims to the extent that there is any diminution in the value of the Cash Collateral, and these must be paid in full in accord with section 1129 of the Bankruptcy Code if the Plan is to be confirmed in December.

16. The Debtors also propose to make Adequate Protection Payments to Structural in the aggregate amount of $550,000, with $250,000 paid in week one and $50,000 per week thereafter through the Expiration Date, all-in and inclusive of Structural's professional fees, of which no more than $150,000 may be paid. This amount exceeds the decrease in the Debtors' cash as shown in the Approved Budget. Cash payments like this are a typical form of adequate protection, and standing alone may suffice. *See, e.g., In re Swedeland Dev. Grp., Inc.*, 16 F.3d at 564 (explaining that "section 361 states that [adequate protection] may be provided by (1) periodic cash payments"); *In re Dye*, 502 B.R. 47, 54–56 (Bankr. M.D. Pa. 2013) (explaining that "[t]ypically, adequate protection is provided to a creditor through periodic payments…"); *In re*

*Dispirito*, 371 B.R. 695, 698-99 (Bankr. D.N.J. 2007) (requiring adequate protection payments to protect an undersecured creditor against depreciation of its collateral). For the avoidance of doubt, the Debtors, the DIP Lender, and the Prepetition Litigation Financing Parties reserve the right to assert that any Adequate Protection Payments should be applied to reduce Structural's claims or recharacterized as a return of collateral.

17. The Debtors also propose to provide Structural with meaningful reporting on the use of Cash Collateral. Again, this constitutes a valuable form of adequate protection. *See, e.g.*, *In re Mt. Olive Hosp., LLC*, Civil No. 13-3395 (RBK), 2014 WL 1309953, at *3 & nn.6, 9 (D.N.J. Mar. 31, 2014) (affirming finding of adequate protection where the bankruptcy court "also provided [the creditor] with additional adequate protections," including replacement liens and "[p]eriodic [a]ccountings" requiring monthly U.S. Trustee operating reports, P&L statements, payroll reports, and "monthly variance from budget"); *In re Renault Winery, Inc.*, No. 14-33075-ABA, 2015 WL 1280198, at *2–4 (Bankr. D.N.J. Jan. 22, 2015) (granting, "[a]s adequate protection for Debtors' use of cash collateral," a replacement lien and adequate protection payments, and requiring "periodic accountings to the Bank setting forth the cash receipts and disbursements" and "any other reports reasonably required by the Bank"); *In re Heritage Residential at Wilton's Corner, TH-4, LLC*, No. 09-11193 (GMB), 2011 WL 13499398, at *5 (Bankr. D.N.J. Aug. 31, 2011) (authorizing interim use of cash collateral and granting, as adequate protection, a replacement lien "with the same priority in the Debtors' post-petition collateral," and requiring "semi-monthly periodic accountings to the Secured Creditor . . . in form and detail acceptable to the Secured Party").

**iii. Structural's Request to Reschedule the Hearing on the Estimation Motion Should Not Prejudice the Debtors' Use of Cash Collateral.**

18. At Structural's request the Debtors agreed to continue the hearing on the Estimation Motion to December 1, 2026. The Debtors agree that this will give all parties greater time to develop their facts and arguments, and to discuss a potential consensual resolution. However, it would be inequitable for Structural to now oppose the Debtors' use of Cash Collateral prior to December 1, 2026 because of their arguments regarding the value of the Structural Collateral.

19. As already set forth in this Reply, the Debtors are providing Structural with more than adequate protection, and Proposed Final DIP Order and the Proposed Interim Cash Collateral Order reserve Structural's rights and arguments on the Estimation Motion, as described above. Accordingly, Structural's Objection regarding the value of its collateral cannot stand as an impediment to entry of orders granting the Motions.

WHEREFORE, for the reasons set forth herein and in the Motions, the Debtors respectfully request that the Court: (i) enter Proposed Final DIP Order in the form attached to the Reply as **Exhibit B**; (ii) enter the Proposed Interim Cash Collateral Order in the form attached to the Reply as **Exhibit D**; and (iii) grant such further relief as the Court deems just and proper.

[*Remainder of page intentionally left blank*]

Dated: October 16, 2026

*/s/ Lauren Macksoud*
Lauren Macksoud (admitted)
**DENTONS US LLP**
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Van C. Durrer, II (admitted *pro hac vice*)
**DENTONS US LLP**
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: van.durrer@dentons.com

James R. Irving (admitted *pro hac vice*)
**DENTONS BINGHAM GREENEBAUM LLP**
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
Telephone: (502) 589-4200
Facsimile: (502) 540-2215
Email: james.irving@dentons.com

*Proposed Counsel to Debtors and Debtors in Possession*

# EXHIBIT A

**(Budget)**

Assumptions

**HouseCanary, Inc.**
**Summary and Assumptions**
*as of 10/16/2026*

| | |
|---|---|
| **Forecast Period** | - The budget ends with the week ending December 6, 2026, based on anticipated effective date of the Chapter 11 plan. |
| **Operating Receipts** | |
| Enterprise | - Cash collected from Enterprise customers, forecast from invoices and historical collection timing, with known lump sum payments added separately. |
| Self Serve | - Self Serve customer payments, forecast from recent receipts net of processing fees. |
| Other Receipts | - Interest expected from the Chase payroll, Chase Money Market, and Vectra accounts. |
| **Operating Disbursements** | |
| **Payroll & Benefits** | |
| Payroll | - Salary, hourly wages, and technology stipends paid on the first and last day of the month. |
| Contractor Fees | - Outside labor, primarily staff engineers. |
| Commission / Bonus | - Scheduled sales commissions and employee bonuses. |
| Employee Benefits | - Scheduled health, dental, vision, life, and disability benefit payments to vendors such as HMSA, CIGNA, Unum, VSP, and The Hartford. |
| HSA-FSA | - Payments through WEX for employee health savings and flexible spending accounts. |
| Expensify | - Employee business expenses reimbursed through Expensify. |
| **Other Operating Disbursements** | |
| Legal | - Legal disbursements reflect estimated general legal expenses, with payments forecast based on expected invoice timing and payment terms. |
| Hosting | - Amazon Web Services charges for cloud hosting and related services. |
| Professional Services | - Outside advisory, operating legal, and specialist fees, including Arch Canyon's valuation services and HCVT's accounting and tax services. |
| Sales & Marketing | - Marketing vendors and lead-generation resources, including BatchData's property and owner-contact data. |
| Licenses & Subscriptions | - Recurring software and data access, including property data from Black Knight/ICE, m3ter's usage-based billing platform, Salesforce, DocuSign, and other subscriptions. |
| Brex (Credit Card) | - Brex credit card payments for Self Serve advertising, MLS fees, software tools, and other card purchases. |
| Rent | - Scheduled WeWork office-space payment. |
| Taxes | - Scheduled sales and other tax payments, plus Bill.com. |
| Bank Fees | - Solupay processing, Chase and Vectra account charges, wire fees, and other bank charges. |
| Other Operating Disbursements | - Remaining coded Other COGS and Other SG&A payments, including DataTree property-record data, NVMS property inspections, and miscellaneous operating purchases. |
| **Chapter 11 Activity** | |
| **Professional Fees** | - Professional fees for Getzler Henrich, Dentons, and Omni are accrued during the forecast, with interim payments during the case and the bulk of the remaining balances paid in the week ending 12/6/2026. |
| **Chapter 11 Fees** | |
| US Trustee Fees | - US Trustee fees calculated on projected quarterly disbursements, pursuant to bankruptcy code. |
| Litigation Fees | - Litigation expenses are forecast at $500,000 per month, with cash payments scheduled in applicable forecast weeks. |
| Adequate Protection - Structural | - Structural adequate protection payments are forecast at $250,000 in the week ending 10/25/2026 and $50,000 weekly through 12/6/2026 ($550,000 total). |
| Lender DIP Fees | - Upfront and exit fees are included in Chapter 11 disbursements when payable. DIP draws are shown at their gross amount. |

Cash Flow Forecast

| HouseCanary, Inc.<br>Cash Flow Forecast<br>*as of 10/16/2026* | 0<br>Actual<br>09/27/26 | 1<br>Actual<br>10/04/26 | 2<br>Actual<br>10/11/26 | 3<br>Forecast<br>10/18/26 | 4<br>Forecast<br>10/25/26 | 5<br>Forecast<br>11/01/26 | 6<br>Forecast<br>11/08/26 | 7<br>Forecast<br>11/15/26 | 8<br>Forecast<br>11/22/26 | 9<br>Forecast<br>11/29/26 | 10<br>Forecast<br>12/06/26 | 09/27/26<br>12/06/26<br>Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **OPERATING RECEIPTS** | | | | | | | | | | | | |
| Enterprise | 102,839 | 473,182 | 455,473 | 300,800 | 295,771 | 263,260 | 398,260 | 384,590 | 264,892 | 264,892 | 458,282 | 3,662,241 |
| Self Serve | 24,394 | 59,795 | (17,688) | 22,394 | 22,394 | 22,394 | 21,671 | 21,671 | 21,671 | 11,671 | 30,441 | 240,808 |
| Money Market Interest | - | 3,014 | - | - | - | 5,003 | - | - | - | - | 5,003 | 13,020 |
| **TOTAL OPERATING RECEIPTS** | **127,233** | **535,991** | **437,785** | **323,194** | **318,165** | **290,657** | **419,931** | **406,261** | **286,563** | **276,563** | **493,726** | **3,916,069** |
| **OPERATING DISBURSEMENTS** | | | | | | | | | | | | |
| Payroll & Benefits | 289,097 | 397,131 | - | 347,567 | 104,748 | 547,981 | 38,064 | 342,776 | 58,732 | 389,851 | 239,344 | 2,755,290 |
| Legal / Litigation | - | - | - | 25,000 | - | 25,000 | - | - | - | 25,000 | - | 75,000 |
| Hosting | - | - | - | - | 144,382 | 128,470 | - | - | - | 128,470 | - | 401,323 |
| Professional Services (Operating) | - | 2,333 | - | 20,520 | 77,000 | 75,000 | 13,725 | 3,438 | - | 41,000 | 6,041 | 239,057 |
| Sales & Marketing | - | - | - | - | - | - | 5,000 | - | - | - | 5,000 | 10,000 |
| Licenses & Subscriptions | - | - | 152 | 166,887 | 75,647 | 137,126 | 28,698 | 167,285 | - | 23,645 | 6,081 | 605,520 |
| Brex (Credit Card) | - | 122,743 | - | - | - | - | 160,922 | - | - | - | 128,232 | 411,897 |
| Rent | - | - | 1,318 | - | - | - | 1,442 | - | - | - | 1,442 | 4,201 |
| Taxes | - | - | - | 23,624 | 2,259 | 500 | 1,289 | 500 | 13,992 | 500 | 1,253 | 43,917 |
| Bank Fees | 148 | 81 | 1,440 | 800 | - | 39 | 1,465 | 27 | 840 | 27 | 1,554 | 6,421 |
| Other Operating Disbursements | - | - | - | - | 156 | 4,909 | - | - | - | 147 | - | 5,211 |
| **TOTAL OPERATING DISBURSEMENTS** | **289,245** | **522,288** | **2,909** | **584,397** | **404,192** | **919,025** | **250,605** | **514,026** | **73,564** | **608,639** | **388,946** | **4,557,838** |
| Starting Cash | 1,043,604 | 881,592 | 1,095,295 | 2,873,727 | 2,612,524 | 2,136,742 | 958,374 | 777,700 | 899,935 | 1,062,934 | 680,858 | 1,043,604 |
| Change in Cash from Operations | (162,012) | 13,703 | 434,876 | (261,203) | (86,028) | (628,368) | 169,326 | (107,764) | 212,999 | (332,076) | 104,780 | (641,768) |
| Ch. 11 Disbursements | - | (800,000) | (656,444) | - | (389,754) | (550,000) | (1,350,000) | (770,000) | (50,000) | (550,000) | (5,218,000) | (10,334,198) |
| DIP Term Note Funding | - | 1,000,000 | 2,000,000 | - | - | - | 1,000,000 | 1,000,000 | - | 500,000 | 5,000,000 | 10,500,000 |
| **ENDING CASH BALANCE** | **881,592** | **1,095,295** | **2,873,726.86** | **2,612,524** | **2,136,742** | **958,374** | **777,700** | **899,935** | **1,062,934** | **680,858** | **567,638** | **567,638** |

Preliminary and Subject to Material Change

Chapter 11 Activity

| HouseCanary, Inc.<br>Chapter 11 Activity<br>*as of 10/16/2026* | 0<br>Actual<br>09/27/26 | 1<br>Actual<br>10/04/26 | 2<br>Actual<br>10/11/26 | 3<br>Forecast<br>10/18/26 | 4<br>Forecast<br>10/25/26 | 5<br>Forecast<br>11/01/26 | 6<br>Forecast<br>11/08/26 | 7<br>Forecast<br>11/15/26 | 8<br>Forecast<br>11/22/26 | 9<br>Forecast<br>11/29/26 | 10<br>Forecast<br>12/06/26 | 09/27/26<br>12/06/26<br>Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Getzler Henrich & Associates | - | - | - | - | - | - | - | 160,000 | - | - | 755,000 | 915,000 |
| Dentons | - | - | - | - | - | - | - | 560,000 | - | - | 2,500,000 | 3,060,000 |
| Omni | - | - | - | - | - | - | - | - | - | - | 98,000 | 98,000 |
| Professional Fee Disbursements | - | - | - | - | - | - | - | 720,000 | - | - | 3,353,000 | 4,073,000 |
| U.S. Trustee | - | - | - | - | 14,754 | - | - | - | - | - | - | 14,754 |
| Litigation Fees | - | - | - | - | 125,000 | 500,000 | - | - | - | 500,000 | - | 1,125,000 |
| Other | - | - | - | - | - | - | - | - | - | - | - | - |
| Chapter 11 Fees | - | - | - | - | 139,754 | 500,000 | - | - | - | 500,000 | - | 1,139,754 |
| Adequate Protection - Structural | - | - | - | - | 250,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 550,000 |
| Facility Related | - | 800,000 | 656,444 | - | - | - | 1,300,000 | - | - | - | 1,815,000 | 4,571,444 |
| **TOTAL CHAPTER 11 DISBURSEMENTS** | **-** | **800,000** | **656,444** | **-** | **389,754** | **550,000** | **1,350,000** | **770,000** | **50,000** | **550,000** | **5,218,000** | **10,334,198** |

Preliminary and Subject to Material Change

Professional Fee Summary

| HouseCanary, Inc. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 09/27/26 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Professional Fee Summary | Actual | Actual | Actual | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | 12/06/26 |
| *as of 10/16/2026* | 09/27/26 | 10/04/26 | 10/11/26 | 10/18/26 | 10/25/26 | 11/01/26 | 11/08/26 | 11/15/26 | 11/22/26 | 11/29/26 | 12/06/26 | Total |
| **Professional Fee Accrual** | | | | | | | | | | | | |
| Getzler Henrich & Associates | 100,000 | 100,000 | 61,250 | 75,000 | 95,000 | 68,750 | 75,000 | 75,000 | 95,000 | 75,000 | 95,000 | 915,000 |
| Dentons | 350,000 | 350,000 | 262,222 | 262,222 | 262,222 | 262,222 | 262,222 | 262,222 | 262,222 | 262,222 | 262,222 | 3,060,000 |
| Omni | - | - | 12,500 | 12,500 | 12,500 | 12,500 | 10,000 | 10,000 | 10,000 | 10,000 | 8,000 | 98,000 |
| **Total Professional Fee Accrual** | **450,000** | **450,000** | **335,972** | **349,722** | **369,722** | **343,472** | **347,222** | **347,222** | **367,222** | **347,222** | **365,222** | **4,073,000** |
| **Professional Fee Disbursements** | | | | | | | | | | | | |
| Getzler Henrich & Associates | - | - | - | - | - | - | - | 160,000 | - | - | 755,000 | 915,000 |
| Dentons | - | - | - | - | - | - | - | 560,000 | - | - | 2,500,000 | 3,060,000 |
| Omni | - | - | - | - | - | - | - | - | - | - | 98,000 | 98,000 |
| **Total Professional Fee Disbursements** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **720,000** | **-** | **-** | **3,353,000** | **4,073,000** |
| **Unfunded Professional Fees** | | | | | | | | | | | | |
| Getzler Henrich & Associates | 100,000 | 200,000 | 261,250 | 336,250 | 431,250 | 500,000 | 575,000 | 490,000 | 585,000 | 660,000 | - | - |
| Dentons | 350,000 | 700,000 | 962,222 | 1,224,445 | 1,486,667 | 1,748,889 | 2,011,111 | 1,713,334 | 1,975,556 | 2,237,778 | - | - |
| Omni | - | - | 12,500 | 25,000 | 37,500 | 50,000 | 60,000 | 70,000 | 80,000 | 90,000 | - | - |
| **Total Unfunded Professional Fees** | **450,000** | **900,000** | **1,235,972** | **1,585,695** | **1,955,417** | **2,298,889** | **2,646,111** | **2,273,334** | **2,640,556** | **2,987,778** | **-** | **-** |

# <u>EXHIBIT B</u>

**(Proposed Final DIP Order)**

| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1** | |
|---|---|
| **DENTONS US LLP**<br>Lauren Macksoud (admitted)<br>101 JFK Parkway<br>Short Hills, NJ 07078<br>Telephone: (973) 912-7100<br>Email: lauren.macksoud@dentons.com<br><br>Van C. Durrer, II (*pro hac vice* forthcoming)<br>601 S. Figueroa Street #2500<br>Los Angeles, CA 90017<br>Telephone: (213) 623-9300<br>Email: van.durrer@dentons.com<br><br>**DENTONS BINGHAM GREENEBAUM LLP**<br>James R. Irving (*pro hac vice* forthcoming)<br>3500 PNC Tower<br>101 South Fifth Street<br>Louisville, KY 40202<br>Telephone: (502) 589-4200<br>Email: james.irving@dentons.com<br><br>*Proposed Counsel to Debtors and Debtor-in-Possession* | |
| In re:<br><br>HOUSECANARY NEW JERSEY, INC., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 26- 20766 (EJO)<br><br>(Joint Administration Requested) |

FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) AUTHORIZING USE OF CASH COLLATERAL AND AFFORDING ADEQUATE PROTECTION; (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (IV) MODIFYING AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered [●] through [●] is hereby **ORDERED**.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) HouseCanary New Jersey, Inc. [3712], (ii) HouseCanary, Inc. [2307], (iii) HouseCanary (CT), Inc. [1814], (iv) ComeHome, Inc. [0328], (v) HC Certified Analytics, Inc. [8523], and (vi) HouseCanary R&D, LLC [2124]. The Debtors' mailing address is 535 Mission Street, 14th Floor, San Francisco, CA 94105.

**Dated: [●], 2026**

______________________________________
Honorable Eamonn James O'Hagan
United States Bankruptcy Court

**THIS MATTER**, having been presented to this Court by HouseCanary, Inc. and each of the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), upon a motion (the "Motion")[2] for entry of an interim order and a final order (this "Final Order"), pursuant to sections 105(a), 361, 362, 363, 364, 503, 506, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and the applicable Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and corollary local bankruptcy rules (the "Local Bankruptcy Rules"); and the Court having entered the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Authorizing Use of Cash Collateral and Affording Adequate Protection; (III) Granting Liens and Providing Superpriority Administrative Expense Status; (IV) Modifying Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 34] on September 25, 2026 (the "Interim Order," and together with this Final Order, the "DIP Orders"); and the Motion seeking, among other things:

i. authorizing HouseCanary, Inc. (the "Borrower") and House Canary New Jersey, Inc. (together with the Borrower, the "Borrowers" and, together with all other Debtors as guarantors, the "DIP Loan Parties") on a joint and several basis to obtain secured postpetition financing pursuant to a multi-draw, senior secured, superpriority term credit facility in the aggregate commitment amount of up to $15,000,000 (the "DIP Facility"), subject to the terms and conditions set forth in that certain [*Senior Secured Superpriority Debtor-in-Possession Credit Agreement*], dated as of [], 2026, attached as **Exhibit A** to this Final Order (as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "DIP Credit Agreement"), which sets forth the terms and conditions of the DIP Facility, by and among the Borrowers and Condor FundingCo 26, LLC, as lender (the "DIP Lender"), consisting of term loans and advances thereunder, including (i) $3,000,000 in new money financing made available on an interim basis pursuant to the Interim Order,

[2] Capitalized terms used but not defined herein shall have the same meaning ascribed to such terms in the Motion or the DIP Credit Agreement (as defined herein), as applicable.

consisting of (x) $1 million funded following the entry of the Interim Order (the "Initial Draw") and (y) $2 million to be funded subject to the satisfaction of the conditions set forth in the DIP Credit Agreement and subject to the receipt of a Plan Term Sheet[3] acceptable to the DIP Lender in its sole discretion (the "Additional Draw" and together with the Initial Draw, the "Interim Amount") and (ii) $12,000,000 following entry of this Final Order (the "Final Amount" and together with the Interim Amount, the "DIP Loans");

ii. authorizing the Debtors to execute, deliver and perform under the DIP Credit Agreement and all other loan documentation related to the DIP Facility, including, without limitation, as applicable, security agreements, pledge agreements, control agreements, mortgages, deeds, charges, guarantees, promissory notes, intercompany notes, certificates, instruments, intellectual property security agreements, notes, and such other documents that may be reasonably requested by the DIP Lender in connection with the DIP Facility, in each case, as amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and hereof (collectively, together with the DIP Credit Agreement, the "DIP Documents" or the "DIP Loan Documents");

iii. authorizing the Debtors to incur and jointly and severally, as applicable, guarantee loans, advances, extensions of credit, financial accommodations, reimbursement obligations, interest, fees and premiums (including, without limitation, original issue discount, commitment fees, administrative agency fees, collateral agency or security trustee fees and any other fees or premiums payable pursuant to the DIP Documents) costs, expenses and other liabilities, and all other obligations (including indemnities and similar obligations, whether contingent or absolute) and all other obligations due or payable under the DIP Documents (collectively, the "DIP Obligations"), and to perform such other and further acts as may be required, necessary, desirable or appropriate in connection therewith;

iv. subject to the Carve Out (as defined herein), granting to the DIP Lender allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all DIP Obligations under the DIP Facility (the "DIP Superpriority Claims");

v. granting to the DIP Lender valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the

[3] "Plan Term Sheet" means the term sheet setting forth the material terms of any plan.

Bankruptcy Code on the DIP Collateral (as defined below), on the terms described herein (the "DIP Liens");

vi. authorizing the Debtors and the DIP Lender to take all commercially reasonable actions to implement the terms of this Final Order;

vii. waiving (a) the Debtors' right to surcharge Prepetition Litigation Collateral (as defined below) and the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

viii. waiving the doctrine of "marshaling" and other similar equitable doctrines (a) with respect to the DIP Collateral for the benefit of any party other than the DIP Lender and (b) with respect to the Prepetition Litigation Collateral for the benefit of any party other than the Prepetition Litigation Financing Parties (as defined below);

ix. authorizing the Debtors to use proceeds of the DIP Facility solely in accordance with the Approved Budget (as defined below), the DIP Orders and the DIP Documents;

x. authorizing the Debtors to pay the DIP Obligations as they become due and payable in accordance with the DIP Documents;

xi. subject to the restrictions set forth in the DIP Documents and the DIP Orders, (i) authorizing the Debtors to use Prepetition Litigation Collateral, provide adequate protection to the Prepetition Litigation Financing Parties, solely to the extent of such parties' valid and perfected liens on such Prepetition Litigation Collateral, for any diminution in value of their interests in the Prepetition Litigation Collateral, for any reason provided for in the Bankruptcy Code (collectively, the "Diminution in Value") and, (ii) authorizing the Debtors to use Prepetition Structural Collateral, provide adequate protection (to the extent applicable) to Structural, solely to the extent of such parties' valid and perfected liens on such Prepetition Structural Collateral (to the extent applicable), for any Diminution in Value;

xii. vacating and modifying the automatic stay to the extent necessary to permit the Debtors, the DIP Lender, and the Prepetition Litigation Financing Parties to implement and effectuate the terms and provisions of the DIP Orders and the DIP Documents;

xiii. waiving any applicable stay of this Final Order (including under Bankruptcy Rules 4001(a)(3), 6004(h), 7062, and 9014) and providing for immediate effectiveness of this Final Order; and

xiv. granting related relief.

The Court having considered the relief requested in the Motion, the exhibits attached thereto, the declaration of Jeffrey C. Perea in support of the Motion [Docket No. 19] (the "Perea Declaration"), and the *Declaration of Chris Rediger in Support of the Debtors' Chapter 11 Petitions and Emergency First-Day Motions* [Docket No. 16], and the evidence submitted and arguments made at the interim hearing held on September 24, 2026 (the "Interim Hearing") and at the final hearing held on October 20, 2026 (the "Final Hearing"); and due and sufficient notice of the Interim Hearing and the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Bankruptcy Rules; and the Final Hearing having been concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and venue of this proceeding and the motion is proper under 28 U.S.C. §§ 1408 and 1409; and it appearing that approval of the relief requested in the Motion on a final basis is fair and reasonable, in the best interests of the Debtors and their estates, and essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' estates; and it appearing that the Debtors' entry into the DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[4]

A. Petition Date. On September 22, 2026 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Court").

B. Debtors in Possession. The Debtors continue to operate their business and manage their property as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, and no trustee or examiner has been appointed.

C. Jurisdiction and Venue. This Court has core jurisdiction over these Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334, and the Standing Order of Reference to the Bankruptcy Court Under Title 11, entered July 23, 1984, and amended and supplemented by Standing Order 12-1, entered September 18, 2012, and Standing Order 2025-02, entered June 6, 2025 (Bumb, C.J.). Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court may enter a final order approving the relief sought in the Motion consistent with Article III of the United States Constitution. Venue for these cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. § 1408. The predicates for the relief sought herein are sections 105, 345(b), 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 363(m), 503, 506(c), 507 and 552

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any conclusions of law constitute findings of fact, they are adopted as such.

of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 9013 and 9014, and Bankruptcy Local Bankruptcy Rules 2002-1, 4001-1, 4001-3, 9013-1, 9013-2, 9013-3, and 9013-4.

D. Committee Formation. As of the date hereof, the United States Trustee for the District of New Jersey (the "U.S. Trustee") has not appointed an official committee of unsecured creditors (the "Creditors' Committee") in these cases.

E. Bank Accounts. The Debtors acknowledge and agree that as of the Petition Date, none of the Debtors has either opened or maintained any bank accounts other than the accounts listed in the exhibit attached to any order authorizing the Debtors to continue to use the Debtors' existing cash management system (the "Cash Management Order").

F. Notice. The Final Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). Proper, timely, adequate and sufficient notice of the Motion, the Interim Hearing and the Final Hearing has been provided in accordance with the Interim Order, the Bankruptcy Code, Bankruptcy Rules and the Local Bankruptcy Rules, and no other or further notice is required to enter this Final Order.

G. Cash Collateral. As used herein, the term "Cash Collateral" shall mean all of the Debtors' cash, wherever located and held, including cash in deposit accounts, that constitutes or will constitute cash collateral of any of the Prepetition Litigation Financing Parties or the DIP Lender within the meaning of section 363(a) of the Bankruptcy Code, in each case, to the extent applicable.

H. Debtors' Stipulations. Without limiting the rights of any other party in interest, subject to the provisions and limitations contained in paragraph 13 hereof, and after consultation with their attorneys and financial advisors, the Debtors admit, stipulate and agree that:

(i) *Prepetition Litigation Financing Agreement*. Pursuant to (i) that certain Amended and Restated Litigation Funding Agreement, dated January 8, 2026 (as amended, restated, amended and restated, modified or supplemented from time to time, the "Crane 2 LFA"), by and among the Borrower and Crane 2 FundingCo 23, LLC, a Delaware limited liability company ("Crane 2"), and (ii) that certain Litigation Funding Agreement, dated as of June 6, 2018, by and among HC 1 LLC ("HC 1"), and Security Finance 1 LLC ("Security Finance", together with Crane 2 and HC 1, the "Prepetition Litigation Financing Parties") and the Borrower, as borrower (as amended, restated, amended and restated, modified or supplemented from time to time, the "HC 1 LFA" and together with the Crane 2 LFA, the "Prepetition Litigation Financing Agreements" and, together with all other agreements, documents and instruments executed or delivered in connection therewith, the "Prepetition Litigation Financing Documents"), the Debtors were justly and lawfully indebted and liable to the Prepetition Litigation Financing Parties without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate amount of not less than the respective Investment Return (under and as defined in each respective Prepetition Litigation Financing Agreement), plus any accrued and unpaid interest thereon and any fees, premium, expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges, indemnities, and other obligations of whatever nature, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in respect of the Prepetition Litigation Financing Agreements (the "Prepetition Litigation Financing Obligations").

Pursuant to the Prepetition Litigation Financing Agreements, the Debtors granted to the Prepetition Litigation Financing Parties, a first priority interest in and continuing lien on (collectively, the "Prepetition Litigation Liens") the "Claims", the "Litigation Proceeds", the "Litigation IP", the "Crane 2 Proceeds Account" and the other "Collateral", each as defined in the Prepetition Litigation Financing Agreements (the "Prepetition Litigation Collateral").

(ii) Waiver of Challenge. None of the Prepetition Litigation Liens are subject to any contest, disallowance, set-off, disgorgement, offset, attack, rejection, recovery,

reduction, defense, counterclaim, subordination (equitable or otherwise), recharacterization, avoidance or other cause of action (including any avoidance actions under Chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law. The Debtors and their respective estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code), against the Prepetition Litigation Financing Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees with respect to the Prepetition Litigation Financing Agreements, the Prepetition Litigation Financing Obligations, the Prepetition Litigation Liens, or any related documentation, whether arising at law or at equity, including any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable state law equivalents.

(iii) No Control. None of the Prepetition Litigation Financing Parties control (or have in the past controlled) the Debtors or their properties or operations, have authority to determine the manner in which the Debtors' operations are conducted, or are control persons or insiders of the Debtors by virtue of any actions taken with respect to, or in connection with, related to or arising from the Prepetition Litigation Financing Documents.

(iv) No Claims or Causes of Action. As of the Petition Date, there are no claims or causes of action held by the Debtors or their estates against, or with respect to, the Prepetition Litigation Financing Parties, the DIP Lender, and each of their respective Representatives (as defined below), in each case, in their capacity as such, under or relating to the DIP Documents, the Prepetition Litigation Financing Agreements, and related documentation.

(v) Release. Each of the Debtors and (subject to the provisions of paragraph 13 hereof) each of their estates, on its own behalf and on behalf of its and their respective predecessors, successors, heirs, and past, present and future subsidiaries and assigns, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the Prepetition Litigation Financing Parties, the DIP Lender, and each of their respective Representatives, each in their capacity as such (collectively, the "Released Parties"), from any and all liability to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature and description,

whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, in contract or in tort, in each case, arising out of or related to the Prepetition Litigation Financing Documents, the DIP Facility, the DIP Documents, the DIP Loans, the negotiation thereof and the transactions and agreements reflected thereby, that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter may have against any of the Released Parties by reason of any act, omission, matter, or cause arising at any time on or prior to the date of this Final Order (collectively, the "Released Claims"); provided that the release set forth in this section shall not release any claims against or liabilities of a Released Party that a court of competent jurisdiction determines has resulted from such Released Party's bad faith, fraud, gross negligence or willful misconduct.

I. Prepetition Structural Loan. Pursuant to that certain Loan and Security Agreement dated March 25, 2021 (as amended, restated, amended and restated, modified or supplemented from time to time, the "Prepetition Structural Loan Agreement"), by and among the Borrower, as borrower, and Structural Capital Investments III, LP ("SCI"), Series Structural DCO II series of Structural Capital DCO, LLC ("DCO"), and CEOF Holdings LP ("CEOF" and together with SCI and DCO, "Structural"), Structural asserts that the Debtors incurred an aggregate amount of not less than approximately $[●] million as of the Petition Date, plus any accrued and unpaid interest thereon and any fees, premium, expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges, indemnities, and other obligations due and owing in respect of the Prepetition Structural Loan Agreement (the "Prepetition Structural Obligations"). Structural purports to hold a first priority lien (the "Prepetition Structural Liens") on certain "Collateral" as defined in the Prepetition

Structural Loan Agreement (the "Prepetition Structural Collateral" and together with the Prepetition Litigation Collateral, the "Prepetition Collateral").

J. Inability to Obtain Unsecured Credit. The Debtors are unable to obtain sufficient unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense necessary to maintain and conduct their business.

K. Inability to Obtain Alternate Secured Credit. The Debtors are unable to obtain secured credit on more favorable terms than under the terms and conditions provided for in the DIP Credit Agreement and in this Final Order. The Debtors are also unable to obtain secured credit without granting to the DIP Lender the DIP Liens and the DIP Superpriority Claims and incurring the Adequate Protection Obligations (as defined herein) on the terms and subject to the conditions set forth in this Final Order and in the DIP Documents.

L. Best Interests of Estate. The Debtors believe that it is in the best interests of the Debtors' estates that the Debtors be allowed to enter into the DIP Credit Agreement to obtain postpetition secured financing from the DIP Lender on a final basis up to the full amount of the DIP Facility under the terms and conditions set forth in the DIP Credit Agreement and herein.

M. Good Faith. The DIP Lender and the Prepetition Litigation Financing Parties have acted in good faith in respect of all actions taken by them in connection with or related to negotiating, implementing, documenting, or obtaining requisite approvals of this Final Order, the DIP Facility, the Adequate Protection, the use of Prepetition Litigation Collateral, and the loans, extension of credit and financial accommodations under the DIP Credit Agreement and in

connection with the DIP Facility are fair, reasonable, negotiated at arm's length and in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code to the extent provided therein. The DIP Lender (and its respective successors and assigns) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code to the extent provided therein in the event that this Final Order or any provision hereof is vacated, reversed, modified, on appeal or otherwise. The Prepetition Litigation Financing Parties have acted in good faith regarding the Debtors' continued use of the Prepetition Litigation Collateral in accordance with the terms hereof, and the Prepetition Litigation Financing Parties (and the successors and assigns thereof) shall be entitled to the full protection of sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

N. Need for DIP Facility. Good cause has been shown for the entry of this Final Order and for authorization for the Debtors to obtain financing pursuant to the DIP Documents. The Debtors have an immediate and critical need to obtain the DIP Facility and to use Prepetition Collateral in order to, among other things, permit the orderly continuation of the operation of their business, maintain relationships with vendors, suppliers and customers, make payroll, satisfy other working capital and operational needs and fund expenses of the Chapter 11 Cases. The Debtors' access to sufficient working capital and liquidity through the incurrence of new indebtedness under the DIP Documents and other financial accommodations provided under the DIP Documents is necessary and vital to the preservation and maintenance of the Debtors' going concern value.

O. Necessity of DIP Facility Terms. The terms of the DIP Credit Agreement and this Final Order assuring that the liens and the various claims, superpriority claims, and other protections granted in this Final Order will not be affected by any subsequent reversal or modification of this Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code to the extent provided therein, which is applicable to the postpetition financing arrangement contemplated in the DIP Credit Agreement, are necessary in order to induce the DIP Lender to provide postpetition financing to the Debtors.

P. Adequate Protection of Prepetition Secured Parties. The Prepetition Litigation Financing Parties and, solely to the extent of the validity and security of Structural's perfected interest in the Prepetition Structural Collateral, Structural, are entitled to the adequate protection provided in paragraph 7 of this Final Order (the "Adequate Protection") as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code. Based on the Motion, the Perea Declaration, and on the record and argument presented to the Court at the Interim Hearing and the Final Hearing, and subject to paragraph 8 hereof with respect to Structural, the terms of the Adequate Protection and of the use of the Prepetition Litigation Collateral and the Prepetition Structural Collateral (to the extent applicable) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Litigation Collateral and the Prepetition Structural Collateral (to the extent applicable). To the extent their consent is required, the requisite Prepetition Litigation Financing Parties (as applicable) have consented or are deemed to have

consented to the use of Prepetition Litigation Collateral (other than Cash Collateral), and the relative lien priorities set forth in this Final Order, in each case on the terms set forth in this Final Order and the DIP Documents; *provided* that nothing in this Final Order or the DIP Documents shall (x) be construed as consent by the Prepetition Litigation Financing Parties to the use of Cash Collateral, (y) be construed as consent by any party to the terms of any financing or any other lien encumbering Prepetition Litigation Collateral (whether senior or junior) other than as contemplated by this Final Order, or (z) prejudice, limit or otherwise impair the rights of Prepetition Litigation Financing Parties to seek new, different or additional adequate protection or assert any other right, and the rights of any other party in interest, including the Debtors and the DIP Lender, to object to such relief are hereby preserved.

Q. Approved Budget. The Debtors have prepared and delivered to the DIP Lender an initial budget (the "Initial DIP Budget"), attached to the Perea Declaration as **Exhibit A**. The Initial DIP Budget reflects, among other things, the Debtors' anticipated operating receipts, anticipated operating disbursements, anticipated non-operating disbursements, net operating cash flow and liquidity for each calendar week covered thereby. The Initial DIP Budget may be modified, amended, extended, and updated from time to time in accordance with the DIP Credit Agreement and this Final Order, and once approved by the DIP Lender in accordance with the DIP Credit Agreement and this Final Order, shall modify, replace, supplement or supersede, as applicable, the Initial DIP Budget for the periods covered thereby (the Initial DIP Budget and each subsequent approved budget shall constitute, without duplication, an "Approved Budget"). The Debtors

believe that the Initial DIP Budget was (and continues to be) reasonable under the circumstances, and any Approved Budget in effect as of the date of this Final Order is reasonable under the circumstances. In determining to extend postpetition financing under the DIP Documents and the DIP Orders, including the Final Amount, the DIP Lender is relying upon the Debtors' agreement to comply with the Approved Budget (subject to Permitted Variances), the Interim Order, this Final Order and the other DIP Documents.

R. Priority of Prepetition Liens. The relative priorities and rights among the Prepetition Litigation Financing Parties and Structural with respect to the Prepetition Litigation Collateral and Prepetition Structural Collateral, respectively, shall be governed by the terms of the Prepetition Litigation Financing Agreements or the Prepetition Structural Loan Agreement, respectively, and applicable law, and nothing in this Final Order shall alter such priorities except as expressly set forth herein. Nothing in paragraphs 6(b), 20, or 23 of this Final Order shall determine whether any receipt constitutes cash collateral of Structural (as defined in any order of this Court authorizing the Debtors' use of Structural's cash collateral), and all parties' rights with respect thereto are reserved.

S. Good Cause for Entry. Good and sufficient cause has been shown for entry of this Final Order. The Debtors believe that entry of this Final Order and consummation of the DIP Credit Agreement in accordance with this Final Order and the DIP Documents is in the best interests of the Debtors, their estates and their creditors.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED** on a final basis in accordance with the terms of this Final Order. Any objections to the Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein (other than as preserved herein), are hereby denied and overruled.

2. <u>Authorization of the DIP Facility and DIP Documents</u>.

i. Subject to the terms and conditions contained in this Final Order, the Debtors are hereby expressly authorized and directed, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted to the extent necessary, to execute, deliver, and enter into and perform all obligations under the DIP Credit Agreement and any DIP Documents as may be reasonably required to implement the terms, and effectuate the purposes, of the DIP Credit Agreement and this Final Order. The terms and conditions of the DIP Credit Agreement are hereby approved and ratified on a final basis and the Debtors are authorized and directed to comply with and perform all of the terms and conditions contained therein, including with the Milestones (as defined in the DIP Credit Agreement) set forth on **<u>Schedule 1</u>**. The Borrowers are hereby authorized to borrow up to $15 million in DIP Loans pursuant to the DIP Credit Agreement (inclusive of any Interim Amount borrowed pursuant to the Interim Order); provided that, the Final Amount shall be available upon entry of this Final Order, subject to the satisfaction of the terms and conditions set forth in the DIP Credit Agreement and the other DIP Documents. The proceeds of the DIP Loans shall be used solely for the purposes permitted under the DIP Documents and this Final Order, subject to and in accordance with the Approved Budget (subject to any Permitted Variances).

ii. In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized and directed to perform all acts, to make, execute and deliver all instruments, certificates, agreements, charges, deeds and documents, execute or record pledge and security agreements, mortgages, financing statements and other similar documents, if any, and to pay all fees, expenses and indemnities in connection with or that may be reasonably required, necessary, or desirable in connection with the DIP Facility, including:

a. the execution and delivery of, and performance under, each of the DIP Documents;

b. the execution and delivery of, and performance under, one or more non-material amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in form and substance acceptable to the DIP Lender, it being understood that no further approval of this Court shall be required for any such non-material amendments, waivers, consents or other modifications or the payment of any fees, including attorneys', accountants', appraisers' and financial advisors' fees, and other expenses, charges, costs, indemnities and other like obligations in connection therewith that do not shorten the maturity of the DIP Facility, increase the aggregate amount of the DIP Loans, increase the rate of interest or fees payable thereunder, or release any DIP Liens. Updates, modifications, and supplements to the Approved Budget shall not require any further approval of this Court;

c. the performance of all other acts required under or in connection with the DIP Documents, including the granting of the DIP Liens and the DIP Superpriority Claims and perfection of the DIP Liens as permitted herein and therein, and to perform such other and further acts as may be necessary, desirable, or appropriate in connection therewith, in each case in accordance with the terms of the DIP Documents; provided that, solely with respect to the payment of professional fees and expenses, such payment is subject to the provisions of paragraph 14 herein.

d. the non-refundable payment to the DIP Lender of all fees, expenses and rights received as consideration under, or in connection with, the DIP Credit Agreement, including any professional fees which shall be paid consistent with paragraph 14 herein (the payment of which fees shall be irrevocable, and shall be, and shall be deemed to have been, approved upon entry of the Interim Order, whether any such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, disallowance, impairment, or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, applicable non-bankruptcy law or otherwise by any person or entity), any fees or premiums in connection with the DIP Facility, including any amendment

fees or premiums, servicing fees, audit fees, liquidator fees, structuring fees, administrative agent fees, collateral agent fees, security trustee fees, upfront fees, closing fees, commitment premiums, exit fees, closing date fees, or agency fees, any amounts due (or that may become due) in respect of any indemnification and expense reimbursement obligations, in each case referred to in the DIP Credit Agreement or DIP Documents, and the reasonable and documented costs and expenses as may be due from time to time in accordance with the DIP Documents or this Final Order, including, without limitation, reasonable and documented fees and expenses of the professionals retained by, or on behalf of, the DIP Lender, whether incurred prepetition or postpetition (including, without limitation, those of Ropes & Gray, LLP as counsel to the DIP Lender) (collectively, the "DIP Fees and Expenses") without the need to file retention motions or fee applications or provide detailed time breakdowns; provided, however, that (a) the Upfront Fee (as defined in the DIP Credit Agreement), equal to two percent (2.0%) of the total amount of the DIP Facility, shall be approved on a final basis, fully earned, allowed, non-refundable, and not subject to reduction, setoff, or recoupment upon entry of the Interim Order and shall be payable out of the proceeds of the Interim Amount or cash on hand within two (2) Business Days after entry of the Interim Order, and (b) subject to Section 2.6(c) of the DIP Credit Agreement, the Exit Fee (as defined in the DIP Credit Agreement), equal to five percent (5.0%) of the total amount of the DIP Facility, shall be approved on a final basis, fully earned, allowed, non-refundable, and not subject to reduction, setoff, or recoupment upon entry of the Interim Order and shall be due and payable in cash upon the earliest of (i) the Maturity Date, (ii) Payment in Full of the DIP Obligations, or (iii) on a pro-rata basis for any mandatory or voluntary prepayment of the DIP Obligations; provided, further, that on the date that the DIP Facility is first drawn (the "Closing Date"), all Fees and Expenses incurred on or prior to the Closing Date shall be payable without the need for any professional engaged by, or on behalf of, the DIP Lender or the Prepetition Litigation Financing Parties to first deliver an invoice or other supporting documentation to the Notice Parties[5];

iii. The failure to reference or discuss any particular provision of the DIP Credit Agreement or this Final Order shall not affect the validity or enforceability of

[5] As used herein, "Notice Parties" means lead restructuring counsel to the Debtors, counsel to the DIP Lender, counsel to the Prepetition Litigation Financing Parties, counsel to any statutory committees appointed in these Chapter 11 Cases, and the U.S. Trustee.

any such provision. In the event of a conflict between this Final Order and the DIP Credit Agreement, the terms and conditions of this Final Order shall govern.

3. DIP Obligations. Upon execution and delivery of the DIP Documents, the DIP Documents constituted (and as of the date of the entry of this Final Order, continue to constitute) legal, valid, binding and non-avoidable obligations of the Debtors, enforceable against each Debtor and their respective estates and any successors thereto, including any trustee appointed in these chapter 11 cases, or in any case under chapter 7 of the Bankruptcy Code upon conversion of any of these cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"). Upon execution and delivery of the DIP Documents, the DIP Obligations included (and, as of the date of entry of this Final Order, continue to include) all loans and any other indebtedness or obligations, contingent or absolute, which may from time to time be owing by any of the DIP Loan Parties to the DIP Lender under the DIP Documents and the DIP Orders, including the Final Amount and all DIP Fees and Expenses, indemnities and other amounts. The DIP Loan Parties shall be jointly and severally liable for the DIP Obligations. Except as permitted hereby, including paragraph 13 below, no obligation, payment, transfer, or grant of security interest hereunder or under the DIP Documents to the DIP Lender shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense,

avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4. DIP Superpriority Claims. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the DIP Loan Parties on a joint and several basis (without the need to file any proof of claim) payable from all prepetition and postpetition property of the Debtors, with priority over any and all claims against the DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, in each case to the extent permitted under section 364(c)(1), including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code, and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113 and 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, except for the Carve Out. The DIP Superpriority Claims shall be payable from, and have recourse to, all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, the "Avoidance Actions") but including any

proceeds or property recovered as a result of any Avoidance Actions, whether by judgment, settlement or otherwise (collectively, the "Avoidance Proceeds")), subject only to the Carve Out. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code to the extent provided therein in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

5. Grant of DIP Liens. As security for all DIP Obligations, including, for the avoidance of doubt, the Interim Amount, the Final Amount, and any DIP Loans made after the date of this Final Order, effective and automatically properly perfected as of the date the Interim Order was entered (without regard to the date such DIP Obligations are incurred), and without the necessity of execution, recordation or filing of any perfection document or instrument, or the possession or control by the DIP Lender of, or over, any DIP Collateral, without any further action by the DIP Lender, the following valid, binding, continuing, fully perfected, enforceable and non-avoidable DIP Liens were, by the Interim Order, and hereby are granted to the DIP Lender (all property identified below being collectively referred to as the "DIP Collateral"):

i. (a) Liens on Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, subject only to the Carve Out, a first-priority lien on and security interest in all tangible and intangible prepetition and postpetition property of the Debtors, including the Borrowers' cash (or investments thereof), equipment, goods, inventory, accounts, insurance policies and proceeds thereof, instruments, intercompany claims, contracts and contract rights, securities, letters of credit, leaseholds, tort claims, causes of action, intellectual property, and any proceeds, rents, or profits from the foregoing, and all of the equity interests in all non-Debtor subsidiaries, whether existing on the Petition Date or thereafter acquired, and all proceeds, products, rents, and profits thereof, that, as of the Petition Date, is not subject to (i) a valid, perfected and non-avoidable lien or (ii) a valid and non-avoidable lien in

existence on the Petition Date that is perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code, other than the Avoidance Actions but including the Avoidance Proceeds (collectively, the "Unencumbered Property"), which shall constitute unencumbered collateral (the "Unencumbered Collateral").

ii. (b) Junior Liens on Prepetition Collateral. Pursuant to section 364(c)(3) of the Bankruptcy Code, subject to the Carve Out, a lien junior to the Prepetition Structural Liens on the Prepetition Structural Collateral, solely to the extent the Bankruptcy Court determines such claims are valid, secured and perfected, and junior to the Prepetition Litigation Liens on the Prepetition Litigation Collateral.

iii. (c) No Senior Liens. The DIP Liens shall not be (i) subject or subordinate to or made pari passu with (A) any lien or security interest avoided and preserved under section 551 of the Bankruptcy Code, (B) unless otherwise provided in the DIP Documents or this Final Order, any liens arising after the Petition Date, including governmental liens, (C) any intercompany liens; or (ii) subordinated to or made pari passu with any other lien under section 363 or 364 of the Bankruptcy Code or otherwise.

6. Protection of DIP Lender's Rights.

(a) So long as there are any DIP Obligations outstanding or the DIP Lender has any outstanding DIP Loans under the DIP Documents, the Prepetition Litigation Financing Parties shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Litigation Financing Documents or this Final Order, including the Adequate Protection Liens, or otherwise seek to exercise or enforce any rights or remedies against the DIP Collateral; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, any DIP Collateral to the extent such transfer, disposition, sale or release is authorized under the DIP Documents; (iii) not file any financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral other than (x) to perfect the liens granted pursuant to this Final Order (including by filing financing statements or other documents) or (y) as may be required by applicable state or foreign law to complete a previously commenced process of perfection or to continue the perfection of valid and non-avoidable liens or security interests existing as of the Petition Date; and (iv) deliver or cause to be delivered, at the DIP Loan Parties'

cost and expense, any termination statements, releases and/or assignments in favor of the DIP Lender or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of the DIP Collateral subject to any sale or disposition permitted by the DIP Documents and this Final Order.

(b) Any proceeds of the Unencumbered Collateral received by Prepetition Litigation Financing Parties or Structural, respectively, whether in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise, shall be segregated and held in trust for the benefit of the DIP Lender, and forthwith paid over to the DIP Lender in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct; *provided*, *however*, that nothing in this paragraph 6(b) shall prime or otherwise impair any setoff rights of Structural, to the extent such rights exist. The DIP Lender is hereby authorized to make any such endorsements. This authorization is coupled with an interest and is irrevocable.

(c) The DIP Loan Parties shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except as otherwise permitted by the DIP Documents or an order of the Court.

(d) Upon the occurrence and during the continuation of an Event of Default that has not been waived by the DIP Lender, the DIP Lender may, following delivery of written notice (a "Termination Notice"), which may be done by e-mail, on not less than five (5) business days' notice (such five (5) business day period, the "Remedies Notice Period") to lead restructuring counsel to the Debtors, counsel to each of the Prepetition Litigation Financing Parties, the Creditors' Committee (if appointed), and to the U.S. Trustee (the "Remedies Notice Parties"), in each case without further notice to, hearing of, or order from this Court: (a) terminate the DIP Facility and any DIP Document as to any future liability or obligation of the DIP Lender but without affecting any of the DIP Obligations or the DIP Liens; (b) declare all DIP Obligations to be immediately due and payable; and (c) invoke the right to charge interest at the default rate under the DIP Documents. Any automatic stay otherwise applicable to the foregoing, whether arising under sections 105 or 362 of the Bankruptcy Code or otherwise, is hereby modified to the extent necessary to permit the DIP Lender to effectuate the foregoing, provided that, during the Remedies Notice Period, the Debtors, the Creditors' Committee (if appointed) and/or any party in interest shall be entitled to seek an emergency hearing (with the DIP Lender consenting to such emergency hearing) with the Court for the purpose of contesting whether, in fact, an Event of Default has occurred and

is continuing. Upon delivery of a Termination Notice by the DIP Lender, without further notice or order of the Court, the Debtors' ability to incur additional DIP Obligations hereunder will, subject to the expiration of the Remedies Notice Period and unless the Court orders otherwise, automatically terminate and the DIP Lender will have no further obligation to provide any DIP Loans or other financial accommodations. As soon as reasonably practicable following receipt of a Termination Notice, the Debtors shall file a copy of same on the docket.

(e) Immediately upon the occurrence and during the continuation of an Event of Default, unless such Event of Default has been waived by the DIP Lender, as applicable, pursuant to section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order from, the Court, subject to the terms of this Final Order, the DIP Lender may send a Carve Out Trigger Notice to the parties set forth in paragraph 9(i), which shall trigger the Carve Out pursuant to the terms hereof. For the avoidance of doubt, a Carve Out Trigger Notice shall not, by itself, constitute a Termination Notice or commence the Remedies Notice Period. The automatic stay in the Chapter 11 Cases otherwise applicable to the DIP Lender and Prepetition Litigation Financing Parties is hereby modified so that upon expiration of the Remedies Notice Period following delivery of a Termination Notice pursuant to paragraph 6(d): (a) the DIP Lender shall be entitled to exercise its rights and remedies in accordance with the DIP Loan Documents and this Final Order to satisfy the DIP Obligations, DIP Superpriority Claims, and DIP Liens, subject to the Carve Out; and (b) subject to the foregoing clause (a), the Prepetition Litigation Financing Parties shall be entitled to exercise their respective rights and remedies to the extent available in accordance with the Prepetition Litigation Financing Agreements and this Final Order. During the Remedies Notice Period, the Debtors and the Creditors' Committee (if any) shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court solely for the purpose of contesting whether an Event of Default has occurred; provided, that nothing herein shall be deemed to limit the Court's ability to consider or grant any relief the Court determines appropriate. Absent Court order prior to the expiration of the Remedies Notice Period to the contrary, the automatic stay, as to the DIP Lender and Prepetition Litigation Financing Parties, shall be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, the DIP Lender and Prepetition Litigation Financing Parties shall be permitted to exercise all remedies set forth herein, in the DIP Loan Documents, the Prepetition Litigation Financing Documents, and as otherwise available at law without further order of or application or motion to this Court consistent with this Final Order. Upon expiration of the Remedies Notice Period, the Debtors shall waive their right to, and shall not be

entitled to, seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lender and Prepetition Litigation Financing Parties under this Final Order.

(f) No rights, protections or remedies of the DIP Lender or the Prepetition Litigation Financing Parties granted by this Final Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

7. Adequate Protection of Prepetition Secured Parties. The Prepetition Litigation Financing Parties and, solely to the extent of the validity and security of Structural's perfected interest in the Prepetition Structural Collateral, Structural, are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral for the Diminution in Value (such claims, the "Adequate Protection Claims"). In consideration of the foregoing, the Prepetition Litigation Financing Parties and Structural (and with respect to Structural, solely to the extent of the validity and security of Structural's perfected interest in the Prepetition Structural Collateral) are hereby granted the following as Adequate Protection on account of their Adequate Protection Claims, and as an inducement to their consent to the use of the Prepetition Collateral (collectively, the "Adequate Protection Obligations"):

i. Adequate Protection Liens. The Prepetition Litigation Financing Parties and Structural (to the extent applicable) are hereby granted (effective and perfected as of the date of entry of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements,

financing statements or other agreements), to secure their Adequate Protection Claims (to the extent applicable), a valid, perfected replacement security interest in and lien upon all of (i) with respect to the Prepetition Litigation Financing Parties, the Prepetition Litigation Collateral, and (ii) with respect to Structural, the Prepetition Structural Collateral (solely to the extent of the validity and security of Structural's perfected interest in the Prepetition Structural Collateral) (the "Adequate Protection Liens"), subject and subordinate to (a) the DIP Liens, (b) the Prepetition Litigation Liens, (c) the Prepetition Structural Liens and (d) the Carve Out.

ii. Prepetition Secured Parties' Superpriority Claim. To the extent the Adequate Protection Liens provided for herein prove insufficient to protect the interest of the Prepetition Litigation Financing Parties and Structural in and to the Prepetition Litigation Collateral and Prepetition Structural Collateral (as, and to the extent applicable), the Prepetition Litigation Financing Parties and Structural are hereby granted an allowed superpriority administrative expense claim on account of such Adequate Protection Claims as provided for in section 507(b) of the Bankruptcy Code (the "Adequate Protection Superpriority Claim") which Adequate Protection Superpriority Claim shall be payable from and have recourse to the Unencumbered Collateral and all proceeds thereof. The Adequate Protection Superpriority Claim shall be subject and subordinate only to (a) the Carve Out, and (b) the DIP Superpriority Claims.

iii. Payment of Professional Fees. Subject to the procedures set forth in paragraph 14 herein, the Debtors shall pay in full in cash and in immediately available funds all reasonable and documented fees, including professional fees, and out-of-pocket expenses (the "Adequate Protection Fees and Expenses," and together with the DIP Fees and Expenses, the "Fees and Expenses") incurred by the Prepetition Litigation Financing Parties in the Chapter 11 Cases, including but not limited to those of Ropes & Gray LLP.

iv. Maintenance of Insurance for Collateral. The Debtors shall continue to maintain and insure the DIP Collateral and the Prepetition Litigation Collateral and Prepetition Structural Collateral in amounts and for the risks as required under the Prepetition Litigation Financing Agreements, the Prepetition Structural Loan Agreement, and the DIP Documents.

v. Reporting Requirements. As further adequate protection, the Debtors shall comply with all reporting requirements set forth in the DIP Credit Agreement and provide the Prepetition Litigation Financing Parties and any statutory

committees appointed in these cases with all written financial reporting, periodic reporting, and other information required to be provided to the DIP Lender under the DIP Documents, including with regard to any Approved Budget and any related variance reporting (the "Adequate Protection Reporting Requirement"). Upon indefeasible payment in full of all DIP Obligations, the Prepetition Litigation Financing Parties shall continue to be entitled to satisfaction of the Adequate Protection Reporting Requirement.

8. Reservation of Rights of Prepetition Secured Parties. Under the circumstances and given that the above-described Adequate Protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the Adequate Protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Litigation Financing Parties and makes no finding at this time as to whether such Adequate Protection is reasonable and sufficient to protect the interests of Structural (to the extent applicable); *provided* that the Prepetition Litigation Financing Parties or Structural (subject to any applicable contractual limitations on such rights) may request further or different adequate protection and the Debtors or any other party in interest may contest any such request; provided further that, upon the effective date of a confirmed plan of reorganization that provides for the indefeasible payment in full in cash of all DIP Obligations, the Adequate Protection Liens and Adequate Protection Superpriority Claims shall be satisfied and released in the manner provided in such plan. Upon such payment in full, the DIP Lender shall execute and deliver, at the Debtors' cost and expense, such termination statements, lien releases, and other documents as are necessary to evidence the release of the DIP Liens and Adequate Protection Liens.

9. Carve Out.

i. Notwithstanding anything to the contrary herein, the Debtors' obligations to the DIP Lender and Prepetition Litigation Financing Parties, and the liens, security interests and superpriority claims granted by this Final Order or under the DIP Documents or Prepetition Litigation Financing Agreements, and the payment of all such obligations, shall be subject and subordinate in all respects to payment of the following fees and expenses: (a) the payment of U.S. Trustee Fees; (b) reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (c) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, but subject to final allowance by the Court, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtors Professionals"), and any statutory committees appointed in this case (the "Committee Professionals" and, together with the Debtors Professionals, the "Estate Professionals") at any time before the delivery by the DIP Lender of a Carve Out Trigger Notice (as defined herein) and without regard to whether such fees and expenses are provided for in any Approved Budget or were invoiced after the Carve Out Trigger Notice Date (the amounts set forth in this clause (c) being the "Pre Carve Out Trigger Notice Cap"); and (d) the Allowed Professional Fees of Debtors Professionals and the Committee Professionals in an aggregate amount not to exceed $175,000 incurred on or after the first business day following delivery by the DIP Lender of the Carve Out Trigger Notice (the "Post Carve Out Trigger Notice Cap" and the Pre Carve Out Trigger Notice Cap together with the Post Carve Out Trigger Notice Cap and the amounts set forth in clauses (a) and (b), the "Carve Out Cap") (the foregoing clauses (a) through (d), collectively, the "Carve Out"). The term "Carve Out Trigger Notice" shall mean a written notice from the DIP Lender or its counsel stating that the Post Carve Out Trigger Notice Cap has been invoked, delivered by hard copy or email to lead bankruptcy counsel for the Debtors, the U.S. Trustee, the Prepetition Litigation Financing Parties, and counsel to any statutory committees appointed in this case, if any, which notice may be delivered following the occurrence and during the continued existence of an Event of Default (as defined in the DIP Credit Agreement) under the terms of this Final Order. The term "Carve Out Trigger Notice Date" shall mean the day on which a Carve Out Trigger Notice is delivered.

ii. On the day on which a Carve Out Trigger Notice is given (the "Carve Out Trigger Date") the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to then

unpaid amounts of the Allowed Professional Fees. The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims. On the Carve Out Trigger Date, the Carve Out Trigger Notice shall also (i) be deemed a request by the Debtors for DIP Loans under the DIP Facility (the commitment of the DIP Lender in respect thereof, the "DIP Commitments") (on a pro rata basis based on the then outstanding DIP Commitments), in an amount equal to the Post Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Loans) and (ii) constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post Carve Out Trigger Notice Cap. The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such Allowed Professional Fees benefitting from the Post Carve Out Trigger Notice Cap (the "Post Carve Out Trigger Notice Reserve," and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims. On the first Business Day following the Carve Out Trigger Date, notwithstanding anything in the DIP Credit Agreement to the contrary, including with respect to the existence of an Event of Default, the failure of the Debtors to satisfy any or all of the conditions precedent for DIP Loans under the DIP Facility, any termination of the DIP Commitments following an Event of Default, or the occurrence of the Maturity Date, the DIP Lender shall make available such DIP Lender's share with respect to such borrowing in accordance with the DIP Facility.

iii. Any payment or reimbursement made on or after the occurrence of the Carve Out Trigger Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis. Any funding of the Carve Out shall be added to, and made part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Final Order, the DIP Documents, the Bankruptcy Code, and applicable law.

iv. The Prepetition Litigation Financing Parties and the DIP Lender reserve the right to object to the allowance of any fees and expenses, whether or not such fees and expenses were incurred in accordance with the Approved Budget. Except for permitting the funding of the Carve Out as provided herein, the Prepetition Litigation Financing Parties and DIP Lender shall not be responsible for the direct payment or reimbursement of any fees or expenses

of any Estate Professionals incurred in connection with the Chapter 11 Cases or any Successor Cases, regardless of whether payment of such fees or disbursement has been allowed by the Court. Nothing in this Final Order or otherwise shall be construed to obligate the DIP Lender or the Prepetition Litigation Financing Parties in any way to pay compensation to or reimburse expenses of any Estate Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or expense reimbursement.

10. Budget Reporting. No later than 5:00 p.m. (ET) on the third business day of each week, the Debtors shall deliver to the Prepetition Litigation Financing Parties, the DIP Lender, and any statutory committees appointed in this case a variance report comparing actual cash receipts and disbursements, on a line-item by line-item basis and a cumulative basis, for the applicable Budget Testing Period (as defined in the DIP Credit Agreement) to projected cash receipts and disbursements (other than fees and expenses of the DIP Lender) for such Budget Testing Period set forth in the Approved Budget and explaining in reasonable detail all material variances (each a "Variance Report," which Variance Report shall be in a form satisfactory to the DIP Lender). The Debtors covenant that, for each Budget Testing Period, (a) overall disbursements (other than fees and expenses of the DIP Lender) shall not exceed the corresponding amounts in the Approved Budget by more than ten percent (10%) and (b) no individual line-item disbursement shall exceed the corresponding amount in the Approved Budget by more than five percent (5%) (collectively, the "Permitted Variances"); provided, however, that the Debtors shall be entitled to reserve budgeted professional fees on a weekly basis, such fees to be reconciled as to actuals upon actual billing, Bankruptcy Court approval and payment. To the extent any Variance Report reflects that actual disbursements for any line item are less than the amount set forth in the Approved Budget

for such line item (a "Positive Variance"), such Positive Variance may be carried forward to offset a negative variance in such same line item for the subsequent Budget Testing Period; provided that such Positive Variance may only be used as an offset and may not further increase a Positive Variance for any line item during the subsequent Budget Testing Period. Any variance in excess of a Permitted Variance shall constitute an Event of Default under the DIP Documents. The Debtors shall also provide Structural, on a weekly basis, a report identifying the amount and location of any cash or proceeds that Structural asserts are its cash collateral.

11. No later than 5:00 p.m. (ET) on the third business day of the fourth week of each month, the Debtors shall provide to the DIP Lender and its counsel for approval (which approval may be granted or withheld in the DIP Lender's sole discretion, provided that such approval shall not be unreasonably withheld) an updated 13-week cash flow forecast, broken down by week and including anticipated uses of the proceeds of the DIP Loans for such period, in form and substance acceptable to the DIP Lender (each, an "Updated Budget"). The term "DIP Budget" shall mean the Approved Budget in effect as of the date of this Final Order until such time as an Updated Budget is approved, following which such Updated Budget shall constitute the DIP Budget until a subsequent Updated Budget is so approved.

12. Access to Records. The Debtors shall provide the DIP Lender, Prepetition Litigation Financing Parties, and their respective advisors with all reporting and other information required to be provided to the DIP Lender under the DIP Loan Documents. In addition to, and without limiting, whatever rights to access the DIP Lender has under the DIP Loan Documents,

upon reasonable advance notice to counsel to the Debtors (email being sufficient), at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the DIP Lender to have reasonable access to (a) inspect the Debtors' assets, and (b) regularly scheduled meetings as mutually agreed with senior management of the Debtors and other company advisors (during normal business hours), excluding any information for which confidentiality is owed to third parties, information subject to attorney client or similar privilege, or where such disclosure would not be permitted by any applicable requirements of law or any binding agreement entered into prior to the date of the Interim Order that would violate confidentiality obligations.

13. Effect of Debtors' Stipulations on Third Parties. The Debtors' stipulations, admissions, agreements, and releases contained in this Final Order shall be binding upon the Debtors, their estate and their successor(s) in all circumstances and for all purposes and the Debtors are deemed to have irrevocably waived and relinquished in all circumstances and for all purposes any and all Challenges (as defined herein). The Debtors' stipulations, admissions, agreements and releases contained in this Final Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases and any other person or entity acting or seeking to act on behalf of the Debtors' estate including any Chapter 7 or Chapter 11 trustee or examiner appointed or elected for the Debtors, in all circumstances and for all purposes unless: (a)(i) a party in interest with standing (other than the Debtors, as to which any rights to challenge the stipulations, admissions, and releases contained

herein are irrevocably waived and relinquished) has, under the appropriate Bankruptcy Rules, timely and properly filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than the earlier of (x) as to any statutory committees appointed in this case, only, forty-five (45) calendar days after the appointment of any statutory committees appointed in this case or, if longer, sixty (60) days from entry of the Interim Order, (y) if the Chapter 11 Cases are converted to chapter 7 and a chapter 7 trustee or a chapter 11 trustee is appointed or elected prior to the end of the Challenge Period, then the Challenge Period for any such chapter 7 trustee or chapter 11 trustee shall be extended (solely as to such chapter 7 trustee or chapter 11 trustee) to the date that is the later of (1) sixty (60) calendar days after entry of the Interim Order, or (2) the date that is thirty (30) calendar days after its appointment, and (z) as for all other parties in interest, the earlier of (I) sixty (60) calendar days after entry of the Interim Order or (II) the deadline established by the Bankruptcy Court for filing objections to confirmation of a Plan of Reorganization (as defined in the DIP Credit Agreement) (the "Plan Objection Deadline"); and (a)(ii) any such later date as has been agreed to by the DIP Lender or the Prepetition Litigation Financing Parties (the time period established by the foregoing clauses (a)(i)-(a)(ii), the "Challenge Period"), (b) subject to paragraph 15 herein, objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Litigation Financing Documents, the Prepetition Litigation Liens, or otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses

(collectively, the "Challenges") against the Prepetition Litigation Financing Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each, a "Representative" and, collectively, the "Representatives") in connection with matters related to the Prepetition Litigation Financing Documents, the Prepetition Litigation Liens and the Prepetition Litigation Collateral; and (c) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided, however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred. If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then the Debtors' stipulations, admissions, agreements and releases contained in this Final Order shall be binding on all parties in interest. If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Final Order shall nonetheless remain binding and preclusive on each other statutory or nonstatutory committees appointed or formed in the Chapter 11 Cases and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.

For the avoidance of doubt, nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estate, including, without limitation, Challenges with respect to the Prepetition Litigation Financing Documents or the Prepetition Litigation Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay the Chapter 11 Cases or confirmation of any plan of reorganization; *provided, however*, that the foregoing shall not preclude any party from seeking a stay pending appeal. Upon a successful Challenge brought pursuant to this paragraph 13, the Court may fashion an appropriate remedy. For the avoidance of doubt, any party in interest that fails to file a Challenge prior to the expiration of the applicable Challenge Period, including the Plan Objection Deadline if earlier, shall be deemed to have forever waived and released all Challenges, and the Debtors' stipulations and releases contained herein shall be binding on such party for all purposes, including for purposes of confirmation of any Plan of Reorganization; *provided further* that all parties' rights are reserved to seek an extension of the Challenge Period by motion on notice to the Notice Parties. Notwithstanding anything to the contrary in this Final Order, any chapter 7 or chapter 11 trustee appointed or elected in the Debtors' cases shall, until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such

adversary proceeding or contested matter, be bound by the admissions, confirmations, releases, and stipulations of the Debtors in this Final Order.

14. Payment of Fees and Expenses.

*(a)* The Debtors were, by the Interim Order, and hereby are authorized to pay, in accordance with this Final Order, (i) the principal, interest, fees, payments, expenses, and other amounts described in the DIP Loan Documents as such amounts become due and without need to obtain further Court approval, including the fees set forth in the DIP Credit Agreement, and all other payments and other amounts owed to the DIP Lender, and (ii) the reasonable and documented fees and disbursements of counsel and other professionals to the extent set forth in paragraphs 2(ii)(d) and 7(iii) of this Final Order, whether or not such fees arose before or after the Petition Date, all to the extent provided in this Final Order or the DIP Loan Documents. Notwithstanding the foregoing, the Debtors were, by the Interim Order, and hereby are authorized to pay on the Closing Date all reasonable and documented fees, costs, and expenses, including the fees and expenses of counsel to the DIP Lender and the Prepetition Litigation Financing Parties, incurred on or prior to such date without the need for any professional engaged by the DIP Lender and the Prepetition Litigation Financing Parties to be subject to the procedures set forth in paragraph 14(b). The Debtors are further authorized to pay, on the date of the funding of the Additional Draw and on the date of the funding of the Final Amount, all reasonable and documented fees, costs, and expenses of counsel to, and other professionals engaged by, the DIP Lender and the Prepetition

Litigation Financing Parties incurred through such date, without the need for any such professional to be subject to the procedures set forth in paragraph 14(b).

(b) The Debtors shall be jointly and severally obligated to pay all fees and expenses described above, which obligations owed to the DIP Lender shall constitute DIP Obligations. The Debtors shall pay the reasonable and documented professional fees, expenses, and disbursements of professionals to the extent provided for in paragraphs 2(ii)(d) and 7(iii) of this Final Order (collectively, the "Lender Professionals" and each, a "Lender Professional") no later than ten business days (the "Review Period") after the receipt by counsel for the Debtors, any Creditors' Committee appointed in these chapter 11 cases, or the U.S. Trustee of each of the invoices therefor (the "Invoiced Fees") and without the necessity of filing formal fee applications or complying with the U.S. Trustee Guidelines, including such amounts arising before the Petition Date. Invoiced Fees shall be in the form of an invoice summary for professional fees and expenses incurred during the pendency of the Chapter 11 Cases, and such invoice summary shall not be required to contain time entries or timekeeper summaries reflecting hours billed, but shall include a list of the professionals who performed services, their hourly rates and class year, and a general, brief description of the nature of the matters for which services were performed, which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver

of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law.

(c) The Debtors, any Creditors' Committee, or the U.S. Trustee may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, no later than 12:00 p.m. (ET) on the last day of the Review Period, a Debtor, any Creditors' Committee that may be appointed in these Chapter 11 Cases, or the U.S. Trustee notifies the submitting party in writing setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least ten days' prior written notice to the submitting party of any hearing on such motion or other pleading). Upon receipt of any invoice, and during the Review Period, the Debtors shall deposit and hold in escrow in a segregated account an amount equal to the full amount of such Invoiced Fees, which amounts shall be held in trust solely for payment of such Invoiced Fees. Any hearing to consider such an objection to the payment of any fees, costs, or expenses set forth in a professional fee invoice hereunder shall be limited to the reasonableness of the fees, costs and expenses that are the subject of the objection. For the avoidance of doubt, the Debtors shall pay in full all Invoiced Fees other than the Disputed Invoiced Fees within five (5) business days following the expiration of the Review Period, and shall continue to hold any Disputed Invoiced Fees in escrow until the dispute is resolved by agreement or order of the Court.

(d) In addition, the Debtors hereby indemnify each of the DIP Lender and the Prepetition Litigation Financing Parties (solely with respect to any Challenge), and each of their respective affiliates, successors, and assigns and the officers, directors, employees, agents, attorneys, advisors, controlling persons, and members of each of the foregoing (each, an "Indemnified Person"), and hold them harmless from and against all costs, expenses (including reasonable and documented legal fees and expenses), and liabilities arising out of or relating to the transactions contemplated hereby and any actual or proposed use of the proceeds of any loans made under the DIP Facility, as and to the extent provided in the DIP Credit Agreement or the applicable Prepetition Litigation Financing Agreements. The Debtors' obligations under this paragraph 14(d) owed to the DIP Lender shall constitute DIP Obligations. No Indemnified Person shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to the Debtors or any shareholders or creditors of the Debtors for or in connection with the transactions contemplated hereby, except to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Person's gross negligence or willful misconduct. In no event shall any Indemnified Person or any Debtor be liable on any theory of liability for any special, indirect, consequential, or punitive damages; provided that this shall not affect the Debtors' indemnification obligations pursuant to the first sentence of this paragraph 14(d).

15. <u>Limitation on Use of DIP Proceeds and Collateral</u>. The Debtors shall use proceeds from the DIP Facility solely in accordance with the Approved Budget. Notwithstanding any other

provision of this Final Order or any other order entered by the Court, no proceeds of the DIP Facility, any DIP Collateral, Prepetition Litigation Collateral or any portion of the Carve Out, may be used in connection with (i) the investigation, threatened initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (a) against the DIP Lender, the Prepetition Litigation Financing Parties, or their respective predecessors-in-interest, agents, affiliates, Representatives, attorneys, or advisors, in each case in their respective capacities as such, or any action purporting to do the foregoing in respect of the DIP Obligations, DIP Liens, DIP Superpriority Claims, the Prepetition Litigation Liens and/or the Adequate Protection Obligations and Adequate Protection Liens granted to the Prepetition Litigation Financing Parties, as applicable, or (b) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to the DIP Obligations, the Prepetition Litigation Financing Obligations, the DIP Liens, the Prepetition Litigation Liens and/or the liens, claims, rights, or security interests securing or supporting the DIP Obligations granted under the DIP Orders, the DIP Documents or the Prepetition Litigation Financing Documents, in the case of each (a) and (b), without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise (provided that, notwithstanding anything to the contrary herein, the proceeds of the DIP Facility and/or DIP Collateral may be used by any statutory committees appointed in this case to investigate but not to prosecute the claims and liens of the Prepetition Litigation Financing Parties up to an aggregate cap of no more than $25,000); (ii) subject to paragraph 13 herein, attempts to prevent,

hinder, or otherwise delay or interfere with the Prepetition Litigation Financing Parties' or the DIP Lender's, as applicable, enforcement or realization on the Prepetition Litigation Financing Obligations, Prepetition Litigation Collateral, DIP Obligations, DIP Collateral, and the liens, claims and rights granted to such parties under the DIP Orders, as applicable, each in accordance with the DIP Documents, the Prepetition Litigation Financing Documents and this Final Order; (iii) attempts to seek to modify any of the rights and remedies granted to the Prepetition Litigation Financing Parties or the DIP Lender under this Final Order, the Prepetition Litigation Financing Documents or the DIP Documents, as applicable, other than in accordance with this Final Order; (iv) to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens and claims granted hereunder or permitted pursuant to the DIP Documents) or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and Adequate Protection Superpriority Claims; or (v) to pay or to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved or authorized by the Court, agreed to in writing by the DIP Lender, expressly permitted under this Final Order or permitted under the DIP Documents (including the Approved Budget, subject to Permitted Variances), in each case unless all DIP Obligations, Prepetition Litigation Financing Obligations, Adequate Protection Obligations, and claims granted to the DIP Lender and Prepetition Litigation Financing Parties under this Final Order, have been refinanced or paid in full in cash or otherwise agreed to in writing by the DIP Lender.

16. No Monitoring Obligation. The DIP Lender shall not have any obligation or responsibility to monitor any Debtor's use of the DIP Facility, and the DIP Lender may rely upon each Debtor's representations that the use of the DIP Facility at any time is in accordance with the requirements of the DIP Orders and the DIP Loan Documents, including but not limited to the Approved Budget.

17. Section 506(c) Claims. No costs or expenses of administration of the Chapter 11 Cases or any Successor Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral (including Cash Collateral) or the Prepetition Litigation Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender or the Prepetition Litigation Financing Parties, as applicable, and no consent shall be implied from any other action, inaction or acquiescence by the DIP Lender or the Prepetition Litigation Financing Parties and nothing contained in this Final Order shall be deemed to be a consent by the DIP Lender or the Prepetition Litigation Financing Parties to any charge, lien, assessment or claims against the DIP Collateral or the Prepetition Litigation Collateral under section 506(c) of the Bankruptcy Code or otherwise.

18. No Marshaling. In no event shall the DIP Lender or the Prepetition Litigation Financing Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine, with respect to the DIP Collateral, the DIP Obligations, the Prepetition Litigation Financing Obligations, or the Prepetition Litigation Collateral, without prejudice to any greater rights,

protections or waivers to which the DIP Lender or the Prepetition Litigation Financing Parties may be entitled under this Final Order. Proceeds of the DIP Collateral shall be received and applied pursuant to the DIP Loan Documents, the Prepetition Litigation Financing Agreements, and this Final Order, notwithstanding any other agreement or provision to the contrary.

19. Equities of the Case. (a) the Prepetition Litigation Financing Parties shall be entitled to all the rights and benefits of section 552(b) of the Bankruptcy Code and (b) the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Litigation Financing Parties with respect to any proceeds, products, offspring, or profits of any of the DIP Collateral (including the Prepetition Litigation Collateral).

20. Except as otherwise expressly set forth herein, subject to the provisions set forth in paragraph 14 herein, any and all payments or proceeds remitted to the DIP Lender or the Prepetition Litigation Financing Parties pursuant to the provisions of this Final Order, the DIP Documents, or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment, or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by through or on behalf of the Debtors.

21. Section 364(e) Protections; Modification of Final Order. Based on the findings set forth in this Final Order, the DIP Lender and the Prepetition Litigation Financing Parties are entitled to, and hereby are granted, the full rights, benefits, privileges and protections of sections 364(e) and 363(m) of the Bankruptcy Code. If any or all of the provisions of this Final Order are

hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Lender or the Prepetition Litigation Financing Parties, as applicable, of the effective date of such reversal, modification, vacatur or stay; or (ii) the validity, priority and enforceability of the DIP Liens, the Adequate Protection Liens, and the Carve Out. Notwithstanding any such reversal, modification, vacatur or stay, the DIP Obligations, DIP Liens, DIP Superpriority Claims, Adequate Protection Obligations, Adequate Protection Liens, and Adequate Protection Superpriority Claims incurred, prior to the actual receipt of written notice by the DIP Lender or the Prepetition Litigation Financing Parties, as applicable, of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this Final Order, and the DIP Lender and the Prepetition Litigation Financing Parties shall be entitled to all the rights, remedies, privileges and benefits arising under sections 364(e) and 363(m) of the Bankruptcy Code, this Final Order, and the DIP Documents.

22. <u>Maintenance of Insurance</u>. Until such time as the DIP Obligations are indefeasibly paid in full, to the extent that the Prepetition Litigation Financing Parties are listed as loss payee under the Debtors' insurance policies, the DIP Lender is also deemed to be the loss payee and additional insured under the insurance policies (in any such case with the same priority of liens and claims thereunder relative to the priority of the Prepetition Litigation Liens and Adequate Protection Liens as set forth herein), and shall act in that capacity and distribute any proceeds

recovered or received in respect of the insurance policies to the indefeasible payment in full of the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and termination of the DIP Commitments, and to the payment of the applicable Prepetition Litigation Financing Obligations. The Debtors shall provide the DIP Lender with not less than two (2) business days' prior written notice of any cancellation, non-renewal, or material modification of the Debtors' insurance policies.

23. Payments Held in Trust. Except as expressly permitted in this Final Order or the DIP Loan Documents, including in respect of the Carve Out, in the event that any person or entity receives any Unencumbered Collateral or any proceeds of Unencumbered Collateral prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Loan Documents, and termination of the DIP Facility in accordance with the DIP Credit Agreement, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of Unencumbered Collateral and shall immediately turn over such proceeds to the DIP Lender, for application in accordance with the DIP Loan Documents and this Final Order.

24. Limitation of Liability. In determining to make any loan or other extension of credit under the DIP Documents, to permit the use of the DIP Collateral or Prepetition Litigation Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Documents or Prepetition Litigation Financing Documents, neither the DIP Lender nor the Prepetition Litigation Financing Parties shall (i) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the

Debtors or the Debtors' creditors, shareholders or estates; or (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code). Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Prepetition Litigation Financing Parties of any liability for any claims arising from the prepetition or postpetition activities of the Debtors and their respective Affiliates (as defined in section 101(2) of the Bankruptcy Code). The DIP Lender and Prepetition Litigation Financing Parties shall not, in any way or manner, be liable or responsible for (a) the safekeeping of DIP Collateral and/or the Prepetition Litigation Collateral, (b) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (c) any diminution in the value thereof or (d) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the DIP Collateral or Prepetition Litigation Collateral shall be borne by the Debtors.

25. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

26. Binding Effect; Successors and Assigns. Subject, solely with respect to the Prepetition Litigation Financing Documents, to the provisions of paragraph 13 herein, the DIP

Documents, the Prepetition Litigation Financing Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Lender and the Prepetition Litigation Financing Parties, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estate of the Debtors) and shall inure to the benefit of the DIP Lender and the Prepetition Litigation Financing Parties and the Debtors and their respective successors and assigns; *provided* that, except to the extent expressly set forth in this Final Order, the DIP Lender and the Prepetition Litigation Financing Parties shall have no obligation to permit the use of the Prepetition Litigation Collateral by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

27. Proceeds of Subsequent Financing. If the Debtors, any trustee, any examiner, or any responsible officer subsequently appointed in these Chapter 11 Cases or any Successor Case, shall obtain credit or incur debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the indefeasible repayment in full in cash of all DIP Obligations (other than unasserted contingent obligations that expressly survive termination of the DIP Loan Documents) and the termination of the DIP Lender's

obligations to extend credit under the DIP Facility, then, after satisfaction of the Carve Out, and unless otherwise agreed by the DIP Lender, all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender to be distributed in accordance with this Final Order and the DIP Loan Documents.

28. Survival. The DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims and all other rights and remedies of the DIP Lender and the Prepetition Litigation Financing Parties granted by this Final Order and the DIP Documents, as well as the Carve Out, shall survive, and shall not be modified, impaired or discharged by the entry of an order (i) converting or dismissing the Chapter 11 Cases, (ii) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code; or (iii) confirming a chapter 11 plan in the Chapter 11 Cases. The terms and provisions of this Final Order shall continue in these cases, in any case under chapter 7 of the Bankruptcy Code upon conversion of any of the Chapter 11 Cases and following dismissal of any such cases, and shall continue to apply until all DIP Obligations and Adequate Protection Obligations have been indefeasibly paid in full and all commitments under the DIP Facility have been terminated.

29. Credit Bidding. (a) The DIP Lender shall have the right to credit bid, in accordance with the DIP Loan Documents, in any sale of the DIP Collateral up to the full amount of the DIP Obligations; and (b) subject to the rights and limitations set forth in paragraph 13 of this Final Order, the Prepetition Litigation Financing Parties shall have the right to credit bid in any sale of the Prepetition Litigation Collateral up to the full amount of the Prepetition Litigation Financing

Obligations and the Adequate Protection Claims of the Prepetition Litigation Financing Parties, if any, in each case as and to the extent provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through sections 363(k), 1123, or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, in each case unless the Court for cause orders otherwise.

30. Plan Treatment. If any of the Debtors propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment (including by credit bid) of the DIP Obligations and the Prepetition Litigation Financing Obligations, and the payment of the Debtors' obligations with respect to the adequate protection provided herein, in full in cash by the maturity date of the DIP Facility (and in no event later than the effective date of such plan of reorganization or consummation of such sale) (a "Non-Consensual Plan or Sale") without the prior written consent of the DIP Lender and the Prepetition Litigation Financing Parties, the Debtors' proposal or support of a Non-Consensual Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder and under the DIP Documents.

31. No Subordination or Pari Passu Treatment. Other than as expressly set forth herein, the DIP Obligations, DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and Adequate Protection Superpriority Claims shall not be subordinated to or made pari passu with any other lien, claim or interest under section 363 or 364 of the Bankruptcy Code or otherwise.

32. Conditions Precedent. The DIP Lender shall not have any obligation to make any DIP Loan under the respective DIP Loan Documents unless all of the conditions precedent to the making of such extensions of credit under the applicable DIP Loan Documents have been satisfied in full or waived in accordance with such DIP Loan Documents.

33. Authorization. The Debtors, the DIP Lender and the Prepetition Litigation Financing Parties are authorized to take all reasonable actions as are necessary or appropriate to implement the terms of this Final Order.

34. Automatic Stay. The automatic stay imposed by section 362(a) of the Bankruptcy Code shall be, and hereby is, modified to the extent necessary to implement and effectuate the terms and conditions of this Final Order.

35. Effectiveness. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 7062, or 9014 or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order. The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

36. Interim Order. Except as expressly provided in this Final Order, all provisions of the Interim Order are hereby ratified and confirmed, and all actions taken, DIP Loans made, DIP Liens and DIP Superpriority Claims granted, and other obligations incurred pursuant to the Interim Order are hereby ratified, confirmed, and approved in all respects. To the extent of any conflict between the Interim Order and this Final Order, this Final Order shall control.

37. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

38. The Debtors shall serve a copy of this Final Order and the Motion on all parties required to receive such service pursuant to Local Bankruptcy Rule 9013-5(f).

# **Exhibit A**

## DIP Credit Agreement

**[To Come]**

# Schedule 1
## Milestones[6]

**The Debtors shall comply with each of the following deadlines, in each case subject to extension with the consent of the DIP Lender:**

(i) On or before the date that is thirty (30) calendar days from the Petition Date, the Bankruptcy Court shall have entered the Final Order in form and substance acceptable to the DIP Lender;

(ii) On or before the date that is seventy (70) days from the Petition Date, the Bankruptcy Court shall have confirmed a plan of reorganization in form and substance acceptable to the DIP Lender; and

(iii) On or before the date that is seventy (70) days from the Petition Date, the effective date of such plan of reorganization shall have occurred.

[6] Capitalized terms used on Schedule 1 but not otherwise defined shall have the meanings ascribed in the DIP Credit Agreement.

# **EXHIBIT C**

**(Blackline of DIP Order)**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**DENTONS US LLP**
Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Email: lauren.macksoud@dentons.com

Van C. Durrer, II (*pro hac vice* forthcoming)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Email: van.durrer@dentons.com

**DENTONS BINGHAM GREENEBAUM LLP**
James R. Irving (*pro hac vice* forthcoming)
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
Telephone: (502) 589-4200
Email: james.irving@dentons.com

*Proposed Counsel to Debtors and Debtor-in-Possession*

| | |
|---|---|
| In re:<br><br>HOUSECANARY NEW JERSEY, INC., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 26- 20766 (EJO)<br><br>(Joint Administration Requested) |

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) HouseCanary New Jersey, Inc. [3712], (ii) HouseCanary, Inc. [2307], (iii) HouseCanary (CT), Inc. [1814], (iv) ComeHome, Inc. [0328], (v) HC Certified Analytics, Inc. [8523], and (vi) HouseCanary R&D, LLC [2124]. The Debtors' mailing address is 535 Mission Street, 14th Floor, San Francisco, CA 94105.

INTERIMFINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) AUTHORIZING USE OF CASH COLLATERAL AND AFFORDING ADEQUATE PROTECTION; (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (IV) MODIFYING AUTOMATIC STAY; AND (V) SCHEDULING A FINAL HEARING; AND (VI) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3)[●] through fifty-three (53)[●] is hereby **ORDERED**.

**Dated: September [●], 2026**

____________________________________
Honorable Eamonn James O'Hagan
United States Bankruptcy Court

**THIS MATTER**, having been presented to this Court by HouseCanary, Inc. and each of the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), upon a motion (the "Motion")[2] for entry of an interim order ~~(the "Interim Order")~~ and a ~~subsequent~~ final order (~~the~~this "Final Order~~," and with the Interim Order, the "DIP Orders~~"), pursuant to sections 105(a), 361, 362, 363, 364, 503, 506, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and the applicable Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and corollary local bankruptcy rules (the "Local Bankruptcy Rules")~~:~~; and the Court having entered the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Authorizing Use of Cash Collateral and Affording Adequate Protection; (III) Granting Liens and Providing Superpriority Administrative Expense Status; (IV) Modifying Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 34] on September 25, 2026 (the "Interim Order," and together with this Final Order, the "DIP Orders"); and the Motion seeking, among other things:

i. authorizing HouseCanary, Inc. (the "Borrower") and House Canary New Jersey, Inc. (~~collectively~~together with the Borrower, the "Borrowers" and, together with all other Debtors as guarantors, the "DIP Loan Parties") on a joint and several basis to obtain secured postpetition financing pursuant to a multi-draw, senior secured, superpriority term credit facility in the aggregate commitment amount of up to $15,000,000 (the "DIP Facility"), subject to the terms and conditions set forth in that certain ~~*HouseCanary, Inc. $15,000,000 Super-priority*~~ [*Senior Secured Superpriority* *Debtor-in-Possession Credit* ~~*Facility Summary of Terms and*~~

[2] Capitalized terms used but not defined herein shall have the same meaning ascribed to such terms in the Motion or ~~Term Sheet~~the DIP Credit Agreement (as defined herein), as applicable.

*ConditionsAgreement*], dated as of [], 2026, attached as **Exhibit A** to this InterimFinal Order (as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "DIP Term SheetCredit Agreement"), which sets forth the terms and conditions of the DIP Facility, by and among the BorrowerBorrowers and Condor FundingCo 26, LLC, as lender (the "DIP Lender"), consisting of term loans and advances thereunder, including (i) $3,000,000 in new money financing made available on an interim basis pursuant to the Interim Order, consisting of (x) $1 million to be funded following the entry of thisthe Interim Order (the "Initial Draw") and (y) $2 million to be funded subject to the satisfaction and otherof the conditions set forth in the DIP Term SheetCredit Agreement and subject to the receipt of a Plan Term Sheet[3] acceptable to the DIP Lender in its sole discretion (the "Additional Draw" and together with the Initial Draw, the "Interim Amount") and (ii) $12,000,000 following entry of thethis Final Order (the "Final Amount" and together with the Interim Amount, the "DIP Loans");

ii. authorizing the Debtors to execute, deliver and perform under the DIP Term SheetCredit Agreement and all other loan documentation related to the DIP Facility, including, without limitation, as applicable, security agreements, pledge agreements, control agreements, mortgages, deeds, charges, guarantees, promissory notes, intercompany notes, certificates, instruments, intellectual property security agreements, notes, and such other documents that may be reasonably requested by the DIP Lender in connection with the DIP Facility, in each case, as amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and hereof (collectively, together with the DIP Term SheetCredit Agreement, the "DIP Documents" or the "DIP Loan Documents");

iii. authorizing the Debtors to incur and jointly and severally, as applicable, guarantee loans, advances, extensions of credit, financial accommodations, reimbursement obligations, interest, fees and premiums (including, without limitation, original issue discount, commitment fees, administrative agency fees, collateral agency or security trustee fees and any other fees or premiums payable pursuant to the DIP Documents) costs, expenses and other liabilities, and all other obligations (including indemnities and similar obligations, whether contingent or absolute) and all other obligations due or payable under the DIP Documents (collectively, the "DIP

[3] "Plan Term Sheet" means the term sheet setting forth the material terms of any plan.

Obligations”), and to perform such other and further acts as may be required, necessary, desirable or appropriate in connection therewith;

iv. subject to the Carve Out (as defined herein), granting to the DIP Lender allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all DIP Obligations under the DIP Facility (the “DIP Superpriority Claims”);

v. granting to the DIP Lender valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on the DIP Collateral (as defined below), on the terms described herein (the “DIP Liens”);

vi. authorizing the Debtors and the DIP Lender to take all commercially reasonable actions to implement the terms of this ~~Interim~~Final Order;

vii. ~~subject to entry of a Final Order,~~ waiving (a) the Debtors’ right to surcharge Prepetition Litigation Collateral (as defined below) and the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code and (b) any “equities of the case” exception under section 552(b) of the Bankruptcy Code;

viii. ~~subject to entry of a Final Order,~~ waiving the doctrine of “marshaling” and other similar equitable doctrines (a) with respect to the DIP Collateral for the benefit of any party other than the DIP ~~Secured Parties~~Lender and (b) with respect to the Prepetition Litigation Collateral for the benefit of any party other than the Prepetition Litigation Financing Parties (as defined below);

ix. authorizing the Debtors to use proceeds of the DIP Facility ~~and Cash Collateral (as defined below)~~ solely in accordance with the Approved Budget (as defined below), the DIP Orders and the DIP Documents;

x. authorizing the Debtors to pay the DIP Obligations as they become due and payable in accordance with the DIP Documents;

xi. subject to the restrictions set forth in the DIP Documents and the DIP Orders, (i) authorizing the Debtors to use Prepetition Litigation Collateral, provide adequate protection to the Prepetition Litigation Financing Parties, solely to the extent of such parties’ valid and perfected liens on such Prepetition Litigation Collateral, for any diminution in value of their interests in the Prepetition Litigation Collateral, for any reason provided for in the Bankruptcy Code (collectively, the “Diminution in

Value”) and, (ii) authorizing the Debtors to use Prepetition Structural Collateral, provide adequate protection (to the extent applicable) to Structural, solely to the extent of such parties’ valid and perfected liens on such Prepetition Structural Collateral (to the extent applicable), for any Diminution in Value~~)~~;

xii. vacating and modifying the automatic stay to the extent necessary to permit the Debtors, the DIP Lender, and the Prepetition Litigation Financing Parties to implement and effectuate the terms and provisions of the DIP Orders and the DIP Documents;

xiii. waiving any applicable stay of ~~the Interim~~this Final Order (including under Bankruptcy ~~Rule~~Rules 4001(a)(3), 6004(h), 7062, and 9014) and providing for immediate effectiveness of ~~the Interim~~this Final Order; and

~~xiv. scheduling a final hearing (the “Final Hearing”) to consider final approval of the Debtors’ entry into and performance under the DIP Documents within 30 days of entry of this Interim Order; and~~

xiv. ~~xv.~~ granting related relief.

The Court having considered the ~~interim~~ relief requested in the Motion, the exhibits attached thereto, the declaration of Jeffrey C. Perea in support of the Motion [Docket No. 19] (the “Perea Declaration”), and the *Declaration of Chris Rediger in Support of the Debtors’ Chapter 11 Petitions and Emergency First-Day Motions* [Docket No. 16], and the evidence submitted and arguments made at the interim hearing held on September 24, 2026 (the “Interim Hearing”) and at the final hearing held on October 20, 2026 (the “Final Hearing”); and due and sufficient notice of the Interim Hearing and the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable ~~Bankruptcy~~ Local Bankruptcy Rules; and the ~~Interim~~Final Hearing having been concluded; and all objections, if any, to the ~~interim~~ relief requested in the Motion having been withdrawn, resolved or overruled

by the Court; and venue of this proceeding and the motion is proper under 28 U.S.C. §§ 1408 and 1409; and it appearing that approval of the ~~interim~~ relief requested in the Motion ~~is necessary to avoid immediate and irreparable harm under Bankruptcy Rules 4001 and 6003 to the Debtors and their estates pending the Final Hearing, otherwise~~on a final basis is fair and reasonable, in the best interests of the Debtors and their estates, and essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' estates; and it appearing that the Debtors' entry into the DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A. Petition Date. On September 22, 2026 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Court").

B. Debtors in Possession. The Debtors continue to operate their business and manage their property as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, and no trustee or examiner has been appointed.

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any conclusions of law constitute findings of fact, they are adopted as such.

C. Jurisdiction and Venue. This Court has core jurisdiction over these Chapter 11 Cases, the ~~DIP~~ Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334, and the Standing Order of Reference to the Bankruptcy Court Under Title 11, entered July 23, 1984, and amended ~~on~~and supplemented by Standing Order 12-1, entered September 18, 2012 ~~(Simandle~~, and Standing Order 2025-02, entered June 6, 2025 (Bumb, C.J.). Consideration of the ~~DIP~~ Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court may enter a final order approving the relief sought in the ~~DIP~~ Motion consistent with Article III of the United States Constitution. Venue for these cases and proceedings on the ~~DIP~~ Motion is proper before this Court pursuant to 28 U.S.C. § 1408. The predicates for the relief sought herein are sections 105, 345(b), 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 363(m), 503, 506(c), 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 9013 and 9014, and Bankruptcy Local Bankruptcy Rules 2002-1, 4001-1, 4001-3, 9013-1, 9013-2, 9013-3, and 9013-4.

D. Committee Formation. As of the date hereof, the United States Trustee for the District of New Jersey (the "U.S. Trustee") has not appointed an official committee of unsecured creditors (the "Creditors' Committee") in these cases.

E. Bank Accounts. The Debtors acknowledge and agree that as of the Petition Date, none of the Debtors has either opened or ~~maintains~~maintained any bank accounts other than the

accounts listed in the exhibit attached to any order authorizing the Debtors to continue to use the Debtors' existing cash management system (the "Cash Management Order").

F. Notice. The InterimFinal Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). Notice of the DIPProper, timely, adequate and sufficient notice of the Motion and, the Interim Hearing and the Final Hearing has been provided in accordance with the Interim Order, the Bankruptcy Code, Bankruptcy Rules and the Local Bankruptcy Rules, and no other or further notice wasis required under the circumstancesto enter this Final Order.

G. Cash Collateral. As used herein, the term "Cash Collateral" shall mean all of the Debtors' cash, wherever located and held, including cash in deposit accounts, that constitutes or will constitute cash collateral of any of the Prepetition Litigation Financing Parties or the DIP Secured PartiesLender within the meaning of section 363(a) of the Bankruptcy Code, in each case, to the extent applicable.

H. Debtors' Stipulations. Without limiting the rights of any other party in interest, subject to the provisions and limitations contained in paragraph 1413 hereof, and after consultation with their attorneys and financial advisors, the Debtors admit, stipulate and agree that:

(i) *Prepetition Litigation Financing Agreement.* Pursuant to (i) that certain Amended and Restated Litigation Funding Agreement, dated January 8, 2026 (as amended, restated, amended and restated, modified or supplemented from time to time, the "Crane 2 LFA"), by and among the Borrower and Crane 2 FundingCo 23, LLC, a Delaware limited liability company ("Crane 2"), and (ii) that certain Litigation Funding Agreement, dated as of June 6, 2018, by and among HC 1 LLC ("HC 1"), and Security Finance 1 LLC ("Security Finance",

together with Crane 2 and HC 1, the "Prepetition Litigation Financing Parties") and the Borrower, as borrower (as amended, restated, amended and restated, modified or supplemented from time to time, the "HC 1 LFA" and together with the Crane 2 LFA, the "Prepetition Litigation Financing Agreements" and, together with all other agreements, documents and instruments executed or delivered in connection therewith, the "Prepetition Litigation Financing Documents"), the Debtors were justly and lawfully indebted and liable to the Prepetition Litigation Financing Parties without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate amount of not less than the respective Investment Return (under and as defined in each respective Prepetition Litigation Financing Agreement), plus any accrued and unpaid interest thereon and any fees, premium, expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges, indemnities, and other ~~Prepetition Litigation Financing Obligations~~obligations of whatever nature, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in respect of the Prepetition Litigation Financing Agreements (the "Prepetition Litigation Financing Obligations").

Pursuant to the Prepetition Litigation Financing Agreements, the Debtors granted to the Prepetition Litigation Financing Parties, a first priority interest in and continuing lien on (collectively, the "Prepetition Litigation Liens") the "Claims", the "Litigation Proceeds", the "Litigation IP", the "Crane 2 Proceeds Account" and the other "Collateral", each as defined in the Prepetition Litigation Financing Agreements (the "Prepetition Litigation Collateral").

(ii) Waiver of Challenge. None of the Prepetition Litigation Liens are subject to any contest, disallowance, set-off, disgorgement, offset, attack, rejection, recovery, reduction, defense, counterclaim, subordination (equitable or otherwise), recharacterization, avoidance or other cause of action (including any avoidance actions under Chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law. The Debtors and their respective estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code), against the Prepetition Litigation Financing Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees with respect to the Prepetition Litigation Financing Agreements, the Prepetition Litigation Financing Obligations, the Prepetition Litigation Liens, or any related documentation, whether arising at law or at

equity, including any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable state law equivalents.

(iii) No Control. None of the Prepetition Litigation Financing Parties control (or have in the past controlled) the Debtors or their properties or operations, have authority to determine the manner in which the Debtors' operations are conducted, or are control persons or insiders of the Debtors by virtue of any actions taken with respect to, or in connection with, related to or arising from the Prepetition Litigation Financing Documents.

(iv) No Claims or Causes of Action. As of the Petition Date, there are no claims or causes of action held by the Debtors or their estates against, or with respect to, the Prepetition Litigation Financing Parties, the DIP Lender, and each of their respective Representatives (as defined below), in each case, in their capacity as such, under or relating to the DIP ~~Credit~~ Documents, the Prepetition Litigation Financing Agreements, and related documentation.

(v) Release. ~~Effective as of the date of entry of the Final Order, each~~Each of the Debtors and (subject to the provisions of paragraph ~~14~~13 hereof) each of their estates, on its own behalf and on behalf of its and their respective predecessors, successors, heirs, and past, present and future subsidiaries and assigns, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the Prepetition Litigation Financing Parties, the DIP Lender, and each of their respective Representatives, each in their capacity as such (collectively, the "Released Parties"), from any and all liability to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature and description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, in contract or in tort, in each case, arising out of or related to the Prepetition Litigation Financing Documents, the DIP Facility, the DIP Documents, the DIP Loans, the negotiation thereof and the transactions and agreements reflected thereby, that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter may have against any of the Released Parties by reason of any act, omission, matter, or cause arising at any time on or prior to the date of this ~~Interim~~Final Order (collectively, the "Released Claims"); provided that the

release set forth in this section shall not release any claims against or liabilities of a Released Party that a court of competent jurisdiction determines has resulted from such Released Party's bad faith, fraud, gross negligence or willful misconduct.

I. Prepetition Structural Loan. Pursuant to that certain Loan and Security Agreement dated March 25, 2021 (as amended, restated, amended and restated, modified or supplemented from time to time, the "Prepetition Structural Loan Agreement"), by and among the Borrower, as borrower, and Structural Capital Investments III, LP ("SCI"), Series Structural DCO II series of Structural Capital DCO, LLC ("DCO"), and CEOF Holdings LP ("CEOF" and together with SCI and DCO, "Structural"), Structural asserts that the Debtors incurred an aggregate amount of not less than approximately $[•] million as of the Petition Date, plus any accrued and unpaid interest thereon and any fees, premium, expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges, indemnities, and other obligations due and owing in respect of the Prepetition Structural Loan Agreement (the "Prepetition Structural Obligations"). Structural purports to hold a first priority lien (the "Prepetition Structural Liens") on certain "Collateral" as defined in the Prepetition Structural Loan Agreement (the "Prepetition Structural Collateral" and together with the Prepetition Litigation Collateral, the "Prepetition Collateral").

J. Inability to Obtain Unsecured Credit. The Debtors are unable to obtain sufficient unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense necessary to maintain and conduct their business.

K. Inability to Obtain Alternate Secured Credit. The Debtors are unable to obtain secured credit on more favorable terms than under the terms and conditions provided for in the DIP ~~Term Sheet~~Credit Agreement and in ~~the Interim~~this Final Order. The Debtors are also unable to obtain secured credit without granting to the DIP Lender the DIP Liens and the DIP Superpriority Claims and incurring the Adequate Protection Obligations (as defined herein) on the terms and subject to the conditions set forth in this ~~Interim~~Final Order and in the DIP Documents.

L. Best Interests of Estate. The Debtors believe that it is in the best interests of the Debtors' estates that the Debtors be allowed to enter into the DIP ~~Term Sheet~~Credit Agreement to obtain postpetition secured financing from the DIP Lender on ~~an interim~~a final basis up to the full amount of the ~~Interim Amount~~DIP Facility under the terms and conditions set forth in the DIP ~~Term Sheet~~Credit Agreement and herein.

M. Good Faith. The DIP Lender and the Prepetition Litigation Financing Parties have acted in good faith in respect of all actions taken by them in connection with or related to negotiating, implementing, documenting, or obtaining requisite approvals of this ~~Interim~~Final Order, the DIP Facility, the Adequate Protection, the use of Prepetition Litigation Collateral, and the loans, extension of credit and financial accommodations under the DIP ~~Term Sheet~~Credit Agreement and in connection with the DIP Facility are fair, reasonable, negotiated at arm's length and in good faith as that term is used in section 364(e) of the Bankruptcy Code and in

express reliance upon the protections offered by section 364(e) of the Bankruptcy Code to the extent provided therein. The DIP Lender (and its respective successors and assigns) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code to the extent provided therein in the event that this InterimFinal Order or any provision hereof is vacated, reversed, modified, on appeal or otherwise. The Prepetition Litigation Financing Parties have acted in good faith regarding the Debtors' continued use of the Prepetition Litigation Collateral in accordance with the terms hereof, and the Prepetition Litigation Financing Parties (and the successors and assigns thereof) shall be entitled to the full protection of sections 363(m) and 364(e) of the Bankruptcy Code in the event that the Interimthis Final Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

N. Immediate Need for DIP Facility and Cash Collateral Use. Good cause has been shown for the entry of the Interimthis Final Order and for authorization for the Debtors to obtain financing pursuant to the DIP Documents. The Debtors have an immediate and critical need to obtain the DIP Facility and to use Prepetition Collateral (including Cash Collateral, if any) in order to, among other things, permit the orderly continuation of the operation of their business, maintain relationships with vendors, suppliers and customers, make payroll, satisfy other working capital and operational needs and fund expenses of the Chapter 11 Cases. The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, the incurrence of new indebtedness under the DIP Documents and other

financial accommodations provided under the DIP Documents areis necessary and vital to the preservation and maintenance of the Debtors' going concern value. Access to the DIP Facility and use of Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors' estate pending the Final Hearing.

O. Necessity of DIP Facility Terms. The terms of the DIP Term Sheet and the InterimCredit Agreement and this Final Order assuring that the liens and the various claims, superpriority claims, and other protections granted in the Interimthis Final Order will not be affected by any subsequent reversal or modification of the Interimthis Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code to the extent provided therein, which is applicable to the postpetition financing arrangement contemplated in the DIP Term SheetCredit Agreement, are necessary in order to induce the DIP Lender to provide postpetition financing to the Debtors.

P. Adequate Protection of Prepetition Secured Parties. The Prepetition Litigation Financing Parties and, solely to the extent of the validity and security of Structural's perfected interest in the Prepetition Structural Collateral, Structural, are entitled to the adequate protection provided in Paragraph 8 of the Interimparagraph 7 of this Final Order (the "Adequate Protection") as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code. Based on the DIP Motion, the Perea Declaration, and on the record and argument presented to the Court at the Interim Hearing and the Final Hearing, and subject to

paragraph 8 hereof with respect to Structural, the terms of the Adequate Protection and of the use of the Prepetition Litigation Collateral and the Prepetition Structural Collateral (to the extent applicable) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Litigation Collateral and the Prepetition Structural Collateral (to the extent applicable). To the extent their consent is required, the requisite Prepetition Litigation Financing Parties (as applicable) have consented or are deemed to have consented to the use of Prepetition Litigation Collateral~~, including~~ (other than Cash Collateral~~, if any~~), and the relative lien priorities set forth in this ~~Interim~~Final Order, in each case on the terms set forth in this ~~Interim~~Final Order and the DIP Documents; *provided* that nothing in this ~~Interim~~Final Order or the DIP Documents shall (x) be construed as ~~the affirmative~~ consent by the Prepetition Litigation Financing Parties ~~for~~to the use of Cash Collateral ~~other than on the terms set forth in this Interim Order and solely for the purposes set forth in the DIP Term Sheet~~, (y) be construed as consent by any party to the terms of any financing or any other lien encumbering Prepetition Litigation Collateral (whether senior or junior) other than as contemplated by this ~~Interim~~Final Order, or (z) prejudice, limit or otherwise impair the rights of Prepetition Litigation Financing Parties to seek new, different or additional adequate protection or assert any other right, and the rights of any other party in interest, including the Debtors and the DIP Lender, to object to such relief are hereby preserved.

Q. Approved Budget. The Debtors have prepared and delivered to the DIP Lender an initial budget (the "Initial DIP Budget"), attached to the Perea Declaration as **Exhibit A**. The Initial DIP Budget reflects, among other things, the Debtors' anticipated operating receipts, anticipated operating disbursements, anticipated non-operating disbursements, net operating cash flow and liquidity for each calendar week covered thereby. The Initial DIP Budget may be modified, amended, extended, and updated from time to time in accordance with the DIP Term Sheet and the InterimCredit Agreement and this Final Order, and once approved by the DIP Lender (as defined in the DIP Term Sheet) in accordance with the DIP Term Sheet and the InterimCredit Agreement and this Final Order, shall modify, replace, supplement or supersede, as applicable, the Initial DIP Budget for the periods covered thereby (the Initial DIP Budget and each subsequent approved budget shall constitute, without duplication, an "Approved Budget"). The Debtors believe that the Initial DIP Budget was (and continues to be) reasonable under the circumstances, and any Approved Budget in effect as of the date of this Final Order is reasonable under the circumstances. The DIPIn determining to extend postpetition financing under the DIP Documents and the DIP Orders, including the Final Amount, the DIP Lender is relying upon the Debtors' agreement to comply with the Approved Budget (subject to permitted variances), the DIP Documents and the Interim Order in determining to enter into the postpetition financing arrangements provided for inPermitted Variances), the Interim Order, this Final Order and the other DIP Documents.

R. Priority of Prepetition Liens. The relative priorities and rights among the Prepetition Litigation Financing Parties and Structural with respect to the Prepetition Litigation Collateral and Prepetition Structural Collateral, respectively, shall be governed by the terms of the Prepetition Litigation Financing Agreements or the Prepetition Structural Loan Agreement, respectively, and applicable law, and nothing in this InterimFinal Order shall alter such priorities except as expressly set forth herein. Nothing in paragraphs 6(b), 20, or 23 of this Final Order shall determine whether any receipt constitutes cash collateral of Structural (as defined in any order of this Court authorizing the Debtors' use of Structural's cash collateral), and all parties' rights with respect thereto are reserved.

S. Good Cause for Entry to Avoid Immediate and Irreparable Harm. Good and sufficient cause has been shown for immediate entry of the Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent granting the relief set forth in the Interim Order, the Debtors and their estates will be immediately and irreparably harmedentry of this Final Order. The Debtors believe that entry of the Interimthis Final Order and consummation of the DIP Term SheetCredit Agreement in accordance with the Interimthis Final Order and the DIP Documents is in the best interests of the Debtors, their estates and their creditors.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED** on ~~an interim~~a final basis in accordance with the terms of this ~~Interim~~Final Order. Any objections to the Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein (other than as preserved herein), are hereby denied and overruled.

2. Authorization of the DIP Facility and DIP Documents.

   i. Subject to the terms and conditions contained in ~~the Interim~~this Final Order, the Debtors are hereby expressly authorized and directed, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted to the extent necessary, to execute, deliver, and enter into and perform all obligations under the DIP ~~Term Sheet~~Credit Agreement and any DIP Documents as may be reasonably required to implement the terms, and effectuate the purposes, of the DIP ~~Term Sheet and the Interim~~Credit Agreement and this Final Order. The terms and conditions of the DIP ~~Term Sheet~~Credit Agreement are hereby approved and ratified on a final basis and the Debtors are authorized and directed to comply with and perform all of the terms and conditions contained therein, including with the Milestones (as defined in the DIP ~~Term Sheet~~Credit Agreement) set forth on **Schedule 1**. The Borrowers are hereby authorized to borrow up to $15 million in DIP Loans pursuant to the DIP ~~Term Sheet, with up to $3 million available to be drawn on an interim basis~~Credit Agreement (inclusive of any Interim Amount borrowed pursuant to the Interim Order); provided that, the ~~Initial Draw shall be available immediately following entry of this Interim Order, and the Additional Draw~~Final Amount shall be available upon ~~(and~~entry of this Final Order, subject to~~)~~ the satisfaction of the terms and conditions set forth in the DIP ~~Term Sheet~~Credit Agreement and the other DIP Documents. The proceeds of the DIP Loans shall be used solely for the purposes permitted under the DIP Documents and ~~the Interim~~this Final Order, subject to and in accordance with the Approved Budget (subject to any Permitted Variances).

   ii. In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized and directed to perform all acts, to make, execute and deliver all instruments, certificates, agreements, charges, deeds and documents, execute or record pledge and security agreements, mortgages,

financing statements and other similar documents, if any, and to pay all fees, expenses and indemnities in connection with or that may be reasonably required, necessary, or desirable in connection with the DIP Facility, including:

a. the execution and delivery of, and performance under, each of the DIP Documents;

b. the execution and delivery of, and performance under, one or more non-material amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in form and substance acceptable to the DIP Lender, it being understood that no further approval of this Court shall be required for any such non-material amendments, waivers, consents or other modifications or the payment of any fees, including attorneys', accountants', appraisers' and financial advisors' fees, and other expenses, charges, costs, indemnities and other like obligations in connection therewith that do not shorten the maturity of the DIP Facility, increase the aggregate amount of the DIP Loans, increase the rate of interest or fees payable thereunder, or release any DIP Liens. Updates, modifications, and supplements to the Approved Budget shall not require any further approval of this Court;

c. the performance of all other acts required under or in connection with the DIP Documents, including the granting of the DIP Liens and the DIP Superpriority Claims and perfection of the DIP Liens as permitted herein and therein, and to perform such other and further acts as may be necessary, desirable, or appropriate in connection therewith, in each case in accordance with the terms of the DIP Documents; provided that, solely with respect to the payment of professional fees and expenses, such payment is subject to the provisions of paragraph ~~15~~14 herein.

d. the non-refundable payment to the DIP Lender of all fees, expenses and rights received as consideration under, or in connection with, the DIP ~~Term Sheet~~Credit Agreement, including any professional fees which shall be paid consistent with paragraph ~~15~~14 herein (the payment of which fees shall be irrevocable, and shall be, and shall be deemed to have been, approved upon entry of the Interim Order, whether any such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, and upon payment thereof, shall not be subject to any contest, attack, rejection,

recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, disallowance, impairment, or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, applicable non-bankruptcy law or otherwise by any person or entity), any fees or premiums in connection with the DIP Facility, including any amendment fees or premiums, servicing fees, audit fees, liquidator fees, structuring fees, administrative agent fees, collateral agent fees, security trustee fees, upfront fees, closing fees, commitment premiums, exit fees, closing date fees, or agency fees, any amounts due (or that may become due) in respect of any indemnification and expense reimbursement obligations, in each case referred to in the DIP ~~Term Sheet~~Credit Agreement or DIP Documents, and the reasonable and documented costs and expenses as may be due from time to time in accordance with the DIP Documents or ~~the Interim~~this Final Order, including, without limitation, reasonable and documented fees and expenses of the professionals retained by, or on behalf of, the DIP Lender, whether incurred prepetition or postpetition (including, without limitation, those of Ropes & Gray, LLP as counsel to the DIP Lender) (collectively, the "DIP Fees and Expenses") without the need to file retention motions or fee applications or provide detailed time breakdowns; provided, however, that (a) the Upfront Fee (as defined in the DIP ~~Term Sheet~~Credit Agreement), equal to two percent (2.0%) of the total amount of the DIP Facility, shall be approved on a final basis, fully earned, allowed, non-refundable, and not subject to reduction, setoff, or recoupment upon entry of the Interim Order and shall be payable out of the proceeds of the Interim ~~Amounts~~Amount or cash on hand within two (2) Business Days after entry of the Interim Order, and (b) subject to Section 2.6(c) of the DIP Credit Agreement, the Exit Fee (as defined in the DIP ~~Term Sheet~~Credit Agreement), equal to five percent (5.0%) of the total amount of the DIP Facility, shall be approved on a final basis, fully earned, allowed, non-refundable, and not subject to reduction, setoff, or recoupment upon entry of the Interim Order and shall be due and payable in cash upon the earliest of (i) the Maturity Date, (ii) Payment in Full of the DIP Obligations, or (iii) on a pro-rata basis for any mandatory or voluntary prepayment of the DIP Obligations; provided, further, that on the date that the DIP Facility is first drawn (the "Closing Date"), all Fees and Expenses incurred on or prior to the Closing Date shall be payable without the need for any professional engaged by, or on behalf of, the DIP Lender or the

Prepetition Litigation Financing Parties to first deliver an invoice or other supporting documentation to the Notice Parties[5];

iii. The failure to reference or discuss any particular provision of the DIP ~~Term Sheet or the Interim~~Credit Agreement or this Final Order shall not affect the validity or enforceability of any such provision. In the event of a conflict between ~~the Interim~~this Final Order and the DIP ~~Term Sheet~~Credit Agreement, the terms and conditions of ~~the Interim~~this Final Order shall govern.

3. DIP Obligations. Upon execution and delivery of the DIP Documents, the DIP Documents ~~shall~~constituted (and as of the date of the entry of this Final Order, continue to constitute) legal, valid, binding and non-avoidable obligations of the Debtors, enforceable against each Debtor and their respective estates and any successors thereto, including any trustee appointed in these chapter 11 cases, or in any case under chapter 7 of the Bankruptcy Code upon conversion of any of these cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"). Upon execution and delivery of the DIP Documents, the DIP Obligations ~~shall~~ included (and, as of the date of entry of this Final Order, continue to include) all loans and any other indebtedness or obligations, contingent or absolute, which may from time to time be owing by any of the DIP Loan Parties to the DIP Lender under the DIP Documents and ~~this Interim Order~~the DIP Orders, including the Final Amount and all DIP Fees and Expenses, indemnities and other amounts. The DIP Loan Parties shall be jointly

[5] As used herein, "Notice Parties" means lead restructuring counsel to the Debtors, counsel to the DIP Lender, counsel to the Prepetition Litigation Financing Parties, counsel to any statutory committees appointed in these Chapter 11 Cases, and the U.S. Trustee.

and severally liable for the DIP Obligations. Except as permitted hereby, including paragraph ~~14~~13 below, no obligation, payment, transfer, or grant of security interest hereunder or under the DIP Documents to the DIP Lender shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4. DIP Superpriority Claims. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the DIP Loan Parties on a joint and several basis (without the need to file any proof of claim) payable from all prepetition and postpetition property of the Debtors, with priority over any and all claims against the DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, in each case to the extent permitted under section 364(c)(1), including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code, and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b),

506(c), 507(a), 507(b), 546(c), 726, 1113 and 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, except for the Carve Out. The DIP Superpriority Claims shall be payable from, and have recourse to, all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, the "Avoidance Actions") but~~, subject to the entry of the Final Order granting such relief,~~ including any proceeds or property recovered as a result of any Avoidance Actions, whether by judgment, settlement or otherwise (collectively, the "Avoidance Proceeds")), subject only to the Carve Out. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code to the extent provided therein in the event that this ~~Interim~~Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

5. Grant of DIP Liens. As security for ~~the~~all DIP Obligations, including, for the avoidance of doubt, the Interim Amount, the Final Amount, and any DIP Loans made after the date of this Final Order, effective and automatically properly perfected ~~on~~as of the date ~~this~~the Interim Order ~~is~~was entered (without regard to the date such DIP Obligations are incurred), and without the necessity of execution, recordation or filing of any perfection document or instrument, or the possession or control by the DIP Lender of, or over, any DIP Collateral,

without any further action by the DIP Lender, the following valid, binding, continuing, fully perfected, enforceable and non-avoidable DIP Liens ~~are~~were, by the Interim Order, and hereby are granted to the DIP Lender (all property identified below being collectively referred to as the "DIP Collateral"):

i. (a) Liens on Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, subject only to the Carve Out, a first-priority lien on and security interest in all tangible and intangible prepetition and postpetition property of the Debtors, including the Borrowers' cash (or investments thereof), equipment, goods, inventory, accounts, insurance policies and proceeds thereof, instruments, intercompany claims, contracts and contract rights, securities, letters of credit, leaseholds, tort claims, causes of action, intellectual property, and any proceeds, rents, or profits from the foregoing, and all of the equity interests in all non-Debtor subsidiaries, whether existing on the Petition Date or thereafter acquired, and all proceeds, products, rents, and profits thereof, that, as of the Petition Date, is not subject to (i) a valid, perfected and non-avoidable lien or (ii) a valid and non-avoidable lien in existence on the Petition Date that is perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code, other than the Avoidance Actions but including~~, subject to entry of the Final Order granting such relief, the~~ the Avoidance Proceeds (collectively, the "Unencumbered Property"), which shall constitute unencumbered collateral (the "Unencumbered Collateral").

ii. (b) Junior Liens on Prepetition Collateral. Pursuant to section 364(c)(3) of the Bankruptcy Code, subject to the Carve Out, a lien junior to the Prepetition Structural Liens on the Prepetition Structural Collateral, solely to the extent the Bankruptcy Court determines such claims are valid, secured and perfected, and junior to the Prepetition Litigation Liens on the Prepetition Litigation Collateral.

iii. (c) No Senior Liens. The DIP Liens shall not be (i) subject or subordinate to or made pari passu with (A) any lien or security interest avoided and preserved under section 551 of the Bankruptcy Code, (B) unless otherwise provided in the DIP Documents or this ~~Interim~~Final Order, any liens arising after the Petition Date, including governmental liens, (C) any intercompany

liens; or (ii) subordinated to or made pari passu with any other lien under section 363 or 364 of the Bankruptcy Code or otherwise.

6. Protection of DIP Lender's Rights.

(a) So long as there are any DIP Obligations outstanding or the DIP Lender has any outstanding DIP Loans under the DIP Documents, the Prepetition Litigation Financing Parties shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Litigation Financing Documents or this InterimFinal Order, including the Adequate Protection Liens, or otherwise seek to exercise or enforce any rights or remedies against the DIP Collateral; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, any DIP Collateral to the extent such transfer, disposition, sale or release is authorized under the DIP Documents; (iii) not file any financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral other than (x) to perfect the liens granted pursuant to this InterimFinal Order (including by filing financing statements or other documents) or (y) as may be required by applicable state or foreign law to complete a previously commenced process of perfection or to continue the perfection of valid and non-avoidable liens or security interests existing as of the Petition Date; and (iv) deliver or cause to be delivered, at the DIP Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Lender or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of the DIP Collateral subject to any sale or disposition permitted by the DIP Documents and this InterimFinal Order.

(b) Any proceeds of the Unencumbered Collateral received by Prepetition Litigation Financing Parties or Structural, respectively, whether in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise, shall be segregated and held in trust for the benefit of the DIP Lender, and forthwith paid over to the DIP Lender in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct; *provided*, *however*, that nothing in this paragraph 6(b) shall prime or otherwise impair any setoff rights of Structural, to the extent such rights exist. The DIP Lender is hereby authorized to make any such endorsements. This authorization is coupled with an interest and is irrevocable.

(c) The DIP Loan Parties shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except as otherwise permitted by the DIP Documents or an order of the Court.

(d) Upon the occurrence and during the continuation of an Event of Default that has not been waived by the DIP Lender, the DIP Lender may, following delivery of written notice (a "Termination Notice"), which may be done by e-mail, on not less than five (5) business days' notice (such five (5) business day period, the "Remedies Notice Period") to lead restructuring counsel to the Debtors, counsel to each of the Prepetition Litigation Financing Parties, the Creditors' Committee (if appointed), and to the U.S. Trustee (the "Remedies Notice Parties"), in each case without further notice to, hearing of, or order from this Court: (a) ~~immediately terminate and/or revoke the Debtors' right under this Interim Order and any other DIP Documents to use Cash Collateral (subject to the provisions related to the Carve Out), (b)~~ terminate the DIP Facility and any DIP Document as to any future liability or obligation of the DIP Lender but without affecting any of the DIP Obligations or the DIP Liens; (~~c~~b) declare all DIP Obligations to be immediately due and payable; and (~~d~~c) invoke the right to charge interest at the default rate under the DIP Documents. Any automatic stay otherwise applicable to the foregoing, whether arising under sections 105 or 362 of the Bankruptcy Code or otherwise, is hereby modified to the extent necessary to permit the DIP Lender to effectuate the foregoing, provided that, during the Remedies Notice Period, the Debtors, the Creditors' Committee (if appointed) and/or any party in interest shall be entitled to seek an emergency hearing (with the DIP Lender consenting to such emergency hearing) with the Court for the purpose of contesting whether, in fact, an Event of Default has occurred and is continuing~~ or to obtain non-consensual use of Cash Collateral~~. Upon delivery of a Termination Notice by the DIP Lender, without further notice or order of the Court, the ~~DIP Lender's and the Prepetition Litigation Financing Parties' consent to use Cash Collateral and the~~ Debtors' ability to incur additional DIP Obligations hereunder will, subject to the expiration of the Remedies Notice Period and unless the Court orders otherwise, automatically terminate and the DIP ~~Secured Parties~~Lender will have no further obligation to provide any DIP Loans or other financial accommodations. As soon as reasonably practicable following receipt of a Termination Notice, the Debtors shall file a copy of same on the docket.

(e) Immediately upon the occurrence and during the continuation of an Event of Default, unless such Event of Default has been waived by the DIP Lender, as applicable, pursuant to section 362 of the Bankruptcy Code, without any

application, motion, or notice to, hearing before, or order from, the Court, subject to the terms of this ~~Interim~~Final Order, the DIP Lender may send a Carve Out Trigger Notice to the parties set forth in paragraph ~~10~~9(i), which shall trigger the Carve Out pursuant to the terms hereof. For the avoidance of doubt, a Carve Out Trigger Notice shall not, by itself, constitute a Termination Notice or commence the Remedies Notice Period. The automatic stay in the Chapter 11 Cases otherwise applicable to the DIP Lender and Prepetition Litigation Financing Parties is hereby modified so that upon expiration of the Remedies Notice Period following delivery of a Termination Notice pursuant to paragraph 6(d): (a) the DIP Lender shall be entitled to exercise its rights and remedies in accordance with the DIP Loan Documents and this ~~Interim~~Final Order to satisfy the DIP Obligations, DIP Superpriority Claims, and DIP Liens, subject to the Carve Out; and (b) subject to the foregoing clause (a), the ~~applicable~~ Prepetition ~~Secured~~Litigation Financing Parties shall be entitled to exercise their respective rights and remedies to the extent available in accordance with the Prepetition Litigation Financing Agreements and this ~~Interim Order with respect to the Debtors' use of Cash Collateral; provided, that the Debtors shall be entitled to continue to use Cash Collateral in accordance with the terms of this Interim Order during any Remedies Notice Period solely to make payroll and fund critical expenses necessary to preserve the Prepetition Litigation Collateral and strictly in accordance with the Approved Budget and this Interim~~Final Order. During the Remedies Notice Period, the Debtors and the Creditors' Committee (if any) shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court solely for the purpose of contesting whether an Event of Default has occurred; provided, that nothing herein shall be deemed to limit the Court's ability to consider or grant any relief the Court determines appropriate. Absent Court order prior to the expiration of the Remedies Notice Period to the contrary, the automatic stay, as to the DIP Lender and Prepetition Litigation Financing Parties, shall be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, the DIP Lender and Prepetition Litigation Financing Parties shall be permitted to exercise all remedies set forth herein, in the DIP Loan Documents, the Prepetition ~~Loan~~Litigation Financing Documents, and as otherwise available at law without further order of or application or motion to this Court consistent with this ~~Interim~~Final Order. Upon expiration of the Remedies Notice Period, the Debtors shall waive their right to, and shall not be entitled to, seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such

relief would in any way impair or restrict the rights and remedies of the DIP Lender and Prepetition Litigation Financing Parties under this InterimFinal Order.

(f) No rights, protections or remedies of the DIP Lender or the Prepetition Litigation Financing Parties granted by this InterimFinal Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

7. Use of Cash Collateral. The Debtors are hereby authorized, subject to the terms and conditions of the Interim Order, to use Cash Collateral, if any, during the period from the date of entry of this Interim Order through the date of entry of the Final Order (the "Interim Period") in accordance with the Approved Budget (subject to permitted variances) and the terms of the Interim Order; provided that the Prepetition Litigation Financing Parties and Structural are granted the Adequate Protection to the extent applicable and as set forth herein; provided further that the Debtors are not authorized pursuant to this Interim Order to use any cash collateral of Structural, to the extent any such cash collateral exists.

7. 8. Adequate Protection of Prepetition Secured Parties. The Prepetition Litigation Financing Parties and, solely to the extent of the validity and security of Structural's perfected interest in the Prepetition Structural Collateral, Structural, are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral for the Diminution in Value (such claims, the

"Adequate Protection Claims"). In consideration of the foregoing, the Prepetition Litigation Financing Parties and Structural (and with respect to Structural, solely to the extent of the validity and security of Structural's perfected interest in the Prepetition Structural Collateral) are hereby granted the following as Adequate Protection on account of their Adequate Protection Claims, and as an inducement to their ~~to~~ consent to the use of the Prepetition Collateral (collectively, the "Adequate Protection Obligations"):

i. Adequate Protection Liens. The Prepetition Litigation Financing Parties and Structural (to the extent applicable) are hereby granted (effective and perfected ~~upon~~as of the date of entry of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), to secure their Adequate Protection Claims (to the extent applicable), a valid, perfected replacement security interest in and lien upon all of (i) with respect to the Prepetition Litigation Financing Parties, the Prepetition Litigation Collateral, and (ii) with respect to Structural, the Prepetition Structural Collateral (solely to the extent of the validity and security of Structural's perfected interest in the Prepetition Structural Collateral) (the "Adequate Protection Liens"), subject and subordinate to (a) the DIP Liens, (b) the Prepetition Litigation Liens, (c) the Prepetition Structural Liens and (d) the Carve Out.

ii. Prepetition Secured Parties' Superpriority Claim. To the extent the Adequate Protection Liens provided for herein prove insufficient to protect the interest of the Prepetition Litigation Financing Parties and Structural in and to the Prepetition Litigation Collateral and Prepetition Structural Collateral (as, and to the extent applicable), the Prepetition Litigation Financing Parties and Structural are hereby granted an allowed superpriority administrative expense claim on account of such Adequate Protection Claims as provided for in section 507(b) of the Bankruptcy Code (the "Adequate Protection Superpriority Claim") which Adequate Protection Superpriority Claim shall be payable from and have recourse to the Unencumbered Collateral and all proceeds thereof. The Adequate Protection

Superpriority Claim shall be subject and subordinate only to (a) the Carve Out, and (b) the DIP Superpriority Claims.

iii. Payment of Professional Fees. Subject to the procedures set forth in ~~Paragraph 15~~paragraph 14 herein, the Debtors shall pay in full in cash and in immediately available funds all reasonable and documented fees, including professional fees, and out-of-pocket expenses (the "Adequate Protection Fees and Expenses," and together with the DIP Fees and Expenses, the "Fees and Expenses") incurred by the Prepetition Litigation Financing Parties in the Chapter 11 Cases, including but not limited to those of Ropes & Gray LLP.

iv. Maintenance of Insurance for Collateral. The Debtors shall continue to maintain and insure the DIP Collateral and the Prepetition Litigation Collateral and Prepetition Structural Collateral in amounts and for the risks as required under the Prepetition Litigation Financing ~~Agreement~~Agreements, the Prepetition Structural Loan ~~Documents~~Agreement, and the DIP Documents.

v. Reporting Requirements. As further adequate protection, the Debtors shall comply with all reporting requirements set forth in the DIP ~~Term Sheet~~Credit Agreement and provide the Prepetition Litigation Financing Parties and any statutory committees appointed in these cases with all written financial reporting, periodic reporting, and other information required to be provided to the DIP Lender under the DIP Documents, including with regard to any Approved Budget and any related variance reporting (the "Adequate Protection Reporting Requirement"). Upon indefeasible payment in full of all DIP Obligations, the Prepetition Litigation Financing Parties shall continue to be entitled to satisfaction of the Adequate Protection Reporting Requirement.

8. ~~9.~~ Reservation of Rights of Prepetition Secured Parties. Under the circumstances and given that the above-described Adequate Protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the Adequate Protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Litigation Financing Parties and makes no finding at this time as to whether such Adequate Protection is reasonable and

sufficient to protect the interests of ~~and~~ Structural (to the extent applicable); *provided* that the Prepetition Litigation Financing Parties or Structural (subject to any applicable contractual limitations on such rights) may request further or different adequate protection and the Debtors or any other party in interest may contest any such request; provided further that, upon the effective date of a confirmed plan of reorganization that provides for the indefeasible payment in full in cash of all DIP Obligations, the Adequate Protection Liens and Adequate Protection Superpriority Claims shall be satisfied and released in the manner provided in such plan. Upon such payment in full, the DIP Lender shall execute and deliver, at the Debtors' cost and expense, such termination statements, lien releases, and other documents as are necessary to evidence the release of the DIP Liens and Adequate Protection Liens.

9. ~~10.~~ Carve Out.

i. Notwithstanding anything to the contrary herein, the Debtors' obligations to the DIP Lender and Prepetition Litigation Financing Parties, and the liens, security interests and superpriority claims granted by ~~the Interim~~this Final Order or under the DIP Documents or Prepetition Litigation Financing ~~Agreement~~Agreements, and the payment of all such obligations, shall be subject and subordinate in all respects to payment of the following fees and expenses: (a) the payment of U.S. Trustee Fees; (b) reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (c) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, but subject to final allowance by the Court, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtors Professionals"), and any statutory committees appointed in this case (the "Committee Professionals" and, together with the Debtors Professionals, the "Estate Professionals") at any time before the delivery by the DIP Lender of a Carve Out Trigger Notice (as defined herein) and without regard to whether such fees and

expenses are provided for in any Approved Budget or were invoiced after the Carve Out Trigger Notice Date (the amounts set forth in this clause (c) being the "Pre Carve Out Trigger Notice Cap"); and (d) the Allowed Professional Fees of Debtors Professionals and the Committee Professionals in an aggregate amount not to exceed $175,000 incurred on or after the first business day following delivery by the DIP Lender of the Carve Out Trigger Notice (the "Post Carve Out Trigger Notice Cap" and the Pre Carve Out Trigger Notice Cap together with the Post Carve Out Trigger Notice Cap and the amounts set forth in clauses (a) and (b), the "Carve Out Cap") (the foregoing clauses (a) through (d), collectively, the "Carve Out"). ~~Notwithstanding anything to the contrary in this Interim Order, the Carve Out shall not prime or otherwise be senior to the Prepetition Structural Liens, any Adequate Protection Liens or Adequate Protection Superpriority Claim granted to Structural, or Structural's interests in the Prepetition Structural Collateral.~~ The term "Carve Out Trigger Notice" shall mean a written notice from the DIP Lender or its counsel stating that the Post Carve Out Trigger Notice Cap has been invoked, delivered by hard copy or email to lead bankruptcy counsel for the Debtors, the U.S. Trustee, the Prepetition Litigation Financing Parties, and counsel to any statutory committees appointed in this case, if any, which notice may be delivered following the occurrence and during the continued existence of an Event of Default (as defined in the DIP ~~Term Sheet~~Credit Agreement) under the terms of ~~the Interim~~this Final Order. The term "Carve Out Trigger Notice Date" shall mean the day on which a Carve Out Trigger Notice is delivered.

ii. ~~i.~~ On the day on which a Carve Out Trigger Notice is given (the "Carve Out Trigger Date") the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to then unpaid amounts of the Allowed Professional Fees. The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims. On the Carve Out Trigger Date, the Carve Out Trigger Notice shall also (i) be deemed a request by the Debtors for DIP Loans under the DIP Facility (the commitment of the DIP Lender in respect thereof, the "DIP Commitments") (on a pro rata basis based on the then outstanding DIP Commitments), in an amount equal to the Post Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Loans) and (ii) constitute a demand to the Debtors to

utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post Carve Out Trigger Notice Cap. The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such Allowed Professional Fees benefitting from the Post Carve Out Trigger Notice Cap (the "Post Carve Out Trigger Notice Reserve," and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims. On the first Business Day following the Carve Out Trigger Date, notwithstanding anything in the DIP Term SheetCredit Agreement to the contrary, including with respect to the existence of an Event of Default, the failure of the Debtors to satisfy any or all of the conditions precedent for DIP Loans under the DIP Facility, any termination of the DIP Commitments following an Event of Default, or the occurrence of the Maturity Date, the DIP Lender shall make available such DIP Lender's share with respect to such borrowing in accordance with the DIP Facility.

iii. ii. Any payment or reimbursement made on or after the occurrence of the Carve Out Trigger Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis. Any funding of the Carve Out shall be added to, and made part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this InterimFinal Order, the DIP Documents, the Bankruptcy Code, and applicable law.

iv. iii. The Prepetition Litigation Financing Parties and the DIP Lender reserve the right to object to the allowance of any fees and expenses, whether or not such fees and expenses were incurred in accordance with the Approved Budget. Except for permitting the funding of the Carve Out as provided herein, the Prepetition Litigation Financing Parties and DIP Lender shall not be responsible for the direct payment or reimbursement of any fees or expenses of any Estate Professionals incurred in connection with the Chapter 11 Cases or any Successor Cases, regardless of whether payment of such fees or disbursement has been allowed by the Court. Nothing in the Interimthis Final Order or otherwise shall be construed to obligate the DIP Lender or the Prepetition Litigation Financing Parties in any way to pay compensation to or reimburse expenses of any Estate Professional, or to

guarantee that the Debtors have sufficient funds to pay such compensation or expense reimbursement.

10. ~~11.~~ Budget Reporting. ~~On~~No later than 5:00 p.m. (ET) on the third business day of each week, the Debtors shall deliver to the Prepetition Litigation Financing Parties, the DIP Lender, and any statutory committees appointed in this case a variance report comparing actual cash receipts and disbursements ~~for the preceding week~~, on a line-item by line-item basis and a cumulative basis, for the applicable Budget Testing Period (as defined in the DIP Credit Agreement) to projected cash receipts and disbursements ~~for the corresponding week~~(other than fees and expenses of the DIP Lender) for such Budget Testing Period set forth in the Approved Budget and explaining in reasonable detail all material variances (each a "Variance Report," which Variance Report shall be in a form satisfactory to the DIP Lender). The Debtors covenant that, ~~on a weekly basis~~for each Budget Testing Period, (a) overall disbursements (other than fees and expenses of the DIP Lender) shall not exceed the corresponding amounts in the Approved Budget by more than ten percent (10%) and (b) no individual line-item disbursement shall exceed the corresponding amount in the Approved Budget by more than five percent (5%) (collectively, the "Permitted Variances"); provided, however, that the Debtors shall be entitled to reserve budgeted professional fees on a weekly basis, such fees to be reconciled as to actuals upon actual billing, Bankruptcy Court approval and payment. ~~In~~To the ~~event the Debtors have a positive balance against the budgeted amount in disbursements at the end of any weekly period (i.e.,~~extent any Variance Report reflects that actual disbursements ~~are under the budgeted~~

amount), the Debtors may carry forward such positive balance to the following week; provided that any such carry-forward may only be utilized within the line item from which such carry-forward was generated; provided further that all positive balance carry-forwards shall be cleared and of no further use at such time as any Updated Budget (as defined herein) is approvedfor any line item are less than the amount set forth in the Approved Budget for such line item (a "Positive Variance"), such Positive Variance may be carried forward to offset a negative variance in such same line item for the subsequent Budget Testing Period; provided that such Positive Variance may only be used as an offset and may not further increase a Positive Variance for any line item during the subsequent Budget Testing Period. Any variance in excess of a Permitted Variance shall constitute an Event of Default under the DIP Documents. The Debtors shall also provide Structural, on a weekly basis, a report identifying the amount and location of any cash or proceeds that Structural asserts are its cash collateral.

11. 12. Beginning on the seventh (7th) day following entry of the Interim Order, and on a monthly basis thereafterNo later than 5:00 p.m. (ET) on the third business day of the fourth week of each month, the Debtors shall provide to the DIP Lender and its counsel for approval (which approval may be granted or withheld in the DIP Lender's sole discretion, provided that such approval shall not be unreasonably withheld) by the close of business on the Wednesday following the end of each such monthly period, a revised cash forecastan updated 13-week cash flow forecast, broken down by week and including anticipated uses of the proceeds of the DIP

Loans for such period, in form and substance acceptable to the DIP Lender (each, an "Updated Budget"). The term "DIP Budget" shall mean the Initial DIP BudgetApproved Budget in effect as of the date of this Final Order until such time as an Updated Budget is approved, following which such Updated Budget shall constitute the DIP Budget until a subsequent Updated Budget is so approved.

12. 13. Access to Records. The Debtors shall provide the DIP Lender, Prepetition Litigation Financing Parties, and their respective advisors with all reporting and other information required to be provided to the DIP Lender under the DIP Loan Documents. In addition to, and without limiting, whatever rights to access the DIP Lender has under the DIP Loan Documents, upon reasonable advance notice to counsel to the Debtors (email being sufficient), at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the DIP Lender to have reasonable access to (a) inspect the Debtors' assets, and (b) regularly scheduled meetings as mutually agreed with senior management of the Debtors and other company advisors (during normal business hours), excluding any information for which confidentiality is owed to third parties, information subject to attorney client or similar privilege, or where such disclosure would not be permitted by any applicable requirements of law or any binding agreement entered into prior to the date of thisthe Interim Order that would violate confidentiality obligations.

13. ~~14.~~ Effect of Debtors' Stipulations on Third Parties. The Debtors' stipulations, admissions, agreements, and releases contained in ~~the Interim~~this Final Order shall be binding upon the Debtors, their estate and their successor(s) in all circumstances and for all purposes and the Debtors are deemed to have irrevocably waived and relinquished in all circumstances and for all purposes any and all Challenges (as defined herein). The Debtors' stipulations, admissions, agreements and releases contained in ~~the Interim~~this Final Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases and any other person or entity acting or seeking to act on behalf of the Debtors' estate including any Chapter 7 or Chapter 11 trustee or examiner appointed or elected for the Debtors, in all circumstances and for all purposes unless: (a)(i) a party in interest with standing (other than the Debtors, as to which any rights to challenge the stipulations, admissions, and releases contained herein are irrevocably waived and relinquished) has, under the appropriate Bankruptcy Rules, timely and properly filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than the earlier of (x) as to any statutory committees appointed in this case, only, forty-five (45) calendar days after the appointment of any statutory committees appointed in this case or, if longer, sixty (60) days from entry of the Interim Order, (y) if the Chapter 11 Cases are converted to chapter 7 and a chapter 7 trustee or a chapter 11 trustee is appointed or elected prior to the end of the Challenge Period, then the Challenge Period for any

such chapter 7 trustee or chapter 11 trustee shall be extended (solely as to such chapter 7 trustee or chapter 11 trustee) to the date that is the later of (1) sixty (60) calendar days after entry of the Interim Order, or (2) the date that is thirty (30) calendar days after its appointment, and (z) as for all other parties in interest, the earlier of (I) sixty (60) calendar days after entry of the Interim Order or (II) the deadline established by the Bankruptcy Court for filing objections to confirmation of ~~the~~a Plan of Reorganization (as defined in the DIP Credit Agreement) (the "Plan Objection Deadline"); and (a)(ii) any such later date as has been agreed to by the DIP Lender or the Prepetition Litigation Financing Parties (the time period established by the foregoing clauses (a)(i)-(a)(ii), the "Challenge Period"), (b) subject to paragraph ~~16~~15 herein, objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Litigation Financing Documents, the Prepetition Litigation Liens, or otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Challenges") against the Prepetition Litigation Financing Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each, a "Representative" and, collectively, the "Representatives") in connection with matters related to the Prepetition Litigation Financing

Documents, the Prepetition Litigation Liens and the Prepetition Litigation Collateral; and (c) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided, however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred. If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then the Debtors' stipulations, admissions, agreements and releases contained in ~~the Interim~~this Final Order shall be binding on all parties in interest. If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in ~~the Interim~~this Final Order shall nonetheless remain binding and preclusive on each other statutory or nonstatutory committees appointed or formed in the Chapter 11 Cases and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. For the avoidance of doubt, nothing in ~~the Interim~~this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estate, including, without limitation, Challenges

with respect to the Prepetition ~~Loan~~Litigation Financing Documents or the Prepetition Litigation Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay the Chapter 11 Cases or confirmation of any plan of reorganization; *provided, however*, that the foregoing shall not preclude any party from seeking a stay pending appeal. Upon a successful Challenge brought pursuant to this paragraph ~~14~~13, the Court may fashion an appropriate remedy. For the avoidance of doubt, any party in interest that fails to file a Challenge prior to the expiration of the applicable Challenge Period, including the Plan Objection Deadline if earlier, shall be deemed to have forever waived and released all Challenges, and the Debtors' stipulations and releases contained herein shall be binding on such party for all purposes, including for purposes of confirmation of ~~the~~any Plan of Reorganization; *provided further* that all parties' rights are reserved to seek an extension of the Challenge Period by motion on notice to the Notice Parties. Notwithstanding anything to the contrary in this ~~Interim~~Final Order, any chapter 7 or chapter 11 trustee appointed or elected in the Debtors' cases shall, until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the admissions, confirmations, releases, and stipulations of the Debtors in this ~~Interim~~Final Order.

14. ~~15.~~ Payment of Fees and Expenses.

*(a)* The Debtors ~~are~~were, by the Interim Order, and hereby are authorized to pay, in accordance with this ~~Interim~~Final Order, (i) the principal, interest, fees, payments, expenses, and other amounts described in the DIP Loan Documents as such amounts become due and without need to obtain further Court approval, including the fees set forth in the DIP ~~Term Sheet~~Credit Agreement, and all other payments and other amounts owed to the DIP Lender, ~~administrative agent's fees and collateral agent's fees (including all fees and other amounts owed to the DIP Agent),~~ and (ii) the reasonable and documented fees and disbursements of counsel and other professionals to the extent set forth in paragraphs 2(ii)(d) and 7(iii) ~~and 8(iii)~~ of this ~~Interim~~Final Order, whether or not such fees arose before or after the Petition Date, all to the extent provided in this ~~Interim~~Final Order or the DIP Loan Documents. Notwithstanding the foregoing, the Debtors were, by the Interim Order, and hereby are authorized to pay on the Closing Date all reasonable and documented fees, costs, and expenses, including the fees and expenses of counsel to the DIP Lender and the Prepetition Litigation Financing Parties, incurred on or prior to such date without the need for any professional engaged by the DIP Lender and the Prepetition Litigation Financing Parties to be subject to the procedures set forth in paragraph ~~15~~14(b). The Debtors are further authorized to pay, on the date of the funding of the Additional Draw and on the date of the funding of the Final Amount, all reasonable and documented fees, costs, and expenses of counsel to, and other professionals engaged by, the DIP Lender and the Prepetition

Litigation Financing Parties incurred through such date, without the need for any such professional to be subject to the procedures set forth in paragraph ~~15~~14(b).

(b) The Debtors shall be jointly and severally obligated to pay all fees and expenses described above, which obligations owed to the DIP Lender shall constitute DIP Obligations. The Debtors shall pay the reasonable and documented professional fees, expenses, and disbursements of professionals to the extent provided for in paragraphs 2(ii)(d) and ~~8~~7(iii) of this ~~Interim~~Final Order (collectively, the "Lender Professionals" and each, a "Lender Professional") no later than ten business days (the "Review Period") after the receipt by counsel for the Debtors, any Creditors' Committee appointed in these chapter 11 cases, or the U.S. Trustee of each of the invoices therefor (the "Invoiced Fees") and without the necessity of filing formal fee applications or complying with the U.S. Trustee Guidelines, including such amounts arising before the Petition Date. Invoiced Fees shall be in the form of an invoice summary for professional fees and expenses incurred during the pendency of the Chapter 11 Cases, and such invoice summary shall not be required to contain time entries or timekeeper summaries reflecting hours billed, but shall include a list of the professionals who performed services, their hourly rates and class year, and a general, brief description of the nature of the matters for which services were performed, which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under

applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law.

(c) The Debtors, any Creditors' Committee, or the U.S. Trustee may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, ~~within~~no later than 12:00 p.m. (ET) on the last day of the Review Period, a Debtor, any Creditors' Committee that may be appointed in these Chapter 11 Cases, or the U.S. Trustee notifies the submitting party in writing setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least ten days' prior written notice to the submitting party of any hearing on such motion or other pleading). Upon receipt of any invoice, and during the Review Period, the Debtors shall deposit and hold in escrow in a segregated account an amount equal to the full amount of such Invoiced Fees, which amounts shall be held in trust solely for payment of such Invoiced Fees. Any hearing to consider such an objection to the payment of any fees, costs, or expenses set forth in a professional fee invoice hereunder shall be limited to the reasonableness of the fees, costs and expenses that are the subject of the objection. For the avoidance of doubt, the Debtors shall ~~promptly~~ pay in full all Invoiced Fees other than the Disputed Invoiced Fees within five (5) business days following the

expiration of the Review Period, and shall continue to hold any Disputed Invoiced Fees in escrow until the dispute is resolved by agreement or order of the Court.

(d) In addition, the Debtors hereby indemnify each of the DIP Lender and the Prepetition Litigation Financing Secured Parties (but solely with respect to aany Challenge, subject to entry of the Final Order), and each of their respective affiliates, successors, and assigns and the officers, directors, employees, agents, attorneys, advisors, controlling persons, and members of each of the foregoing (each, an “"Indemnified Person”"), and hold them harmless from and against all costs, expenses (including reasonable and documented legal fees and expenses), and liabilities arising out of or relating to the transactions contemplated hereby and any actual or proposed use of the proceeds of any loans made under the DIP Facility, as and to the extent provided in the DIP Credit Agreement or the applicable Prepetition Credit AgreementLitigation Financing Agreements. The Debtors' obligations under this paragraph 14(d) owed to the DIP Lender shall constitute DIP Obligations. No Indemnified Person shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to the Debtors or any shareholders or creditors of the Debtors for or in connection with the transactions contemplated hereby, except to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Person’sPerson's gross negligence or willful misconduct. Subject to entry of the Final Order, inIn no event shall any Indemnified Person or any Debtor be liable on any theory of liability for any special, indirect, consequential,

or punitive damages; provided,— that this shall not affect the Debtors'' indemnification obligations pursuant to the immediately precedingfirst sentence of this paragraph 14(d).

15. 16. Limitation on Use of DIP Proceeds and Collateral. The Debtors shall use proceeds from the DIP Facility and Cash Collateral solely in accordance with the Approved Budget. Notwithstanding any other provision of the Interimthis Final Order or any other order entered by the Court, no proceeds of the DIP Facility, any DIP Collateral, Prepetition Litigation Collateral or any portion of the Carve Out, may be used in connection with (i) the investigation, threatened initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (a) against the DIP Lender, the Prepetition Litigation Financing Parties, or their respective predecessors-in-interest, agents, affiliates, Representatives, attorneys, or advisors, in each case in their respective capacities as such, or any action purporting to do the foregoing in respect of the DIP Obligations, DIP Liens, DIP Superpriority Claims, the Prepetition Litigation Liens and/or the Adequate Protection Obligations and Adequate Protection Liens granted to the Prepetition Litigation Financing Parties, as applicable, or (b) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to the DIP Obligations, the Prepetition Litigation Financing Obligations, the DIP Liens, the Prepetition Litigation Liens and/or the liens, claims, rights, or security interests securing or supporting the DIP Obligations granted under the Interim Order, the Final OrderDIP Orders, the DIP Documents or the Prepetition LoanLitigation Financing Documents, in the case of each (a)

and (b), without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise (provided that, notwithstanding anything to the contrary herein, the proceeds of the DIP Facility and/or DIP Collateral may be used by any statutory committees appointed in this case to investigate but not to prosecute the claims and liens of the Prepetition Litigation Financing Parties up to an aggregate cap of no more than $25,000); (ii) subject to paragraph ~~14~~13 herein, attempts to prevent, hinder, or otherwise delay or interfere with the Prepetition Litigation Financing Parties' or the DIP Lender's, as applicable, enforcement or realization on the Prepetition Litigation ~~Finance~~Financing Obligations, Prepetition Litigation Collateral, DIP Obligations, DIP Collateral, and the liens, claims and rights granted to such parties under the ~~Interim Order or Final Order~~DIP Orders, as applicable, each in accordance with the DIP Documents, the Prepetition ~~Loan~~Litigation Financing Documents and ~~the Interim~~this Final Order; (iii) attempts to seek to modify any of the rights and remedies granted to the Prepetition Litigation Financing Parties or the DIP Lender under ~~the Interim~~this Final Order, the Prepetition ~~Loan~~Litigation Financing Documents or the DIP Documents, as applicable, other than in accordance with ~~the Interim~~this Final Order; (iv) to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens and claims granted hereunder or permitted pursuant to the DIP Documents) or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and Adequate

Protection Superpriority Claims; or (v) to pay or to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved or authorized by the Court, agreed to in writing by the DIP Lender, expressly permitted under ~~the Interim~~this Final Order or permitted under the DIP Documents (including the Approved Budget, subject to ~~permitted variances~~Permitted Variances), in each case unless all DIP Obligations, Prepetition Litigation Financing Obligations, Adequate Protection Obligations, and claims granted to the DIP Lender and Prepetition Litigation Financing Parties under ~~the Interim~~this Final Order, have been refinanced or paid in full in cash or otherwise agreed to in writing by the DIP Lender.

16. ~~17.~~ No Monitoring Obligation. The DIP Lender shall not have any obligation or responsibility to monitor any Debtor's use of the DIP Facility, and the DIP Lender may rely upon each Debtor's representations that the use of the DIP Facility at any time is in accordance with the requirements of the DIP Orders and the DIP Loan Documents, including but not limited to the Approved Budget.

17. ~~18.~~ Section 506(c) Claims. ~~Subject to the entry of the Final Order granting such relief, no~~No costs or expenses of administration of the Chapter 11 Cases or any Successor Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral (including Cash Collateral) or the Prepetition Litigation Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent

of the DIP Lender or the Prepetition Litigation Financing Parties, as applicable, and no consent shall be implied from any other action, inaction or acquiescence by the DIP Lender or the Prepetition Litigation Financing Parties and nothing contained in this ~~Interim~~Final Order shall be deemed to be a consent by the DIP Lender or the Prepetition Litigation Financing Parties to any charge, lien, assessment or claims against the DIP Collateral or the Prepetition Litigation Collateral under section 506(c) of the Bankruptcy Code or otherwise.

18. ~~19.~~ No Marshaling. ~~Subject to the entry of the Final Order granting such relief, in~~In no event shall the DIP Lender or the Prepetition Litigation Financing Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine, with respect to the DIP Collateral, the DIP Obligations, the Prepetition Litigation Financing Obligations, or the Prepetition Litigation Collateral, without prejudice to any greater rights, protections or waivers to which the DIP Lender or the Prepetition Litigation Financing Parties may be entitled ~~to~~ under ~~the~~this Final Order. Proceeds of the DIP Collateral shall be received and applied pursuant to the DIP Loan Documents, the Prepetition Litigation Financing Agreements, and this ~~Interim~~Final Order, notwithstanding any other agreement or provision to the contrary.

19. ~~20.~~ Equities of the Case. ~~Subject to entry of the Final Order granting such relief,~~ (a) the Prepetition ~~Secured~~Litigation Financing Parties shall be entitled to all the rights and benefits of section 552(b) of the Bankruptcy Code and (b) the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Litigation

Financing Parties with respect to any proceeds, products, offspring, or profits of any of the DIP Collateral (including the Prepetition Litigation Collateral); provided that the foregoing waiver of the "equities of the case" exception shall be subject to entry of the Final Order.

20. 21. Except as otherwise expressly set forth herein, subject to the provisions set forth in Paragraph 15paragraph 14 herein, any and all payments or proceeds remitted to the DIP Lender or the Prepetition Litigation Financing Parties pursuant to the provisions of the Interimthis Final Order, the DIP Documents, or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment, or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code (subject to the entry of the Final Order granting such relief), whether asserted or assessed by through or on behalf of the Debtors.

22. Based on the findings set forth in the Interim Order, in consideration for the financing provided under the DIP Term Sheet, the DIP Lender is entitled to, and hereby is granted, the full rights, benefits, privileges and protections of, and provided by, section 364(e) of the Bankruptcy Code to the extent provided therein with respect to the DIP Term Sheet (and related liens, claims, rights, remedies and benefits) created or authorized by the Interim Order in the event that the Interim Order or any authorization or approval contained herein is subsequently stayed, vacated, reversed, amended or modified on appeal. The reversal or modification on appeal of an authorization in the Interim Order under section 364 of the Bankruptcy Code to obtain credit or

incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith; *provided*, *however*, in the event of a subsequent modification or reversal, the rights of the DIP Lender, as applicable, as to funds borrowed under the Interim Order are governed by the Interim Order.

21. Section 364(e) Protections; Modification of Final Order. Based on the findings set forth in this Final Order, the DIP Lender and the Prepetition Litigation Financing Parties are entitled to, and hereby are granted, the full rights, benefits, privileges and protections of sections 364(e) and 363(m) of the Bankruptcy Code. If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Lender or the Prepetition Litigation Financing Parties, as applicable, of the effective date of such reversal, modification, vacatur or stay; or (ii) the validity, priority and enforceability of the DIP Liens, the Adequate Protection Liens, and the Carve Out. Notwithstanding any such reversal, modification, vacatur or stay, the DIP Obligations, DIP Liens, DIP Superpriority Claims, Adequate Protection Obligations, Adequate Protection Liens, and Adequate Protection Superpriority Claims incurred, prior to the actual receipt of written notice by the DIP Lender or the Prepetition Litigation Financing Parties, as applicable, of the effective date of such reversal, modification, vacatur or

stay shall be governed in all respects by the original provisions of this Final Order, and the DIP Lender and the Prepetition Litigation Financing Parties shall be entitled to all the rights, remedies, privileges and benefits arising under sections 364(e) and 363(m) of the Bankruptcy Code, this Final Order, and the DIP Documents.

22. ~~23.~~ Maintenance of Insurance. Until such time as the DIP Obligations are indefeasibly paid in full, to the extent that the Prepetition Litigation Financing Parties are listed as loss payee under the Debtors' insurance policies, the DIP Lender is also deemed to be the loss payee and additional insured under the insurance policies (in any such case with the same priority of liens and claims thereunder relative to the priority of the Prepetition Litigation Liens and Adequate Protection Liens as set forth herein), and shall act in that capacity and distribute any proceeds recovered or received in respect of the insurance policies to the indefeasible payment in full of the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and termination of the DIP Commitments, and to the payment of the applicable Prepetition Litigation Financing Obligations. The Debtors shall provide the DIP Lender with not less than two (2) business days' prior written notice of any cancellation, non-renewal, or material modification of the Debtors' insurance policies.

23. ~~24.~~ Payments Held in Trust. Except as expressly permitted in this ~~Interim~~Final Order or the DIP Loan Documents, including in respect of the Carve Out, in the event that any person or entity receives any Unencumbered Collateral or any proceeds of Unencumbered

Collateral prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Loan Documents, and termination of the DIP Facility in accordance with the DIP Credit Agreement, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of Unencumbered Collateral and shall immediately turn over such proceeds to the DIP Lender, for application in accordance with the DIP Loan Documents and this ~~Interim~~Final Order.

24. ~~25.~~ Limitation of Liability. ~~in~~In determining to make any loan or other extension of credit under the DIP Documents, to permit the use of the DIP Collateral or Prepetition Litigation Collateral or in exercising any rights or remedies as and when permitted pursuant to ~~the Interim~~this Final Order or the DIP Documents or Prepetition ~~Loan~~Litigation Financing Documents, neither the DIP Lender nor the Prepetition Litigation Financing Parties shall (i) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors or the Debtors' creditors, shareholders or estates; or (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code). Furthermore, nothing in ~~the Interim~~this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Prepetition Litigation Financing Parties of any liability for any claims arising from the

prepetition or postpetition activities of the Debtors and their respective Affiliates (as defined in section 101(2) of the Bankruptcy Code). The DIP Lender and Prepetition Litigation Financing Parties shall not, in any way or manner, be liable or responsible for (a) the safekeeping of DIP Collateral and/or the Prepetition Litigation Collateral, (b) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (c) any diminution in the value thereof or (d) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the DIP Collateral or Prepetition Litigation Collateral shall be borne by the Debtors.

25. 26. Except as explicitly provided for herein, the Interimthis Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

26. 27. Binding Effect; Successors and Assigns. Subject to entry of the Final Order and, solely with respect to the Prepetition LoanLitigation Financing Documents, to the provisions of Paragraph 14paragraph 13 herein, the DIP Documents, the Prepetition LoanLitigation Financing Documents and the provisions of the Interimthis Final Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Lender and the Prepetition Litigation Financing Parties, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee

hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estate of the Debtors) and shall inure to the benefit of the DIP Lender and the Prepetition Litigation Financing Parties and the Debtors and their respective successors and assigns; *provided* that, except to the extent expressly set forth in this ~~Interim~~Final Order, the DIP Lender and the Prepetition Litigation Financing Parties shall have no obligation to permit the use of the Prepetition Litigation Collateral by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

27. ~~28.~~ Proceeds of Subsequent Financing. If the Debtors, any trustee, any examiner, or any responsible officer subsequently appointed in these Chapter 11 Cases or any Successor Case, shall obtain credit or incur debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the indefeasible repayment in full in cash of all DIP Obligations (other than unasserted contingent obligations that expressly survive termination of the DIP Loan Documents) and the termination of the DIP Lender's obligations to extend credit under the DIP Facility, then, after satisfaction of the Carve Out, and unless otherwise agreed by the DIP ~~Secured Parties~~Lender, all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP ~~Secured Parties~~Lender to be distributed in accordance with this ~~Interim~~Final Order and the DIP Loan Documents.

28. ~~29.~~ Survival. The DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims and all other rights and remedies of the DIP Lender and the Prepetition Litigation Financing Parties granted by ~~the Interim~~this Final Order and the DIP Documents, as well as the Carve Out, shall survive, and shall not be modified, impaired or discharged by the entry of an order (i) converting or dismissing the Chapter 11 Cases, (ii) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code; or (iii) confirming a chapter 11 plan in the Chapter 11 Cases. The terms and provisions of this ~~Interim~~Final Order shall continue in these cases, in any case under chapter 7 of the Bankruptcy Code upon conversion of any of the Chapter 11 Cases and following dismissal of any such cases, and shall continue to apply until all DIP Obligations and Adequate Protection Obligations have been indefeasibly paid in full and all commitments under the DIP Facility have been terminated.

29. ~~30.~~ Credit Bidding. (a) The DIP Lender shall have the right to credit bid, in accordance with the DIP Loan Documents, in any sale of the DIP Collateral up to the full amount of the DIP Obligations; and (b) subject to the rights and limitations set forth in paragraph ~~14~~13 of this ~~Interim~~Final Order, the Prepetition Litigation Financing Parties shall have the right to credit bid in any sale of the Prepetition Litigation Collateral up to the full amount of the Prepetition Litigation Financing Obligations and the Adequate Protection Claims of the Prepetition Litigation Financing Parties, if any, in each case as and to the extent provided for in section

363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through sections 363(k), 1123, or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, in each case unless the Court for cause orders otherwise.

30. ~~31.~~ Plan Treatment. If any of the Debtors propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment (including by credit bid) of the DIP Obligations and the Prepetition Litigation ~~Finance~~Financing Obligations, and the payment of the Debtors' obligations with respect to the adequate protection provided herein, in full in cash ~~within~~ by the maturity date of the DIP Facility (and in no event later than the effective date of such plan of reorganization or consummation of such sale) (a "Non-Consensual Plan or Sale") without the prior written consent of the DIP Lender and the Prepetition Litigation Financing Parties, the Debtors' proposal or support of a Non-Consensual Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder and under the DIP Documents.

31. ~~32.~~ No Subordination or Pari Passu Treatment. Other than as expressly set forth herein, the DIP Obligations, DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and Adequate Protection Superpriority Claims shall not be subordinated to or made pari passu

with any other lien, claim or interest under section 363 or 364 of the Bankruptcy Code or otherwise.

32. ~~33.~~ Conditions Precedent. ~~No~~The DIP Lender shall not have any obligation to make any DIP Loan under the respective DIP Loan Documents unless all of the conditions precedent to the making of such extensions of credit under the applicable DIP Loan Documents have been satisfied in full or waived in accordance with such DIP Loan Documents.

33. ~~34.~~ Authorization. The Debtors, the DIP Lender and the Prepetition Litigation Financing Parties are authorized to take all reasonable actions as are necessary or appropriate to implement the terms of ~~the Interim~~this Final Order.

34. ~~35.~~ Automatic Stay. The automatic stay imposed by section 362(a) of the Bankruptcy Code shall be, and hereby is, modified to the extent necessary to implement and effectuate the terms and conditions of ~~the Interim~~this Final Order.

35. ~~36. Immediate Entry~~Effectiveness. Notwithstanding Bankruptcy ~~Rule 6004(h), the provisions of the Interim~~Rules 4001(a)(3), 6004(h), 7062, or 9014 or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry ~~of the Interim Order. The Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003(b).~~and there shall be no stay of execution or

effectiveness of this Final Order. The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

36. Interim Order. Except as expressly provided in this Final Order, all provisions of the Interim Order are hereby ratified and confirmed, and all actions taken, DIP Loans made, DIP Liens and DIP Superpriority Claims granted, and other obligations incurred pursuant to the Interim Order are hereby ratified, confirmed, and approved in all respects. To the extent of any conflict between the Interim Order and this Final Order, this Final Order shall control.

~~37. Notice. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.~~

~~38. Final Hearing. The Final Hearing on the Motion is scheduled for **October 20, 2026 at 2:00 p.m. (prevailing Eastern Time)**, before the Honorable Eamonn James O'Hahan, U.S.B.J., at the Mitchell H. Cohen Building, 400 Cooper Street, Camden, NJ 08101, Courtroom 2. Any party in interest who objects to the relief sought in the Motion at the Final Hearing shall file a written objection with the Clerk of the Court **on or before 4:00 p.m. (prevailing Eastern Time) October 13, 2026** and serve a copy on: (i) counsel for the Debtors, Dentons US LLP, 601 S. Figueroa Street #2500, Los Angeles, CA 90017, Attn: Van C. Durrer, II (van.durrer@dentons.com); Dentons US LLP, 101 JFK Parkway, Short Hills, NJ 07078, Attn: Lauren Macksoud (lauren.macksoud@dentons.com); Dentons Bingham Greenebaum LLP, 3500~~

PNC Tower, 101 S. 5th St. #3500, Louisville, KY 40202, Attn: James Irving (james.irving@dentons.com); (ii) counsel for the Office of the United States Trustee, District of New Jersey, One Newark Center, 1095 Raymond Blvd, Suite 2100, Newark, NJ 07102, Attention: Jeffrey M. Sponder (jeffrrey.m.sponder@usdoj.gov); (iii) counsel for DIP Lender, Ropes & Gray LLP, 1211 6th Ave, New York, NY 10036, Attention: Rachel Strickland (Rachel.Strickland@ropesgray.com), Eliza Hollander (Eliza.Hollander@ropesgray.com), Stephen Ford (Stephen.Ford@ropesgray.com), Erin Dougherty (Erin.Dougherty@ropesgray.com), Colin Davidson (Colin.Davidson@ropesgray.com), Ropes & Gray LLP, 191 N Wacker Dr 32nd Floor, Chicago, IL 60606, Attn: Stephen Iacovo (Stephen.Iacovo@ropesgray.com); (iv) counsel for the Prepetition Litigation Financing Parties, Ropes & Gray LLP, 1211 6th Ave, New York, NY 10036, Attention: Rachel Strickland (Rachel.Strickland@ropesgray.com), Eliza Hollander (Eliza.Hollander@ropesgray.com), Stephen Ford (Stephen.Ford@ropesgray.com), Erin Dougherty (Erin.Dougherty@ropesgray.com), Colin Davidson (Colin.Davidson@ropesgray.com), Ropes & Gray LLP, 191 N Wacker Dr 32nd Floor, Chicago, IL 60606, Attn: Stephen Iacovo (Stephen.Iacovo@ropesgray.com); (v) counsel for Structural, (i) PremierCounsel LLP, 315 Montgomery St., Suite 900, San Francisco, CA 94104, Attn: Steven Gasser (sgasser@premiercounsel.com), (ii) Levene, Neale, Bender, Yoo & Golubchik L.L.P., 2818 La Cienega Ave, Los Angeles, CA 90034, Attn: Ron Bender (rb@lnbyg.com); Beth Ann R. Young

(bry@lnbyg.com); Richard P. Steelman, Jr. (rps@lnbyg.com), and (iii) Richards, Layton & Finger, PA, 920 N King St, Wilmington, DE 19801, Attn: Michael J. Merchant (merchant@rlf.com) and John H. Knight (knight@rlf.com); and (vi) counsel for any statutory committees appointed in this case.

37. 39. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of the Interimthis Final Order.

38. 40. The Debtors shall serve a copy of this InterimFinal Order and the Motion on all parties required to receive such service pursuant to Local Bankruptcy Rule 9013-5(f).

# Exhibit A

## ~~Term Sheet~~DIP Credit Agreement

**[To Come]**

## Schedule 1

**Milestones**[6]

**The Debtors shall comply with each of the following deadlines, in each case subject to extension with the consent of the DIP Lender:**

~~(i) On or before the date that is three (3) Business Days from the Petition Date, the Bankruptcy Court shall have entered the Interim Order in form and substance acceptable to the DIP Lender;~~

(i) ~~(ii)~~ On or before the date that is thirty (30) calendar days from the Petition Date, the Bankruptcy Court shall have entered the Final Order in form and substance acceptable to the DIP Lender;

(ii) ~~(iii)~~ On or before the date that is ~~sixty~~seventy (~~60~~70) days from the Petition Date, the Bankruptcy Court shall have confirmed a plan of reorganization in form and substance acceptable to the DIP Lender~~.~~; and

(iii) ~~(iv)~~ On or before the date that is ~~sixty~~seventy (~~60~~70) days from the Petition Date, the effective date of ~~the Plan~~such plan of reorganization shall have occurred.

[6] Capitalized terms used on Schedule 1 but not otherwise defined shall have the meanings ascribed in the DIP ~~Term Sheet~~Credit Agreement.

# EXHIBIT D

**(Proposed Interim Cash Collateral Order)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>House Canary New Jersey, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-20766 (EJO)<br><br>(Jointly Administered)<br><br>Hearing Date: October 20, 2026 at 2:00 p.m.<br><br>(Eastern) |

**INTERIM ORDER GRANTING**
**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM**
**AND FINAL ORDERS (I) AUTHORIZING POSTPETITION USE OF CASH**
**COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO STRUCTURAL,**
**(III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through twenty-three (23), is **ORDERED**.

[4] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) House Canary New Jersey, Inc. [3712], (ii) HouseCanary, Inc. [2307], (iii) HouseCanary (CT), Inc. [1814], (iv) ComeHome, Inc. [0328], (v) HC Certified Analytics, Inc. [8523], and (vi) HouseCanary R&D, LLC [2124]. The Debtors' mailing address is 535 Mission Street, 14th Floor, San Francisco, CA 94105.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**DENTONS US LLP**
Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: van.durrer@dentons.com

**DENTONS BINGHAM GREENEBAUM LLP**
James R. Irving (admitted *pro hac vice*)
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
Telephone: (502) 589-4200
Facsimile: (502) 540-2215
Email: james.irving@dentons.com

*Proposed Counsel to Debtors and Debtors in Possession*

Upon consideration of the motion (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Interim Order") and later a final order under sections 105, 361, 362, 363, 503, 506, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Local Rules 4001-3 and 9013-5, for among other things:

a. authorizing the use of any and all of the Debtors' cash, existing as of the Petition Date in an account that Structural Capital Investments III, LP, Series Structural DCO II series of Structural Capital DCO, LLC, and CEOF Holdings LP as lenders, and Ocean II PLO LLC as agent (collectively, "Structural") had control over (which amount was $55,061.56), as well as any cash or funds in any accounts which constitute income, proceeds, products, rents or profits of any Structural Collateral (defined below), in each case solely to the extent of the validity and security of Structural's perfected interest therein, and excluding (i) any proceeds of the DIP Facility, (ii) any Prepetition Litigation Collateral or proceeds thereof, (iii) any property of the Debtors, and any proceeds thereof, that, as of the Petition Date, was not subject to a valid and perfected lien in favor of Structural, and (iv) any property acquired with DIP proceeds (collectively, the "Cash Collateral"), pursuant to sections 105, 361, 362, 363, 503, 506, 507, and 552 of the Bankruptcy Code on the terms and conditions set forth in this Interim Order during the period following the Petition Date (as defined below) and

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Interim DIP Order, as applicable.

through the earlier to occur of the Expiration Date (as defined below) or the Termination Date (as defined below). "Structural Collateral" means the "Collateral" as defined in that certain *Loan and Security Agreement* dated March 25, 2021, as amended (the "LSA"), solely to the extent of Structural's valid, perfected, and unavoidable interest therein, and in all cases excluding (i) the Intellectual Property (as defined in the LSA), (ii) the Litigation IP, the Texas Litigation Collateral (as defined in the LSA), the Prepetition Litigation Collateral, and their respective proceeds, (iii) unless and until the Court determines that such property is subject to a valid and perfected lien in favor of Structural, any accounts, general intangibles, or other rights to payment and proceeds arising from the sale, licensing, or other disposition of, or rights in, all or any part of the Intellectual Property (the "Rights to Payment"), and (iv) any proceeds of the DIP Facility and any property acquired therewith; *provided* that the foregoing definition is descriptive only and shall not constitute a finding or determination as to the nature, scope, extent, validity, perfection, priority, or value of any lien or interest asserted by Structural, and the rights of all parties with respect thereto are reserved;

b. granting adequate protection, as and to the extent set forth herein, to Structural solely to the extent of any Diminution in Value (as defined below) of the Cash Collateral from and after the Petition Date;

c. modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and Structural to implement and effectuate the terms and provisions of this Interim Order;

d. scheduling a final hearing (the "Final Hearing") to consider entry of a final order granting the relief requested in the Motion on a final basis (the "Final Order") and approving the form of notice with respect to the Final Hearing;

e. waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Interim Order; and

f. granting related relief;

all as more fully set forth in the Motion; and an interim hearing with respect to the Motion having been held on October 20, 2026 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b) and 9014 and Bankruptcy Local Rule 9013-5 and it appearing that no other or further notice need be provided; and the Court having considered the First Day Declaration, the DIP Declaration, and the Budget filed and served by the Debtors, the evidence submitted or adduced, and the statements of counsel made at the Interim Hearing; and the Court having considered the interim relief requested in the Motion; and the relief requested being reasonable, appropriate, and in the best interests of the Debtors, their creditors, their estates and all other parties in interest in the Chapter 11 Cases; and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates; and that the legal and factual bases set forth in the Motion and at the Interim Hearing establish just cause for the relief granted herein; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A. ***Petition Date.*** On September 22, 2026 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (this "Court") commencing these Chapter 11 Cases.

B. ***Debtors in Possession.*** The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of the Chapter 11 Cases.

C. ***Committee Formation.*** As of the date hereof, the United States Trustee for the District of New Jersey (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "Official Committee").

D. ***Jurisdiction and Venue.*** This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties ***and*** property affected hereby pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief set forth herein are sections 105(a), 361, 362, 363, 503, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Bankruptcy Local Rules 4001-3 and 9013-5.

E. ***Notice.*** Notice of the Motion and the Interim Hearing constitutes due, sufficient, and appropriate notice and complies with Bankruptcy Rules 4001(b) and 9014 and the Bankruptcy Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

F. ***Debtors' Stipulations***. At this time, solely for the purpose of determining Diminution in Value for cash collateral purposes and not for any other purpose, the Debtors stipulate to the validity, perfection, and unavoidability of Structural's liens on the Structural Collateral and claims against the Debtors' bankruptcy estates. However, the Debtors do not stipulate, and Structural and the Debtors reserve all rights on: (i) whether Structural's liens on the Debtors' bank accounts to which Structural did not have control via a deposit account control agreement are perfected or whether the cash in those accounts is Structural's Cash Collateral, and (ii) whether Structural has a claim against the Debtor House Canary New Jersey, Inc. under the LSA. Nothing in this Finding F shall prejudice the rights of the DIP Lender, the Prepetition Litigation Financing Parties, or any other party in interest.

G. ***Need for Use of Cash Collateral.*** In addition to the Debtors' need for debtor-in-possession financing approved by the Interim DIP Order, the Debtors also have an immediate and critical need to use Cash Collateral on an interim basis to permit the orderly continuation of the operation of their businesses, maintain business relationships with customers, vendors, and suppliers, make payroll, and satisfy other working capital and operational needs (in each case, in accordance with and subject to this Interim Order) for the benefit of the estates and the Debtors'

creditors and stakeholders, including Structural. The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral is necessary and vital to the preservation and maintenance of the going concern value of the Debtors and their successful reorganization. The Debtors do not have sufficient sources of working capital and financing to operate their business in the ordinary course of business without the use of Cash Collateral. Absent the ability to use Cash Collateral, the continued operation of the Debtors' businesses would not be possible, and immediate and irreparable harm to the Debtors and their estates would be inevitable.

H. ***Use of Cash Collateral.*** The Debtors have agreed that all Cash Collateral shall be used and/or applied solely for the purposes permitted in the Approved Budget (as defined below), attached hereto as Exhibit 1, including, without limitation, (i) to pay the costs of the administration of the Chapter 11 Cases (other than as provided in paragraph 6 of this Interim Order), and (ii) for general corporate and working capital purposes in accordance with the terms and conditions of this Interim Order.

I. ***Adequate Protection.*** Structural is entitled to adequate protection as set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code for the Debtors' use of the Cash Collateral, and the imposition of the automatic stay, in the case of the Adequate Protection Liens, Adequate Protection Superpriority Claims, and Adequate Protection Payments (each, as defined below), solely to the extent of any Diminution in Value (defined below); *provided* that (i) the Adequate Protection Liens shall be subject and subordinate to the DIP Liens, the Prepetition Litigation Liens, the Prepetition Structural Liens, and the Carve Out, and (ii) the Adequate Protection Superpriority Claims shall be subject and subordinate to the Carve Out and the DIP

Superpriority Claims, and shall not be senior to any claims held by the Prepetition Litigation Financing Parties. Based upon the Motion and the evidence presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and the use of the Cash Collateral as contemplated herein are fair and reasonable and reflect the Debtors' prudent exercise of business judgment. As adequate protection against any aggregate diminution in value of Structural's liens and security interests in the Cash Collateral (solely to the extent of the validity and security of Structural's perfected interest in the Cash Collateral) from and after the Petition Date resulting from, among other things, (i) the use of Cash Collateral by each of the Debtors on a dollar-for-dollar basis, (ii) the imposition of the automatic stay, and (iii) the imposition of the Carve Out (as defined in the Interim DIP Order or, upon entry, any subsequent order on debtor-in-possession financing) (collectively, and to the fullest extent permitted under the Bankruptcy Code or other applicable law, the "Diminution in Value"), Structural shall receive (to the extent of its validly perfected security interest) adequate protection, pursuant to sections 361, 362, and 363 of the Bankruptcy Code, as set forth in this Interim Order; provided, however, that nothing in this Interim Order shall (x) be construed as the affirmative consent by Structural for the use of Cash Collateral other than on the terms expressly set forth in this Interim Order, or (y) prejudice, limit or otherwise impair the rights of Structural to seek new, different or additional adequate protection after the date hereof. Based on the Motion, the First Day Declaration, the DIP Declaration, and other evidence filed in support of the Motion, and the record presented to the Court in connection with the Interim Hearing, the terms of the adequate protection arrangements and the use of Cash Collateral are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and

constitute reasonably equivalent value and fair consideration for the use of Cash Collateral.

J. ***Proper Exercise of Business Judgment***. Based on the Motion, the First Day Declaration, the DIP Declaration, and the record presented to the Court at the Interim Hearing, (i) the terms of adequate protection granted to Structural, (ii) the terms on which the Debtors may use Cash Collateral, and (iii) the Cash Collateral arrangements described herein, (a) are fair, reasonable, and the best available to the Debtors under the circumstances, (b) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and (c) are supported by reasonably equivalent value and fair consideration. Absent the ability to continue to use Cash Collateral upon the terms set forth herein, the Debtors, their estates, their creditors, and other parties-in-interest will be seriously and irreparably harmed.

K. ***Budget***. The Debtors previously prepared a six-week itemized cash flow forecast set forth as an exhibit to the DIP Declaration (the "Initial Budget"). Attached hereto as Exhibit 1 is an updated ten-week itemized cash flow forecast approved by Condor FundingCo 26, LLC (the "DIP Lender") in accordance with the Interim DIP Order or, upon entry, any subsequent order on debtor-in-possession financing (the "Budget," as updated by the Debtors from time to time, approved by the DIP Lender in accordance with the Interim DIP Order or, upon entry, any subsequent order on debtor-in-possession financing, and acceptable to Structural (such acceptance not to be unreasonably withheld) in accordance with the terms of this Interim Order, the "Approved Budget"); *provided* that nothing herein shall modify the rights of the DIP Lender with respect to any budget under the Interim DIP Order or, upon entry, any subsequent order on debtor-in-possession financing. The Approved Budget is an integral part of this Interim Order, and Structural

is relying, in part, upon the Debtors' agreement to comply, subject to Permitted Variance (as defined below), with the Approved Budget, in determining to allow the Debtors' use of Cash Collateral in accordance with the terms of this Interim Order.

L. ***Good Faith***. The parties herein have acted in good faith, at arm's length, and with sound business judgment in connection with this Interim Order.

M. ***Need for Immediate Entry of this Interim Order.*** The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The permission granted herein to use Cash Collateral (and provide adequate protection therefor) is necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors and their estates and creditors.

**NOW THEREFORE**, based upon the foregoing findings and conclusions, the Motion, the First Day Declaration, the DIP Declaration, and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. ***Motion Granted.*** The use of Cash Collateral is hereby authorized and approved and the Motion is hereby **GRANTED** in accordance with and subject to the terms and conditions of this Interim Order. Any objections or other statements with respect to any of the relief set forth in this Interim Order that have not been withdrawn, waived, or settled, and all reservation of rights inconsistent with this Interim Order, are hereby denied and overruled.

2. ***Authorization to Use Cash Collateral***. Subject to the provisions of this Interim Order (including the Carve Out which is adopted under the terms of the Interim DIP Order or,

upon entry, any subsequent order on debtor-in-possession financing), the Debtors are authorized to use Cash Collateral during the period from the Petition Date through and including a Termination Date (as defined below) or the Expiration Date (as defined below) to operate the Debtors' businesses in the ordinary course and pay certain costs, fees, and expenses related to the Chapter 11 Cases, in accordance with the Approved Budget as provided herein, and as approved by any order of this Court.

3. ***Approved Budget.*** Subject to the provisions of this Interim Order (including the Carve Out), the Debtors are authorized to use Cash Collateral in accordance with the Approved Budget (subject to Permitted Variance) through December 4, 2026 (the "Expiration Date"). The Debtors shall provide the same reporting to Structural as the Debtors are currently providing to the DIP Lender under the Interim DIP Order and any subsequent order on debtor-in-possession financing.

4. ***Permitted Variance***. The Debtors covenant that, for each Budget Testing Period, (a) overall disbursements (other than fees and expenses of the DIP Lender) shall not exceed the corresponding amounts in the Approved Budget by more than ten percent (10%) and (b) no individual line-item disbursement shall exceed the corresponding amount in the Approved Budget by more than five percent (5%) (collectively, the "Permitted Variance"); provided, however, that the Debtors shall be entitled to reserve budgeted professional fees on a weekly basis, such fees to be reconciled as to actuals upon actual billing, Court approval, and payment. To the extent actual disbursements for any line item are less than the amount set forth in the Approved Budget for such line item for any Budget Testing Period (a "Positive Variance"), such Positive Variance may be

carried forward to offset a negative variance in such same line item for the subsequent Budget Testing Period; provided that such Positive Variance may only be used as an offset and may not further increase a Positive Variance for any line item during the subsequent Budget Testing Period. As used herein, "Budget Testing Period" means (a) the period from the Petition Date through and including October 9, 2026 and (b) each rolling four-week period ending on a Friday thereafter.

5. ***Limitations on Use of Cash Collateral.*** The Debtors shall not be permitted to use Cash Collateral to make any payments on account of any prepetition debt or obligation before the effective date of a confirmed chapter 11 plan or plans with respect to any of the Debtors, except: (i) as provided in any order in connection with any relief requested by the Debtors at the commencement of these Chapter 11 Cases; or (ii) any payment made in accordance with the Approved Budget, subject to Permitted Variance. The use of Cash Collateral pursuant to the terms and conditions of this Interim Order and in accordance with the Approved Budget shall not be deemed to be consent by Structural to any other or future use of Cash Collateral or to use any Cash Collateral in any amount or for any purpose in excess of the amount set forth in the Approved Budget, subject to the Permitted Variance. For the avoidance of doubt, the Debtors are expressly authorized to reserve amounts for sales tax and other similar taxes in accordance with applicable non-bankruptcy law. To the extent such authorization requires consent, Structural hereby consents to the Debtors' reservation of such amounts.

6. ***Limitations on Use of Cash Collateral in Contested Matters.*** Subject to the Interim DIP Order or, upon entry, any subsequent order on debtor-in-possession financing, the DIP Documents, and the Approved Budget, the Debtors shall not use the Cash Collateral or the

Structural Collateral or any proceeds thereof to challenge Structural's prepetition liens or claims or to litigate contested matters (including, but not limited to, confirmation of the Debtors' chapter 11 plan) with Structural. Any costs of the Debtors or estate professional fees regarding such matters shall be drawn from the Debtors' DIP Facility, to the extent provided in the Approved Budget, and not paid from Cash Collateral or the proceeds of Structural Collateral. Nothing in this paragraph 6 or in Finding H obligates the DIP Lender to fund any amount in excess of its commitments or outside the Approved Budget, including any costs of administering the Chapter 11 Cases, or modifies the DIP Lender's rights under the Interim DIP Order, the DIP Documents, or, upon entry, any subsequent order on debtor-in-possession financing. Notwithstanding the foregoing, the Debtors may pay their employees in the ordinary course of business from the Cash Collateral in accordance with the Approved Budget.

7. ***Adequate Protection for Structural***. Subject and subordinate to the protections afforded the DIP Lender in the Interim DIP Order, or, upon entry, any subsequent order on debtor-in-possession financing, and the Carve Out (as defined in the Interim DIP Order and any subsequent order on debtor-in-possession financing), pursuant to sections 361, 362, 363, and 507 of the Bankruptcy Code, as adequate protection of the interests of Structural in the Cash Collateral (solely to the extent of the validity and security of Structural's perfected interest in the Cash Collateral), in each case, for the Diminution in Value of the Cash Collateral, Structural is hereby granted the following (the liens, security interests, payments, and other obligations set forth in this paragraph, collectively, the "Adequate Protection Obligations"):

a. ***Adequate Protection Liens***. Solely to the extent of (i) any Diminution in Value and (ii) the validity and security of

Structural's perfected interest in the Cash Collateral, and subject in all respects to payment of the Carve Out (as defined in the Interim DIP Order or, upon entry, any subsequent order on debtor-in-possession financing), Structural is hereby granted (effective and perfected as of the entry of this Interim Order and without the necessity of the execution of any security agreements or control agreements) valid, perfected replacement security interests in and liens upon the Structural Collateral (the "Adequate Protection Liens"), which Adequate Protection Liens shall be subject and subordinate to the DIP Liens, the Prepetition Litigation Liens, the Prepetition Structural Liens, and the Carve Out. For the avoidance of doubt, the Adequate Protection Liens will attach to both the Structural Collateral existing as of the Petition Date and such collateral of the same type and form that is generated exclusively post-petition; *provided, however*, that the Adequate Protection Liens shall not attach to (w) the Intellectual Property (as defined in the LSA) or the Litigation IP, (x) the Texas Litigation Collateral (as defined in the LSA) or the Prepetition Litigation Collateral, (y) the proceeds of the DIP Facility or any property acquired with such proceeds, or (z) any proceeds of any of the foregoing; *provided further* that the Adequate Protection Liens shall not attach to any Rights to Payment unless and until the Court determines that such Rights to Payment constitute Structural Collateral.

b. ***Adequate Protection Superpriority Claims***. To the extent the Adequate Protection Liens provided for herein prove insufficient to protect the interest of Structural in the Cash Collateral, Structural is hereby granted an allowed superpriority administrative expense claim on account of such Diminution in Value as provided for in section 507(b) of the Bankruptcy Code (the "Adequate Protection Superpriority Claims"), subject and subordinate to the Carve Out and the DIP Superpriority Claims, and shall not be senior to any claims held by the Prepetition Litigation Financing Parties. The Adequate Protection Superpriority Claims will accrue solely to the extent of, and in an aggregate amount equal to, any Diminution in Value of the Cash Collateral (to the extent of the validity and security of Structural's perfected interest in the Cash Collateral).

c. ***Adequate Protection Payments.*** As set forth in the Approved Budget, the Debtors are directed and authorized to pay to Structural, on the dates set forth in the Approved Budget, adequate protection payments (the "Adequate Protection Payments") in an aggregate amount of $550,000 between entry of this Interim Order and the Expiration Date, with $250,000 paid within the first week after entry of this Interim Order and $50,000 paid per week thereafter through the Expiration Date. The Adequate Protection Payments are inclusive of, and not in addition to, any payment of Structural's professional fees and expenses, of which no more than $150,000 may be paid. No other fees or expenses of Structural shall be paid from Cash Collateral or DIP proceeds. Notwithstanding the foregoing, the Debtors, the DIP Lender, and the Prepetition Litigation Financing Parties expressly reserve the right to assert that Structural's claims against the Debtors are undersecured, including, but not limited to, the right to assert that the Adequate Protection Payments and any payments of Structural's professional fees and expenses, as well as any payment of postpetition interest and fees, should be characterized as a return of collateral or recharacterized as payments of principal, in whole or in part, under section 506 of the Bankruptcy Code or otherwise.

d. ***Reporting.*** Beginning with the week following entry of this Interim Order and every week thereafter, on the third business day of each week, the Debtors shall deliver to Structural a variance report comparing actual disbursements for the preceding week to projected disbursements for the corresponding week set forth in the Approved Budget and explaining in reasonable detail all material variances (each a "Variance Report," which Variance Report shall be in a form satisfactory to the DIP Lender). The Debtors shall also provide Structural, on a weekly basis, a report identifying the amount and location of any cash or proceeds that Structural asserts are its Cash Collateral.

8. ***Access and Information***. Without limitation of the requirements contained in the LSA, upon reasonable prior written notice (including via acknowledged electronic mail) during

normal business hours, the Debtors shall permit Structural and its professionals (each of which is bound by obligations of confidentiality) to have reasonable access to such information regarding the operations, business affairs, and financial condition of the Debtors or any of their subsidiaries, or compliance with the terms of the LSA as Structural may reasonably request, *provided however*, that nothing in this paragraph shall require the Debtors (or any of their advisors) to take any action that would conflict with any applicable requirements of law or any binding agreement, or that would waive any attorney-client or similar privilege.

9. ***Carve Out***. The Carve Out established in the Interim DIP Order or, upon entry, any subsequent order on debtor-in-possession financing, is expressly preserved and any Adequate Protection Liens or Adequate Protection Superpriority Claims granted under this Interim Order are expressly subject to, and junior to, the Carve Out.

10. ***Termination Events***. Subject to the Remedies Notice Period (as defined herein), the Debtors' right to use the Cash Collateral pursuant to this Interim Order shall cease on the Termination Date (as defined herein). As used herein "Termination Events" means any of the events set forth in clauses (a) through (h) below (each such event a "Termination Event," and the date upon which such Termination Event occurs, the "Termination Date"):

a. The effective date of a chapter 11 plan of one or more of the Debtors;

b. The entry of any order modifying, reversing, revoking, staying for a period in excess of five business days, rescinding, vacating, or amending this Interim Order without the express written consent of Structural;

c. The entry of an order dismissing or converting the Chapter 11 Cases to proceedings

under chapter 7 of the Bankruptcy Code;

d. The entry of an order appointing a chapter 11 trustee or an examiner with enlarged powers relating to the operation of the business of any Debtor (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code) unless consented to by Structural in writing;

e. The entry by this Court of an order granting relief from or modifying the automatic stay imposed by section 362 of the Bankruptcy Code – other than with respect to *HouseCanary, Inc. v. Amrock, LLC*, No. 2016-CI-06300, in the 438th Judicial District Court, Bexar County, Texas, and *HouseCanary, Inc. v. Quicken Loans Inc.*, No. 5:18-cv-00519, in the United States District Court for the Western District of Texas – to any entities other than Structural with respect to the Cash Collateral which is not consented to by Structural in writing;

f. The Debtors' failure to comply with the Approved Budget except with respect to Permitted Variance;

g. The failure of the Debtors to observe or perform any of the material terms or material provisions contained herein; and

h. The Debtors sell, transfer, lease, encumber, or otherwise dispose of any portion of the Structural Collateral outside the ordinary course of business, other than the use of Cash Collateral pursuant to this Interim Order and the Approved Budget, the grant of the DIP Liens and any other liens or claims under the Interim DIP Order or, upon entry, any subsequent order on debtor-in-possession financing, or another

order of the Bankruptcy Court.

11. ***Remedies Upon Termination Event***. Upon the occurrence or during the continuation of a Termination Event, Structural may send written notice (the "Remedies Notice"), email being sufficient, to counsel to the Debtors, counsel to the DIP Lender, counsel to any Official Committee (if appointed), and the U.S. Trustee (the "Remedies Notice Parties") that a Termination Event has occurred, and, prior to taking any enforcement action, Structural shall file with the Court and seek an emergency hearing (the "Stay Relief Hearing") upon no less than five days' notice (unless the Debtors, the DIP Lender and Structural agree to request that the Court conduct the Stay Relief Hearing on shorter notice) to the Remedies Notice Parties (the "Remedies Notice Period") to determine whether a Termination Event has occurred. The Debtors shall not object to the Stay Relief Hearing being held on such shortened notice. During the Remedies Notice Period, the Debtors may object to the termination of the use of Cash Collateral on any basis and may seek the non-consensual use of Cash Collateral, subject to Structural's rights to object to, or otherwise oppose, any such nonconsensual use and to seek adequate protection in connection therewith. Notwithstanding anything to the contrary in the foregoing or otherwise in this Interim Order, during the Remedies Notice Period, the Debtors may use Cash Collateral to pay only such amounts set forth in the Approved Budget that the Debtors have determined in good faith are in the ordinary course and are critical to the preservation of the Debtors and their estates or are otherwise approved in advance in writing by Structural. Following the Stay Relief Hearing, and upon the Court's determination that a Termination Event has occurred, the Court may fashion an appropriate remedy. Prior to entry of the relevant order, Structural shall not (i) terminate, restrict and/or revoke

the Debtors' right under this Interim Order to use any Cash Collateral, (ii) freeze monies or balances in the Debtors' accounts, (iii) otherwise enforce any and all rights against the Cash Collateral, or (iv) take any other actions or exercise any other rights or remedies permitted under this Interim Order or applicable law.

12. ***Reservation of Rights***. Notwithstanding any other provision hereof, the grant of adequate protection to Structural pursuant to this Interim Order shall not be deemed an admission that the interests of Structural are indeed adequately protected, and is without prejudice to the right of Structural to seek additional relief with respect to the use of the Cash Collateral, or to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection; *provided* that the Debtors, the DIP Lender, the Prepetition Litigation Financing Parties, and any other party in interest may contest any such request, and the rights of each of the foregoing to object to such relief are hereby preserved. Nothing herein shall be deemed to waive, modify, or otherwise impair the respective rights of Structural under the LSA or under applicable law, and Structural expressly reserves all of its respective rights and remedies whether now existing or hereafter arising under the LSA and/or applicable law. Without limiting the foregoing, nothing contained in this Interim Order shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate Structural for any Diminution in Value during the Chapter 11 Cases.

13. ***Reservation of Rights Regarding the Amount of Structural's Secured Claim.*** The Debtors and Structural do not agree on the amount of Structural's prepetition secured claim in

these Chapter 11 Cases. All rights are reserved for the Debtors, Structural, the DIP Lender, and the Prepetition Litigation Financing Parties on this issue, including, but not limited to, arguments under section 506(b), section 506(c), and section 1111(b) of the Bankruptcy Code.

14. ***Modification of Automatic Stay***. The Debtors are authorized to perform all acts and to make, execute, and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby. The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Interim Order.

15. ***Survival***. The provisions of this Interim Order shall be binding upon any trustee appointed during the Chapter 11 Cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Chapter 11 Cases to chapter 7 cases, dismissing the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise. The terms and provisions of and the priorities in payments, liens, and security interests granted pursuant to, this Interim Order, shall continue notwithstanding any conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or the dismissal of any of the Chapter 11 Cases. Payments made pursuant to this Interim Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in any of the Chapter 11 Cases or any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases").

16. ***No Third-Party Rights.*** Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct,

indirect, or incidental beneficiary.

17. ***Binding Effect.*** Immediately upon entry of this Interim Order by the Court, the provisions of this Interim Order, including all findings and conclusions of law herein, shall be binding upon all parties in interest in the Chapter 11 Cases and any Successor Cases, including without limitation, Structural, the DIP Lender, the Debtors' other secured lender, the Official Committee (if appointed), or any other committee appointed in the Chapter 11 Cases and any Successor Cases, and their respective successors and assigns, including any chapter 11 trustee or chapter 7 trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtor or with respect to the property of the estate of any of the Debtors, and shall inure to the benefit of each of the Debtors, Structural, and their respective successors and assigns; provided that, except to the extent expressly set forth in this Interim Order, Structural shall have no obligation to permit the use of the Cash Collateral by any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of any Debtor in the Chapter 11 Cases or any Successor Cases.

18. ***Effectiveness***. This Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

19. ***Headings.*** The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

20. ***Retention of Jurisdiction.*** The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this

Interim Order.

21. ***Final Hearing.*** The Final Hearing shall be held on __, 2026 at __:___(prevailing Eastern Time), and any objections to the final relief sought in the Motion shall be filed with the Court no later than seven days before that at 4:00 pm (prevailing Eastern Time).

22. ***Notice of Entry of Interim Order.*** The Debtors shall promptly serve copies of this Interim Order to the parties that have been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to any Official Committee (if appointed).

# EXHIBIT E

**(Blackline of Cash Collateral Order)**

*[Different first page setting changed from on in original to off in modified.].*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>House Canary New Jersey, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-20766 (EJO)<br><br>(Jointly Administered)<br><br>Hearing Date: October 20, 2026 at 2:00 p.m. (Eastern) |

**INTERIM ORDER GRANTING**
**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO STRUCTURAL, (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through ~~nineteen~~twenty-three (~~19~~23), is

**ORDERED**.

~~1~~ 1 The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) House Canary New Jersey, Inc. [3712], (ii) HouseCanary, Inc. [2307], (iii) HouseCanary (CT), Inc. [1814], (iv) ComeHome, Inc. [0328], (v) HC Certified Analytics, Inc. [8523], and (vi) HouseCanary R&D, LLC [2124]. The Debtors' mailing address is 535 Mission Street, 14th Floor, San Francisco, CA 94105.

*[Different first page setting changed from on in original to off in modified.].*

(Page 2)
Debtors: House Canary New Jersey, Inc., *et al.*
Case No: 26-20766 (EJO)
Caption of Order: Interim Order Granting Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Structural, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**DENTONS US LLP**
Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Van C. Durrer, II (admitted *pro hac vice*- forthcoming)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: van.durrer@dentons.com

**DENTONS BINGHAM GREENEBAUM LLP**
James R. Irving (admitted *pro hac vice*- forthcoming)
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
Telephone: (502) 589-4200
Facsimile: (502) 540-2215
Email: james.irving@dentons.com

*Proposed Counsel to Debtors and Debtors in Possession*

*[Link-to-previous setting changed from on in original to off in modified.].*

Upon consideration of the motion (the "Motion"),~~1~~[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Interim Order") and later a final order under sections 105, 361, 362, 363, 503, 506, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Local Rules 4001-3 and 9013-5, for among other things:

a. authorizing the use of ~~Cash Collateral (as defined below~~any and all of the Debtors' cash, existing as of the Petition Date in an account that Structural Capital Investments III, LP, Series Structural DCO II series of Structural Capital DCO, LLC, and CEOF Holdings LP as lenders, and Ocean II PLO LLC as agent (collectively, "Structural") had control over (which amount was $55,061.56), as well as any cash or funds in any accounts which constitute income, proceeds, products, rents or profits of any Structural Collateral (defined below), in each case solely to the extent of the validity and security of Structural's perfected interest therein, and excluding (i) any proceeds of the DIP Facility, (ii) any Prepetition Litigation Collateral or proceeds thereof, (iii) any property of the Debtors, and any proceeds thereof, that, as of the Petition Date, was not subject to a valid and perfected lien in favor of Structural, and (iv) any property acquired with DIP proceeds (collectively, the "Cash Collateral"), pursuant to sections 105, 361, 362, 363, 503, ~~and~~506, 507, and 552 of the Bankruptcy Code on

~~1~~ [2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Interim DIP Order, as applicable.

*[Link-to-previous setting changed from on in original to off in modified.].*

(Page 4)
Debtors: House Canary New Jersey, Inc., *et al.*
Case No: 26-20766 (EJO)
Caption of Order: Interim Order Granting Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Structural, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief

the terms and conditions set forth in this Interim Order; during the period following the Petition Date (as defined below) and through the earlier to occur of the Expiration Date (as defined below) or the Termination Date (as defined below). "Structural Collateral" means the "Collateral" as defined in that certain *Loan and Security Agreement* dated March 25, 2021, as amended (the "LSA"), solely to the extent of Structural's valid, perfected, and unavoidable interest therein, and in all cases excluding (i) the Intellectual Property (as defined in the LSA), (ii) the Litigation IP, the Texas Litigation Collateral (as defined in the LSA), the Prepetition Litigation Collateral, and their respective proceeds, (iii) unless and until the Court determines that such property is subject to a valid and perfected lien in favor of Structural, any accounts, general intangibles, or other rights to payment and proceeds arising from the sale, licensing, or other disposition of, or rights in, all or any part of the Intellectual Property (the "Rights to Payment"), and (iv) any proceeds of the DIP Facility and any property acquired therewith; *provided* that the foregoing definition is descriptive only and shall not constitute a finding or determination as to the nature, scope, extent, validity, perfection, priority, or value of any lien or interest asserted by Structural, and the rights of all parties with respect thereto are reserved;

b. granting adequate protection, as and to the extent set forth herein, to Structural to protect against any dimunition in value of their interests in anysolely to the extent of any Diminution in Value (as defined below) of the Cash Collateral from and

*[Link-to-previous setting changed from on in original to off in modified.].*

(Page 5)
Debtors: House Canary New Jersey, Inc., *et al.*
Case No: 26-20766 (EJO)
Caption of Order: Interim Order Granting Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Structural, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief

after the Petition Date;

c. modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and Structural to implement and effectuate the terms and provisions of this Interim Order;

d. scheduling a final hearing (the "Final Hearing") to consider entry of a final order d. granting the relief requested in the Motion on a final basis (the "Final Order") and

approving the form of notice with respect to the Final Hearing;

e. waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Interim Order; and

f. granting related relief;

all as more fully set forth in the Motion; and an interim hearing with respect to the Motion having been held on October 20, 2026 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b) and 9014 and Bankruptcy Local Rule 9013-5 and it appearing that no other or further notice need be provided; and the Court having considered the First Day Declaration, the DIP Declaration, and the Budget filed and served by the Debtors, the evidence submitted or adduced, and the statements of counsel made at the Interim Hearing; and the Court having considered the interim relief requested in the Motion; and the relief requested being reasonable, appropriate, and in the best interests of the Debtors, their creditors, their estates and all other parties in interest in the Chapter 11 Cases; and the Court having

*[Link-to-previous setting changed from on in original to off in modified.].*

(Page 6)
Debtors: House Canary New Jersey, Inc., *et al.*
Case No: 26-20766 (EJO)
Caption of Order: Interim Order Granting Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Structural, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief

determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates; and that the legal and factual bases set forth in the Motion and at the Interim Hearing establish just cause for the relief granted herein; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[2][3]

A. ***Petition Date.*** On September 22, 2026 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (this "Court") commencing these Chapter 11 Cases.

B. ***Debtors in Possession.*** The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of the Chapter 11 Cases.

C. ***Committee Formation.*** As of the date hereof, the United States Trustee for the District of New Jersey (the "U.S. Trustee") has not appointed an official committee of unsecured

[2] [3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.
*[Link-to-previous setting changed from on in original to off in modified.].*

(Page 7)
Debtors: House Canary New Jersey, Inc., *et al.*
Case No: 26-20766 (EJO)
Caption of Order: Interim Order Granting Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Structural, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief

creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "Official Committee").

D. ***Jurisdiction and Venue.*** This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties ***and*** property affected hereby pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief set forth herein are sections 105(a), 361, 362, 363, 503, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Bankruptcy Local Rules 4001-3 and 9013-5.

E. ***Notice.*** Notice of the Motion and the Interim Hearing constitutes due, sufficient, and appropriate notice and complies with Bankruptcy Rules 4001(b) and 9014 and the Bankruptcy Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

F. ***Debtors' Stipulations***. At this time, solely for the purpose of determining Diminution in Value for cash collateral purposes and not for any other purpose, the Debtors are not proposing any stipulations regarding the amount,stipulate to the validity or priority, perfection, and unavoidability of Structural's liens on the Structural Collateral and claims against the Debtors' bankruptcy estates, or as to the perfection of Structural's security interests on the Structural Collateral.. However, the Debtors do not stipulate, and Structural and the Debtors reserve all rights on: (i) whether Structural's liens on the Debtors' bank accounts to

*[Link-to-previous setting changed from on in original to off in modified.].*

(Page 8)
Debtors: House Canary New Jersey, Inc., *et al.*
Case No: 26-20766 (EJO)
Caption of Order: Interim Order Granting Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Structural, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief

which Structural did not have control via a deposit account control agreement are perfected or whether the cash in those accounts is Structural's Cash Collateral, and (ii) whether Structural has a claim against the Debtor House Canary New Jersey, Inc. under the LSA. Nothing in this Finding F shall prejudice the rights of the DIP Lender, the Prepetition Litigation Financing Parties, or any other party in interest.

G. ***Need for Use of Cash Collateral.*** In addition to the Debtors' need for debtor-in-possession financing approved by the Interim DIP Order, the Debtors also have an immediate and critical need to use Cash Collateral on an interim basis to permit the orderly continuation of the operation of their businesses, maintain business relationships with customers, vendors, and suppliers, make payroll, pay the costs of administering the Chapter 11 Cases, and satisfy other working capital and operational needs (in each case, in accordance with and subject to this Interim Order) for the benefit of the estates and the Debtors' creditors and stakeholders, including Structural. The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral and other Structural Collateral is necessary and vital to the preservation and maintenance of the going concern value of the Debtors and their successful reorganization. The Debtors do not have sufficient sources of working capital and financing to operate their business in the ordinary course of business without the use of Cash Collateral. Absent the ability to use Cash Collateral and the other Structural Collateral, the continued operation of the Debtors' businesses would not be possible, and immediate and irreparable harm to the Debtors and their estates would be inevitable.

*[Link-to-previous setting changed from on in original to off in modified.].*

(Page 9)
Debtors: House Canary New Jersey, Inc., *et al.*
Case No: 26-20766 (EJO)
Caption of Order: Interim Order Granting Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Structural, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief

H. ***Use of Cash Collateral.*** The Debtors have agreed, that all Cash Collateral shall be used and/or applied solely for the purposes permitted in the Approved Budget (as defined in the Motion)below), attached hereto as Exhibit 1, including, without limitation, (i) to pay the costs of the administration of the Chapter 11 Cases (other than as provided in paragraph 6 of this Interim Order), and (ii) for general corporate and working capital purposes in accordance with the terms and conditions of this Interim Order.

I. ***Adequate Protection.*** Structural is entitled to adequate protection as set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code for the Debtors' use of the Structural Collateral, including Cash Collateral, and the imposition of the automatic stay, in the case of the Adequate Protection Liens and, Adequate Protection Superpriority Claims, and Adequate Protection Payments (each, as defined below), solely to the extent of any DimunitionDiminution in Value (defined below); *provided* that (i) the Adequate Protection Liens shall be subject and subordinate to the DIP Liens, the Prepetition Litigation Liens, the Prepetition Structural Liens, and the Carve Out, and (ii) the Adequate Protection Superpriority Claims shall be subject and subordinate to the Carve Out and the DIP Superpriority Claims, and shall not be senior to any claims held by the Prepetition Litigation Financing Parties. Based upon the Motion and the evidence presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and the use of the Cash Collateral as contemplated herein are fair and reasonable and reflect the Debtors' prudent exercise of business judgment. As adequate protection against any aggregate diminution in value of Structural's liens and

*[Link-to-previous setting changed from on in original to off in modified.].*

(Page 10)
Debtors: House Canary New Jersey, Inc., *et al.*
Case No: 26-20766 (EJO)
Caption of Order: Interim Order Granting Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Structural, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief

security interests in the StructuralCash Collateral (includingsolely to the extent of the validity and security of Structural's perfected interest in the Cash Collateral) from and after the Petition Date resulting from, among other things, (i) the use, sale, or lease by the Debtors of such collateral, (ii) the use of Cash Collateral by each of the Debtors on a dollar-for-dollar basis, (iiiii) the imposition of the automatic stay, and (iviii) the imposition of the Carve-OutCarve Out (as defined in the Interim DIP Order or, upon entry, any subsequent order on debtor-in-possession financing) (collectively, and to the fullest extent permitted under the Bankruptcy Code or other applicable law, the "Diminution in Value"), Structural is entitled toshall receive (to the extent of its validly perfected security interest) adequate protection, pursuant to sections 361, 362, and 363 of the Bankruptcy Code, as set forth in this Interim Order; provided, however, that nothing in this Interim Order shall (x) be construed as the affirmative consent by Structural for the use of Cash Collateral or other Structural Collateral other than on the terms expressly set forth in this Interim Order, or (y) prejudice, limit or otherwise impair the rights of Structural to seek new, different or additional adequate protection after the date hereof. Based on the Motion, the First Day Declaration, the DIP Declaration, and other evidence filed in support of the Motion, and the record presented to the Court in connection with the Interim Hearing, the terms of the adequate protection arrangements and the use of Structural Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the use of Structural Collateral (including Cash Collateral).

*[Link-to-previous setting changed from on in original to off in modified.].*

J. ***Proper Exercise of Business Judgment***. Based on the Motion, the First Day Declaration, the DIP Declaration, and the record presented to the Court at the Interim Hearing, (i) the terms of adequate protection granted to Structural, (ii) the terms on which the Debtors may ~~continue to use Structural Collateral (including~~use Cash Collateral~~)~~, and (iii) the Cash Collateral arrangements described herein, (a) are fair, reasonable, and the best available to the Debtors under the circumstances, (b) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and (c) are supported by reasonably equivalent value and fair consideration. Absent the ability to continue to use Cash Collateral upon the terms set forth herein, the Debtors, their estates, their creditors, and other parties-in-interest will be seriously and irreparably harmed.

K. ~~***Initial***~~ ***Budget***. The Debtors ~~have~~previously prepared ~~the~~a six-week itemized cash flow forecast set forth as an exhibit to the DIP Declaration (the "Initial Budget"). Attached hereto as Exhibit 1 is an updated ten-week itemized cash flow forecast approved by Condor FundingCo 26, LLC (the "DIP Lender") in accordance with the Interim DIP Order or, upon entry, any subsequent order on debtor-in-possession financing (the "Budget," as updated by the Debtors ~~and acceptable to Structural and the DIP Lender~~ from time to time, approved by the DIP Lender in accordance with the Interim DIP Order or, upon entry, any subsequent order on debtor-in-possession financing, and acceptable to Structural (such acceptance not to be unreasonably withheld) in accordance with the terms of this Interim Order, the "Approved Budget")~~. The~~; *provided* that nothing herein shall modify the rights of the DIP Lender with

*[Link-to-previous setting changed from on in original to off in modified.]*.

respect to any budget under the Interim DIP Order or, upon entry, any subsequent order on debtor-in-possession financing. The Approved Budget is an integral part of this Interim Order, and Structural ~~are~~is relying, in part, upon the Debtors' agreement to comply, subject to Permitted Variance (as defined below), with the Approved Budget, in determining to allow the Debtors' use of Cash Collateral in accordance with the terms of this Interim Order.

L. ***Good Faith***. The parties herein have acted in good faith, at arm's length, and with sound business judgment in connection with this Interim Order.

M. ***Need for Immediate Entry of this Interim Order.*** The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The permission granted herein to use Cash Collateral (and provide adequate protection therefor) is necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors and their estates and creditors.

**NOW THEREFORE**, based upon the foregoing findings and conclusions, the Motion, the First Day Declaration, the DIP Declaration, and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. ***Motion Granted.*** The use of Cash Collateral is hereby authorized and approved and the Motion is hereby **GRANTED** in accordance with and subject to the terms and conditions of this Interim Order. Any objections or other statements with respect to any of the relief set forth in this Interim Order that have not been withdrawn, waived, or settled, and all reservation of rights

*[Link-to-previous setting changed from on in original to off in modified.].*

(Page 13)
Debtors: House Canary New Jersey, Inc., *et al.*
Case No: 26-20766 (EJO)
Caption of Order: Interim Order Granting Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Structural, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief

inconsistent with this Interim Order, are hereby denied and overruled.

2. ***Authorization to Use Cash Collateral***. Subject to the provisions of this Interim Order (including the Carve-OutCarve Out which is adopted under the terms of the Interim DIP Order or, upon entry, any subsequent order on debtor-in-possession financing), the Debtors are authorized to use Cash Collateral during the period from the Petition Date through and including a Termination Date (as defined below) or the Expiration Date (as defined below) to operate the Debtors' businesses in the ordinary course and pay certain costs, fees, and expenses related to the Chapter 11 Cases, in accordance with the Approved Budget as provided herein, and as approved by any order of this Court.

3. ***Approved Budget.*** Subject to the provisions of this Interim Order (including the Carve-OutCarve Out), the Debtors are authorized to use Cash Collateral in accordance with the Approved Budget (subject to Permitted Variance) through December 4, 2026 (the "Expiration Date"). The Debtors shall provide the same reporting to Structural as the Debtors are currently providing to the DIP Lender under the Interim DIP Order and any subsequent order on debtor-in-possession financing.

4. The Debtors shall not permit a total operating disbursement variance for any prior week to have a negative variance in excess of 15% (with negative variance meaning, for the avoidance of doubt, that actual operating disbursements are greater than the projected operating disbursements) (the variance otherwise permitted by this covenant, the "Permitted Variance").

*[Link-to-previous setting changed from on in original to off in modified.].*

4. ***Permitted Variance***. The Debtors covenant that, for each Budget Testing Period, (a) overall disbursements (other than fees and expenses of the DIP Lender) shall not exceed the corresponding amounts in the Approved Budget by more than ten percent (10%) and (b) no individual line-item disbursement shall exceed the corresponding amount in the Approved Budget by more than five percent (5%) (collectively, the "Permitted Variance"); provided, however, that the Debtors shall be entitled to reserve budgeted professional fees on a weekly basis, such fees to be reconciled as to actuals upon actual billing, Court approval, and payment. To the extent actual disbursements for any line item are less than the amount set forth in the Approved Budget for such line item for any Budget Testing Period (a "Positive Variance"), such Positive Variance may be carried forward to offset a negative variance in such same line item for the subsequent Budget Testing Period; provided that such Positive Variance may only be used as an offset and may not further increase a Positive Variance for any line item during the subsequent Budget Testing Period. As used herein, "Budget Testing Period" means (a) the period from the Petition Date through and including October 9, 2026 and (b) each rolling four-week period ending on a Friday thereafter.

5. ***Limitations on Use of Cash Collateral.*** The Debtors shall not be permitted to use Cash Collateral to make any payments on account of any prepetition debt or obligation before the effective date of a confirmed chapter 11 plan or plans with respect to any of the Debtors, except: (i) as provided in any order in connection with any relief requested by the Debtors at the commencement of these Chapter 11 Cases; or (ii) any payment made in accordance with the

*[Link-to-previous setting changed from on in original to off in modified.].*

Approved Budget, subject to Permitted Variance. The use of Cash Collateral pursuant to the terms and conditions of this Interim Order and in accordance with the Approved Budget shall not be deemed to be consent by Structural to any other or future use of Cash Collateral or to use any Cash Collateral in any amount or for any purpose in excess of the amount set forth in the Approved Budget, subject to the Permitted Variance. For the avoidance of doubt, the Debtors are expressly authorized to reserve amounts for sales tax and other similar taxes in accordance with applicable non-bankruptcy law. To the extent such authorization requires consent, Structural hereby consents to the Debtors' reservation of such amounts.

6. ***Limitations on Use of Cash Collateral in Contested Matters.*** Subject to the Interim DIP Order or, upon entry, any subsequent order on debtor-in-possession financing, the DIP Documents, and the Approved Budget, the Debtors shall not use the Cash Collateral or the Structural Collateral or any proceeds thereof to challenge Structural's prepetition liens or claims or to litigate contested matters (including, but not limited to, confirmation of the Debtors' chapter 11 plan) with Structural. Any costs of the Debtors or estate professional fees regarding such matters shall be drawn from the Debtors' DIP Facility, to the extent provided in the Approved Budget, and not paid from Cash Collateral or the proceeds of Structural Collateral. Nothing in this paragraph 6 or in Finding H obligates the DIP Lender to fund any amount in excess of its commitments or outside the Approved Budget, including any costs of administering the Chapter 11 Cases, or modifies the DIP Lender's rights under the Interim DIP Order, the DIP Documents, or, upon entry, any subsequent order on debtor-in-possession financing.

*[Link-to-previous setting changed from on in original to off in modified.].*

(Page 16)
Debtors: House Canary New Jersey, Inc., *et al.*
Case No: 26-20766 (EJO)
Caption of Order: Interim Order Granting Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Structural, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief

Notwithstanding the foregoing, the Debtors may pay their employees in the ordinary course of business from the Cash Collateral in accordance with the Approved Budget.

7. 6. ***Adequate Protection for Structural.*** Subject onlyand subordinate to the protections afforded the DIP Lender in the Interim DIP Order and the Carve-Out, or, upon entry, any subsequent order on debtor-in-possession financing, and the Carve Out (as defined in the Interim DIP Order and any subsequent order on debtor-in-possession financing), pursuant to sections 361, 363362, 363, and 507 of the Bankruptcy Code, as adequate protection of the interests of Structural in the Structural Collateral (including Cash Collateral (solely to the extent of the validity and security of Structural's perfected interest in the Cash Collateral), in each case, for the potential Diminution in Value of the Structural Collateral (including Cash Collateral), net of the Debtors' cost of delivering services to its customers, Structural is hereby granted the following (the liens, security interests, payments, and other obligations set forth in this paragraph, collectively, the "Adequate Protection Obligations"):

a. ***Adequate Protection Liens***. As security for and solelySolely to the extent of (i) any dimunition in valueDiminution in Value and (ii) the validity and security of Structural's interestsperfected interest in the StructuralCash Collateral, net of the Debtors' cost of delivering services to its customers, and subject in all respects to payment of the Carve-OutCarve Out (as defined in the Interim DIP Order or, upon entry, any subsequent order on debtor-in-possession financing), Structural is hereby granted (effective and perfected as of the entry of this Interim Order and without the necessity of the execution by the Debtors of any security agreements, or control agreements. Pledge agreements, financing statements, mortgages or other similar documents, or the

*[Link-to-previous setting changed from on in original to off in modified.].*

possession or control by Structural of any) valid, perfected replacement security interests in and liens upon the Structural Collateral, valid, binding, continuing enforceable, fully perfected, nonavoidable first priority senior replacement liens on and security interests (all such liens and security interests, (the "Adequate Protection Liens") in all Structural Collateral, which Adequate Protection Liens shall be subject only to any Permitted Prior Liens, but shall be senior to any and all other liens and security interests in the Collateraland subordinate to the DIP Liens, the Prepetition Litigation Liens, the Prepetition Structural Liens, and the Carve Out. For the avoidance of doubt, the Adequate Protection Liens will attach not only to the type of assets which constitutedto both the Structural Collateral existing as of the Petition Date, but also to new contracts, agreements, and revenue which are generated postpetition but are of the same form of property which would be included within the definition of and such collateral of the same type and form that is generated exclusively post-petition; *provided*, *however*, that the Adequate Protection Liens shall not attach to (w) the Intellectual Property (as defined in the LSA) or the Litigation IP, (x) the Texas Litigation Collateral (as defined in the LSA) or the Prepetition Litigation Collateral, (y) the proceeds of the DIP Facility or any property acquired with such proceeds, or (z) any proceeds of any of the foregoing; *provided further* that the Adequate Protection Liens shall not attach to any Rights to Payment unless and until the Court determines that such Rights to Payment constitute Structural Collateral.

b. ***Adequate Protection Superpriority Claims***. As further adequate protection, and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, including subject to the priorities set forth thereinTo the extent the Adequate Protection Liens provided for herein prove insufficient to protect the interest of Structural in the Cash Collateral, Structural is hereby granted an allowed superpriority administrative expense claim on account of such Diminution in Value as provided for in section 507(b)

*[Link-to-previous setting changed from on in original to off in modified.].*

(Page 18)
Debtors: House Canary New Jersey, Inc., *et al.*
Case No: 26-20766 (EJO)
Caption of Order: Interim Order Granting Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Structural, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief

of the Bankruptcy Code (the "Adequate Protection Superpriority Claims") ahead of and, subject and subordinate to the Carve Out and the DIP Superpriority Claims, and shall not be senior to any and all other administrative expense claims other than those held by the DIP Lender and the CarveoutPrepetition Litigation Financing Parties. The Adequate Protection SuperprioriySuperpriority Claims will accrue solely to the extent of, and in an aggregate amount equal to, any dimunition in the value of the Structural Collateral, net of the Debtors' cost of delivering services to its customers. The Adequate Protection Claim will be subject to the Carve-Out as defined in this Interim DIP Order.Diminution in Value of the Cash Collateral (to the extent of the validity and security of Structural's perfected interest in the Cash Collateral).

c. ***Adequate Protection Payments.*** As set forth in the Approved Budget, the Debtors are directed and authorized to pay to Structural, on the dates set forth in the Approved Budget, adequate protection payments (the "Adequate Protection Payments") in an aggregate amount of $550,000 between entry of this Interim Order and the Expiration Date, with $250,000 paid within the first week after entry of this Interim Order and $50,000 paid per week thereafter through the Expiration Date. The Adequate Protection Payments are inclusive of, and not in addition to, any payment of Structural's professional fees and expenses, of which no more than $150,000 may be paid. No other fees or expenses of Structural shall be paid from Cash Collateral or DIP proceeds. Notwithstanding the foregoing, the Debtors, the DIP Lender, and the Prepetition Litigation Financing Parties expressly reserve the right to assert that Structural's claims against the Debtors are undersecured, including, but not limited to, the right to assert that the Adequate Protection Payments and any payments of Structural's professional fees and expenses, as well as any payment of postpetition

*[Link-to-previous setting changed from on in original to off in modified.].*

interest and fees, should be characterized as a return of collateral or recharacterized as payments of principal, in whole or in part, under section 506 of the Bankruptcy Code or otherwise.

d. ***Reporting.*** Beginning with the week following entry of this Interim Order and every week thereafter, on the third business day of each week, the Debtors shall deliver to Structural a variance report comparing actual disbursements for the preceding week to projected disbursements for the corresponding week set forth in the Approved Budget and explaining in reasonable detail all material variances (each a "Variance Report," which Variance Report shall be in a form satisfactory to the DIP Lender). The Debtors shall also provide Structural, on a weekly basis, a report identifying the amount and location of any cash or proceeds that Structural asserts are its Cash Collateral.

8. 7. ***Access and Information***. Without limitation of the requirements contained in the LSA, upon reasonable prior written notice (including via acknowledged electronic mail) during normal business hours, the Debtors shall permit the Structural and its professionals (each of which is bound by obligations of confidentiality) to have reasonable access to such information regarding the operations, business affairs, and financial condition of the Debtors or any of their subsidiaries, or compliance with the terms of the LSA as Structural may reasonably request, and it being understood*provided however,* that nothing in this paragraph shall require the Debtors (or any of their advisors) to take any action that would conflict with any applicable requirements of law or any binding agreement, or that would waive any attorney-client or similar privilege.

9. 8. ***Carve-Out***. The Carve-Out***Carve Out***. The Carve Out established in the

*[Link-to-previous setting changed from on in original to off in modified.].*

Interim DIP Order or, upon entry, any subsequent order on debtor-in-possession financing, is expressly preserved and any Adequate Protection Liens or Adequate Protection SuperioritySuperpriority Claims granted under this Interim Order are expressly subject to, and junior to, the Carve-OutCarve Out.

10. 9. ***Termination Events***. Subject to the Remedies Notice Period (as defined herein), the Debtors' right to use the Cash Collateral pursuant to this Interim Order shall cease on the Termination Date (as defined herein). As used herein "Termination Events" means any of the events set forth in clauses (a) through (ih) below (each such eventsevent a "Termination Event," and the date upon which such Termination Event occurs, the "Termination Date"):

a. The effective date of a chapter 11 plan of one or more of the Debtors;

b. The violation of any term of the Interim Order by the Debtors that is not cured within five business days of receipt by the Debtors, counsel for any committee appointed in the Chapter 11 Cases, the debtor-in-possession lender, and the U.S. Trustee of notice of such default, violation, or breach (which may be provided to counsel for the respective parties by email);

b. c. The entry of any order modifying, reversing, revoking, staying for a period in excess of five business days, rescinding, vacating, or amending thethis Interim Order without the express written consent of Structural;

c. d. The entry of an order dismissing or converting the Chapter 11 Cases to proceedings under chapter 7 of the Bankruptcy Code;

d. e. The entry of an order appointing a chapter 11 trustee or an examiner with enlarged powers relating to the operation of the business of any Debtor (powers

*[Link-to-previous setting changed from on in original to off in modified.]*.

(Page 21)
Debtors: House Canary New Jersey, Inc., *et al.*
Case No: 26-20766 (EJO)
Caption of Order: Interim Order Granting Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Structural, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief

beyond those set forth in sections 1106(a)(3) and (a)((4) of the Bankruptcy Code) unless consented to by Structural in writing;

e. f. The entry by this Court of an order granting relief from or modifying the automatic stay imposed by section 362 of the Bankruptcy Code – other than with respect to the Texas Litigation*HouseCanary, Inc. v. Amrock, LLC*, No. 2016-CI-06300, in the 438th Judicial District Court, Bexar County, Texas, and *HouseCanary, Inc. v. Quicken Loans Inc.*, No. 5:18-cv-00519, in the United States District Court for the Western District of Texas – to any entities other than Structural with respect to the StructuralCash Collateral which is not consented to by Structural in writing;

f. g. The Debtors' failure to comply with the Approved Budget except with respect to Permitted Variance;

g. h. The failure of the Debtors to observe or perform any of the material terms or material provisions contained herein; and

h. i. The Debtors sell, transfer, lease, encumber, or otherwise dispose of any portion of the Structural Collateral outside the ordinary course of business, other than the use of Cash Collateral pursuant to thethis Interim Order and Budgetthe Approved Budget, the grant of the DIP Liens and any other liens or claims under the Interim DIP Order or, upon entry, any subsequent order on debtor-in-possession financing, or another order of the Bankruptcy Court.

*[Link-to-previous setting changed from on in original to off in modified.].*

(Page 22)
Debtors: House Canary New Jersey, Inc., *et al.*
Case No: 26-20766 (EJO)
Caption of Order: Interim Order Granting Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Structural, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief

11. 10. ***Remedies Upon Termination Event***. Upon the occurrence or during the continuation of a Termination Event, Structural may send written notice (the "Remedies Notice"), email being sufficient, to counsel to the Debtors, counsel to the DIP Lender, counsel to any Official Committee (if appointed), and the U.S. Trustee (the "Remedies Notice Parties") that a Termination Event has occurred, and, prior to taking any enforcement action, Structural shall file with the Court and seek an emergency hearing (the "Stay Relief Hearing") upon no less than five days' notice (unless the Debtors, the DIP Lender and Structural agree to request that the Court conduct the Stay Relief Hearing on shorter notice) to the Remedies Notice Parties (the "Remedies Notice Period") to determine whether a Termination Event has occurred. The Debtors shall not object to the Stay Relief Hearing being held on such shortened notice. During the Remedies Notice Period, the Debtors may object to the termination of the use of Cash Collateral on any basis and may seek the non-consensual use of Cash Collateral, subject to Structural's rights to object to, or otherwise oppose, any such nonconsensual use and to seek adequate protection in connection therewith. Notwithstanding anything to the contrary in the foregoing or otherwise in this Interim Order, during the Remedies Notice Period, the Debtors may use Cash Collateral to pay only such amounts set forth in the Approved Budget that the Debtors have determined in good faith are in the ordinary course and are critical to the preservation of the Debtors and their estates or are otherwise approved in advance in writing by Structural. Following the Stay Relief Hearing, and upon the Court's determination that a Termination Event has occurred, the Court may fashion an appropriate remedy. Prior to entry of the relevant order, Structural shall not (i) terminate, restrict

*[Link-to-previous setting changed from on in original to off in modified.].*

(Page 23)
Debtors: House Canary New Jersey, Inc., *et al.*
Case No: 26-20766 (EJO)
Caption of Order: Interim Order Granting Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Structural, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief

and/or revoke the Debtors' right under this Interim Order to use any Cash Collateral, (ii) freeze monies or balances in the Debtors' accounts, (iii) otherwise enforce any and all rights against the StructuralCash Collateral, andor (iv) take any other actions or exercise any other rights or remedies permitted under this Interim Order or applicable law.

12. 11. ***Reservation of Rights of Structural***. Notwithstanding any other provision hereof, the grant of adequate protection to Structural pursuant to this Interim Order shall not be deemed an admission that the interests of Structural are indeed adequately protected, and is without prejudice to the right of Structural to seek additional relief with respect to the use of the Structural Collateral (including Cash Collateral), or to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection; *provided* that the Debtors, the DIP Lender, the Prepetition Litigation Financing Parties, and any other party in interest may contest any such request, and the rights of each of the foregoing to object to such relief are hereby preserved. Nothing herein shall be deemed to waive, modify, or otherwise impair the respective rights of Structural under the LSA or under applicable law, and Structural expressly reservereserves all of theirits respective rights and remedies whether now existing or hereafter arising under the LSA and/or applicable law. Without limiting the foregoing, nothing contained in this Interim Order shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate

*[Link-to-previous setting changed from on in original to off in modified.].*

Structural for any Diminution in Value during the Chapter 11 Cases.

13. ***Reservation of Rights Regarding the Amount of Structural's Secured Claim.*** The Debtors and Structural do not agree on the amount of Structural's prepetition secured claim in these Chapter 11 Cases. All rights are reserved for the Debtors, Structural, the DIP Lender, and the Prepetition Litigation Financing Parties on this issue, including, but not limited to, arguments under section 506(b), section 506(c), and section 1111(b) of the Bankruptcy Code.

14. 12. ***Modification of Automatic Stay***. The Debtors are authorized to perform all acts and to make, execute, and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby. The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Interim Order.

15. 13. ***Survival***. The provisions of this Interim Order shall be binding upon any trustee appointed during the Chapter 11 Cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Chapter 11 Cases to chapter 7 cases, dismissing the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise. The terms and provisions of and the priorities in payments, liens, and security interests granted pursuant to, this Interim Order, shall continue notwithstanding any conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or the dismissal of any of the Chapter 11 Cases. Payments made pursuant to this Interim Order shall not be subject to counterclaim, setoff,

*[Link-to-previous setting changed from on in original to off in modified.].*

(Page 25)
Debtors: House Canary New Jersey, Inc., *et al.*
Case No: 26-20766 (EJO)
Caption of Order: Interim Order Granting Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Structural, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief

subordination, recharacterization, defense or avoidance in any of the Chapter 11 Cases or any other proceedings superseding or related to any of the foregoing (collectively, the "Successor CaseCases").

16. 14. ***No Third-Party Rights.*** Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

17. 15. ***Binding Effect.*** Immediately upon entry of this Interim Order by the Court, the provisions of this Interim Order, including all findings and conclusions of law herein, shall be binding upon all parties in interest in the Chapter 11 Cases and any Successor Cases, including without limitation, Structural, the DIP Lender, the Debtors' other secured lender, the Official Committee (if appointed), or any other committee appointed in the Chapter 11 Cases and any Successor Cases, and their respective successors and assigns, including any chapter 11 trustee or chapter 7 trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtor or with respect to the property of the estate of any of the Debtors, and shall inure to the benefit of the each of the Debtors, Structural, and their respective successors and assigns; provided that, except to the extent expressly set forth in this Interim Order, Structural shall have no obligation to permit the use of the Structural Collateral (including Cash Collateral) by any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of any Debtor in the Chapter 11 Cases or any

*[Link-to-previous setting changed from on in original to off in modified.].*

Successor Cases.

18. ~~16.~~ ***Effectiveness***. This Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

19. ~~17.~~ ***Headings.*** The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

20. ~~18.~~ ***Retention of Jurisdiction.*** The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

21. ~~19.~~ ***Final Hearing.*** The Final Hearing shall be held on ______________________, 2026 at _____:__________(prevailing Eastern Time), and any objections to the final relief sought in the Motion shall be filed with the Court no later than seven days before that at 4:00 pm (prevailing Eastern Time).

22. ~~20.~~ ***Notice of Entry of Interim Order.*** The Debtors shall promptly serve copies of this Interim Order to the parties that have been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to any Official Committee (if appointed).

*[Link-to-previous setting changed from on in original to off in modified.].*